**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PHILADELPHIA EAGLES LIMITED PARTNERSHIP<br><br>Plaintiff,<br>v.<br><br>FACTORY MUTUAL INSURANCE COMPANY<br><br>Defendant. | Case No. 2:21-cv-01776-MMB |

**PLAINTIFF PHILADELPHIA EAGLES LIMITED PARTNERSHIP'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO REMAND**


Charles A. Fitzpatrick IV (PA Bar 309113)
James T. Giles (PA Bar 4425)
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone: 215.569.5608
Facsimile: 215.832.5608
Email: fitzpatrick-c@blankrome.com
Email: jgiles@blankrome.com

Linda Kornfeld (pro hac vice)
Blank Rome LLP
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434
Email: lkornfeld@blankrome.com

James R. Murray (pro hac vice)
Blank Rome LLP
1825 Eye Street, N.W.
Washington, D.C. 20006
Telephone: 202.420.2200
Facsimile: 202.420.2201
Email: jmurray@blankrome.com

Lisa M. Campisi (pro hac vice)
Blank Rome LLP
1271 Avenue of the Americas
New York, New York 10020-1300
Telephone: (212) 885-5378
Facsimile: (212) 685-9926
Email: lcampisi@blankrome.com

*Attorneys for Plaintiff Philadelphia Eagles Limited Partnership*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................1

I. APPLICATION OF DIANOIA'S EATERY TO THE FACTS OF THIS CASE SUPPORTS REMAND TO STATE COURT ............................................2

A. The Third Circuit Confirmed that the District Court's Discretion to Decline Jurisdiction Bestowed by the DJA Applies to COVID-19 Insurance Coverage Cases ...............................................................2

B. The Reifer Factors in Conjunction with the Guidance from Summy and Dianoia's Eatery Justify Remanding this Case to State Court .............4

1. The Summy Factors .........................................................................4

2. Clarification of the Reifer Factors ..................................................6

3. Because this Case Presents Novel Issues of State Law Dianoia's Eatery Mandates Remanding this Case to State Court ...........................................................................................8

CONCLUSION.....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*401 Fourth St., Inc. v. Invs. Ins. Grp.*,
879 A.2d 166 (2005) ....................................................................................................12

*Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*,
No. 20-2954 (3d Cir. Aug. 18, 2021)............................................................................ *passim*

*Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am.*,
134 N.J. 1 (1993) ..........................................................................................................10

*Reifer v. Westport Ins. Corp.*,
751 F.3d 129 (3d Cir. 2014)......................................................................................... *passim*

*Safe Auto Ins. Co. v. Berlin*,
991 A.2d 327 (Pa. Super. Ct. 2010)...............................................................................8

*State Auto Insurance Cos. v. Summy*,
234 F.3d 131 (3d Cir. 2000)......................................................................................... *passim*

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*,
781 A.2d 1189 (Pa. 2001) .............................................................................................10

*Vale Vista Assocs., L.P. v. Cincinnati Cas. Co.*,
No. CV 18-1064, 2019 WL 8989857 (W.D. Pa. Dec. 31, 2019)......................................8

*Westfield Ins. Co. v. Holland*,
No. CIV.A. 07-5496, 2008 WL 5378267 (E.D. Pa. Dec. 19, 2008)...............................11

# INTRODUCTION

During the pendency of the Eagles' Motion to Remand, the United States Court of Appeals for the Third Circuit issued its opinion in *Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, No. 20-2954 (3d Cir. Aug. 18, 2021).[1] The Third Circuit's decision supports remand of the instant case for the following reasons:

First, the Third Circuit outright rejected the arguments, also made by Factory Mutual here, that a district court is required to retain jurisdiction over a declaratory judgment action because (1) the action seeking declaratory relief is "really" a breach of contract claim for legal relief "masquerading" as a declaratory judgment claim, (2) the declaratory judgment sought by the insured could lead to monetary consequences for the insurer, or (3) the declaratory relief sought by the insured is retrospective rather than prospective.

