**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| PHILADELPHIA EAGLES LIMITED PARTNERSHIP | : | |
| | : | |
| | : | Case No. 2:21-cv-01776-MMB |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| FACTORY MUTUAL INSURANCE COMPANY | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF PHILADELPHIA EAGLES LIMITED PARTNERSHIP'S
SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

Charles A. Fitzpatrick IV (PA Bar 309113)
James T. Giles (PA Bar 4425)
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone:  215.569.5608
Facsimile:  215.832.5608
Email: fitzpatrick-c@blankrome.com
Email: jgiles@blankrome.com

Linda Kornfeld (pro hac vice)
Blank Rome LLP
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:  424.239.3434
Email: lkornfeld@blankrome.com

James R. Murray (pro hac vice)
Blank Rome LLP
1825 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  202.420.2200
Facsimile:  202.420.2201
Email:  jmurray@blankrome.com

Lisa M. Campisi (pro hac vice)
Blank Rome LLP
1271 Avenue of the Americas
New York, New York 10020-1300
Telephone: (212) 885-5378
Facsimile: (212) 685-9926
Email: lcampisi@blankrome.com

*Attorneys for Plaintiff Philadelphia Eagles Limited Partnership*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ....................................................................................................................1

    I.       DIANOIA'S EATERY SUPPORTS REMAND TO STATE COURT...................3

          A.     The Third Circuit Confirmed that the Court Has Discretion Under
                the DJA to Remand this Case to State Court .................................................3

          B.     The Reifer Factors in Conjunction with the Guidance from Summy
                and Dianoia's Eatery Justify Remanding this Case to State Court .............5

CONCLUSION......................................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*401 Fourth St., Inc. v. Invs. Ins. Grp.*,
  879 A.2d 166 (2005) ................................................................................................12

*Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*,
  No. 20-2954 (3d Cir. Aug. 18, 2021) ..........................................................1, 3, 5, 8

*Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am.*,
  134 N.J. 1 (1993) ....................................................................................................11

*Reifer v. Westport Ins. Corp.*,
  751 F.3d 129 (3d Cir. 2014)....................................................................................5, 6

*Safe Auto Ins. Co. v. Berlin*,
  991 A.2d 327 (Pa. Super. Ct. 2010) ..........................................................................8

*State Auto Insurance Cos. v. Summy*,
  234 F.3d 131 (3d Cir. 2000).................................................................................5, 6, 9

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*,
  781 A.2d 1189 (Pa. 2001) .......................................................................................11

*Vale Vista Assocs., L.P. v. Cincinnati Cas. Co.*,
  No. CV 18-1064, 2019 WL 8989857 (W.D. Pa. Dec. 31, 2019)...............................8

## INTRODUCTION

In *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, No. 20-2954 (3d Cir. Aug. 18, 2021), the Third Circuit reiterated the key role the *Erie* doctrine plays in a district court's decision regarding whether to remand a lawsuit brought under the Declaratory Judgment Act ("DJA") back to state court to determine novel issues of state law. The Third Circuit emphasized that "the fact that district courts are limited to predicting—rather than establishing—state law requires serious consideration" in the court's exercise of discretion under the DJA and "is especially important in insurance coverage cases" involving such novel issues. Opinion (Ex. A to Eagles Supp. Mem.) at 8 (citations and internal marks omitted).[1] For this reason, "when applicable state law is uncertain or undetermined, district courts should be particularly reluctant to exercise DJA jurisdiction." *Id.* (citations and internal marks omitted). Because the present action involves multiple unsettled questions of state insurance law, the resolution of which will be profoundly important to policyholders throughout the Commonwealth of Pennsylvania, it presents a paradigmatic case for this Court's exercise of its "unique and substantial discretion" to remand this case to state court. *Id.* at 7 (citations and internal marks omitted).

