# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILADELPHIA EAGLES LIMITED PARTNERSHIP | : : : | |
| Plaintiff, | : : | Case No. 2:21-cv-01776-MMB |
| v. | : : | |
| FACTORY MUTUAL INSURANCE COMPANY | : : : | |
| Defendant. | : : | |

## PLAINTIFF PHILADELPHIA EAGLES LIMITED PARTNERSHIP'S POST-ARGUMENT MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Charles A. Fitzpatrick IV (PA Bar 309113)
James T. Giles (PA Bar 4425)
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone:  215.569.5608
Facsimile:  215.832.5608
Email: fitzpatrick-c@blankrome.com
Email: james.giles@blankrome.com

James R. Murray (pro hac vice)
Helen K. Michael (pro hac vice)
Blank Rome LLP
1825 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  202.420.2200
Facsimile:  202.420.2201
Email:  james.murray@blankrome.com
Email:  helen.michael@blankrome.com

Linda Kornfeld (pro hac vice)
Blank Rome LLP
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:  424.239.3434
Email: linda.kornfeld@blankrome.com

Lisa M. Campisi (pro hac vice)
Blank Rome LLP
1271 Avenue of the Americas
New York, New York 10020-1300
Telephone: (212) 885-5378
Facsimile: (212) 685-9926
Email: lisa.campisi@blankrome.com

*Attorneys for Plaintiff Philadelphia Eagles Limited Partnership*

## **<u>TABLE OF CONTENTS</u>**

**Page**

DISCUSSION ............................................................................................................1

    I.      The Question of "Trigger." ..............................................................1

    II.     Questions of Regulatory Estoppel .................................................3

    III.    FM's Contamination Exclusion ......................................................5

CONCLUSION ..........................................................................................................6

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*401 Fourth St., Inc. v. Invs. Ins. Grp.*,
879 A.2d 166 (Pa. 2005)..........................................................................................2

*Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*,
38 F.3d 1303 (3d Cir. 1994).....................................................................................6

*Brown's Gym, Inc. v. The Cincinnati Ins. Co.*,
2021 WL 3036545 (Pa. Com. Pl. July 13, 2021).....................................................2

*Cleland Simpson Co. v. Firemen's Insurance Co. of Newark, N.J.*,
140 A.2d 41 (Pa. 1958).............................................................................................2

*MacMiles, LLC v. Erie Ins. Exchange*,
2021 WL 3079941 (Pa. Com. Pl. May 25, 2021).....................................................2

*Morton Int'l. Inc. v. Gen'l Accid. Ins. Co.*,
629 A.2d 831 (N.J. 1993).......................................................................................3, 4

*Reifer v. Westport Ins. Corp.*,
751 F.3d 129 (3d Cir. 2014)..................................................................................1, 4

*Ridley Park Fitness, LLC v. Philadelphia Indem. Ins. Co.*,
2020 WL 8613467 (Pa. Com. Pl. Aug. 31, 2020)....................................................2

*State Auto Ins. Companies v. Summy*,
234 F.3d 131 (3d Cir. 2000)..................................................................................1, 6

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*,
781 A.2d 1189 (Pa. 2001).........................................................................................3

*SWB Yankees, LLC v. CNA Financial Corp.*,
2021 WL 3468995 (Pa. Com. Pl. Aug. 04, 2021)....................................................2

*Taps & Bourbon on Terrace, LLC v. Underwriters at Lloyds London*,
2020 WL 6380449 (Pa. Com. Pl. Oct. 26, 2020)....................................................2

*Ungarean, DMD v. CNA*,
2021 WL 1164836 (Pa. Com. Pl. Mar. 25, 2021)....................................................2

*Vale Vista Assocs., L.P. v. Cincinnati Cas. Co.*,
No. CV 18-1064, 2019 WL 8989857 (W.D. Pa. Dec. 31, 2019)..............................6

**DISCUSSION**

In *DiAnoia's Eatery*, 10 F.4th 192 (3d Cir. 2021), the Third Circuit confirmed that "when applicable state law is uncertain or undetermined, district courts should be particularly reluctant to exercise DJA jurisdiction." *Id.* at 197; *see State Auto Ins. Companies v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000) ("In order to maintain the proper relationship between federal and state courts, it is important that district courts 'step back' and allow the state courts the opportunity to resolve unsettled state law matters.").

