IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILADELPHIA EAGLES LIMITED PARTNERSHIP | : : : : |
| Plaintiff, | : Case No. 2:21-cv-01776-MMB : |
| v. | : : |
| FACTORY MUTUAL INSURANCE COMPANY | : : |
| Defendant. | : : : |

**MEMORANDUM IN SUPPORT OF PLAINTIFF PHILADELPHIA EAGLES LIMITED PARTNERSHIP'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

The Eagles seek to amend the complaint due to the dynamic and ever-changing landscape regarding insurance coverage for this pandemic, and evolving expert opinions, case law and coverage arguments. The Eagles' amendments result in large part from information that they have obtained since the Eagles filed the complaint in this Action on March 11, 2021 and especially in the following particular areas.

First, the Proposed First Amended Complaint seeks a declaratory judgment regarding the application of doctrine of regulatory estoppel. Since the filing of the complaint, the Eagles located through a fifty-state Freedom of Information Act search documents evidencing a conflict between what FM represented to insurance regulators before this pandemic regarding the nature of its coverage and what it has represented to the Eagles regarding insurance coverage for this matter. For example, the Eagles will allege that in 2006 FM made representations to state regulators when it added language to its "contamination" exclusion, which at the time was a clear-cut pollution exclusion (it merely stated "contamination including but not limited to the presence of pollution or hazardous material"). At that time, FM stated that the language was merely "*editorially revised*" and that the new language (which included the insertion of the term "virus") resulted in "*[n]o*

*coverage change*." Proposed First Amended Complaint at ¶¶ 100 – 104; 228.  Now, FM argues that its exclusion unambiguously applies to much more than "pollution or hazardous material," and instead broadly excludes pandemic losses.

Second, the proposed amended complaint includes new allegations that as originally introduced in 2010, FM stated in its "communicable disease" Additional Coverages that "communicable disease" can result in "physical damage," and that "cleaning costs" related to such "damage" were "repair" costs under the policy form.  Over time, as is alleged in the Eagles' amended complaint, FM modified the language in its "communicable disease" coverage, but in doing so expressly stated to insurance regulators that its changes were grammatical and editorial, and resulted in an expansion (not a reduction) in coverage.  Proposed Amended Complaint at ¶¶ 57 - 64.  FM now argues to the contrary, that communicable disease could never constitute physical damage or that amounts spent to respond to it could not be within the purview of the policy's "repair" language.

Third, the Proposed First Amended Complaint sets forth additional facts and expert testimony newly discovered since the filing of the complaint on the issues of: the history and drafting of standard property insurance forms (¶¶ 54, 56, 110-11), FM's deliberate use of particular policy wording including "all *risks of* direct physical loss or damage," (¶¶ 67 - 78), scientific and expert testimony concerning the physical effects of Coronavirus on property, ***including its airspace*** (¶¶ 131 - 144), and evidence concerning the actual and statistical likelihood of Coronavirus on insured premises and its impact (¶¶ 146 – 152).  These are factual areas that the Eagles would intend to address in the litigation through fact and expert discovery.

Fourth, at the November 17, 2021 hearing, the Court sought clarification from the parties concerning the operation of FM's "communicable disease" Additional Coverages in tandem with

the Policy's other coverages including business interruption, as well as whether this case presents a factual issue concerning the presence of communicable disease. Tr. at 45:22 – 46:5. The Proposed Amended Complaint adds allegations concerning these issues. *See* Proposed Amended Complaint at ¶¶ 57 – 64; 66, 79 – 87, 211-12, 216, 231-33.

## I. THE COURT SHOULD GRANT THE EAGLES LEAVE TO AMEND

### A. Standard for Leave to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint should "freely" be given "when justice so requires." Fed. R. Civ. P. (15)(a). Given this liberal standard under Rule 15(a), "the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility." *White v. Bush,* No. CV 20-2059-KSM, 2021 WL 2255981, at *6 (E.D. Pa. June 3, 2021). None of the factors that would otherwise lead the Court to deny this motion are present here.

### B. FM Will Suffer No Prejudice

FM is already aware that the Court has indicated that it would be inclined to permit the filing of an amended complaint to afford the Eagles the opportunity to set forth a regulatory estoppel claim and other theories it wishes the Court to consider in a preliminary pleading. Tr. at 16:12 – 16:22. In addition, the new matters pled are amplifications of allegations contained in the original complaint and thus FM cannot claim unfair surprise. Moreover, this case has yet to proceed beyond the pleading stage, and as a result, the addition of information of which FM already should have been aware before FM has expended any resources in the litigation pursuing or responding to discovery cannot possibly prejudice FM.

### C. The Eagles Have Not Engaged in Undue Delay or Bad Faith

Given that the Eagles seek to remand this action to the Court of Common Pleas, the Eagles did not wish to amend the complaint until after determination of the remand motion. At the November 17 hearing, the Court stated that the Eagles' request to amend would be made without prejudice to the Eagles' pending motion to remand. Tr. at 30:8 – 30:13. This motion, made shortly after the hearing is timely and made in good faith.

### D. The Eagles' Proposed Amendment is Not Futile

The Eagles' new allegations set forth additional information that has been developed since the filing of the complaint. They are based upon the ever-evolving events surrounding the pandemic, including, for example, (1) the developing science behind coronavirus, how it spreads and its impact on property, including its airspace, and (2) documents that have been located as policyholders, including the Eagles, continue to attempt to locate information regarding FM's positions about and understanding of its policy language prior to the onset of the pandemic.

### CONCLUSION

For the foregoing reasons, the Eagles respectfully request that the Court grant this Motion.

Dated:  December 15, 2021

Respectfully submitted,

**BLANK ROME LLP**
By: /s/ Charles A. Fitzpatrick IV
CHARLES A. FITZPATRICK IV (PA Bar 309113)
JAMES T. GILES (Pa Bar 4425
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone:  215.569.5608
Facsimile:  215.832.5608
Email: fitzpatrick-c@blankrome.com
Email: jgiles@blankrome.com
LINDA KORNFELD (pro hac vice)
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:  424.239.3434
Email: lkornfeld@blankrome.com

JAMES R. MURRAY (pro hac vice)
1825 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  202.420.2200
Facsimile:  202.420.2201
Email:  jmurray@blankrome.com

LISA M. CAMPISI (pro hac vice)
1271 Avenue of the Americas
New York, New York 10020-1300
Telephone: (212) 885-5378
Facsimile: (212) 685-9926
Email: lcampisi@blankrome.com

Attorneys for Plaintiff Philadelphia Eagles Limited Partnership