# EXHIBIT 3

KeyCite Yellow Flag - Negative Treatment
Distinguished by Till Metro Entertainment v. Covington Specialty Insurance Company, N.D.Okla., June 28, 2021

2021 WL 506271 (Okl.Dist.) (Trial Order)
District Court of Oklahoma.
Cherokee County

CHEROKEE NATION, Cherokee Nation Businesses, LLC, & Cherokee Nation Entertainment, LLC, Plaintiff,
v.
LEXINGTON INSURANCE COMPANY, et al., Defendants.

No. CV-20-150.
January 28, 2021.

**Court's Order and Opinion as to Plaintiff Cherokee Nation, Cherokee Nation Businesses, LLC, & Cherokee Nation Entertainment, LLC's First Motion for Partial Summary Judgment on Business Interruption Coverage (Filed on 1/29, 2021)**

Douglas Kirkley, District Judge.

***1** On December 28, 2020, this matter came on for consideration of Plaintiff Cherokee Nation, Cherokee Nation Businesses, LLC, & Cherokee Nation Entertainment, LLC's (collectively the "Nation") First Motion for Partial Summary on Business Interruption Coverage (the "Motion"). The Court reviewed the briefs, heard the argument of counsel, and after taking the matter under advisement, the Court finds and orders:

Since late 2019, [1] the United States has endured the COVID-19 Pandemic (the "Pandemic"). In response, the Nation, like many other businesses in the State of Oklahoma, temporarily closed its business operations on March 16, 2020 to implement mitigation protocols and modifications to allow its businesses to operate safely. In July 2020, the Nation asked the Court to interpret the Tribal Property Insurance Program ("TPIP") Policy that provided business interruption insurance to the Nation's covered properties from July 1, 2019, through July 1, 2020. Defendant Insurers [2] responded in September 2020, arguing that that the Nation did not suffer *direct physical loss or damage* as contemplated by the TPIP Policy and that various exclusions bar coverage. The Court, having read the TPIP Policy to interpret its plain and ordinary meaning, now finds for the Nation, **GRANTS** the Nation's First Motion for Partial Summary Judgment on Business Interruption Coverage and **DENIES** Defendant Insurers' request for Summary Judgment. [3]

## FINDINGS OF FACT

Both parties request the Court interpret the TPIP Policy and issue summary judgment in their favor. [4] The parties also assert—and the Court agrees—that the interpretation of insurance contracts is a question of law; [5] consequently, there are no facts that would prevent the Court from determining coverage. [6] Based on review of the briefs, the evidence submitted, and the argument of the parties, the Court finds the following undisputed material facts for purposes of summary judgment:

***2** 1. The Nation purchased the Tribal Property Insurance Property Policy (Policy Nos. 017471589/06 (Dec 37) 9109; (Dec 31) 9497; an (Dec 15) 9110) with all-risk business interruption coverage from July 1, 2019 through July 1, 2020. The Nation's

Motion at 3 (Material Fact No. 1; *Ex.* 5 – the TPIP Policy [hereinafter also simply referenced to as the "TPIP" or "TPIP Policy"]); Defendant Insurers' Opposition to the Motion at 3 (Response to Material Fact No. 1 and Additional Material Fact Nos. 1-7).

2. Defendant Insurers issued several excess policies which incorporated the language of the TPIP Policy but also included various exclusions to coverage provided by the TPIP Policy.[7] Defendant Insurers' Opposition the Nation's Motion at 3 (Response to Material Fact No. 1 and Additional Material Fact No. 1).

3. The Nation closed its covered properties due to the Pandemic. The Nation's Motion at 3-4, 11-13 (Material Fact No. 2; *Ex. 3* – Principal Chief Chuck Hoskins Executive Order); Defendant Insurers' Opposition to the Nation's Motion at 5-6 (Additional Material Fact Nos. 10-12); K. Querry, *Cherokee Nation Suspends Casino, Hotel Operations*, KFOR (Mar. 16, 2020), https://kfor.com/news/coronavirus/cherokee-nation-suspends-casino-hotel-operations/.[8]

4. While closed, the Nation repaired its covered property by implementing various mitigation protocols and modifications, such as installing acrylic barriers and sanitation stations, staggering seating and gaming machines, replacing air filters, etc. Defendant Insurers' Opposition to the Nation's Motion at 6 (Additional Material Fact Nos. 12 & 13); The Nation's Reply to Defendant Insurers' Opposition to the Nation's Motion for Partial Summary Judgment on Business Interruption Coverage (the "Reply") at 12-13 (*See also Ex.* 8, D. Sean Rowley, *Cherokee Nation Businesses gives reopening date for its casinos*, CHEROKEE PHOENIX (June 5, 2020); *and Ex. 9*, Cherokee Nation Businesses, Responsible Hospitality at 10).

5. In June 2020, the Nation reopened its covered properties. Defendant Insurers' Opposition to the Nation's Motion at 6 (Additional Material Fact No. 12); The Nation's Reply at 10-11 (*See also Ex.* 8, D. Sean Rowley, *Cherokee Nation Businesses gives reopening date for its casinos*, CHEROKEE PHOENIX (June 5, 2020); *and see generally Ex.* 9, Cherokee Nation Businesses, Responsible Hospitality).

