# EXHIBIT 6



Ms. Aileen Dagrosa
Senior Vice President
General Counsel
Philadelphia Eagles

July 27, 2020

Reference:   Insured:        The Philadelphia Eagles Limited Partnership
             Location:       NovaCare Complex
                             1 NovaCare Way
                             Philadelphia, PA 19145
             Policy No:      1024422
             Date of Loss:   March 13, 2020
             Description:    Impact associated with COVID-19
             Claim ID:       505589

Dear Ms. Dagrosa:

This will acknowledge your notice of the above referenced loss as received on 28-June-2020 via electronic mail and will confirm our discussion of 23-July-2020 regarding the same.

Briefly recapping, you have reported the shutdown or partial shutdown of The Philadelphia Eagles Limited Partnership business operations due to the coronavirus (COVID-19). You mentioned Lincoln Financial Field, the NovaCare Complex and two outlet stores were affected.

According to the loss notice, the initial closure of these locations took effect on Wednesday, March 13, 2020 upon the direction of officers of the Company and based on the order of governmental authorities. Per our discussion on July 23, 2020, The Philadelphia Eagles Limited Partnership is aware of people at its locations who were infected with the virus.

Please note that Factory Mutual Insurance Company Policy No. 1024422 contains Additional Coverages for COMMUNICABLE DISEASE RESPONSE and INTERRUPTION BY COMMUNICABLE DISEASE, subject to all policy terms and conditions. COVID-19 meets the definition of a "communicable disease" under the Policy.  Other key conditions of the Communicable Disease coverage are the actual not suspected presence of a communicable disease at a location owned, leased or rented by the insured, access to which has been limited, restricted or prohibited for more than 48 hours by an order of an authorized governmental agency or a decision of an officer of the Insured.

The Policy's Property Damage section includes coverage for "OTHER ADDITIONAL COVERAGES" Page 21 states, in relevant part:

>   F.   **COMMUNICABLE DISEASE RESPONSE**
>
>        If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **location** is limited, restricted or prohibited by:

1) an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or

2) a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,

this Policy covers the reasonable and necessary costs incurred by the Insured at such **location** with the actual not suspected presence of **communicable disease** for the:

1) cleanup, removal and disposal of the actual not suspected presence of **communicable disease** from insured property; and

2) actual costs or fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of **communicable disease** on insured property.

This Additional Coverage will apply when access to such **location** is limited, restricted or prohibited in excess of 48 hours.

This Additional Coverage does not cover any costs incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to the actual not suspected presence of **communicable disease**.

The Policy's Time Element section also includes coverage for "ADDITIONAL TIME ELEMENT COVERAGE EXTENSIONS" Page 51 states, in relevant part:

E. **INTERRUPTION BY COMMUNICABLE DISEASE**

If a **location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such described **location** is limited, restricted or prohibited by:

1) an order of an authorized governmental agency regulating the actual not suspected presence of **communicable disease**; or

2) a decision of an Officer of the Insured as a result of the actual not suspected presence of **communicable disease**,

this Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY at such **location** with the actual not suspected presence of **communicable disease.**

This Extension will apply when access to such **location** is limited, restricted, or prohibited in excess of 48 hours.

The Policy defines "communicable disease" on page 62 as follows:

**communicable disease**:
disease which is:

> A.  transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges…

The Policy also includes the following limit on coverage for Communicable Disease on pages 3 and 5:

> COMMUNICABLE DISEASE RESPONSE
>
> USD 1,000,000 **annual aggregate**
>
> The Company's maximum limit of liability INTERRUPTION BY COMMUNICABLE DISEASE and this coverage combined shall not exceed USD1,000,000 **annual aggregate**.
>
> * * *
>
> INTERRUPTION BY COMMUNICABLE DISEASE
>
> 12 month period but not to exceed USD 1,000,000 limit in the **aggregate during any policy year**
>
> The Company's maximum limit of liability for COMMUNICABLE DISEASE RESPONSE and this coverage combined shall not exceed USD1,000,000 in the **aggregate during any policy year** regardless of the number of locations, coverages or **occurrences** involved.

