# EXHIBIT 19

Risk Management

Troubled terminology

"Risks of direct physical loss" wording is currently read broadly by courts

By Donald S. Malecki, CPCU

Ask a veteran producer the meaning of "risks of direct physical loss"—as that term appears in commercial and personal property policies—and the answer will be a lot different from how a purchaser of insurance responds.

The reason is that through experience and study, producers have come to learn that this phrase is an outgrowth of the troublesome terminology having to do with "all-risk" coverage. Insurance buyers, on the other hand, generally do not have a clue about what that phrase means until there is a dispute with an insurer. At that point there is a significant learning curve.

Some property insurers still use the term "all-risks" when referring to the causes of loss coverage being provided. This is perhaps the reason that the more modern term "special causes of loss" has not fully replaced that earlier reference. Then again, insurance people who have long been in the business are slow to change.

It was 1986 when the standard ISO property policies, written on an easy-to-read and plain English basis, eliminated reference to "all-risks" perils. The rationale behind this elimination was that reference to "all-risks" had the tendency to connote coverage being provided for all causes of loss, which of course is not true.

It also was about this time that the comprehensive general liability policy was renamed the commercial general liability policy. The reason again was that courts were looking at that reference to "comprehensive" as connoting very broad coverage.

Of course, it was insurers themselves who stated, in 1941, when that policy was introduced, that the policy covered all liability except that specifically excluded. This was true, but coverage got somewhat out of hand in a growing number of cases.

Ask the person on the street or a typical insurance buyer what "risks of direct physical loss" means and the response may likely be a blank stare. All the insurance buyer wants to know is how much the insurance costs and, after a loss, when the check will be issued.

In reality, however, insurance buyers are not required to know what "risks of direct physical loss" means. The wording was not changed for their sake anyway. It was changed so that lawyers would understand that insurers would no longer be patsies and provide coverage far broader than what the reference to "all-risks" could possibly provide.

Unfortunately, the change from "all-risks" to "risks of direct physical loss" has not been without its problems. When push comes to shove and an insurer denies coverage where reference to "risks of direct physical loss" is a key element for consideration, some insurers are learning that this reference may not have been a wise choice.

### Case in point

A recent case that exemplifies this dilemma of insurers is *Gutkowski v. Oklahoma Farmers Union Mutual Insurance Company,* 176 P.3d 1232 (Court of Civil Appeals of Oklahoma 2007). Briefly, in 2001 the insureds purchased a house with an "overlaid" or "comp over wood" shingle-style roof. The roof was comprised of an outer or top layer of composition (asphalt) shingles and an underneath layer of wood shingles that served as the "nailable surface" or "decking" to which the composition shingles were attached.

In 2002, a hailstorm damaged the insureds' roof. When the insureds submitted their claim for the total loss of their roof, the insurer agreed that the composition shingles were a total loss, but it was willing to pay only for the direct physical loss of the composition roof.

The homeowners policy insuring agreement stated that the insurer (we) insure the property covered under Coverage A (Residence) and Coverage B (Related Private Structures) for risks of direct physical loss, unless the loss is excluded under the exclusions applicable to Coverages A and B.

The insurer's rationale for limiting coverage to the composition shingles was an endorsement stating how the amount of loss was to be determined. The applicable limit was the smaller of (a) the cost to repair or replace the damage on the same premises using materials of like kind and quality, to the extent practical; (b) the amount actually and necessarily spent to repair or replace the damage on the same premises; or (c) 125% of the coverage limit shown in the declarations.

Pursuant to this endorsement, the insurer remitted a check in the amount of the cost to tear off and replace the damaged composi-tion shingles with new ones, less a deductible for depreciation of the existing composition shingles. The insureds rejected the insurer's remit-tance and demanded that payment also include the cost to tear off and replace the wood shingles beneath the composition roof with wood decking.

The insureds claimed the policy provided such coverage because the wood shingles would otherwise become a non-nailable surface once the composition shingles were torn off. The insurer agreed that the removal of the composition shingles would destroy the structural integrity of the wood shingles to the extent the wood shingles could not be reused as decking but nonetheless denied the insureds' claim.

So the issue boiled down to who had the better explanation through the use of applicable policy language. On this point, the insurer maintained that, under the facts of this case, the policy terminology "for risks of direct physical loss" limited its liability for the insureds' loss solely to the composition shingles. It also submitted that this provision excluded from coverage the damage to wood shingles that would result when the composition shingles were removed.