Second, the Third Circuit reaffirmed that (1) the list of factors set forth in *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 144 (3d Cir. 2014), continues to guide a district court's discretion in determining whether a federal or state court is better suited to resolve a declaratory judgment action, (2) those factors are ***not*** exhaustive, and (3) a district court should properly consider the "additional" factors set forth in *State Auto Insurance Cos. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000) – a controlling case that Factual Mutual entirely ignored in its Opposition to Motion to Remand ("FM Opp.). Among the key *Summy* factors that Factory Mutual ignored were (1) that "when applicable state law is uncertain or undetermined, district courts should be particularly reluctant to exercise DJA jurisdiction" and (2) "[t]he fact that district courts are limited to predicting—rather than establishing—state law requires serious consideration and is especially

[1] *Dianoia's Eatery*, attached as Exhibit A, involved a consolidated appeal of three COVID-19 insurance coverage cases. In each, the insurer defendants appealed decisions from district courts exercised their discretion to remand cases under the Declaratory Judgment Act ("DJA").

important in insurance coverage cases."

Third, the Third Circuit clarified the application of the *Reifer* factors to COVID-19 coverage litigation, emphasizing that the third factor (i.e., the public interest in having a dispute resolved in a state forum) may justify remand to state court even in the absence of any other supporting *Reifer* factor. The Third Circuit thus remanded to the district courts the consolidated cases at issue in *Dianoia's Eatery* with the instruction that the district courts determine, on a more fulsome record, whether to retain or decline jurisdiction based on the above guidance.

This case presents exactly the sort of novel and unsettled issues of state insurance law that the Third Circuit recognized in *Dianoia's Eatery* support the use of a district court's discretion to remand a declaratory judgment action back to state court. Accordingly, the Eagles respectfully request that their pending Motion to Remand be granted.

## I. APPLICATION OF *DIANOIA'S EATERY* TO THE FACTS OF THIS CASE SUPPORTS REMAND TO STATE COURT

### A. The Third Circuit Confirmed that the District Court's Discretion to Decline Jurisdiction Bestowed by the DJA Applies to COVID-19 Insurance Coverage Cases

*Dianoia's Eatery* supports remand of the Eagles' lawsuit against Factory Mutual. This is so in the first instance because the Third Circuit rejected the insurers' bundle of arguments that cases like this one seeking declaratory relief regarding COVID-19 coverage are not true declaratory judgment actions subject to the district courts' discretionary jurisdiction, and that therefore the district court is required to retain federal jurisdiction. The Third Circuit first rejected the argument, substantially identical to the one made by Factory Mutual here, FM Opp. at 4-7, that "the District Courts had no discretion under the DJA to abstain because the complaints, styled as declaratory judgment actions, did not *really* seek declaratory relief." Opinion at 20. In so doing, the Third Circuit found that the insureds' allegations in their complaints concerning their "losses,"

"damages" and "expenses," and that they "were entitled to coverage—*i.e.*, money," were "inconsequential" and did not obviate that the insureds only sought declaratory relief. *Id.* at 22 (citations and internal marks omitted). The Eagles' decision to only seek declaratory relief compels the same result here – contrary to Factory Mutual's argument that the Eagles' Complaint "actually" contains a breach of contract claim due to the allegation that the Eagles have suffered "millions of dollars in loss" as a result of COVID-19, FM Opp. at 6-7.

The Third Circuit next rejected the insurers' arguments that the district court lacked discretion to decline jurisdiction because the insureds "*could have* brought a breach of contract claim" and the insureds' failure to do so was simply "artful pleading to avoid federal jurisdiction." Opinion at 23. The Third Circuit held that "[t]he possibility that a plaintiff could seek other, non-declaratory forms of relief remains irrelevant to the applicability of the DJA regardless of the plaintiff's motive for choosing to bring a declaratory judgment action." *Id.* at 24. Indeed, the Third Circuit held that it made no difference even if the plaintiffs limited their complaint to declaratory relief solely to avoid federal jurisdiction: "The plaintiff, as master of the complaint, may make a genuine choice to limit the relief sought." *Id.* at 25. It is similarly irrelevant here where the Eagles' complaint seeks only declaratory relief.

Finally, the Third Circuit rejected the argument that the insureds' claims were really for breach of contract because the declaratory relief requested could only establish liability for past conduct. The Third Circuit correctly noted that such an argument was entirely inconsistent with its prior decision in *Reifer*, which similarly only related to insurance coverage for past conduct. *Id.* at 25-26. Therefore, under *Reifer* and its progeny, the DJA applies whether the relief requested was prospective or retrospective. In this case, in direct contrast to this settled authority, Factory Mutual has argued that the Eagles' claim is "actually" one for breach of contract because "Plaintiff

is trying to adjudicate past conduct." FM Opp. at 6-7.