In its supplemental brief, Factory Mutual gives short shrift to the fact that the *Erie* doctrine limits federal courts to predicting state law. According to Factory Mutual, it somehow follows that, because federal courts sometimes have no choice but to predict state contract law in diversity cases, federal courts remain the better forum to resolve insurance coverage cases even when discretion to decline federal jurisdiction exists under the DJA. That contention flies in the face of

---

[1] The Eagles attached the Opinion in *Dianoia's Eatery*, as issued by the Third Circuit, as Exhibit A to their Supplemental Memorandum, and cited to the page numbers of the Opinion, as set forth in Exhibit A, in that Memorandum. Although the Opinion has since been reported at 10 F.4th 192, we continue to cite to the page numbers in the Opinion at Exhibit A for ease of reference.

*DiAnoia's Eatery* and other Third Circuit caselaw holding that a district court can and should exercise its discretion to remand such cases to state court when the state law issues are unsettled, as they unquestionably are here. Indeed, if the Court were to accept Factory Mutual's approach, it would seem that no issue of state insurance law would ever be sufficiently unsettled to support a discretionary remand to state court under the DJA, a result that plainly cannot be squared with *Erie* and the law in this Circuit.

Factory Mutual also attempts to discount the critical importance of the third factor in the remand calculus set forth in *Reifer v. Westport Ins. Corp.*, 751 F.3d 129 (3d Cir. 2014) – regarding the public interest in having state law issues determined by state courts – but cannot reconcile its position with the Third Circuit's disposition of the appeals before it in *DiAnoia's Eatery*. Crucially, notwithstanding the finding that none of the *Reifer* factors, apart from the crucial third factor, favored remand in the three cases before it on appeal, the Third Circuit did not instruct the courts below to retain jurisdiction. Instead, the Third Circuit instructed these courts to further analyze the *Reifer* third factor and squarely address the state law issues determined to be unsettled. That disposition demonstrates that the third factor alone is sufficient to justify a remand, and calls for rejection of Factory Mutual's contention that the proper analysis is an arithmetic comparison of how many factors support or militate against remand. In short, the district courts' error was not, as Factory Mutual appears to suggest, in giving the third factor too much importance, but in failing to develop an adequate record regarding their analysis of this crucial factor. Therefore, contrary to Factory Mutual's arguments, this Court can easily avoid "mak[ing] the same mistake" (FM Supp. Mem. at 1) as the district court decisions reviewed in *DiAnoia's Eatery* by issuing an order "squarely addressing" the unsettled issues of state insurance law presented here supporting remand of the instant case to state court.

*DiAnoia's Eatery* underscores that Factory Mutual's efforts to discount this Court's discretion under the DJA to remand the instant lawsuit to state court are equally devoid of merit. The *DiAnoia's Eatery* Court unequivocally rejected the exact same arguments Factory Mutual has made in opposing remand here—that this Court was required to retain jurisdiction, and had no discretion to remand the case under the DJA, because (1) the Eagles' action seeking declaratory relief supposedly included a breach of contract claim "masquerading" as a declaratory judgment claim, (2) the declaratory judgment sought by the Eagles should be deemed a legal claim for damages because it could lead to the payment of money by Factory Mutual, and (3) the declaratory relief sought by the Eagles was retrospective rather than prospective and therefore supposedly should be considered a legal claim.  *See* FM Opp. 4-8.  In confirming that this Court has "unique and substantial discretion" to decline federal jurisdiction under the DJA in the circumstances presented here, *DiAnoia's Eatery* <u>expressly rejected</u> all three of those arguments.  For the reasons discussed below, as well as in its initial supplemental brief, this Court should exercise its broad discretion to order remand of this lawsuit.

I.    ***DIANOIA'S EATERY*** **SUPPORTS REMAND TO STATE COURT**

    A.    <u>**The Third Circuit Confirmed that the Court Has Discretion Under the DJA to Remand this Case to State Court**</u>

*DiAnoia's Eatery* expressly rejected the insurers' arguments, identical to Factory Mutual's arguments here, asserting that a district court lacks discretion to remand declaratory judgment actions like this one because they supposedly contain disguised breach of contract claims masquerading as declaratory judgment claims.  Factory Mutual's contrary assertion that it "did not make the same arguments addressed by the Third Circuit in *DiAnoia's Eatery*," FM Supp. Mem. at 9, is patently false.