After providing a "non-exhaustive" list of factors to consider in *Reifer v. Westport Ins. Corp.*, 751 F.3d 129 (3d Cir. 2014), and "additional guidance" in *Summy*, the Third Circuit underscored in *DiAnoia's Eatery* that whether a case presents novel or unsettled state law issues (whether under the rubric of the third factor in *Reifer* or as an additional factor in *Summy*) is the *sine qua non* of the Court's remand decision. The instant case presents at least the following novel or unsettled state law issues, each of which independently justifies remand.

**I.      The Question of "Trigger."**

The *DiAnoia's Eatery* Court recognized that a district court could reasonably conclude that the "trigger" question—*i.e.*, whether the claim at issue involved "physical loss or damage" —was a novel or unsettled issue that alone would suffice to justify the district court's decision to remand the cases to state court. 10 F.4th at 207, 210-11. The question whether coronavirus present at a covered location (whether in airspace or otherwise) may involve "physical loss or damage" sufficient to trigger coverage is a novel or unsettled issue: before the pandemic no Pennsylvania state appellate court addressed the meaning and scope of the terms "physical loss or damage," and since the pandemic, has been addressed by state trial courts with conflicting results.[1]

---

[1] Eleven Pennsylvania state trial courts have addressed whether the presence of coronavirus at an insured location may cause direct physical loss of or damage to property; four have ruled in favor

Here, the "trigger" question is even more novel or unsettled, because FM's policy includes the phrase "risks of" before "direct physical loss or damage."  The undefined term "risks" in FM's policy, is defined by many dictionaries to mean "possibility."[2]  As a result, to trigger coverage, the Eagles need not prove the actual presence of coronavirus at its premises.  Instead, under the policy's plain terms, the Eagles need only allege the possibility/threat of its presence were the Eagles to have continued business as usual in 2020.  The parties have cited competing Pennsylvania Supreme Court precedent regarding this "risks of" policy language (*401 Fourth St., Inc. v. Invs. Ins. Grp*., 879 A.2d 166, 174 (Pa. 2005) vs. *Cleland Simpson Co. v. Firemen's Insurance Co. of Newark, N.J.*, 140 A.2d 41 (Pa. 1958)), and there is as yet no decision under

---

of the insured, with two more agreeing with the insured that questions of fact as to whether there was loss or damage are not properly resolved at the pleading stage.  *See, e.g., Ridley Park Fitness, LLC v. Philadelphia Indem. Ins. Co.*, 2020 WL 8613467, at *1, n.1 (Pa. Com. Pl. Aug. 31, 2020) (where insurer asserted there was no "direct physical loss," it would be "premature" to "resolve the factual determinations put forth by defendant to dismiss plaintiff's claims") (Glazer, J.); *Taps & Bourbon on Terrace, LLC v. Underwriters at Lloyds London*, 2020 WL 6380449, at *1 n.1 (Pa. Com. Pl. Oct. 26, 2020) (same) (Glazer, J.); *Ungarean, DMD v. CNA*, 2021 WL 1164836, at *8 (Pa. Com. Pl. Mar. 25, 2021) (policyholder motion for summary judgment granted, holding that it was "reasonable to interpret the phrase 'direct physical loss of . . . property' to encompass the loss of use of Plaintiff's property due to the spread of COVID-19 absent any actual damage to property"); *MacMiles, LLC v. Erie Ins. Exchange*, 2021 WL 3079941, at *8 (Pa. Com. Pl. May 25, 2021) (same); *Brown's Gym, Inc. v. The Cincinnati Ins. Co.*, 2021 WL 3036545, at *20 (Pa. Com. Pl. July 13, 2021) (policyholder had sufficiently alleged "physical loss or damage" to property when it averred that the "continuous presence of the coronavirus" had rendered its property unusable, unsafe, inaccessible, and unfit for its intended use); *SWB Yankees, LLC v. CNA Financial Corp.*, 2021 WL 3468995, at *2 (Pa. Com. Pl. Aug. 04, 2021) (policyholder had sufficiently alleged "physical loss or damage" to property when it averred that the "continuous presence of the coronavirus" had "rendered [the property] unsafe and unfit for its intended use").

[2] *See, e.g., Risk*, Merriam-Webster, www.merriam-webster.com/dictionary/risk ("possibility of loss or injury"); *Risk*, Collins Dictionary, www.collinsdictionary.com/us/dictionary/english/risk (synonymous with "danger, chance, threat, possibility"); *Risk*, Cambridge English Dictionary, https://dictionary.cambridge.org/us/dictionary/english/risk ("the possibility of something bad happening"); *Risk*, The American Heritage Dictionary of the English Language,  https://www.ahdictionary.com/word/search.html?q=risk ("The possibility of suffering harm or loss; danger").