6. The Pandemic is a fortuitous event. The Nation's Motion at 3 (Material Fact No. 3); *Texas E. Transmission Corp Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 564 (10th Cir. 1978) (interpreting Oklahoma insurance law).[9]

## CONCLUSIONS OF LAW

### I. THE NATION SUFFERED A COVERED LOSS

***3** The central issue before the Court is whether the Nation's businesses closures due to the Pandemic constitute a covered loss under the TPIP Policy.[10] The TPIP Policy provides coverage for *all risk of direct physical loss or damage*. **Defendant Insurers did not define that important phrase within the TPIP Policy.** The Nation argues that *direct physical loss* occurs when covered property is "rendered unusable for its intended purpose."[11] Defendant Insurers say that *direct physical loss or damage* is a phrase-of-art, which means there must be "distinct, demonstrable, physical alteration to the property."[12] Though this appears to present a first-impression question in Oklahoma, the interpretation of "direct physical loss" is something that courts around the country have struggled with for some time – and that is subject to particularly intense, widespread litigation now in light of the numerous other business closures precipitated by the current Pandemic. Other courts wrestling with this question have come down on both sides.

The Court must the read the TPIP policy "as a whole giving the language its ordinary and plain meaning." *Oklahoma Sch. Risk Mgmt. Tr.*, 2019 OK 3, ¶ 22. But where an insurance provision "is susceptible to two interpretations from the standpoint of a reasonably prudent layperson, then the language is ambiguous." *Id.* In such a circumstance: "the court should construe the terms against the insurer and in favor of the insured." *Oklahoma Attorneys Mut. Ins. Co. v. Cox*, 2019 OK CIV APP 25, ¶ 9;

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

*Serra v. Estate of Broughton*, 2015 OK 82, ¶ 10 (When an insurance term or phrase is ambiguous, “words of inclusion will be construed liberally in the insured's favor, and words of exclusion will be construed strictly.”).

With these cannons in mind, the Court agrees with the Nation that the central issue—the interpretation of *direct physical loss or damage*—could have been preempted if Defendant Insurers would have simply defined the phrase within the TPIP Policy. Carriers have utilized the phrase *direct physical loss* for over fifty (50) years and courts have begged carriers to define the phrase to avoid the precise issue before the Court now. *E.g.,* *W. Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 40-41, 437 P.2d 52, 56 (1968) (“Despite the fact that a ‘dwelling building’ might be rendered completely useless to its owners, appellant would deny that any loss or damage had occurred unless some tangible injury to the physical structure itself could be detected. Common sense requires that a policy should not be so interpreted in the absence of a provision specifically limiting coverage in this manner.”); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 709-10 (E.D. Va. 2010), *aff'd*, 504 F. App'x 251 (4th Cir. 2013). Despite these pleas and the known confusion surrounding the phrase “direct physical loss,” Defendant Insurers made no attempt to clarify or define that phrase within the TPIP policy to avoid the Nation's interpretation that losses such as the closure of a business in response to the Pandemic would be covered—at least, not until it was too late.

***4** The day after the Chickasaw Nation and Cherokee Nation of Oklahoma filed this same action under this same policy, Defendant Insurers added a new Communicable Disease exclusion to the TPIP Policy that preempted coverage due to the fear or threat of viruses. This action on the part of the Defendant Insurers can mean one of two things. Either the exclusion was added to provide clarity for Defendants' interpretation—*i.e.*, that Pandemic-related closures like the one at issue here are *not* covered—which underscores the confusion surrounding the existing policy language and the conclusion that the TPIP is ambiguous. Or the exclusion was added because the Nation's interpretation is correct—*i.e.*, that Pandemic-related closures like the one at issue here *are* covered—and Defendant Insurers needed to create a truly new exclusion in order to avoid liability for such claims. In either event—even assuming the Defendant Insurer's interpretation of the existing language is reasonable—Oklahoma law would require the Court to adopt the Nation's interpretation.

This is the same result reached in *Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Company.* No. 2:20-CV-265, 2020 WL 7249624 (E.D. Va. Dec. 9, 2020). There, the court compared the same interpretations *of direct physical loss or damage* forwarded by the Nation and Defendant Insurers respectively to determine coverage resulting from the Pandemic. The Eastern District of Virginia—invoking the same cannons of construction utilized in Oklahoma— reviewed many of the cases cited to the Court and reached the same conclusion:

> Therefore, given the spectrum of accepted interpretations, the Court interprets the phrase “direct physical loss” in the Policy in this case most favorably to the insured to grant more coverage. *See* *Virginia Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, at 81 (2009) (“[I]f disputed policy language is ambiguous … we construe the language in favor of coverage and against the insurer.”). Based on the case law, the Court finds that it is plausible that a fortuitous “direct physical loss” could mean that the property is uninhabitable, inaccessible, or dangerous to use because of intangible, or non-structural, sources. *See* *US Airways, Inc. v. Commonwealth Ins. Co.*, 2004 WL 1094684, at *5 (Va. Cir. Ct. May 14, 2004) (holding FAA order grounding flights at Reagan National Airport could constitute direct physical loss when “nothing in the Policy … requires that [there] be damage to [the insured's] property.”). Here, while the Light Stream Spa was not structurally damaged, it is plausible that Plaintiff's experienced a direct physical loss when the property was deemed uninhabitable, inaccessible, and dangerous to use by the Executive Orders because of its high risk for spreading COVID-19, an invisible but highly lethal virus. That is, the facts of this case are similar those where courts found that asbestos, ammonia, odor from methamphetamine lab, or toxic gasses from drywall, which caused properties uninhabitable, inaccessible, and dangerous to use, constituted a direct physical loss.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-CV-265, 2020 WL 7249624, at *8 (E.D. Va. Dec. 9, 2020). Defendant Insurers could have avoided this outcome if they had defined *direct physical loss or damage* as they (and others before them) have argued it should be interpreted. *See infra* fn. 17. But Defendants did not do so.