Responding to your reference to Policy provisions other than the Communicable Disease coverages, we note that the Policy excludes coverage for contamination. The presence of a virus, pathogen, or disease causing or illness causing agent such as COVID-19 is a form of contamination as defined in our Policy, which is excluded. The relevant provisions, in part, are set forth below:

> **D.**  This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:
>
> 1) **contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If **contamination** due only to the actual not suspected presence of **contaminant(s)** directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured. This exclusion D1 does not apply to radioactive contamination which is excluded elsewhere in this Policy.

The Policy defines contamination under 13. DEFINITIONS within the GENERAL PROVISIONS of the Policy on Page 62:

> **contamination**:
> any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

Other Policy coverages, such as Civil or Military Authority, do not apply absent physical loss or damage of the type insured. For example, the Policy states, in relevant part, as follows:

### A.   CIVIL OR MILITARY AUTHORITY

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured **location** provided such order is the direct result of physical damage of the type insured at the insured **location** or within five statute miles/eight kilometres of it.

The presence of COVID-19 at an insured location does not constitute "physical damage of the type insured" as required under this provision. Accordingly, the Policy's Civil or Military Authority provision (and other Policy provisions requiring physical loss or damage of the type insured) do not respond based on the information presented.

Consequently, based on the limited information provided at this time, the coverage that appears potentially available under our Policy for losses arising from COVID-19 is found in our Communicable Disease coverages, assuming the conditions of those coverages are satisfied.

Since you have indicated that The Philadelphia Eagles Limited Partnership owned locations where people were infected with the virus, we request the following information which will allow us to proceed with our investigation:

1. Please identify each location owned, leased or rented by The Philadelphia Eagles Limited Partnership which had the actual not suspected presence of COVID-19.

2. How did you determine that the location(s) identified above had the actual presence of COVID-19?

3. Have the identified location(s) been tested for COVID-19? If yes, please provide copies of the test reports.

4. Have the location(s) been cleaned due to the presence of COVID-19? If yes, please provide copies of contractor invoices and service report(s), cleanup, removal or disposal costs incurred and any documents confirming that the location was cleaned.

5. Have any employees (guests, patrons, outside workers, sub-contractors, etc.) and others who were in the location(s) been tested for COVID-19? Please answer only "yes" or "no."

6. Have any of these individuals tested positive for COVID-19? Please answer only "yes" or "no."

7. Please request and provide the employee's or other person's test results (with all personal identifying information redacted).

8. For each employee who tested positive, please provide the date of the employee's positive test result.

9. For each employee who tested positive, please provide support to establish when the employee was present at the location(s). This may include, but is not limited to, information such as payroll records and building entry data. Please redact identifying personal information of the employee(s) if required.

10. For each employee (guest, patron, outside worker, sub-contractor, etc.) who tested positive, please provide information as to when the employee first exhibited symptoms of COVID-19. Symptoms may include, but are not limited to: fever of 100.4 F or higher; a new persistent cough; chest pain; and/or shortness of breath; loss of taste or smell.

11. Have you contacted or been contacted by any local, state, or federal agency (e.g. local/state Department of Health, CDC, etc.) regarding COVID-19 test results of your employees? If yes, please provide those communications. If the communications contain any personal private information of employees, please forward a redacted copy of the communications.

12. Has access to the location(s) been limited, restricted or prohibited by an order of an authorized governmental agency or an Officer of The Philadelphia Eagles Limited Partnership. Please provide a copy of all such order(s).

Please provide this information and any other information you believe may be relevant to the loss as soon as you are able. This list is not intended to be all inclusive and additional requests for information may be necessary to assist in our investigation of this claim.

Once we have had an opportunity to complete our investigation and review of your policy information, we will confirm any applicable coverages, loss payables, and deductibles in effect.

Neither this letter nor our investigation is an admission or denial of liability and does not waive any right or duties of either party under the Factory Mutual Insurance Company Policy. Anything done or to be done by Factory Mutual Insurance Company, or on its behalf, in connection with the above described matter, including but not limited to, any investigation into the cause or amount of loss or other matter relative thereto, shall not waive, invalidate, forfeit or modify any of its rights under the policies issued by it.

We would like to thank you for your cooperation in this matter. In the interim, should you have any questions or comments, please feel free to contact us.

Sincerely,

*Sarah Manley*

Senior Adjuster
Philadelphia Branch Claims Office

For your protection, The State of Pennsylvania requires the following statement:
ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH VIOLATION.