The insureds, on the other hand, argued that they had a "nailable surface" immediately before the hailstorm and that such "nailable surface" would be destroyed when the old composition shingles were removed. Thus, the insureds argued, there was a clear "risk of direct physical loss" to the wood shingles underlying the composition shingles as the result of the covered peril of hail.

The insureds therefore maintained that the insurer owed them not only the cost of tearing off the composition shingles, but also the cost to re-deck the roof. The appeals court agreed that the policy was unambiguous and that coverage was provided for the disputed loss.

Quite truthfully, the insureds' argument appears to be more convincing than the insurer's, since there was a risk of direct physical loss to the wood shingles underlying the composition shingles. While it is somewhat of an innovative approach, it should be made clear that this is not the first such case that has held for coverage based on the policy reference to "risks of direct physical loss."

## Other cases

Another case involving a homeowners policy is *Widdows v. State Farm Florida Insurance Company* (920 So.2d 149; Dist. Ct. App. FL 2006). The named insured (home owner) brought an action against his insurer seeking coverage for an abnormality of a drainpipe, which impeded the flow of water through the pipe.

The home owner called a plumber to repair a backed-up toilet. During his investigation, the plumber discovered that the drainpipe connecting the toilet to the sewer pipe had become "backpitched," thereby impeding the flow of water. Because the pipe was beneath the slab, the plumber could not determine the exact cause.

Among the possible causes advanced by the plumber were settlement under the pipe, erosion or sinkhole. He eventually concluded that the condition was neither a construction defect nor the result of erosion caused by a leak in the plumbing system.

The lower court ruled against providing coverage because there was no evidence of damage from the obstructed toilet and, therefore, no direct physical loss. Even if physical loss were to be sufficiently proved, the court said that the policy exclusion of earth movement applied.

The appeals court overruled the trial court, holding that the abnor-mality of the pipe was considered a physical loss because the policy language did not make it necessary to establish any damage resulting from this condition.

This court also held that while the abnormality of a drainpipe could be a physical loss, there was no reason why one could not also maintain—without stretching the point too much—that such a condition also is considered covered as a "risk of physical loss or damage."

Some of these cases are finding their way into commercial property policies as well. One such case is *Customized Distribution Services v. Zurich Insurance Co.* (862 A.2d 560 Sup. Ct. N.J. App. Div. 2004).

Customized Distribution Services (CDS) was sued by Campbell Soup Company for failure to rotate and ship a beverage that CDS was storing in its warehouse. Campbell claimed that CDS's failure to rotate and ship the product before its expiration date forced Campbell to sell the product at less than 50% of its original value. CDS then sought coverage for the loss under a warehousemen's liability policy that provided coverage for "'loss' caused by a 'covered cause of loss' to 'covered property.'" The policy defined "covered causes of loss" to mean "risk of direct, physical 'loss' to 'covered property'…" unless excluded. The policy excluded coverage for loss resulting from a "delay, loss of use, loss of market, or any other consequential loss."

The insurer denied coverage, maintaining that the product had not actually expired, but merely that the period had passed during which the product could be distributed at full market value. According to the insurer, there was no direct physical loss. The appeals court disagreed. One reason was that the term "risk" in the policy provision with respect to "risks of direct physical loss" supported the view that the policy did not require that there be actual physical damage or alteration of the material composition of the packaging.

## Summing up

Considering cases like these, where courts hold that "risks of direct physical loss or damage" or "risks of physical loss or damage" do not require that there be any actual physical damage but simply the threat of damage, there soon may be the impetus for some subtle policy changes.

Instead of referring to "risks of direct physical loss," it may be better for insurers to amend their policies to state that that coverage applies to direct physical loss or damage to covered property from a covered cause (or all covered causes), not hereinafter excluded or limited. (Some insurers have already taken similar precautions, with some even going so far as to avoid reference to "physical loss or damage" because of its potential for ambiguity.)

Otherwise, given the interpretation of these terms by the courts in the cases discussed here, the momentum to find coverage in the absence of direct physical loss or damage may increase. These changes should be of interest to producers. Insurance buyers, on the other hand, are not likely to care how the policy wording changes until it directly affects them. *

### The author
*Donald S. Malecki, CPCU, has spent 48 years in the insurance and risk management consulting business. He currently is a principal of Malecki Deimling Nielander & Associates L.L.C., an insurance, risk and management consulting business.*

©**The Rough Notes Company**. No part of this publication may be reproduced, translated, stored in a database or retrieval system, or transmitted in any form by electronic, mechanical, photocopying, recording, or by other means, except as expressly permitted by the publisher. For permission contact Samuel W. Berman.