In sum, contrary to Factory Mutual's argument that federal jurisdiction is mandatory, the Third Circuit's opinion confirmed that the district courts have discretion under the DJA to decline federal jurisdiction. Opinion at 26. This Court can and should exercise that discretion to remand this matter to state court.

### B. The *Reifer* Factors in Conjunction with the Guidance from *Summy* and *Dianoia's Eatery* Justify Remanding this Case to State Court

#### 1. The *Summy* Factors

Further supporting remand is the guidance the Third Circuit provided in *Dianoia's Eatery* regarding district courts' exercise of their discretion to decline jurisdiction under the DJA. Emphasizing that the district courts have "unique and substantial discretion" to decline jurisdiction, the Third Circuit highlighted the considerations relevant to how that discretion should be exercised. Application of these considerations all the more underscores that remand is appropriate here.

The Third Circuit noted at the outset that, while a district court should consider the eight *Reifer* factors "to the extent they are relevant," those factors remain "not exhaustive." *Id.* at 7-8. The Third Circuit also again emphasized the importance of the "additional guidance" provided in its earlier decision in *Summy* as "applicable in the insurance context." *Id.* at 8.

Because of the continued importance of *Summy* in the Third Circuit's DJA jurisprudence, a brief discussion of *Summy* is in order. *Summy* involved a declaratory judgment action seeking insurance coverage for bodily injuries caused by exposure to lead paint. *Summy*, 234 F.3d at 131. The insurer in *Summy* argued that coverage was precluded by a pollution exclusion. *Id.* at 132. The district court agreed and granted summary judgment to the insurer. *Id.* The Third Circuit reversed, holding that the district court ***abused its discretion*** when it retained federal jurisdiction

over the matter pursuant to the DJA.[2] *Id.* at 136.

In finding that the district court abused its discretion, the Third Circuit instructed in *Summy* that "district courts should give serious consideration to the fact that they do not establish state law, but are limited to predicting it. This is especially important in insurance coverage cases." *Id.* at 135. Therefore, "where the applicable state law is uncertain or undetermined, district courts should be particularly reluctant to entertain declaratory judgment actions." *Id.* The Third Circuit further noted that because the case involved only issues of state insurance law, "no federal interests were promoted by deciding this case in the District Court," while the state had a significant "interest in resolving its own law" that "must not be given short shrift" merely because an insurer defendant "perceive[s] some advantage in the federal forum." *Id.* at 136. Thus, "[i]n order to maintain the proper relationship between federal and state courts, it is important that district courts 'step back' and allow the state courts the opportunity to resolve unsettled state law matters." *Id.*

By again both confirming that the *Reifer* factors were not exhaustive and emphasizing the additional guidance set forth in *Summy*, the Third Circuit reinforced in *Dianoia's Eatery* its prior admonition that district courts should exercise their discretion under the DJA to protect the balance of state and federal interests and "step back" when, as here, unresolved matters of state law predominate.

[2] Like the present case, the action in *Summy* involved the interpretation of a policy exclusion. The Third Circuit noted that "[g]enerally speaking, insurance companies include pollution exclusions in their liability policies to shield themselves from claims for injuries caused by exposure to harmful substances, irritants, contaminants, or chemicals as defined more precisely in the policies," and that courts had reached no consensus regarding the interpretation of pollution exclusions in lead poisoning cases – making the interpretation of the pollution exclusion an unsettled issue of state law. *Id.* at 132-33.

### 2. Clarification of the *Reifer* Factors

Next, the Third Circuit's *Dianoia's Eatery* opinion clarified the meaning of several of the *Reifer* factors. First, it held that the district courts had erred in considering the state interest in the determination of state law under the rubric of the first *Reifer* factor, which was clarified as only concerned with whether the declaratory judgment action at issue will resolve the specific controversy between the parties to the suit. Opinion at 27. Second, the Third Circuit held that the fifth *Reifer* factor was not the appropriate rubric in considering that other cases with similar issues were pending in state court, because that factor only concerned parallel state cases involving the same parties. *Id.* at 29. This finding does not mean, however, that interests of federalism are to be ignored. Instead, the Third Circuit held that a state's interest in adjudicating novel or unsettled issues of its own law was simply most appropriately addressed under the third *Reifer* factor (and *Summy* guidance). *See id.* at 30-34.

In making its clarifications to the *Reifer* factors, the Third Circuit stressed the importance of the novelty of state law issues specifically and the third *Reifer* factor generally in deciding whether to exercise the DJA's discretion to remand a proceeding to state court. In fact, the decision to remand to the district court the three cases on appeal in *Dianoia's Eatery* was expressly because the district courts' original decisions failed to "squarely address" the novelty or unsettledness of the state law issues raised by the plaintiffs, preventing the Third Circuit from determining whether the remand orders had been a proper exercise of those district courts' discretion. Opinion at 31-32.