The *DiAnoia's Eatery* Court rejected the arguments that the complaints at issue, though

3

"styled as declaratory judgment actions, did not *really* seek declaratory relief," ruling that the insureds' allegations concerning their "losses," "damages" and "expenses," and that they "were entitled to coverage—*i.e.*, money," were "inconsequential" and did not change the fact that the insureds only sought declaratory relief.  Opinion at 20, 22.  The Third Circuit therefore held that the district courts had discretion to remand the cases to state court under the DJA.  *Id.*  The Third Circuit further held that "[t]he possibility that a plaintiff could seek other, non-declaratory forms of relief remains irrelevant to the applicability of the DJA regardless of the plaintiff's motive for choosing to bring a declaratory judgment action."  *Id.* at 24.  And the Court also rejected the argument that the insureds' claims were really for breach of contract because the declaratory relief was directed to past conduct.  *Id.* at 25-26.  Factory Mutual made precisely the same arguments regarding this Court's purported lack of discretion in opposing remand of this case to state court. *See* FM Opp. at 4-8 ("Simply styling the Complaint as one seeking only declaratory judgment . . . is not controlling"; "it is possible for an action claiming to seek declaratory relief to be a breach of contract claim 'masquerading' as a declaratory judgment action"; "courts cannot always accept a party's pleading at face value"; "the Complaint alleges . . . that Plaintiff has suffered 'multiple millions of dollars in loss' as a result of COVID-19"; "The alleged wrongful conduct has already happened and the losses have already been incurred"; "Plaintiff's claim is tied to a determination of whether FM's past conduct was proper").

In an effort to defend its contrary position, Factory Mutual advocates a single illusory distinction between its own arguments and those expressly rejected by the Third Circuit.  Factory Mutual now characterizes its argument that this Court lacks discretion to remand as being based on the premise that the Eagles' claim, although pled as a claim for declaratory relief only, was really <u>both</u> a declaratory judgment claim <u>and</u> a disguised breach of contract claim masquerading as a declaratory judgment claim, an argument that Factory Mutual contends is different than the

argument that it claims the insurers made in *DiAnoia's Eatery* that the complaint contained <u>only</u> a disguised breach of contract claim masquerading as a declaratory judgment claim.  FM Supp. at 9; *see also* FM Opp. at 4-5.   But the Third Circuit expressly rejected this argument as well, unequivocally stating that "[i]n rejecting the argument that [plaintiffs'] complaints seek only legal relief, we also reject [insurers'] argument in the alternative that [plaintiffs] seek both declaratory relief and legal relief."  Opinion at 22 n. 9.   In short, Factory Mutual's repackaging of the identical arguments rejected by the Third Circuit is unavailing, because the crucial fact is that the Eagles' Complaint, by its plain terms, only seeks declaratory relief.  Under *DiAnoia's Eatery,* this Court therefore unquestionably has discretion under the DJA to remand the case to state court.

**B.**     **The *Reifer* Factors in Conjunction with the Guidance from *Summy* and *Dianoia's Eatery* Justify Remanding this Case to State Court**

       **1.**     **The *Summy* Factors**

Although the Third Circuit's decision in *State Auto Insurance Cos. v. Summy*, 234 F.3d 131 (3d Cir. 2000), has always been controlling in this case, the *DiAnoia's Eatery* decision gives *Summy* even greater salience, which reconfirms that remand should be granted here.   *DiAnoia's Eatery* held that the *Reifer* factors are "not exhaustive" and emphasized the importance of the "additional guidance" provided in *Summy* as particularly "applicable in the insurance context." Opinion at 7-8.