Pennsylvania law either applying this precedent or interpreting this "risks of" policy language in the Coronavirus context.  This competing case law, along with the *DiAnoia's Eatery's* ruling that the "trigger" question could support remand, warrants remand, here.

## II.    Questions of Regulatory Estoppel

This case also presents the novel question whether FM should be held to its representations to state regulators when it altered the language of its "contamination" exclusion, which at the time was a clear-cut pollution exclusion (it merely stated "contamination including but not limited to the presence of pollution or hazardous material"), and told regulators that the language was merely "***editorially revised***" and that the new language (which included the insertion of the term "virus") resulted in "***[n]o coverage change***."  *See* Eagles' Suppl. Remand Memo at 9.[3]  Now, FM argues that its exclusion unambiguously applies to ***much more*** than "pollution or hazardous material," and instead broadly excludes pandemic losses.  This new argument directly conflicts with what FM told state regulators in 2006, and therefore FM is estopped from seeking to invoke its contamination exclusion (even if it were unambiguously applicable on its face—which it is not). *See Morton Int'l. Inc. v. Gen'l Accid. Ins. Co.*, 629 A.2d 831, 874-75 (N.J. 1993).

Remand to state court is especially warranted as to regulatory estoppel due to the importance of the state courts' policing function regarding insurer representations to insurance regulators.  In fact, the doctrine (which has been recognized by the Pennsylvania Supreme Court in *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193 (Pa. 2001)) serves a crucial consumer protection purpose of deterring insurers from deceiving policyholders through

---

[3] We note that we attached an Illinois version of the 2006 regulatory filing to prior briefing, based upon the limited documents that we were able to locate without the benefit of a formal subpoena during discovery.  However, the Illinois document confirms that the same language was filed by FM with state insurance regulators, nationwide.  *See* Exhibit B to Eagles Supp. Mem.

misrepresentations to state regulators about the impact of policy language changes. The doctrine is grounded in the recognition that the regulatory review process for obtaining approval to sell standardized insurance policies in each state provides the only real opportunity for negotiation as to new exclusionary provisions. *See Morton,* 629 A.2d at 851-52. Indeed, once regulatory approval is obtained, policies utilizing approved policy language are sold to a multitude of policyholders who "*rarely see[] the policy form until after the premium has been paid.*" *Id.* at 852 (emphasis added). State courts thus play a vital role in making sure that insurers do not unfairly profit from their misrepresentations to state regulators. Indeed, the state court supervisory role in policing insurer dealings with state insurance regulators through the regulatory estoppel doctrine is analogous to the state courts' supervision of attorney conduct, which the Third Circuit held in *Reifer* presented an issue peculiarly within the ambit of state courts and therefore was "best decided in the Pennsylvania court system." *Reifer*, 751 F.3d at 149.

The Eagles did not locate the evidence supporting this regulatory estoppel claim until many months after it filed its complaint, but intend to file a motion to amend this week to add this claim to its pleadings. In its proposed amended complaint, the Eagles also will include new allegations that further evidence the conflict between what FM represented about how its coverage worked before the pandemic, and its application post-pandemic. For example, the Eagles will allege that as originally introduced in 2010, FM stated in its "communicable disease" coverage that "communicable disease" can result in "physical damage" as that phrase is used in FM's "trigger" provision, and that "cleaning costs" related to such "damage" were "repair" costs under the policy form. Over time, as will be alleged in the Eagles' amended complaint, FM modified the language in its "communicable disease" coverage, but in doing so expressly stated to insurance regulators that its changes were grammatical and editorial, and resulted in an expansion (not a reduction) in

coverage. FM now argues to the contrary (that communicable disease could never constitute physical damage), and did so most recently at the November 17, 2021, hearing at which FM's counsel stated "the Factory Mutual policy only insures direct physical – damage. We don't believe that the presence of a virus causes – damages property . . ." Tr. at 24:23-25.[4] In sum, this case involves conflicting positions by FM (before and after the pandemic) that properly should be resolved in state court.