As explained in more detail below, the Court finds the Nation's interpretation of the TPIP is reasonable. Thus, even if the Defendant Insurers interpretation was also reasonable, the Court would be left with two competing interpretations—a result commensurate with the conclusions of other courts around the country. Under Oklahoma law, such patent ambiguity must be interpreted in the Nation's favor. *Oklahoma Attorneys Mut. Ins. Co. v. Cox*, 2019 OK CIV APP 25, ¶ 9; *Serra v. Estate of Broughton*, 2015 OK 82, ¶ 10. Ultimately, however, the Court also finds that Defendant's interpretation of "direct physical loss" is unreasonable, and the Nation's interpretation is correct. Under either rationale, the Nation has a covered loss.

### *A. The Nation presented the only reasonable interpretation.*

***5** The Court finds that the Nation's interpretation is the correct interpretation and Defendant Insurers have forwarded an unreasonable interpretation of *direct physical loss or damage* in the context of the TPIP Policy.

First, the Nation cites to several cases where *direct physical loss* has been interpreted to include property rendered unusable for its intended purpose. *E.g.*, *Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 437 P.2d 52 (1968); *Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-CV-01932-CL, 2016 WL 3267247, at *7-9 (D. Or. June 7, 2016); *see also* the Nation's Motion at fn. 11. This includes several cases evaluating closures due to the Pandemic. *Harrison v. Optical Services, USA et al.*, BER-L-3681-20, at 27 (Bergen Cnty., N.J. Aug. 13, 2020); *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385, at *5 (W.D. Mo. Aug. 12, 2020); *Elegant Massage, LLC*, No. 2:20-CV-265, 2020 WL 7249624, at *8 (E.D. Va. Dec. 9, 2020). Defendant Insurers characterize the Nation's argument as coverage for all loss of use, regardless of the terms in the TPIP Policy. But this argument appears to be misplaced, as the Nation's interpretation accounts for direct physical loss through the closure itself, as another court observed:

> As an initial matter, the Policies do not define the terms 'direct,' 'physical loss,' or 'physical damage.' The Court must therefore turn first to the ordinary meaning of those terms. Merriam-Webster defines 'direct,' when used as an adjective, as 'characterized by close logical, causal, or consequential relationship,' as 'stemming immediately from a source,' or as 'proceeding from one point to another in time or space without deviation or interruption.' *Direct*, Merriam-Webster (Online ed. 2020). Merriam-Webster defines 'physical' as relating to 'material things' that are 'perceptible especially through the senses.' *Physical*, Merriam-Webster (Online ed. 2020). The term is also defined in a way that is tied to the body: 'of or relating to the body.' *Id.* Webster's Third New International Dictionary defines physical as 'of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary.' Physical, Webster's Third New International Dictionary (2020). The definition from Black's Law Dictionary comports: 'Of, relating to, or involving material things; pertaining to real, tangible objects.' *Physical*, Black's Law Dictionary (11th ed. 2019). Finally, 'loss' is defined as 'the act of losing possession,' 'the harm of privation resulting from loss or separation,' or the 'failure to gain, win, obtain, or utilize.' *Loss*, Merriam-Webster (Online ed. 2020). Another dictionary defines the term as 'the state of being deprived of or of being without something that one has had.' *Loss*, Random House Unabridged Dictionary (Online ed. 2020). ***Applying these definitions reveals that the ordinary meaning of the phrase 'direct physical loss' includes the inability to utilize or***

> ***possess something in the real, material, or bodily world, resulting from a given cause without the intervention of other conditions.***

*E.g., North State Deli, LLC, et al. v. Cincinnati Insurance Co., et al.*, 20-CVS-02569 (Durham Cnty., N.C. Oct. 9, 2020) (emphasis added) (Granting plaintiff-insured summary judgment for business interruption coverage due to the COVID Pandemic). In fact, it was undisputed that the Nation could not physically utilize its property because of the Pandemic.

***6** Surrounding provisions of the TPIP Policy also demonstrate that requiring a physical alteration of the property is inconsistent with the policy before the Court. For example, several exclusions within the TPIP Policy exclude losses that do not require physical alteration to the property, such as infidelity, loss of market, and inventory shortage. *TPIP Policy* at 24-25. There is simply no explanation as to why Defendant Insurers would exclude causes of loss that would not meet the interpretation *of direct physical loss* regardless.