Illustrative of these points, the Third Circuit discussed the novelty of the state law issues identified, but not adequately addressed, by the district courts. *Id.* at 32-39. For example, the Third Circuit noted that one district court had identified four issues that it considered novel: (1) whether a virus exclusion applied; (2) whether application of the virus exclusion was void as

against public policy; (3) whether plaintiff suffered physical loss or damage from a government order; and (4) whether the plaintiff met the requirements for civil authority coverage. The Third Circuit determined that the first two issues—relating to the application of a virus exclusion—were not novel. *See id.* at 32-33, 35-36. However, the Third Circuit conceded that the remaining two issues may indeed be novel or unsettled and, therefore, remanded to the district court for further analysis of those issues. *Id.* at 38-39.

The distinctions drawn by the Third Circuit between the four assertedly novel issues of state law is crucial, and illustrates why the Eagles' motion should be granted. Those regarding the virus exclusion involved an application of settled contract law to the alleged facts concerning the insured's Coronavirus-related losses, and therefore did not raise novel or unsettled issues of state law.[3] By contrast, the Third Circuit recognized that a district court could reasonably conclude that whether plaintiff suffered physical loss or damage from a government order and whether the plaintiff met the requirements for civil authority coverage <u>were</u> novel and unsettled. Otherwise, the Third Circuit would have determined, as it did for the virus exclusion, that these issues were insufficiently novel to call for remand to state court.

Furthermore, the Third Circuit remanded the cases consolidated on appeal despite finding that none of the other *Reifer* factors militated in favor of remand to state court. By doing so, the *Dianoia's Eatery* decision acknowledges the preeminence of the clarified third *Reifer* factor, at least with regard to insurance coverage cases seeking a declaratory judgment. There would have been no reason to remand for further consideration of the cases on appeal if the third *Reifer* factor,

---

[3] While not expressly addressed, the fact that the insured's policy contained a straightforward virus exclusion (as opposed to the ambiguous "contamination" exclusion at issue in Factory Mutual's policies here) that had already been analyzed in previous New Jersey Coronavirus-related insurance cases further supports this aspect of the Third Circuit's decision.

either alone or in conjunction with the additional *Summy* factors, could not justify discretionary remand to state court.

### 3. Because this Case Presents Novel Issues of State Law *Dianoia's Eatery* Mandates Remanding this Case to State Court

This case presents exactly the sort of novel and unsettled issues of Pennsylvania insurance law that the Third Circuit recognized would be best resolved by a Pennsylvania state court, even in the absence of a parallel state proceeding or other factors favoring remand.

First, the Eagles' lawsuit raises novel and unsettled questions surrounding the interpretation and application of the "contamination" exclusion in FM's Policy. For example, a court resolving this case will address whether the exclusion applies beyond the scope of traditional environmental pollutants because of, among other things, Pennsylvania's adoption of the "reasonable expectations" doctrine. *See, e.g.*, *Safe Auto Ins. Co. v. Berlin*, 991 A.2d 327, 331-32 (Pa. Super. Ct. 2010) ("a court's focus upon the insured's 'reasonable expectations' is not limited only to situations in which the insurance contract might be deemed ambiguous"). Here, a reasonable interpretation of this exclusion, when read together in context with the policy's definitions of "contamination," and "communicable disease" (a term that is not included in the policy's "contamination" definition), is that the exclusion applies only to traditional industrial pollutants, and virus' that exist in that context. The deciding court will therefore be asked to determine whether the term virus as used in the contamination definition should reasonably be read to narrowly apply to a hazardous and/or industrial pollution context, which cannot reasonably include COVID-19, a "communicable disease" (again, a phrase that is expressly defined in FM's policy, but not included in the contamination definition), at the Eagles' Property. Some states' courts have held that "a pollutant exclusion should be limited to traditional 'pollution' of the environment[,]" but Pennsylvania "has not explicitly addressed these questions." *Vale Vista*

*Assocs., L.P. v. Cincinnati Cas. Co.*, No. CV 18-1064, 2019 WL 8989857, at *10 (W.D. Pa. Dec. 31, 2019), *report and recommendation adopted in relevant part, rejected in part,* 442 F. Supp. 3d 896 (W.D. Pa. 2020). Accordingly, a Pennsylvania state case is the best forum to first address whether an otherwise traditional "contamination" exclusion is transformed into a "pandemic" exclusion by the subtle insertion of "virus," in direct contravention of the reasonable expectations of the policyholder and related provisions of the policy.