In its prior briefing, Factory Mutual did not even mention *Summy*.   In its latest brief, Factory Mutual argues that *Summy* supposedly is applicable only in cases involving parallel state proceedings between the same parties.  *See* FM Supp. at 11.  Factory Mutual's reading of *Summy* makes no sense.  None of the three cases on appeal in *DiAnoia's Eatery* involved parallel state proceedings.  If the *DiAnoia's Eatery* Court had regarded parallel state proceedings as "the most critical part" of *Summy*, as Factory Mutual claims (*id.*), that Court would not have accorded *Summy*

central importance in its analysis of the three cases before it.  Instead, the *DiAnoia's Eatery* Court made clear that the guidance provided by *Summy* is just as relevant when no parallel state proceeding is involved.

The *Summy* Court instructed that "district courts should give serious consideration to the fact that they do not establish state law, but are limited to predicting it.  This is especially important in insurance coverage cases."  234 F.3d at 135.  The *Summy* Court further instructed that, "where the applicable state law is uncertain or undetermined, district courts should be particularly reluctant to entertain declaratory judgment actions."  *Id.*  And the Court emphasized the fact that "no federal interests were promoted by deciding this case in the District Court," while the state had a significant "interest in resolving its own law" that "must not be given short shrift" merely because an insurer defendant "perceive[s] some advantage in the federal forum," remains equally true regardless of the presence or absence of a parallel state proceeding.  In short, *Summy*'s core guidance – that "[i]n order to maintain the proper relationship between federal and state courts, it is important that district courts 'step back' and allow the state courts the opportunity to resolve unsettled state law matters," *id.* at 136, applies regardless of whether there is a parallel state action. As discussed in further detail below, the important unsettled questions of state insurance law presented by the Eagles' Complaint dictate that this case should be remanded for resolution by the Pennsylvania state courts.

## 2. Clarification of the *Reifer* Factors

Factory Mutual disputes, albeit without any explanation or analysis, the crucial importance in the remand calculus of the third *Reifer* factor – the public interest in whether the declaratory judgment action is resolved in state or federal court – which was reconfirmed in *DiAnoia's Eatery*. *See* FM Supp. Mem. at 12.  As Factory Mutual acknowledges elsewhere in its supplemental brief (*id.* at 7-8), the *DiAnoia's Eatery* Court's disposition of the remand question rested on the

6

determination that the district courts did not "squarely address" the novelty of the state law issues. Opinion at 31-32.  Moreover, the Third Circuit recognized that a district court could reasonably conclude that whether a policyholder suffered physical loss or damage from a government order and whether the policyholder met the requirements for civil authority coverage <u>were</u> novel and unsettled – and that these conclusions alone would be sufficient to justify the district court's decision to remand the cases to state court, despite finding that none of the other *Reifer* factors militated in favor of remand to state court.  *See* Opinion at 38-40.  Unless the third *Reifer* factor were crucial to the analysis, the Third Circuit would have simply instructed the district courts to retain jurisdiction, not to determine, in the exercise of their discretion, whether to remand the cases to state court based on their determination as to the novelty of the state law issues presented.

Equally devoid of merit is Factory Mutual's claim that, because federal courts know how to resolve issues of state contract law or state public policy, the third *Reifer* factor somehow fails to support remand here.  *See* FM Supp. Mem. at 11-15.  If it followed from the fact that federal courts sometimes predict state law in diversity cases, when they have no discretion to remand, that district courts should therefore retain federal jurisdiction in DJA cases where they do have such discretion, then discretionary remand under the DJA would be a dead letter – and the outcome of cases such as *Reifer*, *Summy* and *DiAnoia's Eatery,* in which the Third Circuit, respectively, affirmed a district court's decision to remand, reversed a district court's failure to remand, and provided district courts with a second opportunity to decide whether to remand, would have been different.