## III.    FM's Contamination Exclusion

This matter also involves novel or unsettled issues pertaining to FM's "contamination exclusion." Based upon FM's 2006 representations about its exclusion (discussed above), a regulator, or an insured, reasonably would expect that the use of the word "virus" in the exclusion applies narrowly, limited to the context of a traditional environmental pollution event. Such a reasonable conclusion about the narrow scope of the term "virus" as used in the exclusion is further confirmed by the fact that FM also included in its policy a definition for "communicable disease." FM, however, did not include the term "communicable disease," nor any of the words contained

---

[4] These examples of conflicting positions are in addition to FM's argument pre-pandemic in a New Mexico motion *in limine*, that property coverage can be triggered if an invisible substance renders property "unfit for its intended use." In that context, FM cited to the fact that "numerous courts have concluded that the loss of functionality or reliability under similar circumstances constitute physical loss or damage." Tr. at 39:6-8. As the Court recognized at the November 17, 2021, hearing, FM's argument in the New Mexico case appeared "somewhat inconsistent with the argument" FM is making in this case. Tr. at 39:9-10. As the Eagles have alleged and will seek to prove at trial, the impact on the functionality and utility of its stadium in 2020 due to the threats associated with the pandemic is enough to constitute covered "physical loss or damage" under FM's policy. Just as FM agreed prior to the pandemic, impact on functionality or utility of a covered premise is the test for triggering coverage: it is not necessary to prove visibly identifiable damage. FM again seemed to agree with this conclusion at the November 17 hearing by arguing that coverage could be triggered when the "clean room" was rendered "unfit." Tr. at 40:1. And, in any event, for purposes of these remand proceedings, the meaning and application of the phrase "direct physical loss or damage" is a novel or unsettled issue about which the Pennsylvania appellate courts have not yet provided guidance; thereby, warranting remand.

in the communicable disease definition, within in its "contamination" definition.  So, whatever FM meant when it defined "contamination" in its policy, it cannot reasonably be read to include a communicable disease-related virus like that at issue here.[5]  There certainly is no controlling state law on the breadth of FM's exclusion; indeed, FM has not cited a single Pennsylvania state court decision regarding whether its exclusion applies beyond the scope of traditional environmental pollutants in light of Pennsylvania's adoption of the "reasonable expectations" doctrine.  *See Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir. 1994) (reasonable expectations can prevail over the express terms of a contract, even if the terms of that policy are clear and unambiguous).  While some state courts have held that "a pollutant exclusion should be limited to traditional 'pollution' of the environment[,]" Pennsylvania "has not explicitly addressed these questions." *Vale Vista Assocs., L.P. v. Cincinnati Cas. Co.*, No. CV 18-1064, 2019 WL 8989857, at *10 (W.D. Pa. Dec. 31, 2019).  Indeed, the exclusion issue here is similar to the pollution exclusion that the Third Circuit found was sufficiently novel or unsettled to require resolution by a state court and abstention by the federal court in *Summy*.

## CONCLUSION

For the foregoing reasons, the Eagles respectfully request that this proceeding be remanded to the Court of Common Pleas of Philadelphia County, Pennsylvania.

---

[5]At the November 17 hearing, the Court asked counsel about its rulings in *Chester County Sports v. Cincinnati Specialty*.  Counsel incorrectly noted that the case involved an ISO virus exclusion. However, those rulings remain inapposite because the Court was not asked to consider the Third Circuit's rulings in both *Port Authority* and *Hardinger* that coverage **could be** triggered where there is a threatened release of sufficient quantities of a substance dangerous to human health that affects covered property (asbestos in the air in *Port Authority*) and (E-coli in water *Hardinger*) that is sufficient to impair the **function or utility** of the covered premises.  In neither case, did the Third Circuit rule that uninhabitability was required to trigger coverage, and both were required to be decided based on a fully developed factual record after discovery (not on motion to dismiss).

Dated:  December 1, 2021                      Respectfully submitted,

**BLANK ROME LLP**
By: /s/ Charles A. Fitzpatrick IV
CHARLES A. FITZPATRICK IV (PA Bar
309113)
JAMES T. GILES (Pa Bar 4425
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone:  215.569.5608
Facsimile:  215.832.5608
Email: fitzpatrick-c@blankrome.com
Email: james.giles@blankrome.com

LINDA KORNFELD (pro hac vice)
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:  424.239.3434
Email: linda.kornfeld@blankrome.com

JAMES R. MURRAY (pro hac vice)
Helen K. Michael (pro hac vice)
1825 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  202.420.2200
Facsimile:  202.420.2201
Email:  james.murray@blankrome.com
Email:  helen.michael@blankrome.com

LISA M. CAMPISI (pro hac vice)
1271 Avenue of the Americas
New York, New York 10020-1300
Telephone: (212) 885-5378
Facsimile: (212) 685-9926
Email: lisa.campisi@blankrome.com

Attorneys for Plaintiff Philadelphia Eagles
Limited Partnership

## CERTIFICATE OF SERVICE

I, Charles A. Fitzpatrick IV, Esq. hereby certify that on this 1st day of December 2021, I caused a true and accurate copy of the foregoing to be served via the Court's ECF system upon all counsel of record.

/s/ Charles A. Fitzpatrick IV