The same is true of the new Communicable Disease exclusion that was added to the TPIP policy language ***one day after*** other tribes filed the same declaratory action concerning the same policy as the Nation:

**ENDORSEMENT 5**

**COMMUNICABLE DISEASE EXCLUSION**

1. This policy, subject to all applicable terms, conditions and inclusions, covers losses attributable to direct physical loss or physical damage occurring during the period of insurance. Consequently and notwithstanding any other provision of this policy to the contrary, this policy does not insure any loss, damage, claim, cost, expense or other sum, directly or indirectly arising out of, attributable to, or occuring concurrently or in any sequence with a Communicable Disease or the fear or threat (whether actual or perceived of a Communicable Disease.

The Nation's Motion (*Ex. 11* – New TPIP Policy Endorsement 5 (Mar. 25, 2020) ("Communicable Disease Exclusions")).[13] This new exclusion concerns the "fear or threat (whether actual or perceived) of a Communicable Disease." If pandemics as a cause of loss were clearly not covered by the 2019-2020 TPIP Policy, then the new exclusion would be superfluous.[14] *Compare Wynn v. Avemco Ins. Co.*, 1998 OK 75, ¶ 9 ("[I]t is presumed, unless a contrary intention appears, that the parties intended that the renewal policy cover the same terms, conditions, and exceptions as the original policy.") *with Orren v. Phoenix Ins. Co.*, 288 Minn. 225, 229-30 (1970) ("Moreover, in our opinion, the change in language made in the revised policy persuasively illustrates the ambiguity."). As discussed above, the addition of the exclusion only makes sense where the Nation's interpretation applies and pandemics can constitute a covered cause of loss.

The "all risk" nature of the TPIP policy also cuts against Defendant Insurers' interpretation. First, the true triggering language of coverage under the TPIP Policy is *all risk of direct physical loss or damage*. As the Nation highlighted within its Motion and Reply, "*all risk of*" expands coverage to include losses from anticipated harms or danger. The Nation's Motion at 14-15; The Nation's Reply at 10. Indeed, the Nation notes that the TPIP Policy provides coverage specifically for ***imminent*** physical loss:

> ***7** In case of actual or ***imminent physical loss*** or damage of the type insured against by this Policy, the expenses incurred by the Named Insured in taking reasonable and necessary actions for the temporary protection and preservation of property insured hereunder shall be added to the total physical loss or damage otherwise recoverable under the Policy and be subject to the applicable deductible and without increase in the limit provisions contained in this Policy.

*TPIP Policy* at 13 (Protection and Preservation of Property) (emphasis added). Common sense dictates that the Policy cannot require the insured to demonstrate physical alteration to the property while also promising coverage for anticipated loss as well. This is consistent with the only Oklahoma law available on the issue as well, as the Oklahoma Court of Civil Appeals has stated that "risks of direct physical loss" includes "anticipated damage" to property. *Gutkowski v. Oklahoma Farmers Union Mut. Ins. Co.*, 2008 OK CIV APP 8, ¶ 11. Defendant Insurers' failed to dispute the Nation's interpretation of *all risk of* and did not submit their own interpretation.

Defendant Insurers' interpretation *of direct physical loss or damage* also fails to abide by Oklahoma law for construing insurance policies—specifically, the rule against superfluity. "The rule of construction is that some particular operation, effect, and meaning must be assigned to each sentence, phrase, and word used, and when this may fairly and properly be done, no part of the language used can be rejected as superfluous or unmeaning." *Kingkade v. Cont'l Cas. Co.*, 1912 OK 807, 35 Okla. 99, 128 P. 683, 685 (internal quotation omitted). Applying this foundational canon to the TPIP Policy, the Court would entertain that *direct physical damage* may be shown by "distinct, demonstrable, physical alteration to the property;" however, *direct physical loss* must have a distinct meaning. Because the policy provides for *direct physical loss or damage*, the Court must place value in the disjunction "or." *See* *Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385, at *5 (W.D. Mo. Aug. 12, 2020) (citing *Nautilus Grp., Inc. v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940, at * 7 (W.D. Wash. Mar. 8, 2012) ("if 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous")). The word *loss* is divested of any meaning under Defendant Insurers' interpretation. Tellingly, Defendant Insurers never explain the difference between *direct physical loss* and *direct physical damage* under their interpretation. Therefore, the TPIP Policy must contemplate two categories of covered loss: *direct physical damage*, which may exist under Defendant Insurers' interpretation; and *direct physical loss*, which includes the Nation's interpretation. The Court finds additional support for this interpretation because the policy uses *physical damage* and *physical loss* separately throughout its other provisions, demonstrating the phrases have distinct meanings. [15] The Nation's Motion at 7 (citing the TPIP Policy at 10, 11, 20, 23); *Oklahoma Sch. Risk Mgmt. Tr.*, 2019 OK 3, ¶ 24 ("[W]hen an insurer creates specificity in one clause of a policy and then omits it in a similar context, the omission is considered purposeful and should be given meaning."). [16] Looking at the plain and ordinary meaning of the TPIP Policy, the Court is convinced that the Nation's interpretation gives meaning to each and every word in the TPIP Policy and is the only reasonable interpretation before the Court.