Second, and relatedly, this case raises a novel and unsettled issue regarding whether the doctrine of regulatory estoppel compels rejection of FM's effort at an expansive reading of the "contamination" exclusion.[4] Prior to 2006, Factory Mutual's policies contained a "contamination" exclusion that simply read: "contamination including but not limited to the presence of pollution or hazardous material." Exhibit B at 78. The term "contamination" was nowhere defined in that version of the policy. In 2006, Factory Mutual changed what was seemingly a clear pollution exclusion to its present form. Critically, when Factory Mutual changed the language, it told state insurance regulators that the language was merely "***editorially revised***" and that the new language resulted in "***[n]o coverage change***." Exhibit B at 9.

Contrary to its representations to regulators, Factory Mutual is now arguing that the exclusion is not limited to traditional pollutants and hazardous materials, but is tantamount to a pandemic exclusion. Under the doctrine of regulatory estoppel, Factory Mutual should be bound by the narrow interpretation of the "contamination" exclusion that it previously represented to regulatory authorities, and should be estopped from enforcing the broader, coverage limiting interpretation that it now asserts. The application of regulatory estoppel in the present context is

---

[4] Exemplary 2006 correspondence between Factory Mutual and state insurance regulators regarding this issue are attached as Exhibit B.

not settled under Pennsylvania law, and this case should therefore be remanded so that this novel question of state law can be resolved by a Pennsylvania court.

In *Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am.*, 134 N.J. 1, 75-76 (1993), the New Jersey Supreme Court applied the doctrine of regulatory estoppel under New Jersey law to an analogous attempt to surreptitiously restrict coverage through a pollution exclusion. In that case, the insurers' agents made representations to regulatory authorities that led the authorities to reasonably believe that the amended exclusory language merely "clarified," but was consistent with, prior occurrence-based coverage, while in fact the literal meaning of the exclusions would have the effect of "materially and dramatically reduc[ing] the coverage previously available for property damage caused by pollution." *Id.* at 72. The Court ruled that the exclusion would be interpreted as reasonably understood by the regulatory authorities based on the representations made to them, rather than the literal language, and that the insurers were estopped from arguing that the exclusory language was actually broader in scope than their representatives had led the regulators to believe. To hold otherwise, the Court reasoned, would be to "violate this State's strong public policy requiring regulation of the insurance business in the public interest, and would reward the industry for its misrepresentation and nondisclosure to state regulatory authorities." *Id.* at 74. "As a matter of equity and fairness, the insurance industry should be bound by the representations of . . . its designated agent, in presenting the pollution-exclusion clause to state regulators." *Id.* at 75-76.

In *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193 (Pa. 2001), the Pennsylvania Supreme Court held that regulatory estoppel was a viable doctrine under Pennsylvania law, and that dismissal of an insured's regulatory estoppel argument was error; it remanded the case to the trial court for further proceedings regarding the application of the regulatory estoppel doctrine in the insurance context. However, the case settled before the scope

of regulatory estoppel was clarified. Therefore, the application of regulatory estoppel in this context has not been definitively settled under Pennsylvania law. It would therefore be appropriate for this Court to allow the Pennsylvania courts to determine the scope of regulatory estoppel under Pennsylvania law, rather than a federal court making a prediction as to how Pennsylvania law would apply here.

Third, as explained in the Eagles' Opposition to the Motion to Dismiss at 24-30, Factory Mutual's Policy purposefully employs language extending coverage to the "risks of" physical loss or damage. As alleged in the Complaint, use of the words "risks of" in the insuring agreement means that the Policy covers *risks* of including ***threats*** of physical loss or damage to property. Complaint ¶¶ 38-40, 66-71, 83-86. The plain and ordinary meaning of the undefined word "risk" is a "possibility of loss or injury." *Risk*, Merriam-Webster, www.merriam-webster.com/dictionary/risk. It is synonymous with "danger, chance, threat, possibility." *Risk*, Collins Dictionary, www.collinsdictionary.com/us/dictionary/english/risk. *See, e.g.*, *Westfield Ins. Co. v. Holland*, No. CIV.A. 07-5496, 2008 WL 5378267, at *6 (E.D. Pa. Dec. 19, 2008) (to determine the ordinary meaning of an undefined term, courts look to standard English language dictionaries). The Insurance Services Office, which is the insurance industry's drafting organization, and other first-party property insurers abandoned this language for allegedly more restrictive language starting in at least 2013 – but Factory Mutual deliberately chose to retain the broader language in its commercial property form. *See* Eagles Opposition to the Motion to Dismiss at 27-28. As a result of the inclusion of this language by Factory Mutual, the Policy must be understood to provide broader coverage for *risks of*, including *threats of*, physical loss or damage to property, even in the absence of the actual presence of Coronavirus on the premises. *Id*. at 24-30. The Eagles have alleged a direct, concrete and immediate loss of property due to not just the