Factory Mutual also ignores the fact that the *Erie* doctrine mandates that federal courts "do not establish state law, but are limited to predicting it," which "is especially important in insurance coverage cases." *Summy*, 234 F.3d at 135.  Thus, where, as here, the state law is unsettled, federal

courts have a responsibility to "step back" and allow the state courts to resolve these issues. *Id.* at 136. Identifying an issue as one involving the application of contract law or determination based on public policy, as Factory Mutual does here, begs rather than answers the question whether a state or federal forum is the better one to resolve the particular issue where, as here, the district court is accorded discretion under the DJA to make that determination. The key question is whether the state law issues are unsettled, and the *DiAnoia's Eatery* Court took pains to emphasize that it was not "suggest[ing] that there can be no novel issue of policy interpretation under [state] law" in the cases at issue on appeal. Opinion at 33-34.

In the instant case, and as other district courts have recognized, there are novel and unsettled questions presented regarding whether the disputed policy provisions afford coverage for a once-in-a-century pandemic, which are unique, and pose state law issues with "far-reaching consequences beyond a single covered premise," leading to a "compelling public interest in having these issues adjudicated by the Commonwealth courts when it has discretion to decline jurisdiction." *Jul-Bur Assocs., Inc.*, 2021 WL 515484, at *4 (E.D. Pa. Feb. 11, 2021).

### 3. Because this Case Presents Novel Issues of State Law, *Dianoia's Eatery* Mandates Remanding this Case to State Court

Factory Mutual offers nothing of substance in response to the Eagles' showing regarding the novel state law issues presented in the instant case. Tellingly, Factory Mutual does not cite a single state court decision regarding whether Factory Mutual's "contamination" exclusion applies beyond the scope of traditional environmental pollutants in light of Pennsylvania's adoption of the "reasonable expectations" doctrine. *See, e.g.*, *Safe Auto Ins. Co. v. Berlin*, 991 A.2d 327, 331-32 (Pa. Super. Ct. 2010). While some state courts have held that "a pollutant exclusion should be limited to traditional 'pollution' of the environment[,]" Pennsylvania "has not explicitly addressed these questions." *Vale Vista Assocs., L.P. v. Cincinnati Cas. Co.*, No. CV 18-1064, 2019 WL

8989857, at *10 (W.D. Pa. Dec. 31, 2019), *report and recommendation adopted in relevant part, rejected in part,* 442 F. Supp. 3d 896 (W.D. Pa. 2020).

Factory Mutual seeks to find support for its position in *Tumi, Inc. v. Factory Mut. Ins. Co.*, No. CV2102752KMJBC, 2021 WL 4170051 (D.N.J. Sept. 14, 2021). *See* FM Supp. Mem. at 13. But *Tumi* did not analyze the novelty of the issue presented here: whether a "contamination" exclusion is transformed into a "pandemic" or "communicable disease" exclusion where FM subtly inserted the term "virus" into the policy's definition of "contamination," and did not also insert the terms "communicable disease" nor any of the words used by FM in its separate "communicable disease" definition, all in direct contravention of the reasonable expectations of the policyholder and related provisions of the policy.  Instead, the court in *Tumi* analyzed the novelty of <u>different</u> issues presented by that case, and did so under New Jersey, not Pennsylvania law.  The court concluded that <u>those</u> issues were not novel because "New Jersey State Courts have begun to rule on these matters, providing important guidance to the federal courts," something that is simply not true with respect to Pennsylvania courts regarding the "contamination" exclusion contained in the Factory Mutual policy here at issue.