### *B. Goodwill and the other ISO supplemental cases are distinguishable*

***8** When the TPIP Policy is "read as a whole" as required by the Court, it is clear that neither *Goodwill* nor the other Insurance Services Office ("ISO") policy cases listed in Defendant Insurers' Notices of Supplemental Authority are applicable. *Oklahoma Sch. Risk Mgmt.* Tr., 2019 OK 3, ¶ 22. Simply put, the policy language is not the same. *See Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*, No. CV-20-511-R at *1 (W.D. Okla. Nov. 9, 2020).

The policy at issue in *Goodwill* and the vast majority of cases relied upon by Defendant Insurers utilize standardized ISO form policy language. Hearing Tr. 33:3-17 (Oct. 27, 2020) (A. Vance); *see e.g., Goodwill Indus. of Cent. Oklahoma, Inc.*, No. CV-20-511-R, at *1; *see also* *Colony Ins. Co. v. Jackson*, No. 09-CV-780-TCK-TLW, 2011 WL 2118728, at *3 (N.D. Okla. May 27, 2011) ("ISO is a national insurance policy drafting organization that develops standard policy forms and files them with each state's insurance regulators. *See* *French v. Assurance Co. of Am.*, 448 F.3d 693, 697 & n. 1 (4th Cir.2006)."). The TPIP Policy, however, does not utilize the same language, definitions, or provisions as the ISO form policies. First and foremost, the triggering language within the ISO Policies and the TPIP Policy is simply not the same. Courts cited by Defendant Insurers have assigned special meaning to "direct physical loss *of property*" in the ISO Policies. *E.g.,* *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-cv-03213-JST, 2020 WL 5525171, at *3-4 (N.D. Cal. Sept. 14, 2020) (finding "loss of requires property be permanently misplaced or unrecoverable); *see also* *Karen Trihn, DDS, Inc. v. State Farm Gen. Ins. Co.*, No. 5:20-CV-04265-

BLF, 2020 WL 7696080, at *4 (N.D. Cal. Dec. 28, 2020) ("In other words, the term 'loss of contemplates that the property is unrecoverable."). But "*all risk of direct physical loss*"—the triggering language within the TPIP Policy—neither has "property" as the object of the clause nor includes "of modifying the scope of *loss*. And as previously discussed, the Nation dedicated substantial argument to demonstrate that "all risk of within the triggering language of the TPIP broadens the scope of coverage contemplated therein.

Further, the *Goodwill* court noted numerous other provisions in the ISO policies that are absent from the TPIP Policy. The *Goodwill* policy required "actual loss" due to a "suspension" of "operation," but such words and requirements are absent from the TPIP Policy. *See Goodwill Indus, of Cent. Oklahoma, Inc.*, No. CV-20-511-R, at *1-2. Meanwhile, the TPIP Policy provides coverage for "imminent loss." *See supra* at 8. To interpret these policies the same would render those different words, definitions, and provisions meaningless, which this Court will not do. *Supra Kingkade*, 1912 OK 807.

Defendant Insurers had the option to adopt ISO language, which the vast majority of carriers in cases cited by Defendant Insurers did; however, the Tribal Property Insurance Program Policy was clearly drafted with more expansive language, presumptively in the hopes of cornering the tribal casino market. But regardless of the motivation behind the chosen language, the triggering language of the TPIP Policy (particularly when interpreted in light of other provisions therein) plainly covers more than the ISO Policies. Accordingly, the *Goodwill* case and other ISO authority is distinguishable and simply not persuasive to the Court.

***

***9** For the foregoing reasons, the Court finds that the Nation's is the only reasonable interpretation of the TPIP Policy. However, even assuming Defendant Insurers' interpretation was also reasonable, the result would be a patent ambiguity, which Oklahoma law requires be resolved in favor of coverage. Either way, the Nation's reading would control.

## II. THE EXCLUSIONS DO NOT APPLY

"[I]f an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctly reveals its stated purpose." *First United Methodist Church of Stillwater, Inc. v. Philadelphia Indem. Ins. Co.*, 2016 OK CIV APP 59, ¶ 34. "[I]n cases of doubt … words of exclusion are strictly construed against the insurer." *Max True Plastering Co.*, 1996 OK 28, 912 P.2d at 865.[17] Utilizing these canons, the Court finds the various exclusions forwarded by Defendant Insurers do not clearly and distinctly apply to the Pandemic as a cause of loss.

To be clear, the only loss shown to the Court was the Pandemic. And a pandemic is a loss distinct from a virus; regardless of whether there was definitive proof that the COVID-19 virus *was* or *was not* on the Nation's property, the property was still rendered useless due to the reasonable precautionary measures implemented in response to the Pandemic. *See* *Friends of Danny DeVito*, 227 A.3d 872 (Pa. 2020). Thus, because actual presence of the virus was not relevant to the closure of Nation's properties, it is not relevant to the Court's determination that *direct physical loss* occurred. The Nation's Reply at 13 (quoting *Urogynecology Specialist of Florida LLC, v. Sentinel Insurance Company, Ltd.*, 6:20-01174-ACC-EJK (Sep. 24, 2020)).

Turning to the exclusions provided, the Court takes "all inferences and conclusions to be drawn from the evidentiary materials … in the light most favorable to" Defendant Insurers. *See* *Carmichael v. Beller*, 1996 OK 48, 914 P .2d 1051, 1053. The Court assumes, for purposes of summary judgment, that the exclusions included within the TPIP Policy and various excess policies are valid additions to the TPIP Policy.[18] But even with that assumption, the Court finds that Defendant Insurers failed to clearly and distinctly exclude the Nation's loss.