actual presence of coronavirus at its premises, but also the imminent threat of COVID-19, thereby triggering coverage. While there is Pennsylvania Supreme Court precedent supporting the Eagles' interpretation of the "risks of" policy language in other contexts (*401 Fourth St., Inc. v. Invs. Ins. Grp*., 879 A.2d 166, 174 (2005)), there is as yet no decision under Pennsylvania law either applying this precedent or interpreting this "risks of" policy language in the Coronavirus context. A Pennsylvania state court should be given the opportunity to determine this novel and unsettled question of whether the Policy's "risks of" language provides coverage from the continuous threat of physical loss or damage resulting from Coronavirus.

These issues, among others, surpass in novelty the questions identified by the Third Circuit in *Dianoia's Eatery* as potentially supporting remand under the third *Reifer* factor—i.e., whether plaintiff suffered physical loss or damage from a government order and whether the plaintiff had met the requirements for civil authority coverage. Unlike the above issues identified by the Eagles, the issues addressed by the Third Circuit in *Dianoia's Eatery* have been the subject of at least some state court decisions, albeit none from Pennsylvania's highest court (or even from any intermediate appellate court) in the Coronavirus context. In short, the novelty of the issues presented here more than amply support remand.

Finally, the additional guidance set forth in *Summy* and reaffirmed by the Third Circuit in *Dianoia's Eatery* strongly supports remand here. Given the significance of the issues at stake for those businesses operating in Pennsylvania, and the unsettled nature of Pennsylvania's insurance law on the issues raised in the Eagles' Complaint, this is surely a case in which the Court, in exercising its discretion, "should give serious consideration to the fact that [federal courts] do not establish state law, but are limited to predicting it" and that this concern "is especially important in insurance coverage cases." *Summy*, 234 F.3d at 135. Where, as here, "the applicable state law

is uncertain or undetermined, district courts should be particularly reluctant to entertain declaratory judgment actions." *Id.* As in *Summy*, this action involves only issues of state insurance law, "no federal interests [are] promoted by deciding this case in the District Court," and Pennsylvania has a significant "interest in resolving its own law." *Id.* at 136. Moreover, this consideration "must not be given short shrift" merely because the insurers "perceive[s] some advantage in the federal forum." *Id.* After all, the insurer's desire "to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *Id.* Thus, this is a case where, "[i]n order to maintain the proper relationship between federal and state courts," this Court should "'step back' and allow the state courts the opportunity to resolve unsettled state law matters." *Summy*, 234 F.3d at 136.

## CONCLUSION

For the foregoing reasons, the Eagles respectfully request that this proceeding be remanded to the Court of Common Pleas of Philadelphia County, Pennsylvania.

Dated: September 22, 2021

Respectfully submitted,

**BLANK ROME LLP**
By: /s/ Charles A. Fitzpatrick IV
CHARLES A. FITZPATRICK IV (PA Bar 309113)
JAMES T. GILES (Pa Bar 4425
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone: 215.569.5608
Facsimile: 215.832.5608
Email: fitzpatrick-c@blankrome.com
Email: jgiles@blankrome.com
LINDA KORNFELD (pro hac vice)
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile: 424.239.3434
Email: lkornfeld@blankrome.com

JAMES R. MURRAY (pro hac vice)
1825 Eye Street, N.W.
Washington, D.C. 20006
Telephone: 202.420.2200
Facsimile: 202.420.2201
Email: jmurray@blankrome.com

LISA M. CAMPISI (pro hac vice)
1271 Avenue of the Americas
New York, New York 10020-1300
Telephone: (212) 885-5378
Facsimile: (212) 685-9926
Email: lcampisi@blankrome.com

Attorneys for Plaintiff Philadelphia Eagles Limited Partnership