The Third Circuit's decision in *Summy*, which addressed whether a traditional pollution exclusion could properly be read to apply to losses caused by lead contamination, confirms the novelty of the issue presented here.  *Summy*, 234 F.3d at 131-32.  Accordingly,  a Pennsylvania state court is the best forum to first address the very unique issues associated with Factory Mutual's attempted application of its "contamination" exclusion to a "communicable disease"/pandemic event like that here, contrary to the reasonable expectations of Factory Mutual's Pennsylvania-based policyholders (like the Eagles) given Factory Mutual's unique policy language.  *See Scottsdale Ins. Co. v. Broaddus*, 2009 WL 349697 (E.D. Pa. Feb. 11, 2009) (district court declined

9

federal jurisdiction under the DJA, given that the parties' "contrary arguments" regarding interpretation of a clause in the policy "eloquently underscores that state law governing the clause is far from settled," and thus the district court "may not resolve open questions of Pennsylvania law so critical to this case simply because [insurer] urges me to do so"); *see also Sherer v. Federated Mutual Insurance Company*, 2019 WL 5423014, at *4 (E.D. Pa. Oct 23, 2019) (even though there was a federal district court decision regarding the issue of state insurance law, the absence of a state appellate court decision directly addressing the issue left the issue sufficiently unsettled to justify remand of the declaratory judgment action to state court); *Lambert v. State Farm Mutual Automobile Insurance Company*, 417 F.Supp.3d 629 (E.D. Pa. 2019) (remanding declaratory judgment action to state court where "Pennsylvania courts have not reached a well-settled conclusion" regarding the specific issue of state insurance law presented by the case); *Richard Purse, D.O. v. Darwin Select Ins. Co.*, 2013 WL 3230808 (E.D. Pa. June 26, 2013) (remanding declaratory judgment action to state court where the state insurance law issue "does not appear to be squarely answered by any outstanding Pennsylvania authority").

Regarding the related issue of regulatory estoppel, Factory Mutual again points to no Pennsylvania state law on this issue.  A Pennsylvania court is in the best position to determine the novel question of whether Factory Mutual should be held to its representations to state regulators when it altered the language of its "contamination" exclusion that at the time was a clear-cut pollution exclusion (it merely stated "contamination including but not limited to the presence of pollution or hazardous material"), and told regulators that the language was merely "***editorially revised***" and that the new language (which included the insertion of the term "virus") resulted in "***[n]o coverage change***."  Exhibit B to Eagles Supp. Mem. at 9, 78 (emphasis added).  Under the formulation of the regulatory estoppel doctrine adopted by the New Jersey Supreme Court, Factory

Mutual would be bound by the narrow interpretation of the "contamination" exclusion that it previously represented to regulatory authorities, and estopped from enforcing the broader, coverage limiting interpretation that it now asserts.  *See Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am.*, 134 N.J. 1 (1993).  And the Eagles contend the same result should obtain under the Pennsylvania Supreme Court's decision in *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193 (Pa. 2001), which held that regulatory estoppel is a viable doctrine but did not have occasion to fully define the doctrine's parameters.  *See* Eagles Supp. Mem. at 10.

However, no Pennsylvania court has yet considered the application of this doctrine in the present context.  Factory Mutual has no substantive response to the Eagles' showing that this is a novel issue under Pennsylvania law; it merely reiterates its mantra that federal courts can make rulings with respect to state law issues, including those involving public policy.[2]  But again, the question is not whether a federal court has the ability to rule, it is which forum is superior from a prudential standpoint:  a federal court that can only predict state law, or a state court that can develop the state's law regarding a novel issue.  Here, this Court should allow the Pennsylvania

---

[2] Factory Mutual argues that the Eagles should have discussed this unsettled issue of state law in its earlier briefing on the remand motion, and that therefore the Court should "ignore[]" this issue now.  FM Supp. at 13.  However, the evidence supporting this argument was not uncovered until weeks after the initial round of briefing regarding the remand motion concluded on June 1, 2021.  The evidence was only uncovered as a result of a time-consuming 50-state FOIA request that the Eagles conducted in advance of being able to conduct formal discovery of Factory Mutual's files – because Factory Mutual has prevented formal discovery from proceeding while it has tied up this case with initial procedural issues.  Moreover, discussion of this topic in the present brief is well within the terms of the parties' stipulation, which merely states that the parties are to "address[] how the Third Circuit's ruling in the Consolidated Appeals may impact this Court's analysis."  Because the Third Circuit's ruling accords critical importance to whether there are unsettled issues of state law, a discussion of all unsettled state law issues presented by this case was entirely appropriate.  In any event, because Factory Mutual availed itself of the opportunity provided by the same stipulation to respond to this argument, it cannot have been prejudiced by the Eagles' discussion of the issue in its Supplemental Memorandum.

courts to determine the scope of regulatory estoppel under Pennsylvania law, rather than making a prediction as to how Pennsylvania law would apply.