The Nation demonstrated through various examples that insurance carriers are aware of the risk of pandemics as a peril, regularly exclude them with clear and distinct language, but that these Defendant Insurers failed to do so here. The Nation's Reply to

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Defendant Hallmark Reply to Defendant Hallmark Specialty Insurance Company's Supplemental Opposition to Nation's Motion for Partial Summary Judgment on Business Interruption Coverage at 6 [hereafter the "Nation's Reply to Hallmark"]; *see also* *Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*, 218 F. Supp. 3d 1034, 1038 (D. Neb. 2016). For example, in 2008 Lloyds published *Pandemic: Potential Insurance Impacts*, where is stated business interruption coverage needed to be carefully drafted by carriers because a "pandemic is inevitable." The Nation's Reply at 17, fn. 27 (*Ex. 10*). That was a known risk to these Defendant Insurers as well:

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

***10** *Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*, 218 F. Supp. 3d 1034, 1038 (D. Neb. 2016) (Demonstrating Defendant Liberty Mutual previously excluded "suspected presence or threat or any virus" and specifically expanded the exclusion to include "pandemic").

**PANDEMIC AND EPIDEMIC EXCLUSION**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Notwithstanding any provision to the contrary within this policy or any endorsements thereto, it is understood and agreed.

This Contract shall exclude any loss, damage, liability, cost or expense or any other amount incurred by the (re)insured directly or indirectly arising out of. originating from, resulting from, caused by and or contributed to and or a consequence of and by, regardless of any other cause contributing concurrently or in sequence to the loss or otherwise, in connection with any Communicable Disease or threat or fear of Communicable Disease (whether actual or perceived) or the outbreak of an Epidemic or Pandemic, whether declared as such or not by any person or entity, including foreign and domestic governments and their representatives, agencies, and courts, the United Nations and its representatives and agencies, and similar persons and entitles responsible for managing public health, or any action taken by any party, person, entity, company, agency, and/or government to treat or prevent the spread thereof.

Pandemic and Epidemic Exclusion, Hallmark, form HP PA 01 03 20 (Demonstrating Defendant Hallmark has expressly excluded "pandemic" and "epidemic" losses elsewhere but did not within the TPIP Policy). When carriers fail to use clear and distinct language to exclude a cause of loss known in the market, they "act at their own peril." *Pan American World Airways, Inc. v. Aetna Casusalty & Surety Co.* 505 F.2d 989, 1001 (2d Cir. 1974). As with the definition of *direct physical loss*, the Defendant Insurers could have included language that would have clarified any ambiguity regarding pandemic coverage, but they chose not to do so. Indeed, Defendant Insurers' choice to add the "Communicable Disease Exclusion" (discussed above) underscores the conclusion that the policy at issue does not clearly and distinctly exclude pandemics.

Moreover, even when not specifically excluding "pandemics," carriers regularly utilize words like *suspected, threatened, and. fear of to* expand virus exclusions beyond actual viruses present on covered property:

**<u>The various virus exclusions do not include *suspected* or *imminent* contamination</u>**

When a carrier intents to exclude *suspected* or *imminent* viral contamination, it clearly states as much:

• Liberty Mutual has previous excluded "[t]he actual or *suspected* presence or threat of any virus...." See *Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*, 218 F. Supp. 3d 1034, 1038 (D. Neb. 2016));

• Arch Specialty Insurance Company's excludes "actual, *suspected, alleged or threatened* presence, discharge, dispersal, seepage, migrations, introduction, release or escape of 'Pollutants or Contaminants...." (emphasis added));

• Hallmark now excludes loss "in connection with any Communicable Disease or *threat or fear* of Communicable Disease (whether actual or perceived) or the outbreak of an Epidemic or Pandemic...."Pandemic and Epidemic Exclusion, Hallmark, HP-PA-01-03-20 (Excluding (emphasis added));

***11** • The TPIP Policy now excludes "the *fear or threat* (whether actual or perceived) of a Communicable Disease." Communicable Disease Exclusion, TPIP Policy (2020-2021) (emphasis added)

Court's *Ex.* 1, The Nation's PowerPoint at 59; *see* The Nation's Reply to Hallmark at 4, fn. 5. But no applicable virus exclusions used such language here. Absent such language, the Nation has shown the various virus exclusions require proof that the COVID virus is actually on the premises to be applicable. The Nation's Motion at 13-14 (explaining *Duensing v. Traveler's Companies*, 257 Mont. 376 (1993)); *Elegant Massage, LLC*, 2:20-CV-265, 2020 WL 7249624 (E.D. Va. Dec. 9, 2020). Except for the exclusion from Defendant Arch Specialty Insurance, [19] the Court agrees with the Nation that the viral exclusions, by their language, only apply where there is proof of actual viral presence:

• The TPIP Policy's Pollution and Contamination exclusion requires a showing of "seepage and/or pollution and/or contamination" of a virus to be applicable; [20]

• Defendant Hallmark's Excess Policy's exclusion requires there be a showing of "dispersal, application, release of or exposure to" a virus;

• Defendant Landmark's Excess Policy's exclusion requires "discharge, dispersal, seepage, migration, release, escape or application of a virus;

• Defendant XL's Excess Policy's exclusion requires "presence" of a virus; and,

• Defendant Liberty Mutual's Excess Policy exclusion requires the virus is "capable of inducing physical distress, illness or disease," but to be capable of inducing such an effect the virus would need to be on the premises.