Factory Mutual has little to say about the third novel issue, Factory Mutual's employment of policy language extending coverage to the "risks of" physical loss or damage.  As alleged in the Complaint, use of the words "risks of" in the insuring agreement means that the Policy covers *risks* of, including **threats** of, physical loss or damage to property.  Complaint ¶¶ 38-40, 66-71, 83-86. Factory Mutual chose to include this language even though the Insurance Services Office and other insurers abandoned this language and replaced it with allegedly more restrictive language starting in at least 2013.  While there is Pennsylvania Supreme Court precedent supporting the Eagles' interpretation of the "risks of" policy language in other contexts (*401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 174 (2005)), there is as yet no decision under Pennsylvania law either applying this precedent or interpreting this "risks of" policy language in the Coronavirus context.  Factory Mutual points to its earlier briefing in which it argues that *Cleland Simpson Co. v. Firemen's Insurance Co. of Newark, N.J.*, 140 A.2d 41 (Pa. 1958), is more apposite than the far more recent decision of the Pennsylvania Supreme Court in *401 Fourth St., Inc.*  In so doing, Factory Mutual fully **underscores** the unsettled nature of Pennsylvania state law on this issue, and further demonstrates that a Pennsylvania state court should be given the opportunity to determine this novel question.

## CONCLUSION

For the foregoing reasons, the Eagles respectfully request that this proceeding be remanded to the Court of Common Pleas of Philadelphia County, Pennsylvania.

Dated:  October 20, 2021                              Respectfully submitted,

                                                      **BLANK ROME LLP**
                                                      By: /s/ Charles A. Fitzpatrick IV
                                                      CHARLES A. FITZPATRICK IV (PA Bar
                                                      309113)
                                                      JAMES T. GILES (Pa Bar 4425
                                                      One Logan Square
                                                      130 North 18th Street
                                                      Philadelphia, PA 19103
                                                      Telephone:  215.569.5608
                                                      Facsimile:  215.832.5608
                                                      Email: fitzpatrick-c@blankrome.com
                                                      Email: jgiles@blankrome.com
                                                      LINDA KORNFELD (pro hac vice)
                                                      2029 Century Park East, 6th Floor
                                                      Los Angeles, CA 90067
                                                      Telephone:  424.239.3400
                                                      Facsimile:  424.239.3434
                                                      Email: lkornfeld@blankrome.com

                                                      JAMES R. MURRAY (pro hac vice)
                                                      1825 Eye Street, N.W.
                                                      Washington, D.C. 20006
                                                      Telephone:  202.420.2200
                                                      Facsimile:  202.420.2201
                                                      Email:  jmurray@blankrome.com

                                                      LISA M. CAMPISI (pro hac vice)
                                                      1271 Avenue of the Americas
                                                      New York, New York 10020-1300
                                                      Telephone: (212) 885-5378
                                                      Facsimile: (212) 685-9926
                                                      Email: lcampisi@blankrome.com

                                                      Attorneys for Plaintiff Philadelphia Eagles
                                                      Limited Partnership

## <u>CERTIFICATE OF SERVICE</u>

I, Charles A. Fitzpatrick IV, Esq. hereby certify that on this 20th day of October 2021, I caused a true and accurate copy of the foregoing to be served via the Court's ECF system upon all counsel of record.

/s/ Charles A. Fitzpatrick IV