Because none of these exclusions contemplate *pandemics*, or *suspected, imminent, threatened*, or *fear of* viruses—common language utilized by carriers to exclude such losses clearly and distinctively—these exclusions do not clearly and distinctly apply to the Nation's loss. [21]

***12** Finally, Defendant Liberty Mutual asserts its loss-of-use exclusion with its excess policy bars coverage. But by the plain terms of the TPIP Policy, Defendant Liberty Mutual cannot assert that all forms of loss of use are excluded. As the Nation has shown, business interruption coverage as contemplated by the TPIP Policy necessary only results from some loss of use—*i.e.*, from some *interruption* of *business.* The Nation's Reply to Defendant Liberty Mutual Fire Insurance Company's Supplemental Opposition to the Nation's Motion at 5-6. Thus, if all loss of use was excluded, the business interruption coverage would be illusory. *Id.* For that reason, the Court accepts the proposition that when a dangerous condition like a fire, tornado, or the Pandemic causes loss of use, the exclusion would not apply. *W. Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 38-39.

***

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the Court **GRANTS** the Nation's First Motion for Partial Summary Judgment on Business Interruption Coverage and **DENIES** Defendant Insurers request for Summary

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Judgment. Pursuant to this order, the Nation is entitled to indemnity under the terms of the TPIP Policy for the losses sustained due to the Pandemic under its business interruption coverage.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that because the Court grants the Nation's Motion finding coverage, the question of whether Civil Authority, Ingress/Egress, or any other provision of the TPIP Policy provides for coverage due to the Pandemic is hereby rendered moot. Pursuant to 12 O.S. § 952(b)(3), this Court certifies that this order substantially affects a substantial part of the merits of the controversy and an immediate appeal of this issue would materially advance the ultimate termination of this litigation.

Now, on this 28 day of Jan 2021, IT IS SO ORDERED!

<<signature>>

Douglas Kirkley, District Judge

15 th Judicial District of Oklahoma

## Footnotes

1 *U.S. Covid Cases Found as Early as December 2019, Says Study,* BLOOMBERG NEWS (Dec. 1, 2020) https://www.bloomberg.com/news/articles/2020-12-01/covid-infections-found-in-u-s-in-2019-weeks-before-china-cases.

2 Defendant Insurers refers to all Defendants in the above-styled case.

3 Because the question before the Court is the question of coverage provided by the TPIP Policy's business interruption provision, the Court does not make a determination concerning damages and Defendant Insurers' status as excess carriers is not relevant. The TPIP Policy is attached as exhibit 5 to the Nation's Motion.

4 The Nation's Motion at 4; Defendant Insurers' Opposition to the Nation's Motion at 20.

5 The Nation's Motion at 3 (*citing e.g., Oklahoma Attorneys Mut. Ins. Co. v. Cox*, 2019 OK CIV APP 25, ¶ 8 ("The interpretation of an insurance policy, with its exclusions, is a question of law.")); Defendant Insurers' Opposition to the Nation's Motion at 6-7 (*citing May v. Mid-Century Ins. Co*, 2006 OK 100, ¶ 22).

6 Because this is not a motion to compel, the Court has not seen Defendant Insurers' discovery requests or the Nation's responses, and consequently the Court cannot speak to the substance of Defendant Insurers' discovery dispute claim, except to say they are not relevant to the matter at hand. As a preliminary matter, the Court finds that if Defendant Insurers had specific material facts it could dispute with additional discovery, they should have stated as much and taken advantage of the right to file an affidavit granted to them pursuant to District Court Rule 13(d) and 12 O.S. § 2056(f). *McClain v. Riverview Vill, Inc.*, 2011 OK CIV APP 57, ¶ 7; *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1236 (10th Cir. 2007); *Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1376 (10th Cir. 1988). Having waived that right—after being advised by the Nation of that procedure and filing a sur-reply where such an affidavit could have been attached—the Court will not do the work for Defendant Insurers to figure out what facts could, in theory, or possibly, be disputed.

7 For purposes of summary judgment, the Court has taken Defendant Insurers at their word and assumed the various excess policies' exclusions are binding on the TPIP Policy. The Nation asserted that various fact-based defenses, such as the reasonable expectation doctrine and lack of consideration, bar application of the individual excess exclusions to its claim and reserved those arguments. Because the Court grants the Nation's First Motion for Partial Summary Judgment on Business Interruption Coverage for the reasons stated herein, those arguments are now moot.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

8 The Court also takes judicial notice of Findings of Fact Nos. 3-5 provided herein, as it is common knowledge within the territorial jurisdiction of the Court that the Nation closed its businesses due to the Pandemic in March 2020, implemented safety protocols and modifications and has since reopened. 12 O.S. § 2202.

9 As the Tenth Circuit observed when interpreting Oklahoma law:

A fortuitous event … is an event which so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event, as the loss of a vessel, provided that the fact is unknown to the parties.

*Texas E. Transmission Corp.*, 579 F.2d at 564 (omission in original). The Pandemic is an event that neither the Nation nor Defendant Insurers were aware would occur in 2020, rendering it a fortuitous event.

10 Oklahoma law is clear: under an all-risk policy the Nation must only show (1) it suffered a covered loss and (2) the loss was fortuitous. *Oklahoma Sch. Risk Mgmt. Tr. v. McAlester Pub. Sch.*, 2019 OK 3, ¶ 16 ("An 'all-risk' policy [covers] a loss when caused by any fortuitous peril not specifically excluded by the policy."); *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 564 (10th Cir. 1978). It appears the standard for all-risk policies is intentionally a low bar for the Nation to clear because it is "a special type of insurance extending to risks not usually contemplated." *Texas E. Transmission Corp.*, 579 F.2d at 564; *Pillsbury Co. v. Underwriters at Lloyd's, London*, 705 F. Supp. 1396, 1399 (D. Minn. 1989) (All-risk policies were "developed to protect the insured in cases where loss or damage to property is difficult or impossible to explain.").

11 The Nation's Motion at 8-12.

12 Defendant Insurers' Opposition to the Nation's Motion at 9-13.

13 The Court would find the Nation's interpretation reasonable even in the absence of this exclusion. The Court considers this exclusion and the fact that it was added one day after considering the "patent ambiguity" created by Defendant Insurers failure to define *direct physical loss or damage.* *Hensley v. State Farm Fire & Cas. Co.*, 2017 OK 57, ¶ 36. "The presence of patent ambiguity allows for the conduct of the parties to be used to determine the meaning of the contract." *Id.*

14 Defendant Hallmark utilizes virtually identical language but goes one step further to specifically identify pandemics in its new "Pandemic and Epidemic Exclusion," further illustrating the purpose of these recent efforts. *See* the Nation's Reply to Defendant Hallmark Specialty Insurance Company's Supplemental Opposition to Nation's Motion for Partials Summary Judgment on Business Interruption Coverage at 6; *see supra* fn. 13.

15 Defendant Insurers rely on the Period of Restoration provision of the TPIP Policy to support its interpretation, but as the Nation showed, the provision relates to the length of time coverage is afforded; it is not a trigger of coverage. The Nation's Reply at 9-11. Moreover, the webpages provided in Defendant Insurers' additional facts demonstrated that the Nation made repairs as contemplated by the Period of Restoration provision. *Id.*

16 It is also notable that since at least 1968, several courts have rejected Defendant Insurers' interpretation and instructed carriers to clearly limit *direct physical loss or damage* within their policies for it to have the meaning Defendants advance here. *E.g.*, *W. Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 40-41, 437 P.2d 52, 56 (1968); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 709-10 (E.D. Va. 2010), aff'd, 504 F. App'x 251 (4th Cir. 2013). Defendant Insurers failed to do so.

17 For all-risk policies specifically, "the insurer has a burden to show the loss is excluded by the policy." *Oklahoma Sch. Risk Mgmt. Tr.*, 2019 OK 3, ¶ 16. Indeed, it is the carrier that must prove a particular and excluded cause of loss is the source of the insured's claim to bar coverage under an all-risk policy. *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 564-65 (10th Cir. 1978). Alternatively stated, the carrier must show that the language itself clearly and distinctly excludes the cause of loss, and separately that the excluded cause of loss is the source of the insured's claim.

18 Again, the Court does not address the fact-based defenses raised by the Nation, as those arguments are rendered moot by the Court's finding that the TPIP Policy's exclusions lack that clear and distinct language to make them applicable to the Nation's claim. *See supra* fn. 3.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

19 Defendant Arch Specialty Insurance Company's Pollution and Contamination exclusion does exclude "suspected, alleged, or threatened presence" of viruses. *Ex.* A-1 to Defendant Arch Specialty Insurance Company's Supplemental Opposition to Plaintiffs Motion for Partial Summary Judgment. But the exclusion is limited to claims "caused by, contributed to or aggravated by any *physical damage*," without reference to *physical loss. Id.* (emphasis added). Defendant Arch acknowledged that it incorporated the TPIP Policy as the basis for the excess policy. Defendant Insurers' Undisputed Material Fact No. 1. Consequently, and as explained above, *physical damage and physical loss* have distinct meanings within the TPIP Policy and thus Defendant Arch must have intended to provide coverage for physical loss.

20 Moreover, the Court agrees with the Nation that the Pollution and Contamination exclusion is ambiguous because the TPIP Policy covers *all risk of direct physical loss or damage*, which meets the exception provided in the third paragraph of the exclusion. The Nation's Reply at 11-12.

21 In its Replies, the Nation also pointed out that the Defendant Insurers' duty to investigate and prove actual presence of a virus is consistent with Oklahoma law, citing *Buzzard v. Farmers Insurance Company* to argue Defendant Insurers should have swabbed or otherwise tested the covered properties to prove the existence of a virus if it intended the various viral exclusions to apply. The Nation's Reply at 14-15, fn. 23 (*quoting* 1991 OK 127, 824 P.2d 1105, 1109 ("To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances.")). But Defendant Insurers did not do so.

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.