# EXHIBIT 21

## Gibboney, Thomas

| From: | Newman, Loretta F. |
|---|---|
| Sent: | Tuesday, April 18, 2006 12:09 PM |
| To: | Pineda, John P. |
| Cc: | Podoshen, Lawrence; Pinnaro, Sally; Gibboney, Thomas; Scarazzini, Louis J.; Bellanca, Reid J. |
| Subject: | RE: Biological Contamination |
| Importance: | High |

*see LI-CF-2006-175,176    dtd 7/6/06   CP01750706*

Please **do not** use this draft. We are **not** going forward with it for Commercial Property. Instead, we're working on a virus/bacteria exclusion for accelerated filing action, and will likely forgo intro of a general contamintion exclusion until the pollution exclusion is revised. FYI to complete the picture -- our general m/s revision will address errors in production, which have an impact on losses related to adulteration.

| From: | Gibboney, Thomas |
|---|---|
| Sent: | Tuesday, April 18, 2006 11:59 AM |
| To: | Pineda, John P. |
| Cc: | Podoshen, Lawrence; Pinnaro, Sally; Newman, Loretta F. |
| Subject: | FW: Biological Contamination |

Here are the latest draft exclusion and a draft EM. These documents have not been finalized.

<< File: Contam Excl.DOC >>  << File: Contam EM.doc >>

Tom

From: Podoshen, Lawrence
Sent: Tuesday, April 18, 2006 11:38 AM
To: Gibboney, Thomas
Cc: Pineda, John P.
Subject: FW: Biological Contamination

Tom, see below. The Multistate status report says you are working on this module - do you have anything we can send over to John in GL?

From: Pineda, John P.
Sent: Tuesday, April 18, 2006 11:27 AM
To: Podoshen, Lawrence
Subject: Biological Contamination

Hi Larry,

I am working on a Biological Contamination Item for our next GL panel meeting. I was wondering if your area has a copy of the Draft mentioned in the attached document. Thank you.

John P. Pineda
(201) 469-2867
<< File: DCF5002p.DOC >>

*Bio Contam 4/06*

1

ISO_00004699

# Contamination Exclusion

## Introduction

This filing introduces a new exclusion specific to naturally occurring or man-made contamination.

Some examples of contamination of property include:

♦ Growth of listeria bacteria in milk;

♦ Bacterial contamination of meat processing equipment;

♦ Contamination of office equipment and/or products by anthrax or by a virus such as Severe Acute Respiratory Syndrome (SARS) or Avian Influenza.

♦ Adulteration of a product by intentional introduction of inorganic or inert materials.

## Background

Prior to the introduction of the pollution exclusion circa 1986, Property policies had addressed "contamination" within the exclusion of "rust, mold, wet or dry rot".

The pollution exclusion is constructed as an extremely broad exclusion intended to encompass contamination. In recent years, however, there has been a trend to treat various subjects ("hot" topics, emerging exposures or frequently-encountered types of loss) with more focused exclusions. Examples are the mold exclusion in Property and Liability policies and a General Liability exclusion (recently filed) addressing silica dust. The "laser" treatment may enhance an insured's understanding of the policy and avert claims disputes and litigation.

Several current exclusions figure into the analysis of the policy's response to various types of contamination losses:

♦ Pollution exclusion;

♦ Dampness or dryness of atmosphere; changes in or extremes of temperature;

♦ Any quality in property that causes it to damage or destroy itself;

♦ "Fungus", Wet Rot, Dry Rot And Bacteria, subject to the Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot and Bacteria; however, that exclusion and the related Additional Coverage have been revised in a related filing to delete reference to Bacteria because that cause of loss is more specifically addressed in this filing.

© ISO Properties, Inc., 2005

## Explanation of Changes

We are adding a new exclusion to specifically address the risk of loss due to contamination.

## Impact

This change is a reduction in coverage.

## Revised Forms

CP 10 10 04 02 - Causes of Loss - Basic Form

CP 10 20 04 02 - Causes of Loss - Broad Form

CP 10 30 04 02 - Causes of Loss  - Special Form

CP 00 70 04 02 - Mortgageholders Errors and Omissions Coverage Form

CP 00 99 04 02 - Standard Property Policy

## Related Filings

- ◆ "Fungus", Wet Rot, Dry Rot And Bacteria exclusion and Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria;
- ◆ Product Errors Exclusion
- ◆ Food Contamination

© ISO Properties, Inc., 2005

CONFIDENTIAL                                                                    ISO_00004701

## Draft of Contamination Exclusion

B.2. We will not pay for loss or damage caused by or resulting from any of the following:

Contamination or threat of contamination, whether naturally-occurring, or induced by conditions intrinsic or extrinsic to property, or engineered, of any Covered Property by any:

      a. Ppathogenic or poisonous biological agent, including but not limited to viruses and bacteria, ~~whether naturally-occurring, or induced by conditions intrinsic or extrinsic to property, or engineered.~~; or

      b. Inorganic or inert material introduced with intent to reduce the value or usefulness of the Covered Property.

But if such contamination results in fire, we will pay for the loss or damage caused by that fire.

With respect to any loss or damage to which this exclusion applies, this exclusion supersedes the exclusion relating to "pollutants".

This exclusion does not apply to "fungus" or wet or dry rot~~[, or to bacteria when involved in an occurrence of loss or damage by "fungus" or wet or dry rot]~~. A separate exclusion applies to ~~[such occurrences]~~ loss or damage from such conditions.***

~~***STAFF COMMENT:  We are considering revision to the Exclusion and Additional Coverage relating to "fungus, wet rot, dry rot or bacteria", to remove reference to bacteria in light of the breadth and terminology of the contamination exclusion.  Concomitantly, the last paragraph of the contamination exclusion would be revised to eliminate the bracketed [   ] text and add the text that follows the second set of brackets.~~

NOTES:
- Added loss due to *threat* of contamination.
- Added a new category to exclude loss of value or usefulness when someone *intentionally* (e.g., Vandalism or domestic terrorism) introduces an *inorganic* ingredient that reduces the value of the Covered Property by adulteration or results in other loss or damage.  The Special Causes of Loss form allows pollution caused by vandalism (as a specified cause of loss).  Do we want to do the same here?
- Assumed the previous insertion of "or induced by conditions intrinsic or extrinsic to property" is accepted; made that applicable to both organic and inorganic contamination.
- Added "any Covered Property" per minutes of September CPP.
- Deleted reference to bacteria in the exception, assuming the other exclusion and additional coverage will be revised in a related filing.
- No impact on Rules.

CONFIDENTIAL

ISO_00004702

Multistate Module

Contamination Exclusion

NOTES:

1. Question that relates to companion change to "Fungus".  Is it a "related filing" or part of the multistate?

2. See sample page from CF-2001-O01FR.  Should we insert caption of form titles/numbers affected.

3. I believe we need to change "Related Filings" to "Related Forms" if these changes are part of the multistate.

4. "Impact" - Since the existing Pollution exclusion is intended to encompass contamination, I believe we should state, "There is no change in coverage".

5. Revised Forms - Use new edition dates (XX 06 for now).  Do we have a proposed Effective Date in mind yet?

6. Exclusion Draft - Tom indicated 2 concepts not addressed by Panel that I believe warrant consideration.  One is should we include "threat of contamination", and the other is whether we should "give back" coverage for contamination resulting from vandalism.

Aside from these questions, I only had minor editorial comments on the exclusion draft.

*not going forward w/Contamination exclusion*

♦ Exclusion of loss caused by continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more

♦ Exclusion of faulty design, specifications, workmanship, construction, repair or materials

In some claims involving mold, there is an attempt to circumvent these exclusions by characterizing the loss as a covered water damage loss. We are making various revisions, as described in the next section, in an effort to support existing exclusions and to mitigate an exposure that is increasing to an unacceptable level.

## Explanation of Changes

### Causes of Loss Forms CP 10 10, CP 10 20, CP 10 30 and Coverage Forms CP 00 70 and CP 00 99

The revisions outlined below are described in the context of CP 10 30, the Causes of Loss - Special Form. Equivalent revisions are being made under named perils forms CP 10 10 and CP 10 20 and coverage forms CP 00 70 and CP 00 99.

♦ The exclusion pertaining to continuous or repeated seepage/leakage is revised to refer to the presence or condensation of humidity, moisture or vapor. This revision is in line with the exclusion's function in excising coverage for water damage that develops over time. It is also consistent with the exclusion of faulty design, construction, etc., to the extent that such problems lead to the accumulation of moisture.

♦ Today's fungus exclusion also deals with rust, corrosion, decay, deterioration, hidden or latent defect and any quality in property that causes it to damage or destroy itself. This exclusion is revised by removing reference to fungus. Further, the term rust is elaborated by referring to rust and other corrosion; this associates rust with corrosion as opposed to plant rust, which is a form of fungus.

♦ Fungus (which is newly defined and encompasses mold) and bacteria are addressed in a separate exclusion, which is made subject to anti-concurrent causation lead-in language. The terms wet and dry rot are also used in the exclusion (instead of being part of the definition of fungus) due to their wide recognition. Hereafter in this explanatory memorandum, the term mold will be used as shorthand instead of repeatedly referring to *fungus, wet and dry rot and bacteria*. The exclusion does not apply to the extent that limited coverage for mold is provided in an Additional Coverage, discussed below. The exclusion and limited coverage do not apply when mold results from fire or lightning; that claims scenario has not proved to be problematic.

© ISO Properties, Inc., 2001

CONFIDENTIAL

ISO_00004704

*po SP N434*

*Contamination Exclusion + Product Errors Exclusion.*

# Contamination Exclusion

*Tom 11/22*

## Introduction

This filing introduces a new exclusion specific to naturally occurring or man-made contamination.

Some examples of contamination of property include:

♦ Growth of listeria bacteria in milk;

♦ Bacterial contamination of meat processing equipment;

♦ Contamination of office equipment and/or products by anthrax or by a virus such as Severe Acute Respiratory Syndrome (SARS) or Avian Influenza.

♦ Adulteration of a product by intentional introduction of inorganic or inert materials.

## Background

Prior to the introduction of the pollution exclusion circa 1986, Property policies had addressed "contamination" within the exclusion of "rust, mold, wet or dry rot".

The pollution exclusion is constructed as an extremely broad exclusion intended to encompass contamination. In recent years, however, there has been a trend to treat various subjects ("hot" topics, emerging exposures or frequently-encountered types of loss) with more focused exclusions. Examples are the mold exclusion in Property and Liability policies and a General Liability exclusion (recently filed) addressing silica dust. The "laser" treatment may enhance an insured's understanding of the policy and avert claims disputes and litigation.

Several current exclusions figure into the analysis of the policy's response to various types of contamination losses:

♦ Pollution exclusion;

♦ Dampness or dryness of atmosphere; changes in or extremes of temperature;

♦ Any quality in property that causes it to damage or destroy itself;

♦ "Fungus", Wet Rot, Dry Rot And Bacteria, subject to the Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot and Bacteria; *this* however, that exclusion and the related Additional Coverage have been revised in a related filing to delete reference to Bacteria because that cause of loss is more specifically addressed in this filing.

*Is this part of the multistate or a separate filing?*

© ISO Properties, Inc., 2005

COMMERCIAL FIRE AND ALLIED LINES
FORMS FILING CF-2005-#####

## Explanation of Changes

*[handwritten: Insert caption of form titles/numbers affected. (See example attached)]*

We are adding a new exclusion to specifically address the risk of loss due to contamination.

## Impact

*[handwritten: ? (Existing Pollution exclusion intended to encompass Contamination)]*

This change is a reduction in coverage.

## Revised Forms

*[handwritten: (use new style) xx 06 for now]*

CP 10 10 04 02 - Causes of Loss - Basic Form

CP 10 20 04 02 - Causes of Loss - Broad Form

CP 10 30 04 02 - Causes of Loss - Special Form

CP 00 70 04 02 - Mortgageholders Errors and Omissions Coverage Form

CP 00 99 04 02 - Standard Property Policy

## Related Filings *[handwritten: Items? (Smaller caption)]*

- ♦ "Fungus", Wet Rot, Dry Rot And Bacteria exclusion and Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria;

- ♦ Product Errors Exclusion

- ♦ Food Contamination

*[handwritten: Same question as before - Are these part of the multistate or a separate filing?]*

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00004706

## Draft of Contamination Exclusion

B.2. We will not pay for loss or damage caused by or resulting from ~~any of the following:~~

Contamination <u>or threat of contamination, whether naturally-occurring, or induced by conditions intrinsic or extrinsic to property, or engineered, of any Covered Property</u> by any:

<u>a. P</u>~~p~~athogenic or poisonous biological agent, including but not limited to viruses and bacteria, ~~whether naturally-occurring, or induced by conditions intrinsic or extrinsic to property, or engineered.~~; or

<u>b. Inorganic or inert material introduced with intent to reduce the value or usefulness of the Covered Property.</u>

But if such contamination results in fire, we will pay for the loss or damage caused by that fire.

With respect to any loss or damage to which this exclusion applies, this exclusion supersedes the exclusion relating to "pollutants".

This exclusion does not apply to "fungus" or wet or dry rot~~[, or to bacteria when involved in an occurrence of loss or damage by "fungus" or wet or dry rot]~~.  A separate exclusion applies to ~~[such occurrences]~~ loss or damage from such conditions.***

~~***STAFF COMMENT:  We are considering revision to the Exclusion and Additional Coverage relating to "fungus, wet rot, dry rot or bacteria", to remove reference to bacteria in light of the breadth and terminology of the contamination exclusion.  Concomitantly, the last paragraph of the contamination exclusion would be revised to eliminate the bracketed [  ] text and add the text that follows the second set of brackets.~~

NOTES:
- Added loss due to *threat* of contamination. *could be a legitimate concern. no panel discussion*
- Added a new category to exclude loss of value or usefulness when someone *intentionally* (e.g., Vandalism or domestic terrorism) introduces an *inorganic* — *actually could apply to both inorganic + pathogen* ingredient that reduces the value of the Covered Property by adulteration or results in other loss or damage.  The Special Causes of Loss form allows pollution caused by vandalism (as a specified cause of loss).  Do we want to do the same here?
- Assumed the previous insertion of "or induced by conditions intrinsic or extrinsic to property" is accepted; made that applicable to both organic and inorganic contamination.
- Added "any Covered Property" per minutes of September CPP.
- Deleted reference to bacteria in the exception, assuming the other exclusion and additional coverage will be revised in a related filing.
- No impact on Rules.

CONFIDENTIAL

ISO_00004707

CONFIDENTIAL

# 1. Introduction

## 1.1   Rationale for the continued vigilance for SARS

Severe acute respiratory syndrome (SARS) was first recognized as a global threat in mid-March 2003. The first known cases of SARS occurred in Guangdong province, China, in November 2002 (1,2) and WHO reported that the last human chain of transmission of SARS in that epidemic had been broken on 5 July 2003. The etiological agent, the SARS coronavirus (SARS-CoV) (3,4,5) is believed to be an animal virus that crossed the species barrier to humans recently when ecological changes or changes in human behaviour increased opportunities for human exposure to the virus and virus adaptation, enabling human-to-human transmission (6). By July 2003, the international spread of SARS-CoV resulted in 8098 SARS cases in 26 countries, with 774 deaths (7). The epidemic caused significant social and economic disruption in areas with sustained local transmission of SARS and on the travel industry internationally in addition to the impact on health services directly. While much has been learnt about this syndrome since March 2003, our knowledge about the epidemiology and ecology of SARS-CoV infection and of this disease remains incomplete.

The natural reservoir of SARS-CoV has not been identified but a number of wildlife species – the Himalayan masked palm civet (*Paguma larvata*), the Chinese ferret badger (*Melogale moschata*), and the raccoon dog (*Nyctereutes procyonoides*) – consumed as delicacies in southern China have shown laboratory evidence of infectionn with a related coronavirus (2,8). Domestic cats living in the Amoy Gardens apartment block in Hong Kong were also found to be infected with SARS-CoV (9). More recently, ferrets (*Mustela furo*) and domestic cats (*Felis domesticus*) were infected with SARS-CoV experimentally and found to efficiently transmit the virus to previously uninfected animals housed with them (10). These findings indicate that the reservoir for this pathogen may involve a range of animal species. The masked palm civet is the wildlife species most often associated with animal-to-human transmission; however, whether the civet is the natural reservoir of SARS-like coronaviruses remains unproven. The modes and routes of inter-species transmission from animals to humans or to other animal species need further investigation.

At the time of writing in October 2004, the world is in an inter-epidemic period for SARS. At this time, the most probable sources of infection with SARS-CoV are exposure in laboratories where the virus is used or stored for diagnostic and research purposes, or from animal reservoirs of SARS-CoV-like viruses. It remains very difficult to predict when or whether SARS will re-emerge in epidemic form.

Since July 2003, there have been four occasions when SARS has reappeared. Three of these incidents were attributed to breaches in laboratory biosafety and resulted in one or more cases of SARS (Singapore (11–13), Taipei (14) and Beijing (15,16)). Fortunately only one of these incidents resulted in secondary transmission outside of the laboratory. The most recent incident was a cluster of nine cases, one of whom died, in three generations of transmission affecting family and hospital contacts of a laboratory worker. For this reason, WHO strongly urges countries to conduct an inventory of all laboratories working with cultures of live SARS-CoV or storing clinical specimens actually or potentially contaminated with SARS-CoV. WHO also recommends that each country ensures that the correct biosafety procedures are followed by all laboratories working with the SARS coronavirus and other dangerous pathogens (17) and that appropriate monitoring and investigation of illness in laboratory workers is undertaken.

CONFIDENTIAL   ISO_00004709

The fourth incident (Guangzhou, Guangdong province, China (*18–20*) resulted in four sporadic, community-acquired cases arising over a six-week period. Three of the cases were attributed to exposure to animal (*20*) or environmental sources while the source of exposure is unknown in the other case. There was no further community transmission.

These events demonstrate that the resurgence of SARS leading to an outbreak remains a distinct possibility and does not allow for complacency. In the inter-epidemic period, all countries must remain vigilant for the recurrence of SARS and maintain their capacity to detect and respond to the re-emergence of SARS should it occur.

## 1.2   Using *WHO guidelines for the global surveillance of SARS* and linked documents

This document replaces all previous WHO guidance on SARS surveillance and response.

It includes a surveillance strategy for the inter-epidemic period, once chains of human transmission of SARS-CoV have occurred, and for the period after an epidemic when human SARS-CoV transmission has been interrupted.

The WHO guidelines are aimed at the early detection and investigation of individuals with clinically apparent SARS-associated coronavirus infection i.e. **symptomatic cases only**.

These guidelines are based on the most common clinical features of SARS and the most important risk factors for infection with SARS-CoV and SARS-CoV-like viruses. WHO recognizes that SARS-CoV causes a spectrum of clinical illness from the severe form of respiratory disease after which the syndrome was named, to milder or atypical presentations of SARS which may not meet the clinical criteria defined by WHO (see section 2.4). Such cases are likely to be missed unless there is supportive epidemiological and laboratory evidence suggesting a SARS-CoV infection, and a high level of awareness about the spectrum of disease caused by the SARS coronavirus among clinicians, laboratory staff and public health professionals. Early clinical recognition of SARS poses significant challenges. Cases of SARS can easily escape early detection particularly as acute respiratory infections account for the majority of diagnoses in adults presenting to primary care. In many regions, febrile illness is also a common complaint. SARS may be initially missed due to the non-specific nature of presenting symptoms, the possibility of absence of fever on initial measurements, atypical presentations, co-morbidities masking SARS and the recognized difficulties of clinically diagnosing an atypical pneumonia.

However, adopting more sensitive (inclusive) criteria for raising the clinical suspicion of SARS (i.e. using clinical criteria for SARS that do not include radiological evidence of pneumonia) would require that SARS be considered in the differential diagnosis of a potentially large number of acute respiratory infections (ARIs) when the real risk is low. WHO is concerned that such an approach would quickly overwhelm alert, verification and response systems, especially in countries at higher risk of SARS and with a high incidence of ARIs.

The decision to exclude asymptomatic infections from global surveillance is based on epidemiological evidence that SARS-CoV is transmitted by symptomatic individuals and that asymptomatic infection poses no significant public health risk (*21–22*). Accordingly, WHO requests that countries report only symptomatic cases of SARS.

This document refers to four categories of cases -- "preliminary positive", "probable", "confirmed" and "unverifiable" cases of SARS to be used in accordance with diagnostic certainty and during relevant epidemiological phases (see section 4.1). Only individuals fulfilling one of these case definitions should be officially reported to WHO.

– 7 –

CONFIDENTIAL

ISO_00004710

# World Health Organization

# Food safety issues
# November 2005

The H5N1 avian influenza virus is not transmitted to humans through properly cooked food. The virus is sensitive to heat. Normal temperatures used for cooking (so that food reaches 70oC in all parts) will kill the virus. To date, no evidence indicates that any person has become infected with the H5N1 virus following the consumption of properly cooked poultry or poultry products, even in cases where the food item contained the virus prior to cooking. Poultry and poultry products from areas free of the disease can be prepared and consumed as usual, with no fear of acquiring infection with the H5N1 virus. As a standard precaution, WHO recommends that poultry and poultry products should always be prepared following good hygienic practices, and that poultry meat should be properly cooked. This recommendation protects consumers from some well-known and common foodborne diseases that may be transmitted via inadequately cooked poultry.

Most strains of avian influenza virus are found only in the respiratory and gastrointestinal tracts of infected birds, and not in meat. Available studies indicate that highly pathogenic viruses, including the H5N1 virus, spread to virtually all parts of an infected bird, including meat. For this reason, proper handling of poultry and poultry products during food preparation and proper cooking are extremely important in areas experiencing outbreaks of H5N1 avian influenza in poultry.

Consumers in areas with outbreaks need to be aware of the risks of cross-contamination between raw poultry and other foods that will not be cooked prior to their consumption. Juices from raw poultry or poultry products should never be allowed, during food preparation, to touch or mix with items eaten raw. When handling raw poultry or raw poultry products, persons involved in food preparation should wash their hands thoroughly and clean and disinfect surfaces in contact with the poultry products. Soap and hot water are sufficient for this purpose.

In countries with outbreaks, thorough cooking is imperative. Consumers need to be sure that all parts of the poultry are fully cooked (no "pink" parts) and that eggs, too, are properly cooked (no "runny" yolkes).

The H5N1 virus can survive for at least one month at low temperatures. For this reason, common food preservation measures, such as freezing and refrigeration, will not substantially reduce the concentration of virus in contaminated meat or kill the virus. In countries with outbreaks, poultry stored under refrigeration or frozen should be handled and prepared with the same precautions as fresh products.

In countries with outbreaks, eggs may contain virus both on the outside (shell) and inside (white and yolk). Eggs from areas with outbreaks should not be consumed raw or partially cooked. Raw eggs should not be used in foods that will not be treated by heat high enough to kill the virus (70$^{\circ}$C).

To date, a large number of human infections with the H5N1 virus have been linked to the home slaughter and subsequent handling of diseased or dead birds prior to cooking. These practices represent the highest risk of human infection and are the most important to avoid. Proper handling and cooking of poultry and poultry products can further lower the risk of human infections.

For more information

Highly pathogenic H5N1 avian influenza outbreaks in poultry and in humans: Food safety implications [pdf 47kb]
Avian influenza: food safety issues
Five keys to safer food

CONFIDENTIAL                                                                                  ISO_00004711

**in·or·gan·ic** (ĭn′ôr-găn′ĭk)
*adj.*

1.
    **a.** Involving neither organic life nor the products of organic life.
    **b.** Not composed of organic matter.
2. *Chemistry* Of or relating to compounds not containing hydrocarbon groups.
3. Not arising in normal growth; artificial.
4. Lacking system or structure.

**in′or·gan′i·cal·ly** *adv.*

The American Heritage® Dictionary of the English Language, Fourth Edition copyright ©2000 by Houghton Mifflin Company. Updated in 2003. Published by Houghton Mifflin Company. All rights reserved.

CONFIDENTIAL                                                                                   ISO_00004712

**in·ert** ◁ (ĭn-ûrt′)
*adj.*
1. Unable to move or act.
2. Sluggish in action or motion; lethargic. See Synonyms at inactive.
3. *Chemistry* Not readily reactive with other elements; forming few or no chemical compounds.
4. Having no pharmacologic or therapeutic action.

[Latin iners, inert-: in-, *not*; see **in-**[1] + ars, *skill*; see ar- in Indo-European roots.]

**in·ert′ly** *adv.*

**in·ert′ness** *n.*

The American Heritage® Dictionary of the English Language, Fourth Edition copyright ©2000 by Houghton Mifflin Company. Updated in 2003. Published by Houghton Mifflin Company. All rights reserved.

CONFIDENTIAL                                                                                    ISO_00004713



ISOnet Products/Services        Help

New Search

1 to 18 of 18 Forms F

| View Forms | | |
|---|---|---|
| Form Number | | Title |
| PDF | WORD | |
| CP 01 62 06 02 | | TEXAS - LIMITATIONS ON FUNGUS, WET ROT, DRY ROT AND BACTERIA |
| CP 01 62 07 05 | | TEXAS - LIMITATIONS ON FUNGUS, WET ROT, DRY ROT AND BACTERIA |
| CP 01 71 09 02 | | LIMITATIONS ON FUNGUS, WET ROT, DRY ROT AND BACTERIA    *chng limit*    *Active mu* |
| CP 04 31 04 02 | | CHANGES - FUNGUS, WET ROT, DRY ROT AND BACTERIA |
| CP 01 63 10 05 | | TEXAS - MODIFIED LIMITATIONS ON FUNGUS, WET ROT, DRY ROT AND BACTERIA |
| CP 01 31 11 03 | | GEORGIA CHANGES |
| CP 10 10 04 02 | | CAUSES OF LOSS - BASIC FORM |
| CP 10 20 04 02 | | CAUSES OF LOSS - BROAD FORM |
| CP 10 30 04 02 | | CAUSES OF LOSS - SPECIAL FORM |
| CP 15 31 04 02 | | ORDINANCE OR LAW - INCREASED PERIOD OF RESTORATION |
| CP 00 70 04 02 | | MORTGAGEHOLDERS ERRORS AND OMISSIONS COVERAGE FORM |
| CP 00 99 04 02 | | STANDARD PROPERTY POLICY |
| CP 04 43 10 05 | | MINNESOTA CHANGES - FUNCTIONAL BUILDING VALUATION |
| CP 04 06 04 02 | | ORDINANCE OR LAW COVERAGE - VIRGINIA (BROAD FORM) |
| CP 01 08 10 05 | | MINNESOTA CHANGES |
| CP 04 05 04 02 | | ORDINANCE OR LAW COVERAGE |
| CP 00 10 04 02 | | BUILDING AND PERSONAL PROPERTY COVERAGE FORM |
| CP 00 17 04 02 | | CONDOMINIUM ASSOCIATION COVERAGE FORM |

Result Page: 1

*Seorch: Bacteria*

New S

Go To Top

CONFIDENTIAL                                                                                                ISO_00004714

## Gibboney, Thomas

| | |
|---|---|
| **From:** | Newman, Loretta F. |
| **Sent:** | Thursday, October 20, 2005 3:14 PM |
| **To:** | Gibboney, Thomas |
| **Cc:** | Pinnaro, Sally |
| **Subject:** | Filing Module - Multistate Revision - Biological Contamination and Errors in Production |
| **Sensitivity:** | Private |

Refer to the September 28 CPP agenda and minutes on the captioned topic (CPP -2005-008). After acquainting yourself with the material, let's discuss. There are still changes to be made to the text, as indicated in the minutes; that will be done in the course of your development of the filing module.

Loretta Newman, CPCU
Manager
Commercial Fire And Allied Lines
Insurance Services Office, Inc.
545 Washington Boulevard, Jersey City, NJ 07310-1686
(201) 469-2582  FAX 201.748.1873
E-mail: LNewman@iso.com
Visit our web site at http://www.iso.com

1

CONFIDENTIAL

ISO_00004715

Meeting of September 28, 2005

Commercial Property Panel
Agenda CPP-2005-008

# CPP-2005-008  Biological Contamination And Errors In Production

## INTRODUCTION

In this item, ISO staff continues with the development of additional exclusionary language in the Causes of Loss - Special Form to address: (1) biological contamination of property; and (2) property damage caused by production errors.

## REFERENCE

- CPP-2004-001, Teleconference of December 9, 2004

## BACKGROUND AND UPDATE

### Contamination of Property

Prior to the introduction of the pollution exclusion circa 1986, Property policies had addressed "contamination" within the exclusion of "rust, mold, wet or dry rot".

In 1992, the Commercial Property Committee (forerunner to the CPP) discussed the advisability of reinstating a separate contamination exclusion (apart from the pollution exclusion) in Property policies. That discussion (which was prompted by a claim that involved the growth of listeria bacteria in milk) included consideration of the efficacy of the words " discharge, dispersal, seepage, migration, release or escape" (in the pollution exclusion) in precluding coverage for contamination of products and property. It was concluded that, at the time, it was not necessary to modify Property policies.

The pollution exclusion is constructed as an extremely broad exclusion intended to encompass contamination. In recent years, however, there has been a trend to treat various subjects ("hot" topics, emerging exposures or frequently-encountered types of loss) with more focused exclusions. Examples are the mold exclusion in Property and Liability policies and a General Liability exclusion (recently filed) addressing silica dust. The "laser" treatment may enhance an insured's understanding of the policy and avert claims disputes and litigation.

Some examples of contamination of property include:

- The aforementioned growth of listeria bacteria in milk;
- Bacterial contamination of meat processing equipment;
- Contamination of office equipment and/or products by anthrax or by a virus such as SARS.

Several current exclusions figure into the analysis of the policy's response to various types of contamination losses:

(1) Pollution exclusion;
(2) Dampness or dryness of atmosphere; changes in or extremes of temperature;
(3) Any quality in property that causes it to damage or destroy itself.

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00004716

# CPP-2005-008  Biological Contamination And Errors In Production

In the interest of stimulating discussion on whether a "biological contamination" exclusion is needed, and to illustrate the concept, **ISO staff presented a preliminary draft in the Agenda for the December, 2004 teleconference.** In addition, we commented that, in assessing the efficacy of an exclusion of biological contamination, it is necessary to consider the effect, if any, of the current Additional Coverage - Limited Coverage For Fungus, Wet Rot, Dry Rot And Bacteria under Special Causes of Loss Form CP 10 30.

Several panel members commented favorably on the concept of a contamination exclusion. In discussion, a panel member expressed the opinion that the terminology used in the preliminary draft might not be sufficiently broad to encompass contamination by listeria bacteria (an example of contamination mentioned in the Agenda).

**Since the December 2004 Panel meeting, ISO staff has made refinements to the draft; refer to the attachment.**

## Errors in Production

Errors in production can result in contamination. However, excluding errors in production transcends contamination. An error may lead to various outcomes. An error in the production process is a business risk; it is not a "peril" intended to be insured under standard Commercial Property contracts. The current exclusion of faulty workmanship has been generally held to apply to losses involving construction.

Following are several examples of property damage due to errors in production:

- Contamination of food products by foreign matter (e.g., nut clusters contaminated by wood chips);
- Use of a wrong ingredient (e.g., salt instead of sugar);
- Wrong measure of a particular element (e.g., in the production of cement);
- Wrong blending of wines.

The basis for some claims of this type has been alleged contamination of the product or the need to destroy a now-useless product (alleged to be physical loss to stock). The latter basis represents a broad and non-traditional interpretation of the concept of physical damage.

In the interest of stimulating discussion on whether an "errors" exclusion is needed, and to illustrate the concept, **ISO staff presented a preliminary draft in the Agenda for the December, 2004 teleconference.**

Several panel members commented favorably on the concept of an errors exclusion. In discussion, these panel members expressed the opinion that the terminology used in the preliminary draft would benefit from elaboration concerning the stages of production and source of the error. A panel member also advised consideration of including coverage for ensuing explosion; the preliminary draft ran only to ensuing fire.

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00004717

Meeting of September 28, 2005

Commercial Property Panel
Agenda CPP-2005-008

## CPP-2005-008  Biological Contamination And Errors In Production

> Since the December 2004 Panel meeting, ISO staff has made refinements to the draft; refer to the attachment.

**AUTOMATED SYSTEMS IMPACT**
Low (text change)

**STATISTICAL PLAN IMPACT**
To be determined

**ATTACHMENT**
- Revised drafts of contamination exclusion and errors exclusion

**REQUEST FOR ADVICE FROM PANEL MEMBERS**
Panel members are asked to comment on the revised drafts.

CONFIDENTIAL

Agenda CPP-2005-008, Meeting of September 28, 2005
Attachment

## Draft of Contamination Exclusion
### (difference between the original draft and new draft is shown in bold)

We will not pay for loss or damage caused by or resulting from any of the following:

Contamination by any pathogenic or poisonous biological agent, including but not limited to viruses and bacteria, whether naturally-occurring, **or induced by conditions intrinsic or extrinsic to property,** or engineered. But if such contamination results in fire, we will pay for the loss or damage caused by that fire.

With respect to any loss or damage to which this exclusion applies, this exclusion supersedes the exclusion relating to "pollutants".

This exclusion does not apply to "fungus" or wet or dry rot[, or to bacteria when involved in an occurrence of loss or damage by "fungus" or wet or dry rot]. A separate exclusion applies to [such occurrences] loss or damage from such conditions.***

***STAFF COMMENT:** We are considering revision to the Exclusion and Additional Coverage relating to "fungus, wet rot, dry rot or bacteria", to remove reference to bacteria in light of the breadth and terminology of the contamination exclusion. Concomitantly, the last paragraph of the contamination exclusion would be revised to eliminate the bracketed [   ] text and add the text that follows the second set of brackets.

## Draft of Errors Exclusion

Original Draft
We will not pay for loss or damage to a product caused by or resulting from error in any stage of the production or processing of that product. This exclusion encompasses any effect that compromises the form, substance or quality of the product. But if such error results in fire, we will pay for the loss or damage caused by that fire.

Revised Draft
We will not pay for loss or damage to a product caused by or resulting from error by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion encompasses any effect that compromises the form, substance or quality of the product. But if such error results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

© ISO Properties, Inc., 2005

Page CPP-2005-008-4

CONFIDENTIAL

ISO_00004719

Meeting of September 28, 2005

Commercial Property Panel
Minutes CPP-2005-008

## CPP-2005-008  Biological Contamination And Errors In Production

### PANEL DISCUSSION

The contamination exclusion is intended to encompass contamination of any Covered Property, including premises and products. A panel member commented that this point needs to be made explicit in the text of the exclusion.

### STAFF NOTE

ISO staff will take this into consideration in finalizing the text of the exclusion. We do not anticipate seeking further input from the panel.

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00004720

electromagnetic energy generated or emitted by any source.

b. Solar flares or any naturally occurring, induced, or man-made phenomenon or activity in or outside the atmosphere, that disrupts power supply or communication supply, including those delivered by satellite.

But if any of the events in a. or b. above results in fire, we will pay for the loss or damage caused by that fire.

Food Contamination

We probably should go ahead and split food poisoning from communicable disease in the definition.

B. For the purposes of this endorsement, "food contamination" means:

1. An incidence of food poisoning to one or more of your customers as result of:

   a. Tainted food you purchased; or
   b. Food which has been improperly stored, handled or prepared.

2. Transmission of a communicable disease by or through one or more of your employees or agents.

MLPDC

Under Rule 3. Who May Be Insured, A.1.a we might include other organizations such as LLCs:

   a. An individual, partnership, factor, corporation, or other legal entity, or any combination of these.

Under B. Location, what is a "noncommunicating building"? Should it say something else?

In D.3.f., should the rule say "recognizing" instead of "recognizable"?

Biological Contamination/Errors in Production

I fear that the targeted exclusion approach to these topics could backfire by being overly-specific. I think I would prefer to put contamination in Pollution and Errors in faulty workmanship.

Do we want to exclude contamination from anthrax and SARS-type losses (vandalism/terrorism)?

Do we need to address contamination by a substance that is not biological, i.e. it's inert and/or not a health hazard? Suppose, for example, after a product is manufactured, someone accidentally uses an incorrect ingredient. In the example of using salt instead of sugar, after the product is sold, is that resulting loss in value considered Biological Contamination? an Error in Production? The revised draft of the Errors exclusion seems to go beyond errors in production by including errors in use, maintenance, and repair.

Did you consider and reject expanding the existing definition of Pollutants to encompass something like, "...the presence or growth of any unintended, pathogenic or poisonous substance..."? If not in the definition of pollutants, I'd recommend changing the first sentence of the new Contamination exclusion to: "Contamination by the presence or growth of any unintended..."

I agree that it would be appropriate to move bacteria out of the existing fungus and rot exclusion if it is our intent to exclude it under contamination.

For Errors, we could add the wording to section c. Faulty, inadequate or defective:

9/27/2005

(5)  development, production or use of a product, including planning, testing, processing, packaging, installation or repair by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced);

<u>Civil Authority</u>

I think an insured would have a reasonable expectation of coverage if ordered to cease business by a government authority.

Is it our intention to limit coverage both before and after a direct loss?  The current and proposed wording only deal with orders during or after a direct loss, not with a precautionary evacuation.

Narrowing the affected area to one mile from the insured location could tend to discourage an insured to take steps to protect his or her property (e.g., boarding up windows) if a hazard, for example a hurricane, is not predicted to be that close.  Is the draft provision saying there would be no coverage if actual damage is more than a mile away?  It seems to be in the insurer and the insured's interests to cover additional expenses to evacuate and maintain business under those circumstances.

Besides, many businesses can't reopen if the public and its employees aren't allowed back in.

Perhaps a 10 mile limit would be a good compromise.  Otherwise, I think we should assume there's a good reason for the order and honor it.

Tom Gibboney, CPCU
Commercial Fire & Allied Lines
Insurance Services Office
545 Washington Blvd
Jersey City, NJ 07310-1686
Phone: 201-469-2594
Email: tgibboney@iso.com
Visit our website at http://www.iso.com

9/27/2005

CONFIDENTIAL

EIP-2005-002B                    Attachment
Minutes                          June 21, 2005

| New or Changed | Emerging Issue Description | Status |
|---|---|---|
| | number of days of intense rainfall per year has been increasing steadily. Some scientists predict that the world's weather will become more violent and a major business risk. Insurers have been hit by a run of climate-related disasters such as the four hurricanes that devastated homes and businesses in Florida and last year. Concern about the Greenhouse Effect has already helped drive new markets for weather derivatives.<br><br>Plaintiffs could attempt to file cases before the United Nation's International Court of Justice or before the World Trade Organization to recover damages from carbon dioxide emissions, including the liability of power companies to keep up with a changing environment and D&O suits against directors who did not order their companies to reduce emissions | *Participant; $CO_2$ a pollutant?* |
| | **Contamination** – The anthrax attacks and SARS epidemics bring up issues of contamination and clean-up. Contamination of property is also related to errors in production and processes. | ISO staff developed preliminary drafts of a biological contamination exclusion and an errors-in-production exclusion. Following discussion with the Commercial Property panel on December 9, 2004, we are in the process of refining those drafts and will seek further input during 2005. |
| | **EMP Bombs** – In addition to NBC, European insurers are attempting to exclude terrorism attacks using electromagnetic-pulse devices from their contracts with European airlines. High powered electromagnetic pulse bombs produce a very short but intense electromagnetic shock wave, which can be sufficiently strong to transmit thousands of Volts to exposed electrical conductors, such as wires or printed circuit boards. The damage inflicted is | An item was brought to the Commercial Property Panel on December 9, 2004. ISO staff is conducting further research on updating current exclusionary provisions to more explicitly address this exposure.<br><br>*drafted 9/05 CPP* |

© ISO Properties, Inc., 2005

Page EIP-2005-002B-2

CONFIDENTIAL

ISO_00004723

# The Total Recall
# Brand Protection Policy

*cc: food contamination*

October, 1999

## Underwriters at Lloyd's of London

**1. INTRODUCTION.** Manufacturers of consumable products (food, drugs, etc.) face the risk of having their products contaminated. Such contamination may happen accidentally or it may be the result of an intentional act, meant to disrupt the company's operation or to discredit it for some reason.

One of the most famous product contamination cases in the United States happened during the 1980's when several people died because they took Tylenol capsules that were contaminated with cyanide. As a result, the makers of Tylenol faced huge expenses in recalling their products and reforming their manufacturing process. Shortly thereafter, drug manufacturers stopped marketing drugs in capsules that could be opened.

When such an incident occurs, a manufacturer faces expenses just like Tylenol did. Certain underwriters offer a policy to cover these expenses that arise out of malicious contamination, accidental contamination, and products extortion.

**2. CONTACT:**
Control Risks Group
83 Victoria St.
London, England  SW1 0HW
44 (171) 222 1552

**3. UNDERWRITING GUIDELINES.** Not made available.

**4. AVAILABILITY OF COVERAGE.** Worldwide.

**5. LIMITS AVAILABLE/DEDUCTIBLES.** Limits are available to the extent needed by the individual insured.

**6. INSURING AGREEMENT.** Subject to the insured's payment of the premium and the deductible, the insurer agrees to *reimburse* the insured for any covered expenses incurred as a result of an "insured event" that is discovered during the policy period. The agreement goes on to list the three "insured events" covered by the policy:

    A.   *Malicious contamination.* This portion of the policy covers pre-recall expenses, recall expenses, product replacement, product rehabilitation, and loss of profits that the insured incurs due to the intentional contamination of the products that are named in the declarations.

    B.   *Accidental contamination.* This part provides coverage for recall expenses, product replacement, product rehabilitation, and loss of profits that the insured incurs due to accidental contamination of their products.

    C.   *Products extortion.* This coverage provides reimbursement for monies that the insured pays "under duress" to meet an extortion demand.

**7. DEFINITIONS.** The following terms are defined for use in the policy:

    A.   *Malicious contamination.* This is the altering or adultering of the named products, that gives the  *

CONFIDENTIAL

ISO_00004724

insured a "reasonable cause to believe" that its products have been made "unfit or dangerous" to use. The altering of the product may be actual or threatened. The act must be "intentional, malicious, and illegal."

B.    *Products extortion.* This is when the insured pays money to someone who has threatened to alter the named products, unless certain demands are met. The money must be paid away from the insured's premises and the payment must be made "under duress."

C.    *Accidental contamination.* This type of contamination occurs during the manufacturing process. It may involve blending, mixing, packaging, or labeling errors. These errors, in turn, bring about a recall because the insured believes that use of its products would lead to "bodily injury, sickness, disease, or death" of anyone using the products.

D.    *Control Risks Group.* A company that specializes in international security and crisis management. It has been hired by the underwriters to provide assistance to the insured in case of an insured event.

E.    *Pre-recall expenses.* The policy specifies two types of these expenses: the fees charged by Control Risks Group and the chemical analysis performed to determine if the insured's products have been contaminated. Such tests also "ascertain the potential effect" of malicious contamination or products extortion. The policy specifies that the deductible and coinsurance do not apply to Control Risks' fees.

F.    *Insured event.* This is what the policies insures against—malicious contamination, products extortion, or accidental contamination. The definition emphasizes that a series of malicious contaminations or products extortions constitute a single insured event, if they were "carried out in the furtherance, one of another."

G.    *Named products.* These are specified on the declarations page as the products being protected against the perils of the policy.

H.    *Contaminated products.* The "named products" that are the subject of an "insured event"—the specified products that have been contaminated or that are the subject of extortion.

I.    *Recall expenses.* These are the expenses the insured incurs because of the recall of contaminated products. Such covered expenses include:

1. Amounts spent for communications, public relations, advertising, etc.

2. Amounts spent for direct return of the products from customers. These amounts include emergency phone lines, postage, and rebates.

3. The expense to rent additional warehouse space.

4. Additional personnel, other than regular employees.

5. Extra money paid to employees as a result of the insured event.

6. Any expenses the employees in #5 incur as a result of the insured event. This does not include transportation of the employee to and from his/her normal place of work.

7. The costs to examine and "rework or destroy" the contaminated products.

Also covered as recall expenses are those incurred by a customer of the named insured. If a customer uses the insured's products in other products and must recall those products, that customer's expenses are

CONFIDENTIAL                                                                                                                                                                                                                                                                                                                    ISO_00004725

covered by this policy.

J.    *Product replacement costs.* Once the named products are destroyed, the policy covers the expenses to deliver new products to the customer, in order to minimize any loss of profits to the named insured.

K.    *Product rehabilitation.* These are expenses incurred by the insured in order to "re-establish the reputation and market share" of contaminated products. The policy provides up to 25% of the limit of liability for this coverage. This amount is included in the limit of liability.

L.    *Loss of profits.* Covered for up to 3 months after the insured event is discovered.

M.    *Territory, underwriters representative, investigating accountants, policy period, and coinsurance.* These are all specified on the declarations.

**8.    WHO IS INSURED.** The named insured.

**9.    WHAT IS INSURED.** The named insured's products are covered against certain insured events.

**10.    PERILS.** The policy covers the named insured against loss caused by malicious contamination, accidental contamination, or products extortion.

**11.    EXCLUSIONS.** The following exclusions apply:

A.    Any expenses incurred from any cause other than an insured event.

B.    Any illegal "alteration" of a competitor's products.

C.    Fraudulent or criminal acts of an officer or director.

D.    Any insured event not reported to the insurer during the policy period or within 30 days after the expiration of the policy.

E.    Any third party liability.

F.    Government bans.

G.    Any "loss of public confidence" in the named insured's products.

H.    Millennium exclusions.

I. War and nuclear.

**12.    CONDITIONS.** The following conditions apply:

A.    *Computation of Loss.* The amount of loss due to product contamination will be determined by examining the books, accounts, etc. of the named insured. The examination is conducted by the investigating accountants, named on the declarations page. The investigating accountants determine the amount due for "loss of profit" by examining the previous 12 months and making a "reasonable projection" of what profits would be in the absence an "insured event."

B.    *Products Extortion.* Before the insurer pays a ransom due to products extortion, the insured must make all possible efforts to determine if the threat to the named products was actual.

CONFIDENTIAL ISO_00004726

C.    *Pre-Recall Expenses.* While the policy does not provide automatic coverage for such expenses, the underwriters may agree to cover them if they "believe a recall is likely to take place."

D.    *Notice of Circumstances.* The insured must give notice of any loss to the control risks group.

E.    *Due Diligence.* The insured must do everything necessary to avoid or diminish covered losses, including using his/her "best endeavors" to keep knowledge of the insurance restricted.

F.    *New Products.* The insured must tell the underwriters about any new products at least 30 days prior to their introduction. New products may result in a higher premium being charge or special terms and conditions being applied.

G.    *Liquidation.* If the insured goes into liquidation, the policy ceases to afford coverage. Note: this is a substantial difference from most insurance policies where the bankruptcy of the insured has no effect upon the obligations of the insurer.

H.    *Mergers and Acquisitions.* The insured must notify the underwriters of any mergers or acquisitions regarding the control of the company or its assets. A change in control of the assets may result in an additional premium.

I.    *Continued Recall after Expiry.* If the policy expires while an insured event is in progress, the policy will continue for up to 12 months until the event is completed.

J.    *Interim Payments.* The insured may request payments during the course of an insured event at a frequency of not more than each 60 days.

K.    *Inspection and Audit.*

L.    *Other Insurance.* This policy does not apply at all if the insured has other similar coverage for the insured event.

M.    *Salvage and Recoveries.*

N.    *Subrogation.*

O.    *Arbitration.* Disputes between the insured and the insurer are referred to a "Court of Arbitration." Here, each party hires an arbitrator and the arbitrators hire an umpire. The decision of any two is binding.

P.    *Changes.*

Q.    *Assignment.* Is not allowed.

R.    *Cancellation.* Cancellation for nonpayment of premium requires a 30-day notice.

S.    *Governing Clause.* The policy specifies that it is governed by the laws of the country listed as the named insured's address.

CONFIDENTIAL    ISO_00004727

EXHIBIT B

November 10, 2004

## To the Members of the Commercial Property Panel

| **Representative** | | **Organization** |
|---|---|---|
| T. Bunnell | *Tad* | The Cincinnati Insurance Company |
| W. Gregor | *Bill* | Hastings Mutual Insurance Company |
| P. Kreger | *Peggy* | Safeco Insurance Company |
| F. Malefatto | *Frank* | OneBeacon Insurance |
| D. McCrudden | *Dan* | St. Paul Travelers |
| D. Murray | *Denise* | GNY Insurance Cos |
| L. Neuman | *Lawrence* | CNA |
| D. Savage | *Dave* | The Hartford |
| S. Vogler | *Sara* | Harleysville Mutual Insurance Company |

### Agenda
### Commercial Property Panel
### Teleconference of December 9, 2004

A teleconference of the Commercial Property Panel will be held on Thursday, December 9, 2004.

**The teleconference will begin at 2:00 P.M. (Eastern Standard Time).**  It is expected to end by 4:00 P.M.

Enclosed is the Agenda for the teleconference.

Sincerely,

George Burger, F.C.A.S., M.A.A.A.
Assistant Vice President
Commercial Fire and Allied Lines Division

<u>NOTICE</u>:  Please make sure that your company has authorized your use of this product and has complied with the requirements in the jurisdiction where you plan to use it. Refer to the Important Notice inside.

CONFIDENTIAL                                                                                          ISO_00004931

# Digest of Agenda
## Commercial Property Panel
## Teleconference of December 9, 2004

| | |
|---|---|
| **CPP-2004-001** | **Biological Contamination And Errors In Production** |

This item explores the need for additional exclusionary language in the Causes of Loss - Special Form to address: (1) biological contamination of property; and (2) property damage caused by production errors.

| | |
|---|---|
| **CPP-2004-002** | **Collapse** |

Consider various issues relating to Commercial Property's collapse coverage.

| | |
|---|---|
| **CPP-2004-003** | **Interline Endorsements** |

Staff will report on its action with regard to the maintenance of Interline (IL) endorsements.

| | |
|---|---|
| **CPP-2004-004** | **Procedural Rules** |

This item lists the Procedural Rules for the panel.

| | |
|---|---|
| **CPP-2004-005** | **Blanket Property Coverage** |

This item considers the concept of sub-limits based on values under blanket coverage.

| | |
|---|---|
| **CPP-2004-006** | **Electromagnetic "Bomb"** |

This item provides information on a new technological development and considers whether there is a need for policy changes in response to such development.

| | |
|---|---|
| **CPP-2004-007** | **Time Element - Civil Authority** |

Staff has reexamined the scope and presentation of the Civil Authority coverage under time element forms and seeks input on draft revisions.

CONFIDENTIAL



## IMPORTANT NOTICE FOR USERS OF
## ISO PRODUCTS AND SERVICES

<u>Please make sure that your company has authorized your use of this product and has complied with the requirements applicable in the jurisdiction where you plan to use it.</u>

We distribute both state-specific and multi-state products and services. We do not distribute all the multi-state products and services for use in every jurisdiction due to corporate policy, regulatory preference, or variations or lack of clarity in state laws.

We provide participating insurers with information concerning the jurisdictions for which our products and services are distributed. Even in those jurisdictions, each insurer must determine what filing requirements, if any, apply and whether those requirements have been satisfied.

Now, as in the past, all of our products and services are advisory, and are made available for optional use by participating insurers as a matter of individual choice. Your company must decide for itself which, if any, ISO products or services are needed or useful to its operation and how those selected for use should be applied. We urge that you be guided by the advice of your attorneys on the legal requirements.

### Copyright Explanation

The material distributed by Insurance Services Office, Inc. is copyrighted. All rights reserved. Possession of these pages does not confer the right to print, reprint, publish, copy, sell, file, or use same in any manner without the written permission of the copyright owner. Permission is hereby granted to members, subscribers, and service purchasers to reprint, copy, or otherwise use the enclosed material for purposes of their own business use relating to that territory or line or kind of insurance, or subdivision thereof, for which they participate, provided that:

A. where ISO copyrighted material is reprinted, copied, or otherwise used **as a whole**, it must reflect the copyright notice actually shown on such material.

B. where ISO copyrighted material is reprinted, copied, or otherwise used **in part**, the following credit legend must appear at the bottom of each page so used:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

© ISO Properties, Inc., 2004

**Edition 11-03**



**CHAIRPERSON'S STATEMENT** (The Chairperson shall read the following paragraph at the beginning of all meetings held under the auspices of ISO at which participation and discussion by any two or more insurance industry competitors is reasonably anticipated.):

All participants and ISO staff should duly note the ISO Policy Statement on Discussion at Meetings, a copy of which was transmitted to you with your agenda, if any.  If you did not receive a copy of the ISO Policy Statement, it is available now for your review.  The ISO Policy Statement reminds us that ISO corporate policy restricts decision-making and discussion.  These restrictions are designed to prevent even so much as an appearance of impropriety.  We should all be guided by the ISO Policy Statement in our discussions, and we should all take the opportunity at this time to review the ISO Policy Statement.

### INSURANCE SERVICES OFFICE, INC.
### POLICY STATEMENT ON DISCUSSION AT MEETINGS

**I.    DISCUSSION OF RATE LEVELS OR LOSS COST LEVELS**

Participants shall not discuss insurer rate levels, insurer loss cost levels, or what ISO advisory loss cost levels ought to be for any line of insurance for any jurisdiction.

**II.    DISCUSSION OF RATING OR RATEMAKING[1]**

Participants shall not discuss anything pertaining to rating or ratemaking for the stated lines of insurance in the following jurisdictions:

**A.  PRECLUDED FOR ALL LINES OF INSURANCE**

| | | | |
|---|---|---|---|
| California | Kentucky | S. Carolina | Vermont |
| Colorado | Maryland | Tennessee | Virginia |
| Illinois | New York[2] | Texas | Wyoming |

**B.  PRECLUDED FOR CERTAIN LINES OF INSURANCE**

| **Arkansas** | **Connecticut** | **Florida** | **Hawaii** |
|---|---|---|---|
| Personal Auto | Personal Auto | Personal Auto | Personal Auto |
| Homeowners | Homeowners | | Commercial Auto |
| | Personal Inland Marine | | |
| | Dwelling Fire | | |

[1]As used in this ISO Policy Statement, the terms "ratemaking" and "rating" do not include the collection, editing, and coding of data.

[2]For medical malpractice insurance in New York, discussion of rating or ratemaking is not precluded, and III. A. applies.

(Continued on next page)

CONFIDENTIAL

## III.   DISCUSSION AND DECISION-MAKING

A.   Where discussion is not precluded by I. or II., participants may advise staff on rating and ratemaking issues and on the development of policy forms, riders, endorsements, or any part thereof, and any applicable rules related thereto.  However:

   (i)   user advisory and industry liaison panels shall not have any decision-making authority; and

   (ii)   the Board of Directors shall not have decision-making authority with respect to loss costs, rates, rating plans, rating methodology, rate-related rules, or the development of any policy form, rider, endorsement, or part thereof, and any applicable rules, relating to general liability and professional liability lines of insurance.

B.   Participants and ISO staff shall not discuss the corporate policies or intentions of any insurer or other entity within the property-casualty insurance industry.  A participant's expression of opinion concerning an ISO action, product, or service in no way binds the participant's employer, either to that opinion or to adopt or not to adopt that action, product, or service.

C.   In order to protect ISO's proprietary interest in its work product, all agenda items, minutes and discussions at ISO-organized meetings are confidential.  Participants and other personnel of the participant's employer receive agenda items and minutes, and participate in discussions at meetings, with the understanding and agreement that they will keep such documents and discussions confidential.  Such documents and discussions may be shared only with such persons who, in the performance of their job duties, have a need to know the information contained therein.

D.   Unless expressly authorized, no participant may speak or act for ISO.

## IV.   OTHER PERTINENT ISO POLICIES

ISO performs its various functions in accordance with its statutory authority as a licensed or registered rating, rate service, or advisory organization and pursuant to its Certificate of Incorporation and By-Laws, which state these pertinent ISO policies:

### A.   NONADHERENCE

"No insurer shall be required, as a condition of membership, participation as a subscriber, or of purchasing services from the corporation or from any subsidiary of the corporation, to charge those rates or use those loss costs, rules or forms that are filed or issued by the corporation.  Except as may otherwise be required by law, all services of the corporation are advisory, and the corporation encourages each participating insurer to take into account its own loss experience, expenses and profit objectives, and to use its own actuarial judgments and procedures in individually determining its own rates."

### B.   NONEXCLUSION

Participation in ISO is available to any property-casualty insurer authorized to write an ISO line or subline of business in a U.S. jurisdiction.  ISO's suspension or termination of an insurer's participation may result only from the insurer's failure to pay promptly any charges properly levied.

**7-7-98 Ed.**

CONFIDENTIAL

# ISO PANELS

Comments and questions are welcomed from all ISO customers.  If you are not a panel member, you may use this form to FAX (or mail) comments or questions on any item in this agenda mailing or e-mail me at gburger@iso.com.  Panel members who will be unable to attend the meeting should call directly with comments.

Date _____

To:   George Burger, F.C.A.S., M.A.A.A.
       Assistant Vice President
       Commercial Fire and Allied Lines Division (19-2)
       Insurance Services Office, Inc.
       545 Washington Blvd.
       Jersey City, NJ 07310-1686
       FAX: (201) 469-4015

Re:   Commercial Property Panel
       Teleconference of December 9, 2004

Item Number: _____

Comment/Question: _____
_____
_____
_____
_____
_____

Item Number: _____

Comment/Question: _____
_____
_____
_____
_____
_____

Your Name        _____

Company          _____

Telephone Number _____

CONFIDENTIAL



## TELECONFERENCE MEETINGS

*General Guidelines*

1. Identify yourself each time you speak.

2. Signal the end of your comments by turning the conversation over to the meeting leader.

3. If more than one person starts to talk at the same time, the loudest voice will override the other. If you are overridden, wait until the next break in the conversation.

*Procedures*

1. The ISO Chairman will initiate the conference by taking a roll call of the Panel. Each Panel member, when called on, will be asked to acknowledge the roll call with his/her name so that all members can become familiar with his/her voice.

2. Staff will introduce each item.

3. The Chairman will ask for comments from the Panel. Please try to direct your comments to a specific person by name.

4. After all items have been discussed and there is no additional business, the Chairman will make concluding comments and sign-off.

© ISO Properties, Inc., 2004

CONFIDENTIAL

# CPP-2004-001  Biological Contamination And Errors In Production

## INTRODUCTION

Explore the need for additional exclusionary language in the Causes of Loss - Special Form to address: (1) biological contamination of property; and (2) property damage caused by production errors.

## CONTAMINATION OF PROPERTY

Prior to the introduction of the pollution exclusion circa 1986, Property policies had addressed "contamination" within the exclusion of "rust, mold, wet or dry rot".

In 1992, the Commercial Property Committee (forerunner to the CPP) discussed the advisability of reinstating a separate contamination exclusion (apart from the pollution exclusion) in Property policies. That discussion (which was prompted by a claim that involved the growth of listeria bacteria in milk) included consideration of the efficacy of the words " discharge, dispersal, seepage, migration, release or escape" (in the pollution exclusion) in precluding coverage for contamination of products and property. It was concluded that, at the time, it was not necessary to modify Property policies.

The pollution exclusion is constructed as a broad exclusion intended to encompass the universe of occurrences of pollution/contamination in accordance with its terms. In recent years, however, there has been a trend to treat various subjects ("hot" topics, emerging exposures or frequently-encountered types of loss) with more focused exclusions. Examples are the mold exclusion in Property and Liability policies and a General Liability exclusion (recently filed) addressing silica dust. The "laser" treatment may enhance an insured's understanding of the policy and avert claims disputes and litigation.

In considering this subject, keep in mind some examples of contamination of property:

*bacteria + viruses*

- The aforementioned growth of listeria bacteria in milk;

- Bacterial contamination of meat processing equipment;

- Contamination of office equipment and/or products by anthrax or by a virus such as SARS.

Several current exclusions figure into the analysis of the policy's response to various types of contamination losses:

(1) Pollution exclusion;

(2) Dampness or dryness of atmosphere; changes in or extremes of temperature;

(3) Any quality in property that causes it to damage or destroy itself.

© ISO Properties, Inc., 2004

CONFIDENTIAL

ISO_00004938

Teleconference of December 9, 2004

Commercial Property Panel
Agenda CPP-2004-001

# CPP-2004-001  Biological Contamination And Errors In Production

**In the interest of stimulating discussion on whether a "biological contamination" exclusion is needed, and to illustrate the concept, ISO staff has produced the following preliminary draft:**

*We will not pay for loss or damage caused by or resulting from any of the following:*

*Contamination by any pathogenic or poisonous biological agent, including but not limited to viruses and bacteria, whether naturally-occurring or engineered. But if such contamination results in fire, we will pay for the loss or damage caused by that fire.*

*With respect to any loss or damage to which this exclusion applies, this exclusion supersedes the exclusion relating to "pollutants".*

*This exclusion does not apply to "fungus" or wet or dry rot, or to bacteria when involved in an occurrence of loss or damage by "fungus" or wet or dry rot. A separate exclusion applies to such occurrences.*

Additional ISO Staff Comments:

• Note that the ensuing loss language above runs only to fire. The ensuing loss provision of the pollution exclusion runs to the "specified causes of loss" (fire, lightning, explosion, windstorm, hail, smoke, aircraft, vehicles, riot, civil commotion, vandalism, sprinkler leakage, sinkhole collapse, volcanic action, falling objects, weight of snow/ice/sleet, water damage - accidental discharge from a system or appliance). Further, the pollution exclusion makes an exception for an event in which release of the pollutant is caused by a "specified cause of loss". *e.g., pollutant released by explosion, aircraft, etc. etc.*

• In assessing the efficacy of an exclusion of biological contamination, it is necessary to consider the effect, if any, of the current Additional Coverage - Limited Coverage For Fungus, Wet Rot, Dry Rot And Bacteria under Special Causes of Loss Form CP 10 30. *$15,000 with higher option*

## ERRORS IN PRODUCTION

This topic, errors in production, can relate to the topic of contamination, to the extent that an error in production may lead to contamination of a product. However, the issue of excluding errors in production transcends contamination. An error may lead to various outcomes. An error in the production process is a business risk; it is not a "peril" intended to be insured under standard Commercial Property contracts. *idiot clause*

Following are several examples of property damage due to errors in production:

• Contamination of food products by foreign matter (e.g., nut clusters contaminated by wood chips);

• Use of a wrong ingredient (e.g., salt instead of sugar);

• Wrong measure of a particular element (e.g., in the production of cement);

CONFIDENTIAL

ISO_00004939

# CPP-2004-001  Biological Contamination And Errors In Production

- Wrong blending of wines.

The basis for some claims of this type has been alleged contamination of the product or the need to destroy a now-useless product (alleged to be physical loss to stock). The latter basis represents a broad and non-traditional interpretation of the concept of physical damage.

The current exclusion of faulty workmanship has been generally held to apply to losses involving construction.

**Following is a preliminary draft of an "errors" exclusion, produced by ISO staff for the purpose of illustrating the concept and stimulating discussion:**

*We will not pay for loss or damage to a product caused by or resulting from error in any stage of the production or processing of that product. This exclusion encompasses any effect that compromises the form, substance or quality of the product. But if such error results in fire, we will pay for the loss or damage caused by that fire.*

Note that the ensuing loss language above runs only to fire.

P3- Ask about a
Food Contam opt
spilt for restaurants
(like BP); health dept
cleaning!!!

## STAFF COMMENT

ISO staff requests discussion of these issues as a prelude to the possibility of further research and development efforts.

© ISO Properties, Inc., 2004

CONFIDENTIAL

ISO_00004940

*CP 10 30*

**h. "Fungus", Wet Rot, Dry Rot And Bacteria** *Exclusion*

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

1. When "fungus", wet or dry rot or bacteria results from fire or lightning; or
2. To the extent that coverage is provided in the Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

*Pollution Exclusion*

I. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **I.**, does not apply to damage to glass caused by chemicals applied to the glass.

CONFIDENTIAL                                                                 ISO_00004941

*Terror   IL-0995*

(2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

(3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.

2. If the provisions of this endorsement become applicable, such provisions:

a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to loss or damage from an incident(s) of terrorism (however defined) that occurs on or after the date when the provisions of this endorsement become applicable; and

b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

a. Use or threat of force or violence; or

b. Commission or threat of a dangerous act; or

c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

C. The following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

© ISO Properties, Inc., 2004   IL 09 95 05 04   □

CONFIDENTIAL

ISO_00004942

Teleconference of December 9, 2004                    Commercial Property Panel
                                                      Agenda CPP-2004-002

## CPP-2004-002  Collapse

### INTRODUCTION

Consider various issues relating to Commercial Property's collapse coverage.

### BACKGROUND

Collapse is excluded as a covered cause of loss except to the extent provided in the Additional Coverage - Collapse in the Broad and Special forms.  In the October, 2000 edition of the Commercial Property forms, the language of the collapse coverage grant was revised to convey what we believe was the industry's traditional intent, that coverage applies only when there is a complete falling down or caving in of the building or part of the building. This revision was drafted in response to a long history of case law that variously interpretation of collapse or expanded coverage to include imminent collapse and loss of structural integrity.  The revised forms also restated the meaning of hidden decay as we believe the industry intended it to apply to collapse coverage.

### CURRENT ISSUES

#### Exclusion versus Additional Coverage

*Falling down/caving in affects hidden decay; insect/vermin damage*

*exclusion (collapse) v. add'l covg (collapse — nature + named perils)*

The word collapse is used in both the Exclusion and Additional Coverage pertaining to this type of loss.  The exclusionary provision does not define or otherwise provide detail on the term collapse; the purpose of the exclusion is to broadly preclude coverage.  The Additional Coverage delineates the scope of collapse coverage in terms of the nature of the event (falling down; caving in) and the covered named perils.  The Additional Coverage also sets forth types of loss that are not considered to be collapse from the perspective of when **coverage** is provided for collapse.  Collapse coverage does not include coverage for imminent collapse or loss of structural integrity.  There is concern that the exclusion might be misinterpreted to apply only to collapse as that term is given effect within the Additional Coverage (falling down; caving in), and that imminent collapse and loss of structural integrity might be misinterpreted to be outside the scope of the exclusion.

#### Hidden Decay

*decay of insp'g v. subsidence due to decay of debris*

Hidden decay is a named peril in the collapse coverage grant. This peril is intended to relate only to decay of the insured property.  In an appellate case, Nationwide Mut. Ins. Co. v. Bates, 840 So.2d 349 (Fla. App. Dist. 1 2003), the court found coverage for structural damage to a home caused by the decay of construction debris underground.  Exclusionary language denying coverage for settling (which appears in the collapse provision) was held to connote normal post-construction settling and not excessive subsidence due to decay of debris.

Essentially, the issue here is not the scope of the hidden decay peril, but rather the interplay between the collapse coverage grant and the policy's earth movement exclusion, which explicitly addresses subsidence of the kind encountered in this case.  [In fact, the introductory paragraph to the collapse coverage grant indicates that the term Covered Cause of Loss includes the Additional Coverage - Collapse, thereby emphasizing that clauses that apply to Covered Causes of Loss are intended to apply to collapse as well.]

### AUTOMATED SYSTEM IMPACT

Low (text change)

© ISO Properties, Inc., 2004

CONFIDENTIAL                                          ISO_00004943

## CPP-2004-002 Collapse

### STATISTICAL IMPACT

To be determined (likely, none)

### ATTACHMENT

Excerpts from Special Form CP 10 30, including preliminary draft of Collapse revisions

### STAFF ACTION

Staff has prepared a **preliminary draft** of revised policy language, to address the issues discussed in this Agenda item. This draft is intended to illustrate the issues and focus the discussion.

### REQUEST FOR ADVICE FROM PANEL MEMBERS

Panel members are asked to discuss the issues and comment on the draft.

© ISO Properties, Inc., 2004

CONFIDENTIAL

ISO_00004944

CPP-2004-002
Agenda

Attachment 1
December 9, 2004
**COMMERCIAL PROPERTY
CP 10 30 04 02**

# CAUSES OF LOSS – SPECIAL FORM

# EXCERPT

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

1. Excluded in Section **B.,** Exclusions; or

2. Limited in Section **C.,** Limitations;

that follow.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **b. Earth Movement**

   (1) Earthquake, including any earth sinking, rising or shifting related to such event;

   (2) Landslide, including any earth sinking, rising or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

2. We will not pay for loss or damage caused by or resulting from any of the following:

   *EXCLUSION*

   k. ~~Collapse, except as provided below in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.~~ *, other C.P. too*

   Collapse of a building or structure, except as provided in the Additional Coverage for Collapse. This exclusion of collapse extends to:

   (1) An abrupt falling down or caving in of a building or any part of a building;

   (2) Any building or structure that is in danger of falling down or caving in;

   (3) Any part of a building or structure that has separated from another part of the building or structure;

   (4) Any condition of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to the structural integrity of the building or structure.

   But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

CP 10 30 04 02

© ISO Properties, Inc., 2001

CONFIDENTIAL

ISO_00004945

CPP-2004-002                    Attachment 1
Agenda                          December 9, 2004

**D. Additional Coverage – Collapse**

The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in **D.1.** through **D.5.** below.

1.  With respect to buildings:

~~a.~~ ~~Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;~~

~~b.~~ ~~A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;~~

~~c.~~ ~~A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;~~

~~d.~~ ~~A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.~~

*Just reformatted*

1.  For the purpose of the coverage provided under this Additional Coverage - Collapse, collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose. This Additional Coverage - Collapse does not apply to:

a.  A building or any part of a building that is in danger of falling down or caving in;

b.  A part of a building that is standing, even if it has separated from another part of the building; or

c.  A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

2.  We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:

a.  The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

b.  Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

c.  Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

d.  Weight of people or personal property;

e.  Weight of rain that collects on a roof;

f.  Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **2.a.** through **2.e.**, we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in ~~1.a. through 1.d.~~ **1. (including 1.a. through1.c.)** do not limit the coverage otherwise provided under this Causes of Loss Form for the causes of loss listed in **2.a., 2.d.** and **2.e.**

The causes of loss listed in **2.a.** through **2.f.** do not have the effect of providing coverage for any loss that would be excluded under the terms of the Earth Movement Exclusion or Water Exclusion.

3.  With respect to the following property:

a.  Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

b.  Awnings, gutters and downspouts;

c.  Yard fixtures;

d.  Outdoor swimming pools;

e.  Fences;

f.  Piers, wharves and docks;

g.  Beach or diving platforms or appurtenances;

h.  Retaining walls; and

i.  Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in **2.b.** through **2.f.**, we will pay for loss or damage to that property only if:

a.  Such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

© ISO Properties, Inc., 2001

**CP 10 30 04 02**   □
**Page CPP-2004-002-4**

CPP-2004-002          Attachment 1
Agenda               December 9, 2004

b. The property is Covered Property under this Coverage Form.

4. If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   a. The collapse was caused by a Cause of Loss listed in **2.a.** through **2.f.** above;

   b. The personal property which collapses is inside a building; and

   c. The property which collapses is not of a kind listed in **3.** above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **4.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

This Additional Coverage - Collapse ofdoes not apply to personal property does not mean that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

5. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

CONFIDENTIAL                                                    ISO_00004947

Teleconference of December 9, 2004

Commercial Property Panel
Agenda CPP-2004-003

# CPP-2004-003  Interline Endorsements

## INTRODUCTION

Staff will report on its action with regard to the maintenance of Interline (IL) endorsements.

## BACKGROUND



In prior communications, Staff presented a potential solution to problems dealing with the use and maintenance of Interline endorsements. This solution involved removing the list of applicable coverage parts/forms from each Interline endorsement and replacing it with a blank schedule into which an insurer could insert the appropriate coverage part/form for the policy being written. Several methods were also to be developed that would facilitate tracking the applicability of an IL endorsement for a given line of business in each state.

## STAFF ACTION

After consideration of the issues raised by members of this panel and other insurer customers, Staff has decided not to implement the proposed solution.

**Instead Staff will:**

- continue to list applicable lines of business on each Interline endorsement
- not add any further lines to the IL endorsements that are typically written as part of a package policy *CF, GL, CA, CM, CR, BM, FR*
- develop monoline endorsements for state-specific issues for new ISO lines of business that are not typically written as part of a package policy *eg Mkt segments, OP*
- consider removal of any lines of business from IL endorsements that are not typically written as part of a package policy at the time of the next major revision to IL endorsements *See above*

This approach will minimize to a considerable extent filing activity associated with the introduction of new ISO lines of business and also minimize the impact on insurer rating and policy writing systems.

## REQUEST FOR ADVICE FROM PANEL MEMBERS

Panel members are asked to comment on the Staff Action reported above and offer any additional input.

© ISO Properties, Inc., 2004

Page CPP-2004-003-1

CONFIDENTIAL

ISO_00004948

Teleconference of December 9, 2004

Commercial Property Panel
Agenda CPP-2004-004

## CPP-2004-004  Procedural Rules

### INTRODUCTION

To facilitate the orderly operation of the Commercial Property Panel and Liaison Panel, procedural rules have been developed by ISO Staff.

### AGENDA ATTACHMENT(S)

Procedural Rules

© ISO Properties, Inc., 2004

CONFIDENTIAL

ISO_00004949

## PANEL AND LIAISON PANEL PROCEDURAL RULES

### A.  Operating Procedures

Panels will function in accordance with their duties as set forth in the ISO Certificate of Incorporation and By-Laws, and members of the panels will:

1.  Comply with all requirements of law and ISO corporate policy.

2.  Provide ISO staff with advice on insurance matters.

### B.  Meetings

1.  ISO staff will chair Panel meetings.

2.  Meetings will be scheduled as needed.  The Commercial Lines Advisory Panel, the Personal Lines Advisory Panel and the Actuarial Advisory Panel will meet at least once a year.  Meetings will not normally be scheduled for a week in which there is a holiday.

3.  Meetings will ordinarily be scheduled for one day.  In scheduling meetings, staff shall consider the time necessary for the discussion of items and seek to minimize the overall time and expense of meeting participants.  If an agenda appears to warrant more than one day of scheduling, every effort will be made to advise the Panel members at least ten days prior to the meeting.

4.  In order to save time and reduce costs, teleconference meetings will be substituted for in-person meetings where possible.

5.  The first order of business at each meeting of the Panel shall be the reading of the Chairperson's Statement, which prefaces the ISO Policy Statement on Discussion at Meetings, and review of the Policy Statement by the Panel.

6.  If permitted by law, Panel members or their alternates will receive a stipend for each meeting attended.  A member may appoint a standing alternate or, by letter to the chairperson, an alternate for a specific meeting either because the member cannot attend a meeting, or for discussion of a special subject in which the alternate possesses special expertise.

### C.  Agendas and Minutes

1.  Members of the Panel and alternates will be provided with one copy of Panel agendas and minutes.  Agendas will be sent at least 10 working days prior to the meeting and minutes not more than 15 working days after the meeting.

© ISO Properties Inc., 2004

CONFIDENTIAL                                                                      ISO_00004950

CPP-2004-004                   ATTACHMENT
Agenda                         December 9, 2004

2. The agenda and corresponding minute items shall be numbered consecutively during each calendar year. Any item recurring in a calendar year shall carry the original agenda item number with the suffix <u>A</u> the first time it reappears, <u>B</u> the second time, etc. Agendas and minutes will be collated in numerical order. In the event an agenda item recurs in a following calendar year, cross reference shall be made to the agenda item number of the year when it last came before the Panel.

3. For each agenda and minute item, a summary will follow the item identification and caption and shall outline (as appropriate) the subject, major considerations, staff comments, a listing of agenda attachments or exhibits, staff action (if any), and request for Panel advice, and, for minutes only, the Panel discussion. In circumstances in which the insight provided by the Panel causes staff to consider further research on an item or to reconsider its action, the Panel minutes will reflect the insight provided by the Panel which caused staff to consider further research on an item or to reconsider its action.

**D. Panel Advice**

1. Individual Panel members are asked to provide ISO staff with their professional advice and recommendations. No Panel shall have any decision-making authority.

2. ISO staff seeks to obtain advice from all users of ISO products. On specific agenda items, ISO will request that Panel members consult with other disciplines within their companies, associations and organizations regarding ISO products and convey to ISO the input that is obtained.

3. ISO may appoint ad hoc panels on complex issues and request that such panels provide advice.

**E. Confidentiality of Panel Discussions and Documents**

In order to encourage full debate and to protect ISO proprietary information, ISO requests that Panel members treat Panel deliberations and proceedings, and documents provided to, or produced by, ISO Panels in the course of such deliberations and proceedings, as confidential. Panel members are asked to disclose such information or documents only to other members of the affected ISO Panel, members of ISO staff, and appropriate personnel within the Panel member's company, association or organization, strictly on a "need-to-know" basis.

© ISO Properties Inc., 2004

CONFIDENTIAL

ISO_00004951

## CPP-2004-005  Blanket Property Coverage

### INTRODUCTION

This item considers the concept of sub-limits based on values under blanket coverage.

### BLANKET COVERAGE

Blanket coverage covers more than one subject of insurance (e.g., building and its contents); or several buildings) under a single Limit of Insurance. The applicable Limit and the properties to which it applies are indicated in the policy Declarations. Blanket coverage is in essence an underwriting procedure, and is associated with blanket average rating. There is no ISO form pertaining to the blanket concept per se, though the Statement Of Values (CP 16 15, attached) supports blanket average rating. With respect to any loss (regardless of whether coverage is written on a specific or blanket basis), loss payment is determined based on the amount of loss, applicable Limit of Insurance and compliance with coinsurance requirements. Typically, blanket coverage is written at 90% or 100% insurance-to-value. For blanket coverage, the policy's coinsurance condition compares the total value of the insured properties to the blanket Limit. If the blanket as a whole is under-insured, then loss to any property in the blanket is reduced by a coinsurance penalty. [Refer to the attachment for a copy of the coinsurance condition.] The aforementioned Statement of Values may be made part of a blanket policy and the insurer may require the insured's signature attesting to the accuracy of the property values stated therein.

A participating company has advised ISO staff that under some facultative reinsurance placements, loss payable on an individual property under a blanket is capped at the highest value of any one location or at the stated value of that property. In some cases, the capping procedure is then imposed on and reflected in primary policies via manuscript language or independent company form.

### ISO STAFF COMMENTS

- From the standpoint of primary coverage, sub-limits on items within a blanket may appear to contradict the concept of blanket insurance.

- If blanket insurance is made subject to sub-limits, there may be a commensurate effect on the blanket average rating procedure.

- The use of values to cap payments under facultative reinsurance appears to be a means of encouraging more stringent examination of property values at the primary underwriting level.

### AGENDA ATTACHMENT(S)

- Coinsurance Condition (from CP 00 10 04 02)
- Statement of Values CP 16 15

### REQUEST FOR ADVICE FROM PANEL MEMBERS

Panel members are asked to discuss the concept of sub-limits based on values under blanket coverage.

CONFIDENTIAL                                                        ISO_00004952

CPP-2004-005     Attachment 1
Agenda          December 9, 2004

## 1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

### Example No. 1 (Underinsurance):

| When: | The value of the property is | $ | 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is | | 80% |
| | The Limit of Insurance for it is | $ | 100,000 |
| | The Deductible is | $ | 250 |
| | The amount of loss is | $ | 40,000 |

| Step **(1)**: | $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements) |
|---|---|
| Step **(2)**: | $100,000 ÷ $200,000 = .50 |
| Step **(3)**: | $40,000 x .50 = $20,000 |
| Step **(4)**: | $20,000 − $250 = $19,750 |

We will pay no more than $19,750. The remaining $20,250 is not covered.

### Example No. 2 (Adequate Insurance):

| When: | The value of the property is | $ | 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is | | 80% |
| | The Limit of Insurance for it is | $ | 200,000 |
| | The Deductible is | $ | 250 |
| | The amount of loss is | $ | 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

© ISO Properties, Inc., 2004

CONFIDENTIAL

ISO_00004953

CPP-2004-005      Attachment 1
Agenda            December 9, 2004

**Example No. 3:**

| When: | The value of property is: | | |
|---|---|---|---|
| | Bldg. at Location No. 1 | $ | 75,000 |
| | Bldg. at Location No. 2 | $ | 100,000 |
| | Personal Property at | | |
| | Location No. 2 | $ | 75,000 |
| | | $ | 250,000 |
| | The Coinsurance | | |
| | percentage for it is | | 90% |
| | The Limit of Insurance | | |
| | for Buildings and | | |
| | Personal Property at | | |
| | Location Nos. 1 and 2 is | $ | 180,000 |
| | The Deductible is | $ | 1,000 |
| | The amount of loss is: | | |
| | Bldg. at Location No. 2 | $ | 30,000 |
| | Personal Property at | | |
| | Location No. 2. | $ | 20,000 |
| | | $ | 50,000 |

Step **(1):**   $250,000 x 90% = $225,000
             (the minimum amount of insurance to
             meet your Coinsurance requirements
             and to avoid the penalty shown below)

Step **(2):**   $180,000 ÷ $225,000 = .80

Step **(3):**   $50,000 x .80 = $40,000

Step **(4):**   $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

© ISO Properties, Inc., 2004

CONFIDENTIAL                                                      ISO_00004954

CPP-2004-005     Attachment 2
Agenda          December 9, 2004

COMMERCIAL PROPERTY

# STATEMENT OF VALUES

Insured _____

Headquarters Address _____

Form of Coverage:  ☐ Actual Cash Value applies to Items _____
                   ☐ Replacement Cost applies to Items _____

Indicate Form Numbers to which these rates are to apply: _____

(Attach Forms and Endorsements which require completion to indicate specific information)

Coinsurance     ☐ 80%     ☐ 90%     ☐ 100%     Blanket Rate Effective _____

Causes of Loss for which rates are requested:

☐ Basic                    ☐ Earthquake
☐ Broad                    ☐ Other _____
☐ Special                          (Specify)

| State exact wording of the coverage as it will appear on the policy |
| --- |
|  |

| INSURED | COMPANY, AGENT or BROKER |
| --- | --- |
| (Optional with Company) All values submitted are correct to the best of my knowledge and belief. Signed _____ Title _____ Date _____ | Statement of Values submitted by: Name _____ Person to Contact _____ Street _____ City _____ State ____ ZIP ____ |

For INSURANCE SERVICES OFFICE use only
Basic Group I _____     Basic Group II _____     Other _____

CONFIDENTIAL          ISO_00004955

**TO BE COMPLETED BY COMPANY, AGENT OR BROKER**

Average Rate Calculation – for INSURANCE SERVICES OFFICE use

Blanket Average Rate
Specific Average Rate

80%
90%
100%

Basic
Broad
Special

Earthquake
Other _____   Date _____

Calculated by _____

| Item No. | Description, Location and Occupancy of Property Covered | Cover-age* | Values | Rate Pub. No. | Basic Group I | | Basic Group II | | Broad | | Special | | Earthquake | | Other | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Rate | Prem. | Rate | Prem. | Rate | Prem. | Rate | Prem. | Rate | Prem. | Rate | Prem. |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| TOTALS | | | | | | | | | | | | | | | | |

AVERAGE RATES EFFECTIVE   BASIC GROUP I ___   BASIC GROUP II ___   BROAD ___   SPECIAL ___   EARTH-QUAKE ___   OTHER ___

* B = Building  S = "Stock"  YBPP = Your Business Personal Property  PPO = Personal Property of Others
Other – Specify Above

© ISO Properties, Inc., 2004

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987
Page CPP-2004-005-5

CP 16 15 07 88

CONFIDENTIAL

ISO_00004956

# NOTES

1. The Company, Agent or Broker must complete page 1 and page 2, where indicated, to obtain a blanket average rate. Do not complete the value column if blanket average rate desired for Business Income (And Extra Expense) Coverage Form CP 00 30; Business Income (Without Extra Expense) Coverage Form CP 00 32 or Extra Expense Coverage Form CP 00 50.

2. When separated blanket average rates are desired, such as Buildings only or Personal Property only, submit a separate Statement of Values for each blanket average rate.

3. Values must be rounded to the nearest dollar.

4. Round the premium, per item on the average rate, for each cause of loss, coverage and exposure to the nearest whole dollar.

5. Minimum coinsurance for a blanket average rate is 90%.

6. The Company may require this Statement of Values to be signed by the Insured, or in the case of firms by a partner or an officer.

7. A blanket average rate expires one year from its effective date or when new class or specific rates are applicable, whichever occurs first.

8. This Statement of Values form or its equivalent must be filed annually.

9. A new blanket average rate may be requested if the conditions upon which the average rate is based have materially changed.

10. Attach Class Rate Information Form or equivalent information for all "class rated" property included in the blanket average rate.

CONFIDENTIAL

ISO_00004957

Teleconference of December 9, 2004

Commercial Property Panel
Agenda CPP-2004-006

# CPP-2004-006  Electromagnetic "Bomb"

## INTRODUCTION

This item provides information on a new technological development and considers whether there is a need for policy changes in response to such development.

## BACKGROUND

*EMP*

*· high altitude nuke and*
*· conventional*

An electromagnetic "bomb" (E-bomb) produces a powerful electromagnetic field that can be strong enough to produce transient voltages of thousands of volts. The electromagnetic pulse (EMP) effect is characterized by the production of a short but intense electromagnetic pulse, in effect, an electromagnetic shock wave. While the EMP effect can be produced using high altitude airburst nuclear weapons (certainly a threat), **the development of conventional E-bomb devices** (using high power electromagnetic pulse generation techniques and high power microwave technology) **enables their use in a non-nuclear context as well.**

The EMP effect, which may be widespread under certain circumstances, can result in irreversible damage to a wide range of electrical and electronic equipment. Commercial computer equipment is particularly vulnerable to EMP effects since any voltage in excess of tens of volts can produce gate breakdown, which effectively destroys the device. Even if the pulse is not strong enough to produce thermal damage, the equipment's power supply will supply enough energy to complete the destructive process. Computers used in data processing systems, communications systems, telecommunications equipment and industrial control applications (including rail and road signaling and those embedded in military equipment and aircraft) are all potentially vulnerable. The EMP effect would produce damage to computer hardware and to electronic data.

## ANALYSIS

The E-bomb has obvious appeal to terrorism in that it easily lends itself to a strategy of disabling an infrastructure that is highly dependent on computers and electronic equipment.

The following Commercial Property policy provisions are relevant to an analysis of the policy's potential response to losses produced by a "conventional" (non-nuclear) E-bomb:

• The policy excludes loss or damage caused by or resulting from "Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires." Ensuing fire is covered by exception to the exclusion.

• The policy excludes damage to electronic data, which is then afforded limited coverage under an Additional Coverage. Coverage is limited to named perils and is in the amount of $2,500 per policy on an annual aggregate basis.

• The Terrorism exclusion, which is endorsed on an optional basis, encompasses activities that involve the "commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system", provided that other criteria of the definition of terrorism are met (e.g., intimidation; intent to further political objectives; etc.).

© ISO Properties, Inc., 2004

CONFIDENTIAL

ISO_00004958

# CPP-2004-006  Electromagnetic "Bomb"

- The War exclusion would apply if an E-bomb were used in the course of war.

On a policy that does not exclude terrorism, an EMP loss (due to a "conventional" E-bomb) to computer hardware could conceivably be evaluated based on the exclusion of artificially generated electrical current.   While new exposures may be addressed by traditional policy provisions, consideration should be given to the need to address the new exposure in terms specific to the technology underlying that exposure.  ISO staff is considering an EMP exclusion that would be added to the basic policy to address this type of loss irrespective of whether the force is discharged, e.g. by an act of nature, an unintended act by man or as a result of its usage as a weapon of terrorism.

*nature*
*accident*
*weapon*

Further, an EMP exclusion would be relevant to EMP generation regardless of whether the force is discharged by a nuclear or non-nuclear method.  An analysis of the impact of the policy's current Nuclear Hazard exclusion on nuclear generation of the EMP effect is not undertaken herein.

## REQUEST FOR ADVICE FROM PANEL MEMBERS

Panel members are asked to discuss the implications of the EMP exposure and staff's analysis of policy provisions.

© ISO Properties, Inc., 2004

CONFIDENTIAL

ISO_00004959

Teleconference of December 9, 2004

Commercial Property Panel
Agenda CPP-2004-007

# CPP-2004-007  Time Element - Civil Authority

## INTRODUCTION

Staff has reexamined the scope and presentation of the Civil Authority coverage under time element forms and seeks input on draft revisions.

## REFERENCE(S)

- CPP-2002-009, Meeting of July 31, 2002
- CPP-2001-011, Meeting of May 8, 2001

## BACKGROUND

*Very broad today but never intended to be so broad*

One of the prerequisites to Civil Authority coverage is damage to property at a location "other than [at] the described premises". In the pre-simplified time element forms, the criterion was damage to property adjacent to the described premises. In the introduction of the simplified forms, that criterion was liberalized, in part because of an expressed perception (at the time) that action by civil authorities seldom affects a large area. That perception holds true with respect to an event having intrinsic limitations, for example, fire which begins in a building in an urban area and spreads to buildings on the same block, or a tornado which causes a building to become structurally unstable, making it dangerous to occupy surrounding buildings and buildings "across the street".

*100's
· hurricane
· airport (terr)
· businesses relying on air travel
(PS) civil auth)
vs dependent
prop/y cvrg*

As originally conceived and even with the liberalization effected with Simplification, the Civil Authority coverage was apparently meant to be limited to cases where actual damage by a covered peril was in close proximity to the described premises. But in more recent times, situations have been encountered where a civil authority acts in response to an event taking place far from the insured premises. One example is that of a hurricane. Given that the path and velocity are tracked and projected, a civil authority may take action even when the damaged area is hundreds of miles away. This example and other imaginable scenarios prompted us to re-examine the scope of coverage and policy language.

In the 2002 agenda item, staff had presented a draft revision wherein the property damage criterion was damage to premises in an area adjacent to the described premises. Panel members expressed support for that concept and staff embarked on an effort to refine the language and to monitor developments in case law.

## STAFF COMMENTS

In the attached draft, we have continued to focus on the pre-simplified concept of adjacency (though with a broader brush) and on reinforcement of the idea that there must be actual damage that affects the described premises. While the revised text is an attempt to reinforce intent and tradition, it is a more narrow construction in comparison to the current text. To balance any reduction in coverage, the draft broadens coverage by extending the coverage period from three weeks to four.

*3 → 4*

## RELATED INFORMATION

If staff decides to go forward with the changes outlined in this agenda item, the following will be revised to reflect such changes:

- Reference points under Endorsements CP 15 55 and CP 15 56, which modify the 72-hour time element waiting period; and associated Rule 54.D.

© ISO Properties, Inc., 2004

Page CPP-2004-007-1

## CPP-2004-007  Time Element - Civil Authority

- Civil Authority Increased Coverage Period Endorsement CP 15 32 and Rule 54.E.  Under this option, the basic coverage period of three weeks can be increased to 60, 90 or 180 days.

### AUTOMATED SYSTEM IMPACT
Low to Medium (text change)

### STATISTICAL IMPACT
To be determined

### AGENDA ATTACHMENT(S)
- Civil Authority coverage grant, including draft revisions

### REQUEST FOR ADVICE FROM PANEL MEMBERS
Panel members are asked to provide input on the issues outlined in this agenda item and on the technical adequacy of the draft.

© ISO Properties, Inc., 2004

CONFIDENTIAL

ISO_00004961

CPP-2004-007      Attachment 1
Agenda            December 9, 2004

**5. Additional Coverages**

    **a.  Civil Authority**

~~We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.~~

When a Covered Cause of Loss causes damage to premises other than the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by the action of civil authority that prohibits access to the described premises, provided that all of the following qualifications apply:

    (1)  Access to the area immediately surrounding the damaged premises is prohibited by civil authority as a direct result of the damage, and the described premises are within that area but are not more than 25 miles from the damaged premises; and

    (2)  The action of civil authority is taken in response to dangerous physical conditions presented by the damage or by continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged premises.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to ~~three~~ four consecutive weeks after coverage begins.

The coverage for Extra Expense will begin immediately after the time of that action and will end:

    (1)  ~~3~~ Four consecutive weeks after the time of that action; or

    (2)  When your Business Income coverage ends;

whichever is later.

*[handwritten margin note: prior to mtg, staff reconsidered 25..., now thinking of 1 or 2 miles.]*

*[handwritten margin note: should eliminate short-term closings (as intended) but there are options for 24 and 0 hours]*

**NOTE:  This text is based on the coverage in Business Income (And Extra Expense) Coverage Form CP 00 30.  Equivalent changes in language would be made in forms CP 00 32 and CP 00 50.  Related endorsements would be examined as well.**

© ISO Properties, Inc., 2004

CONFIDENTIAL

ISO_00004962

EXHIBIT C



**LINE PANEL AGENDAS AND MINUTES**                     OCTOBER 25, 2005
**FROM**:  LORETTA NEWMAN, CPCU, MANAGER

                     COMMERCIAL PROPERTY          AM-CF-2005-003

# COMMERCIAL PROPERTY PANEL MINUTES ENCLOSED

**We are enclosing the minutes for the September 28, 2005 Commercial Property Panel meeting.**

## BACKGROUND

Agendas and Minutes for the Commercial Property Panel are distributed to insurer representatives who have signed up for this service.

## ATTACHMENT(S)

Commercial Property Panel Minutes – September 28, 2005 meeting

## PERSON(S) TO CONTACT

Please direct any questions, comments, or suggestions on the content of this circular to:

Loretta Newman, CPCU
Manager
Commercial Fire And Allied Lines
(201) 469-2582          Fax: (201) 748-1873
lnewman@iso.com

If you have any questions concerning:

∞   the mailing or distribution of this circular, please contact our Customer Service Division:

E-mail:          info@iso.com
Fax:             201-748-1472
Phone:           800-888-4476
World Wide Web:  http://www.iso.com
Write:           See address on page 1

∞   products or services, please call or e-mail ISO Customer Service, or call your ISO representative.

Callers outside the United States may contact us using our global toll-free number (International Access Code + 800 48977489) or by e-mail at info.global@iso.com. For information on all ISO products, visit us at http://www.iso.com.

---

**INSURANCE SERVICES OFFICE, INC. 545 WASHINGTON BOULEVARD JERSEY CITY, NJ 07310-1686**

CONFIDENTIAL



October 25, 2005

## To the Members of the Commercial Property Panel

| **Representative** | **Organization** |
| --- | --- |
| T. Bunnell | The Cincinnati Insurance Company |
| R. Edgar | Chubb |
| D. McCrudden | St. Paul Travelers Insurance Company |
| M. McFadden | Great American Insurance Company |
| D. Murray | GNY Insurance Companies |
| L. Neuman | CNA |
| M. Palmer-Feo | Selective Insurance Company |
| D. Savage | The Hartford |
| K. Schwabe | ACE USA |

## Minutes
### Commercial Property Panel
### Meeting of September 28, 2005

The meeting of the Commercial Property Panel was called to order at 10:00 A.M. on September 28, 2005.  The Chairperson's Statement and the Policy Statement on Discussion at Meetings were duly noted.  The conference ended at 3:30 P.M.

The minutes of the conference are enclosed.

Panel Member Participants

| | |
| --- | --- |
| T. Bunnell | The Cincinnati Insurance Company |
| J. Callen | Selective Insurance Company |
| R. Edgar | Chubb |
| D. McCrudden | St. Paul Travelers Insurance Company |
| M. McFadden | Great American Insurance Company |
| D. Murray | GNY Insurance Companies |
| L. Neuman | CNA |
| D. Savage | The Hartford |
| K. Schwabe | ACE USA |

Additional Participants

| | |
| --- | --- |
| T. Gordon | Chubb |
| G. King | St. Paul Travelers Insurance Company |

NOTICE:  Please make sure that your company has authorized your use of this product and has complied with the requirements in the jurisdiction where you plan to use it. Refer to the Important Notice inside.

CONFIDENTIAL

<u>ISO Staff in attendance</u>

H. Bernstein
G. Burger
L. Newman
L. Skelly

Sincerely,

*George Burger*

George Burger, F.C.A.S., M.A.A.A.
Assistant Vice President
Commercial Fire and Allied Lines Division

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00005191



## IMPORTANT NOTICE FOR USERS OF
## ISO PRODUCTS AND SERVICES

<u>Please make sure that your company has authorized your use of this product and has complied with the requirements applicable in the jurisdiction where you plan to use it.</u>

We distribute both state-specific and multi-state products and services.  We do not distribute all the multi-state products and services for use in every jurisdiction due to corporate policy, regulatory preference, or variations or lack of clarity in state laws.

We provide participating insurers with information concerning the jurisdictions for which our products and services are distributed.  Even in those jurisdictions, each insurer must determine what filing requirements, if any, apply and whether those requirements have been satisfied.

Now, as in the past, all of our products and services are advisory, and are made available for optional use by participating insurers as a matter of individual choice.  Your company must decide for itself which, if any, ISO products or services are needed or useful to its operation and how those selected for use should be applied.  We urge that you be guided by the advice of your attorneys on the legal requirements.

### Copyright Explanation

The material distributed by Insurance Services Office, Inc. is copyrighted.  All rights reserved.  Possession of these pages does not confer the right to print, reprint, publish, copy, sell, file, or use same in any manner without the written permission of the copyright owner.  Permission is hereby granted to members, subscribers, and service purchasers to reprint, copy, or otherwise use the enclosed material for purposes of their own business use relating to that territory or line or kind of insurance, or subdivision thereof, for which they participate, provided that:

A.  where ISO copyrighted material is reprinted, copied, or otherwise used **as a whole**, it must reflect the copyright notice actually shown on such material.

B.  where ISO copyrighted material is reprinted, copied, or otherwise used **in part**, the following credit legend must appear at the bottom of each page so used:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

© ISO Properties, Inc., 2004

**Edition 11-03**

ISO_00005192



**CHAIRPERSON'S STATEMENT** (The Chairperson shall read the following paragraph at the beginning of all meetings held under the auspices of ISO at which participation and discussion by any two or more insurance industry competitors is reasonably anticipated.):

All participants and ISO staff should duly note the ISO Policy Statement on Discussion at Meetings, a copy of which was transmitted to you with your agenda, if any.  If you did not receive a copy of the ISO Policy Statement, it is available now for your review.  The ISO Policy Statement reminds us that ISO corporate policy restricts decision-making and discussion.  These restrictions are designed to prevent even so much as an appearance of impropriety.  We should all be guided by the ISO Policy Statement in our discussions, and we should all take the opportunity at this time to review the ISO Policy Statement.

**INSURANCE SERVICES OFFICE, INC.**
**POLICY STATEMENT ON DISCUSSION AT MEETINGS**

**I.      DISCUSSION OF RATE LEVELS OR LOSS COST LEVELS**

Participants shall not discuss insurer rate levels, insurer loss cost levels, or what ISO advisory loss cost levels ought to be for any line of insurance for any jurisdiction.

**II.     DISCUSSION OF RATING OR RATEMAKING[1]**

Participants shall not discuss anything pertaining to rating or ratemaking for the stated lines of insurance in the following jurisdictions:

**A.  PRECLUDED FOR ALL LINES OF INSURANCE**

| California | Kentucky | S. Carolina | Vermont |
| Colorado | Maryland | Tennessee | Virginia |
| Illinois | New York[2] | Texas | Wyoming |

**B.  PRECLUDED FOR CERTAIN LINES OF INSURANCE**

| **Arkansas** | **Connecticut** | **Florida** | **Hawaii** |
| Personal Auto | Personal Auto | Personal Auto | Personal Auto |
| Homeowners | Homeowners | | Commercial Auto |
| | Personal Inland Marine | | |
| | Dwelling Fire | | |

[1]As used in this ISO Policy Statement, the terms "ratemaking" and "rating" do not include the collection, editing, and coding of data.

[2]For medical malpractice insurance in New York, discussion of rating or ratemaking is not precluded, and III. A. applies.

(Continued on next page)

CONFIDENTIAL                                                              ISO_00005193

### III.   DISCUSSION AND DECISION-MAKING

A.   Where discussion is not precluded by I. or II., participants may advise staff on rating and ratemaking issues and on the development of policy forms, riders, endorsements, or any part thereof, and any applicable rules related thereto.  However:

   (i)     user advisory and industry liaison panels shall not have any decision-making authority; and

   (ii)    the Board of Directors shall not have decision-making authority with respect to loss costs, rates, rating plans, rating methodology, rate-related rules, or the development of any policy form, rider, endorsement, or part thereof, and any applicable rules, relating to general liability and professional liability lines of insurance.

B.   Participants and ISO staff shall not discuss the corporate policies or intentions of any insurer or other entity within the property-casualty insurance industry.  A participant's expression of opinion concerning an ISO action, product, or service in no way binds the participant's employer, either to that opinion or to adopt or not to adopt that action, product, or service.

C.   In order to protect ISO's proprietary interest in its work product, all agenda items, minutes and discussions at ISO-organized meetings are confidential.  Participants and other personnel of the participant's employer receive agenda items and minutes, and participate in discussions at meetings, with the understanding and agreement that they will keep such documents and discussions confidential.  Such documents and discussions may be shared only with such persons who, in the performance of their job duties, have a need to know the information contained therein.

D.   Unless expressly authorized, no participant may speak or act for ISO.

### IV.   OTHER PERTINENT ISO POLICIES

ISO performs its various functions in accordance with its statutory authority as a licensed or registered rating, rate service, or advisory organization and pursuant to its Certificate of Incorporation and By-Laws, which state these pertinent ISO policies:

### A.   NONADHERENCE

"No insurer shall be required, as a condition of membership, participation as a subscriber, or of purchasing services from the corporation or from any subsidiary of the corporation, to charge those rates or use those loss costs, rules or forms that are filed or issued by the corporation.  Except as may otherwise be required by law, all services of the corporation are advisory, and the corporation encourages each participating insurer to take into account its own loss experience, expenses and profit objectives, and to use its own actuarial judgments and procedures in individually determining its own rates."

### B.   NONEXCLUSION

Participation in ISO is available to any property-casualty insurer authorized to write an ISO line or subline of business in a U.S. jurisdiction.  ISO's suspension or termination of an insurer's participation may result only from the insurer's failure to pay promptly any charges properly levied.

**7-7-98 Ed.**

CONFIDENTIAL

ISO_00005194

# ≡ISO PANELS

Comments and questions are welcomed from all ISO customers.  If you are not a panel member, you may use this form to FAX (or mail) comments or questions on any item in this agenda mailing or e-mail me at gburger@iso.com.  Panel members who will be unable to attend the meeting should call directly with comments.

Date_____

To:     George Burger, F.C.A.S., M.A.A.A.
        Assistant Vice President
        Commercial Fire and Allied Lines Division (19-2)
        Insurance Services Office, Inc.
        545 Washington Blvd.
        Jersey City, NJ 07310-1686
        FAX: (201) 469-4015


Re:     Commercial Property Panel
        Meeting of September 28, 2005

Item Number: _____

Comment/Question: _____
_____
_____
_____
_____
_____
_____


Item Number: _____

Comment/Question: _____
_____
_____
_____
_____
_____


Your Name       _____

Company         _____

Telephone Number   _____

CONFIDENTIAL



## Digest of Minutes
## Commercial Property Panel
## Meeting of September 28, 2005

| | | |
|---|---|---|
| **CPP-2005-001** | **Procedural Rules** | |
| | Panel members received the procedural rules for operation of the panel. | |

**CPP-2005-002**   **Collapse**

Panel members provided input on editorial revisions to the text of the Additional Coverage - Collapse. ISO staff will take the comments of panel members into consideration in finalizing the language relating to specified causes of loss and underlying policy exclusions.

**CPP-2005-003**   **Limits Of Insurance Condition (Occurrence Issue)**

ISO staff will consider various approaches to addressing the issue of application of Limits, including a definition of occurrence.

**CPP-2005-004**   **Blanket Property Coverage - Margin Clause**

Panel members provided input on a margin clause endorsement as an option for blanket risks. ISO staff will give consideration to the input of panel members in refining the endorsement.

**CPP-2005-005**   **Electromagnetic "Bomb"**

Panel members considered revisions to various forms to more explicitly address the electromagnetic pulse (EMP) exposure. ISO staff will take the comments of panel members under advisement and undertake additional research in the process of finalizing the language to perfect the terminology.

**CPP-2005-006**   **Food Contamination Endorsement**

Panel members provided input on a Food Contamination endorsement. ISO staff will give consideration to the input of panel members in refining the endorsement.

**CPP-2005-007**   **Multi-Location Premium And Dispersion Credit (MLPDC) Plan**

ISO staff will finalize the revisions to the MLPDC plan.

**CPP-2005-008**   **Biological Contamination And Errors In Production**

ISO staff will take the comments of panel members under advisement in finalizing the language of the exclusions.

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00005196

**CPP-2005-009**          **Time Element - Civil Authority**

Panel members provided no further input on a draft of revisions to the Civil Authority coverage grant under time element forms.  With respect to an optional endorsement that amends the coverage period and/or triggering event (in terms of the radius), ISO staff will take the comments of panel members under advisement in finalizing this material.

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00005197

# CPP-2005-001  Procedural Rules

**STAFF NOTE**

     Panel members accepted the procedural rules as information.

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00005198

# CPP-2005-002  Collapse

## PANEL DISCUSSION

Several panel members emphasized the need to make it clear that the limitations of collapse coverage do not affect coverage otherwise provided for fire and other specified causes of loss. Although this is addressed in the penultimate paragraph of D.2. (current language), there was some sentiment that even more emphasis is needed.

A panel member opined that the statement concerning the earth movement and water exclusions (last paragraph in D.2.) might be misinterpreted, in the sense of implying that other exclusions do not flow through.

A panel member opened a brief discussion of the scope of collapse coverage -- abrupt falling down versus near collapse, imminent collapse, etcetera.  This issue was given in-depth and extensive consideration prior to filing the definition of collapse in the 2000 edition of the policy forms.  ISO staff has no plans to liberalize the "abrupt falling down or caving in" criterion, which in effect governs collapse coverage with respect to the perils of hidden decay and hidden insect or vermin damage.

A panel member observed that independent collapse of personal property is limited to property inside of a building, and commented that there is a need for collapse of outdoor property such as shelving in a lumberyard.  Currently, there is collapse coverage only for certain types of outdoor property, and then only if caused by a building collapse.

## STAFF NOTE

ISO staff will take the comments of panel members into consideration in finalizing the text of the last two paragraphs of D.2.  We do not anticipate seeking further input from the panel.

In addition, we will consider an optional endorsement for expanding coverage on outdoor property.

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00005199

# CPP-2005-003  Limits Of Insurance Condition (Occurrence Issue)

## PANEL DISCUSSION

In the course of discussion, the following views were expressed and observations made by various panel members.  Throughout, reference to *our approach* means ISO staff's draft of the Limits of Insurance Condition presented in the Agenda.

∞   The essential problem is blanket coverage and coverage written on a no-coinsurance basis; a frequent problem is under-insurance; multiple perils and occurrences are arguments used in attempts to multiply an inadequate Limit.  In line with that view, there was a suggestion that our approach might be appropriate within the context of an optional endorsement for selective use when waiving coinsurance or agreed value.

∞   Our approach is seen as being incompatible with layered underwriting arrangements, that is, a consortium of insurers writing primary and excess layers.

∞   Our approach contemplates restoration of the Limit following its exhaustion or reduction at time of loss.  There was a concern expressed that it might be difficult to draft words to effectively set forth the point at which the Limit would be restored.

∞   Some panel members expressed support for proceeding with development of a definition of occurrence.

∞   Using a definition of occurrence would avoid what may be perceived to be a conflict with traditions of applying blanket coverage.

∞   There was brief mention of the possibility of aggregate limits (with reinstatement of the aggregate) as an option.

## STAFF NOTE

ISO staff will develop a definition of occurrence, while also giving further consideration to our approach as outlined in the Agenda.  The variety of underwriting approaches in the marketplace may be too numerous to enable a single approach; creating a number of tools may prove more viable.

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00005200

## CPP-2005-004  Blanket Property Coverage - Margin Clause

### PANEL DISCUSSION

Various panel members provided input as follows:

Different underwriting philosophies and differences in risk have a bearing on the selection of a particular margin percentage.  There is no need to specify a range of percentages in the endorsement itself.  Percentages can be specified in the rule; companies can file a deviation from the rule if they deem it necessary.

The margin clause endorsement could be offered as an option for scheduled property.

The schedule should also enable variation of the margin by location; for example, a smaller margin is sometimes written on the principal location.

Reference to the Statement of Values should be made generic.  Values may be reported to the company in different ways and on different forms.

There was discussion on the concept (as illustrated in the draft) of imposing a coinsurance penalty under a form that also imposes a margin.

### STAFF NOTE

In refining the draft, ISO staff will give consideration to the input of panel members.

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00005201

# CPP-2005-005  Electromagnetic "Bomb"

## PANEL DISCUSSION

Panel members expressed support for the concepts expressed in the drafts.

A panel member advised that natural gas utilities and sewage utilities also merit specific recognition.

A panel member noted that the term "electronic network" may be more precisely identified as "electronic data network".

## STAFF NOTE

ISO staff will take panel members' comments under consideration in finalizing the language. Further, ISO staff advised the panel that we plan to undertake additional research in the process of finalizing the language to perfect the terminology (reference to upper atmosphere, for example).

For information -- Prior to this Agenda topic and discussion, ISO staff made a decision to add sewage utilities as an option under the Utility Services coverage endorsement.

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00005202

# CPP-2005-006  Food Contamination Endorsement

## PANEL DISCUSSION

Several panel members expressed support for the approach taken in the draft endorsement.

One panel member suggested expanding the triggering event to encompass closure of the business when contamination is discovered within the distribution chain or through routine testing, in the absence of known cases of food poisoning.

One panel member expressed the opinion that contamination that results from poor management practices should not be insured.  Several panel members advised that the use of an annual aggregate limit is appropriate for this type of coverage.

One panel member felt that the coverage for medical testing of employees is not a necessary component of the food contamination coverage.  Other panel members pointed out that such coverage is provided by the Businessowners form and various independent forms.

## STAFF CONSIDERATION

ISO staff will take the comments of panel members into consideration in refining the text; and reminded the panel members that other issues involving pollution and contamination exclusions must be resolved before this endorsement is finalized.

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00005203

# CPP-2005-007   Multi-Location   Premium   And   Dispersion   Credit (MLPDC) Plan

## MINUTES REPORT

Staff asked for comments from panel members on the indicated revisions to the MLPDC Plan. The panel had no comments on the revisions.

In response to the request for any other comments or suggested changes to the MLPDC Plan, a panel member asked if a risk written with the "Agreed Amount" endorsement was eligible for the rating plan. Staff replied that if the risk met the minimum eligibility requirement of 90% coinsurance, it would be eligible.

There was a brief discussion of the definition in the plan of the term "location" and its relation to development of credits: staff does not plan to revise the current definition.

## STAFF ACTION REPORT

Staff will now finalize the revisions to the MLPDC Plan and file the revisions on a date yet to be determined.

CONFIDENTIAL

ISO_00005204

Meeting of September 28, 2005

Commercial Property Panel
Minutes CPP-2005-008

## CPP-2005-008  Biological Contamination And Errors In Production

**PANEL DISCUSSION**

The contamination exclusion is intended to encompass contamination of any Covered Property, including premises and products.  A panel member commented that this point needs to be made explicit in the text of the exclusion.

**STAFF NOTE**

ISO staff will take this into consideration in finalizing the text of the exclusion.  We do not anticipate seeking further input from the panel.

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00005205

Case 2:21-cv-01776-MMB   Document 44-21   Filed 01/19/22   Page 82 of 287

## CPP-2005-009  Time Element - Civil Authority

**PANEL DISCUSSION**

There was no discussion concerning the text of the Civil Authority basic coverage grant.

There was discussion on the terms of the optional enhancement endorsement.  One panel member believes that it would be more appropriate to address the coverage period extension and increase in radius under separate endorsements rather than within one endorsement.  That panel member also commented that differentiation of the radius by peril could lead to litigation over the cause of a civil authority's action.  Another panel member feels that the options should also include a reduction in the radius, given concentrated exposures in metropolitan areas.  There was also a suggestion to create an option for civil authority coverage in the event of evacuation prior to actual damage.

**STAFF NOTE**

ISO staff will take panel members' comments into consideration in finalizing this material.  We do not anticipate seeking further input from the panel.

© ISO Properties, Inc., 2005

CONFIDENTIAL

ISO_00005206

EXHIBIT D

Term contam connoted a condition
of impurity resulting from the
mixture of or contact w/ a
foreign substance
    (via ~~an event internal or even~~
    ~~external to the goods themselves~~)

acknowledges a prox ~~state~~ external
cau, resulting in contam ... contam is
a condition or result, rather than a cau

contam implies the intrusion
of or contact with an external
force as the cause of the contam;
there need not be a change in
the product's form or substance
(damage is sufficient) ~~but the~~

COL                    COL
negligence v. contam → our ex

It ~~was said that~~ treat contam
article said new forms   a condition
as a cau rather ~~than~~
    (release, dischg, disposal)

CONFIDENTIAL                                    ISO_00005433

# EXHIBIT E

*Quincy Office*

35

Insurance Services Office, Inc.

**FILING TRANSMITTAL FORM**

Companion Filing

State **MA**

| Filing Designation | | | Type of Filing | |
|---|---|---|---|---|
| Line | Year | Description | **M** | CL-2006-OVBER |
| CL | 2006 | OVBEF | | |

_____

_____

_____

## Affected Lines of Insurance (For GRD Use Only)

\_\_\_\_\_  \_\_\_\_\_  \_\_\_\_\_  \_\_\_\_\_  \_\_\_\_\_  \_\_\_\_\_  \_\_\_\_\_

\_\_\_\_\_  \_\_\_\_\_  \_\_\_\_\_  \_\_\_\_\_  \_\_\_\_\_  \_\_\_\_\_  \_\_\_\_\_

**FILE COPY**

FOR COMPLETE ENCLOSURE
SEE MASTER FILING TRANSMITTAL

### Filing Caption

Amendatory Endorsement -
Exclusion Of Loss Due To
Virus Or Bacteria

| Proposed | | | | |
|---|---|---|---|---|
| **Eff. Date   /   Dist. Date** | | | **OKTP Deadline** | |
| 1    1    2007 / | | | 9    1    2006 | |
| Mo.  Day   Yr.  /  Mo.  Day   Yr. | | | Mo.   Day   Yr. | |

## Special Filing Instructions (For GRD Use Only)

## Filing Background Information

**Replacement
Filing?**          Y _ N **x**          **Is filing in response to an
insurance department letter?** Y _ N **x**

## Last Approved Filing Information (Loss Cost Filings Only)

| Effective Date | Dist Date | If Loss Cost Change was Indeterminable, Enter "I" | Loss Cost Change |
|---|---|---|---|
| Mo.  Day   Yr. | | _____ | _____ % |

## Filing Processing Information  (For GRD Use Only)

| Date Received | Date Sent to Field | Filing Mechanics Under Law |
|---|---|---|
| 7-13-06 | 7-13-06 | D |
| Mo.   Day    Yr. | Mo.   Day    Yr. | |

EDITION 01/01/06
ISOFTF.DOC

CONFIDENTIAL

ISO_00004163

Insurance Services Office, Inc.

**FILING TRANSMITTAL FORM (continued)**

Send Pertinent Filing Correspondence to:

| Line Division: | S. Dougherty (20-5); R. Beiderman (20-5); W. Mauro (20-5) | |
|---|---|---|
| Actuarial Division: | | AGSD Division: |
| GRD Division: | Donna Jaffee   (19-6)   *SHEILA LEMLEY (19-5)* | |

Transmittal Form Prepared By:

| | Name: | Joel Bush | | | | | |
|---|---|---|---|---|---|---|---|
| Line: | | | 7 | 12 | 2006 | | 2809 |
| Actuarial: | | | Mo. | Day | Yr. | | Ext. |

Management Approval Given By:

**Supplementary Information for Loss Cost Filings Only**

**Loss Cost Level Change Information**

| If Loss Cost Change Indeterminable, Enter "I" | Statewide Aggregate Loss Cost Volume (000's Omitted) |
|---|---|
| _____ | _____ |

| ALERT or PANEL DATE | | |
|---|---|---|
| Mo. | Day | Yr. |

Loss Cost Level Changes By Coverage*

| Coverage Code | Indicated Loss Cost Level Change | Filed Loss Cost Level Change |
|---|---|---|
| Total All Coverages | _____ % | _____ % |
| | _____ % | _____ % |
| | _____ % | _____ % |
| | _____ % | _____ % |
| | _____ % | _____ % |
| | _____ % | _____ % |
| | _____ % | _____ % |
| | _____ % | _____ % |
| | _____ % | _____ % |
| | _____ % | _____ % |
| | _____ % | _____ % |
| | _____ % | _____ % |

*   (If Individual Coverages Are Not Applicable, Complete "Total All Coverages" Line Only)

EDITION 01/01/06
ISOFTF.DOC

CONFIDENTIAL

ISO_00004164

## COMPLIANCE CERTIFICATION

As the representative of   Insurance Services Office, Inc.   (the "Company"), duly authorized by the Company to give this Certification on its behalf, I hereby certify on the Company's behalf, under the pains and penalties of perjury, that the enclosed CL-2006-OVBEF   has met all the requirements of the Massachusetts (insurer file number)
Division of Insurance checklist(s) applicable thereto, and is otherwise in all respects in compliance with all relevant Massachusetts law and regulations.

Signature: _____

Name (print or type):   Domenick Yezzi _____

Title:   Vice President _____

CONFIDENTIAL

1

## Outline of Contents
## CASUALTY FORM FILINGS

I.      G.L. ch. 175, §22A- Combination of Hazards
II.     Chapter 175, section 111A: Combination Policies/Liability Insurance
III.    Chapter 175, section 111C: Medical Pay Provisions
IV.     Chapter 175, section 111E: Professional liability policies
V.      Requirements applicable to Insurance on Liability for Injury from Exposure to
        Dangerous Levels of Lead in Dwelling Units 211 CMR 131.00:
        Chapter 175: section 111H: Coverage of injuries resulting from lead exposure

VI.     Liquor Liability Coverage
VII.    Additional Governing Provisions

**I. G.L. ch. 175, §22A- Combination of Hazards**

This policy combines coverage against loss or damage caused by a combination of
hazards (i.e. hazards specified in more than one of the clauses of section forty-seven).
_____✓___ Yes                    _____ No

**If no, please proceed to the next section.**
**If yes, please review and complete the following:**

_*No*___ This policy does not contain coverage of or references to motor vehicle insurance
subject to G.L. ch. 175, §113A.

_*No*___ This policy does not contain coverage of or reference to life and health insurance
subject to G.L. ch. 175, §§108, 132.

but nothing in the foregoing provisions of this section shall permit the incorporation in
any policy issued under section 111A or 117A, or any policy subject to section 108 or
113A or 132, of any coverage not otherwise permitted by this chapter to be incorporated
therein. The provisions of this paragraph shall not apply to policies authorized by section
54D.

**II. Chapter 175, section 111A: Combination Policies/Liability Insurance**

**A.** Is the policy a single policy issued by two (2) or more companies for insurance
against loss or damage on account of the hazards specified in the 3rd clause to airplanes,
seaplanes, dirigibles or other aircraft and motor vehicles other than motor boats; or in
subdivisions (a) and (b) of the 6th clause of section 47 (legal liability plan loss or damage
on account of injury or death or damage to property of another excluding deliberate or
intended acts);         _____ Yes         _____✓___ No

1

**If no, please proceed onto the next section.**
**If yes, then please review and complete the following:**

_n/a_ The policy should be executed on behalf of the companies by a duly authorized person and the corporate name of each of the companies shall be affixed to the policy. G.L. ch. 175, §111A.

The policy shall contain the following:

_n/a_ A provision specifying the percentage of any loss or claim for which each company shall be liable. Id.

_n/a_ A provision that any notice, sworn statement or proof of loss which may be required by the provisions of said policy may be rendered, made or given to any one of such companies or to a duly authorized agent of any one of the such companies, and that such notice, sworn statement or proof of loss so rendered, made, or given shall be valid and binding as to all of such companies. Id.

_n/a_ A provision that, in any action or suit under the policy, service of process may be made on any one of such companies and that such service shall be deemed valid and binding service upon all of such companies. Id., G.L. ch. 175, §102A(3).

_n/A_ A provision that upon cancellation by any company of its liability under the policy, the return premium, if any, to be paid or tendered to the insured shall be based on such proportion of the total premium stated in the policy as the amount insured by the canceling company bears to the total amount insured under the policy. Id., G.L. ch. 175, §102A(5).

Are the companies mutual companies? _____ Yes      ✓ No

**If no, please proceed to the next section.**
**If yes, then, please review and complete the following:**

_n/a_ The policy shall provide that the contingent mutual liability of the insured to each company shall be based on such proportion of the total premium as the amount insured by each such company bears to the total insured under the policy. Id., G.L. ch. 175, §102A(4).

_n/a_ The person insured under such a policy shall be deemed to be a member of each company while the policy is in force and entitled to one vote at the meetings of each company. G.L. ch. 175, §111B; G.L. ch. 175, §102B, second paragraph.

_n/a_ The policy [or filing] shall contain the notice, endorsement, and statement required by G.L. ch. 175, §§76,80, 81. G.L. ch. 175, §102B, third paragraph.
_n/a_ Every policyholder of a domestic company and every policy in this commonwealth of a foreign company shall be notified, at his last know address, within

CONFIDENTIAL

ISO_00004167

six months after the expiration of his policy, of the amount of any divided declared and payable thereon, unless in he meantime such divided has been paid in cash or applied in payment of the premium on the renewal of the policy. G.L. ch. 175, §80.

_n/a_ The policy shall fix contingent mutual liability of its members for the payment of losses and expenses not provided for by its cash funds, which liability shall not be less than an amount equal to and in addition to the cash premium written in the policy. The total amount of the liability of the policyholder shall be plainly and legibly stated upon the filing-back of each policy. G.L. ch. 175, §81.

_n/a_ Every policyholder shall be notified of the time and place of holding its meetings by a written notice or on the filing-back of each policy, receipt or certificate of renewal in accordance with the form prescribed in G.L. ch. 175, §76.

_n/a_ The application shall, insofar as it materially relates to the obligations stated in the contract, be considered a part of the contract. The application shall require from the applicant sufficient information relative to the insured property to determine the actual cash value and the actual ownership of the property. ( Not applicable to coverage of owner occupied dwellings of four units or less, to buildings owned and insured by the commonwealth or its political subdivisions, to highly protected risks, to non-income producing seasonal dwellings, or to builders risk policies.) G.L. ch. 175, §§98, 111B.

_n/a_ The policy shall provide for a policyholder's liability to pay his/her proportional part of any assessment laid by the company. G.L. ch. 175, §§§83, 93, 111B.

**Please note that two or more companies may NOT issue a single motor vehicle liability policy as defined in G.L. ch. 90, §34A.** G.L. ch. 175, §111A.

**B.** Is the policy issued by two or more companies against legal liability for loss or damage to person or property caused by nuclear energy hazards?
_____ Yes          ✓ No

**If no, please proceed to the next section.**
**If yes, please review and complete the following:**

_n/a_ The policy may be executed on behalf of the companies by a duly authorized person and need not be countersigned by a resident agent of more than one of such companies in the commonwealth. G.L. ch. 175, §111A

_n/a_ The policy need not be headed by the corporate names of all the companies provided the corporate name of each company is affixed. Id.

_n/a_ The policy shall plainly specify the percentage of any loss or claim for which each such company shall be liable. Id.

CONFIDENTIAL                                        ISO_00004168

4

_n/a_   The policy shall include a provision that any notice, sworn statement or proof of loss which may be required by the provisions of the policy may be rendered, made or given to any one of such companies or to the agent named I the policy as he duly authorized agent of the companies, and that such notice, sworn statement or proof of loss so rendered, made or given shall be valid and binding as to all of such companies.  Id.

_n/a_   A provision that, in any action or suit under the policy, service of process may be made on any one of such companies and that such service shall be deemed valid and binding service upon all of such companies. Id., G.L. ch. 175, §102A(3).

Are the companies mutual companies?  _____ Yes    ✓ No

**If no, please proceed to the next section.**
**If yes, please review and complete the following:**

_n/a_   The policy shall provide that the contingent mutual liability of the insured to each company shall be based on such proportion of the total premium as the amount insured by each such company bears to the total insured under the policy.  Id., G.L. ch. 175, §102A(4).

_n/a_   The person insured under such a policy shall be deemed to be a member of each company while the policy is in force and entitled to one vote at the meetings of each company.  G.L. ch. 175, §111B; G.L. ch. 175, §102B, second paragraph.

_n/a_   The policy [or filing] shall contain the notice, endorsement, and statement required by G.L. ch. 175, §§§76,80, 81.  G.L. ch. 175, §102B, third paragraph.
    _n/a_   Every policyholder of a domestic company and every policy in this commonwealth of a foreign company shall be notified, at his last know address, within six months after the expiration of his policy, of the amount of any divided declared and payable thereon, unless in he meantime such divided has been paid in cash or applied in payment of the premium on the renewal of the policy.  G.L. ch. 175, §80.

    _n/a_   The policy shall fix contingent mutual liability of its members for the payment of losses and expenses not provided for by its cash funds, which liability shall not be less than an amount equal to and in addition to the cash premium written in the policy.  The total amount of the liability of the policyholder shall be plainly and legibly stated upon the filing-back of each policy.  G.L. ch. 175, §81.

    _n/a_   Every policyholder shall be notified of the time and place of holding its meetings by a written notice or on the filing-back of each policy, receipt or certificate of renewal in accordance with the form prescribed in G.L. ch. 175, §76.

_n/a_   The application shall, insofar as it materially relates to the obligations stated in the contract, be considered a part of the contract.  The application shall require from the applicant sufficient information relative to the insured property to determine the actual cash value and the actual ownership of the property.  ( Not applicable to coverage of

4

ISO_00004169

owner occupied dwellings of four units or less, to buildings owned and insured by the commonwealth or its political subdivisions, to highly protected risks, to non-income producing seasonal dwellings, or to builders risk policies.) G.L. ch. 175, §§98, 111B.

_n/a_   The policy shall provide for a policyholder's liability to pay his/her proportional part of any assessment laid by the company. G.L. ch. 175, §§§83, 93, 111B.

### Policyholder Notices for Combination Policies

_n/a_   In the event a company or filing or rating organization eliminates or reduces certain coverages, conditions, or definitions in such policies issued under this section [G.L. ch. 175, §111A], the company must attach to each of such policy a printed notice setting forth what coverages, conditions or definitions have been eliminated or reduced.  If explanations of such reduced or eliminated coverages are not contained in such a printed notice attached to such policy, then such coverages, conditions or definitions shall remain in full force and effect without such reductions and eliminations. G.L. ch. 175, §111A.

_n/a_   We hereby certify that such notice is attached, Policy Form Number____n/a_____ Page_n/a_, or has previously been filed and approved for use with the Division of Insurance, policy form number_____n/a_____ approved effective____n/a_____.

## III. Chapter 175, section 111C: <u>Medical Pay Provisions</u>

A policy of insurance issued under subdivision (b) of clause 6th of section 47 insuring any person against legal liability for loss or damage on account of the injury or death of any other person **may** also insure, or an endorsement or rider may be attached thereto to insure, irrespective of any such legal liability, any person, including the named insured under the policy, in respect to:

_n/a_   (1) the reasonable expense of medical, surgical, x-ray, dental (including prosthetic devices), ambulance, hospital, professional nursing and funeral expenses; and

_n/a_   (2), in the case of a motor vehicle liability policy as defined in MGL c. 90 s. 34A, disability benefits on account of injury and death benefits to dependents, beneficiaries or personal representatives on account of death resulting from the ownership, maintenance or use of motor vehicles.

## IV. Chapter 175, section 111E: <u>Professional liability policies</u>

**Does this filing entail coverage for professional liability?**
**If no, please proceed to the next section**
**If yes, please review and complete the following:**

5

CONFIDENTIAL

ISO_00004170

With the prior written approval of the Commissioner of insurance, a group liability insurance policy may be issued by a company affording professional liability coverage for bodily injury and property damage including wanton and reckless assault and battery, but excluding willful or intentional assault and battery.

*n/a*   The policy must insure members of an association formed under the authority of MGL c. 180 (Corporations for Charitable and Certain Other Purposes) consisting of at least 500 members of whom not less than 75 % are insured thereunder.

### V.  Requirements applicable to Insurance on Liability for Injury from Exposure to Dangerous Levels of Lead in Dwelling Units 211 CMR 131.00:
### Chapter 175: section 111H: Coverage of injuries resulting from lead exposure

Does the policy provide coverage for a residential property?
_____ Yes    _✓_ No

**If no, please proceed to the next section.**
**If yes, please review and complete the following:**

**Mandatory Coverage**

*n/a*   (a) Any liability insurance policy which provides coverage to the owner of any premises for which a letter of interim control or letter of full compliance is in effect, in accordance with MGL c. 111, s. 197 (lead), shall cover claims for injury or damage resulting from exposure to dangerous levels of lead in dwelling units, as long as said injury or damage is not the result of gross or willful negligence.

*n/a*   (b) Any liability insurance policy which provides coverage to the owner of any premises not in compliance with MGL c. 111, s. 197 (lead) shall be endorsed to add coverage for injury or damage resulting from exposure to dangerous levels of lead in dwelling units occurring after the effective date of such endorsement when and if the owner of said premises obtains and maintains a letter of interim control or letter of full compliance.

*n/a*   (c) any new owner of any premises who has taken title as the result of a bona fide transaction and who has also complied with the requirements of subsection (d) of MGL c. 111, s. 199 (lead), shall be covered from the date such owner took title to the premises.

*n/a*   (d) Companies which elect to offer a liability insurance policy for any premise for which the owner has not obtained a letter of interim control or letter of full compliance shall also make available for that premise additional coverage for injury or damage resulting from exposure to dangerous levels of lead, provided that in the case of an owner occupied single family premise any such coverage for

6

ISO_00004171

injury or damage resulting from exposure to dangerous levels of lead shall be provided as part of the policy and not offered as additional coverage excepting that such coverage will not apply to claims made by persons insured under the policy.

n/a   When any liability insurance policy which an insurer has elected to offer provides coverage to the owner of any premises for which a letter of interim control or letter of full compliance is in effect, in accordance with MGL c. 111, § 197, such policy shall provide coverage for injury or damage which results from exposure to dangerous levels of lead in dwelling units, and which occurs during the policy period, as long as said injury or damage is not the result of gross or willful negligence. 211 CMR 131.04

n/a   Coverage provided in accordance with this section [211 CMR 131.04] will be effective from the date of policy inception if the letter of compliance or letter of interim control is effective on or before such later date.

n/a   Except as provided in 211 CMR 131.06, when any liability insurance policy which an insurer has elected to offer provides coverage to the owner of any premises for which there is no letter of interim control or length of full compliance in accordance with MGL c. 111,§ 197, the insurer shall endorse or otherwise modify the policy to provide coverage for injury or damage which results from exposure to dangerous levels of lead in dwelling units, and which occurs on or after the date the endorsement or other contractual modification is effective, if and when the owner of such premises obtains and maintains a letter of interim control or letter of compliance. 211 CMR 131.05

n/a   Coverage provided to any dwelling unit in accordance with this section shall be effective on any dwelling unit on the date that any letter of interim control or letter of compliance applicable to such unit is effective.

n/a   Notwithstanding the requirements and limitations of 211 CMR 131.05, a new owner of premises who has taken title as a result of a bona fide transaction and who has complied with the requirements of MGL c. 111, § 199(d) applicable to new owners, including coming into conformance with MGL c. 111, §§ 189A through 199B within 90 days after becoming the owner of the premises, shall be covered for injury or damage which results from exposure to dangerous levels of lead in dwelling units, and which occurs during the policy period of any policy of liability insurance an insurer has elected to provide to such owner. (211 CMR 131.06)

n/a   Coverage shall apply from the date such owner took title to the premises, or from the effective date of the policy, if the owner did not obtain insurance until after the date of taking title.

CONFIDENTIAL   ISO_00004172

8

*n/a*    Lead poisoning liability coverage provided in accordance with 211 CMR131.04, 131.05 and 131.06 shall not be subject to special limits not applicable to other liability claims under such a policy. (211 CMR 131.07)

*n/a*    Lead poisoning liability coverage provided in accordance with 211 CMR 131.04, 131.05 and 131.06 shall be provided to any dwelling unit for which a letter of interim control or letter of compliance is in effect, regardless of whether such letters are in effect with respect to other units in the same building. Id.

*n/a*    When coverage is provided in accordance with the above referenced sections on any unit or portion of premises for which a letter of compliance or letter of interim control is in effect, such coverage will apply only to lead poisoning liability claims arising from the portion of the premises covered by such a letter. Id.

An insurer may require an insured to provide a copy of any letter of compliance or letter of interim control that is in effect with respect to any premises or portion of premises that qualifies for coverage.

Companies that offer a liability insurance policy for any premises for which the owner has not obtained a letter of interim control or letter of compliance may exclude coverage for injury or damage which results from exposure to dangerous levels of lead in dwelling units. However, certain buybacks must be offered to the insured.

*n/a*    Insurers shall offer such buyback coverage with separate limits of at least $100,000 per occurrence for personal lines insurance on residential premises and at least $300,000 per occurrence for commercial lines insurance on residential premises.

*n/a*    Notwithstanding the foregoing, if the general liability per occurrence limit of an insured's policy is less than $100,000 in the case of a personal lines policy, or less than $300,000 in the case of a commercial lines policy, then the insurer may provide lead poisoning liability coverage in accordance with 211 CMR 131.08 with a per occurrence limit of not less than the policy's general liability per occurrence limit.

*n/a*    The foregoing separate minimum per occurrence limits shall not increase any aggregate limit or policy limit of liability of any policy of insurance, which includes buyback coverage provided in accordance with 211 CMR 131.08.

*n/a*    The limits of a policy written in accordance with 211 CMR 131.08 apply regardless of the number of units covered by such insurance.

*n/a*    Buyback coverage elected within 30 days of receipt of an offer of such coverage shall be deemed effective on the inception date of the policy.

8

CONFIDENTIAL
ISO_00004173

9

*n/a*   Buyback coverage elected after 30 days of receipt of an offer shall be effective on the date of the request by the insured, unless otherwise agreed by the insured and the insurer.

*n/a*   Notwithstanding any of the other provisions of 211 CMR 131.00, any liability insurance policy covering owner-occupied single family premises shall provide coverage for injury or damage resulting from exposure to dangerous levels of lead in dwelling units, except that such a policy's lead poisoning liability coverage will not apply to claims made by persons who are insureds under that policy. 211 CMR 131.09

The exclusion and buyback requirements of 211 CMR 131.08 do not apply to owner-occupied single family premises.

### 211 CMR 131.10  Rates for Lead Liability

(1) Rates for insurance under 211 CMR 131.00 must be filed with the Commissioner, and are subject to the requirements of MGL c. 175A.

*n/a*   (2) Loss costs for insurance be filed with the Commissioner and must satisfy the requirements of **SRB Bulletin 90-05** (Insurance Rating Organizations: Implementation of Loss Cost Filing Procedures) or any superseding bulletin, rule, or regulation regarding loss costs.

(3) Filings under 211 CMR 131.00 must include full justification for proposed rates, loss costs, or buyback coverage, and must be accompanied by all actuarial data used in their formulation, such as:

*n/a*   (a) Historical exposure and claims data (both in number and in dollar amount, paid as well as incurred), including information relative to claims closed both with and without indemnity payments, for the previous 5 years.

*n/a*   (b) Projected claims costs underlying the proposed loss costs, along with supporting documentation.

*n/a*   (c) A narrative explanation of actuarial assumptions used in developing the loss costs.

*n/a*   (4) Each rate or loss cost filing must be made at least 15 days prior to its proposed effective date. The Commissioner may delay the effective date for 30 additional days if she determines the delay is necessary to properly examine the filing or to request any supporting information or to permit a hearing on the filing.

### Disclosure Requirements for Lead Liability

*n/a*   Insurers shall provide to insureds or prospective insureds  disclosure notices summarizing the coverage which they provide or make available for lead poisoning liability insurance with respect to all policies issued or renewed. 211 CMR 131.13

9

     ISO_00004174

The Disclosure notices shall indicate:

*n/a* (a) whether the policy is intended to exclude coverage for injury or damage which results from exposure to dangerous levels of lead in dwelling units;

*n/a* (b) that such exclusions may not be applied to premises to which a letter of compliance or letter of interim control is in effect;

*n/a* (c) that buyback coverage is available for an additional charge in the event that the insurer intends to apply such an exclusion to premises for which no letter of compliance or letter of interim control is in effect;

*n/a* (d) that buyback coverage elected within 30 days of receipt of an offer of such coverage will be deemed effective on the inception date of the policy, and that buyback coverage elected after 30 days of receipt of an offer will be effective on the date of the request by the insured, unless otherwise agreed by the insured and the insurer;

*n/a* (e) that if the owner of residential premises brings his or her premises into compliance during the term of the policy as stated in 211CMR 131.05, coverage will be added for lead poisoning liability arising from exposure which occurs on and after the date the added coverage is effective;

*n/a* (f) that a new owner brings his or her premises into compliance in the manner indicated in 211 CMR 131.06, the new owner shall be provided coverage back to the date he or she took title, or from the effective date of the policy, if the owner did not obtain insurance unit after the date of taking title;

*n/a* (g) that, for an insured to qualify for coverage provided in accordance with 211 CMR 131.04, 131.05 and 131.06, an insurer may require an insured to provide a copy of any letter of compliance or interim control that is in effect with respect to any premises or portion of premises for which such insurance is sought;

*n/a* (h) that lead poisoning liability coverage provided in accordance with 211 CMR 131.04, 131.05 and 131.06 shall be provided to any dwelling unit for which a letter of interim control or letter of compliance is in effect, regardless of whether such letters are in effect with respect to other units in the same building;

*n/a* (i) that, when lead poisoning liability coverage is provided in accordance with 211 CMR 131.04, 131.05 and 131.06 on any unit or portion of premises for which a letter of compliance or letter of interim control is in effect, such coverage will apply only to lead poisoning liability claims arising from the portion of the premises covered by such a letter; and

*n/a* (j) the limits of the lead poisoning liability coverage being provided or offered.

**Additional Disclosures**

CONFIDENTIAL

*n/a* At the same time that insurers provide to insureds the disclosure notice specified above, insurers shall also provide an additional disclosure notice describing the requirements of MGL c.111, sections 189A through 199B (the Massachusetts Lead Law).

Such notice is available from the Division of Insurance, which shall determine its form and content.

## VI. Liquor Liability Coverage
Chapter 175, section 112A:

*n/a* Liquor legal liability insurance shall provide insurance coverage against the legal liability of the insured.

*n/a* It shall also cover loss, damage or expense incident to a claim arising out of death or injury to any person as the result of negligence in the distribution, sale, or serving of alcohol by a licensee or an employee, or agent thereof, or any other person or entity to whom a policy of liquor legal liability insurance has been issued.

*n/a* No payment shall be made under the policy where the cause of action giving rise to a claim is the result of the actions of an intoxicated person which occurred off of, and away from, the premises of the licensee excluding, however, those causes of action arising out of the intoxicated individual's operation of a motor vehicle.

## VII. Additional Governing Provisions:

Is the proposed policy, endorsement, or rule for stand-alone General Liability?

If no, please proceed to the next section.
If yes, please review and complete the following:

## Claims Made Policies for General Liability:

*n/a* The Division of Insurance does not permit claims made policies for "stand alone" comprehensive general liability coverage. This type of coverage is only permitted when accompanying medical malpractice insurance as long as the medical malpractice insurance is not, in the Division's opinion, merely incidental.

✓ We hereby certify that our proposed General Liability form, endorsement, or rule do not contain any "claims made" provisions.

## Defense Within Limits for General Liability:

*n/a* The Division of Insurance does not permit "defense within limits" provisions on comprehensive general liability products.

CONFIDENTIAL

*n/a*  We hereby certify that our proposed General Liability form, endorsement, or rule does not contain any "defense within limits" provisions.

## Mold Coverage (All Lines with the exceptions noted below):

*n/a*  Insurers who provide commercial or personal lines policies are required to provide minimum limits for mold. For commercial lines products, insurers are required to provide minimum of $15,000 for property and liability damage. Insurers providing personal lines insurance coverage should provide a $10,000 base coverage and offer extended property coverage options of $25,000 and $50,000. Insurers must provide $50,000 liability coverage and offer extended liability coverage of up to $100,000 at the option of the insured. However, these limit requirements do not apply to Commercial General Liability, Professional Liability, or Excess/Umbrella policies.

*n/a*  The definition of mold or fungus should include mold, fungus, mildew, and any mycotoxins, spores, scents or byproducts produced by the mold, fungus or mildew. The definition should exclude any fungi that are included in a good or product intended to be consumed.

Is the proposed policy, endorsement, or rule for General Liability, Professional Liability, or Excess Umbrella?

If yes, please proceed to the next section.
If no, please review and complete the following:

*n/a* We hereby certify that our existing, revised, or proposed policy for **commercial lines** provides minimum coverage for mold with a minimum of $15,000.

*n/a*  We hereby certify that our existing, revised, or proposed policy for  **personal lines** policies provides a $10,000 base coverage and offers extended property coverage options of $25,000 and $50,000. We also certify that our policy provides $50,000 liability coverage and offers extended liability coverage of up to $100,000 at the option of the insured.

## Sexual Abuse and Molestation (All Lines):

*n/a*  It is current policy of the Division of Insurance to permit the use of such exclusions with the stipulation that coverage be provided for defense costs at either 20% and 100% at the option of the insured. Companies may rate as they deem necessary, but must file the actuarial documentation and justification for their proposed rates.

*n/a*  We hereby certify that our policy provides coverage at 20% and 100% at the option of the insured.

*n/a*  We hereby certify that corresponding rates for this coverage have been separately filed with the required actuarial documentation and are in accordance

CONFIDENTIAL

ISO_00004177

with the Massachusetts statutes, regulations, and bulletins governing casualty rate filings.


**<u>Unfair and Deceptive Trade Practices (All Lines):</u>**

___✓___ Any filing not in compliance with the above referenced requirements may be deemed to be in violation of the provisions of Chapter 176D of the Massachusetts General Laws. We hereby certify that the provisions set forth in this filing do not entail any intentional unfair and deceptive trade practices. Furthermore, we understand that we are subject to the penalties associated with practices that are in clear violation of this statute.


**<u>Dog/Animal Bite Exclusions:</u>**

_n/a_ The Division does not allow companies to use blanket dog bite exclusions in a homeowners', personal liability or multi peril policies. Dog bite exclusions are allowed only as to certain breeds and/or dogs with a prior history of biting. The company should specify in the endorsement the breeds they deem aggressive. If a company is seeking to exclude a particular dog, not within an aggressive breed, it must specify and address, in the endorsement, the facts that support their assessment. All such endorsements are subject to review and approval by the Division.

CONFIDENTIAL                                                                                          ISO_00004178

# Outline of Contents
# FIRE, MARINE, and INLAND MARINE FILINGS

I. Policy Language and Coverage

    A. Insurance coverage for dwelling houses, comprehensive and medical coverage
        MGL c.175, s.54E
            1. Scope of Coverage / Approval of Policy / Forms
            2. Surplus / Reinsurance Requirements

    B. Coverage for commercial property, goods in storage or transit and other
        merchandise or equipment in connection with fire insurance policies
        MGL c. 175, s.54F
            1. Commercial Property Coverage
            2. Surplus / Reinsurance Requirements

    C. Mutual Fire companies; members MGL c.175, s.76

    D. Mutual Fire Companies; provisions, disclosure of contingent liability
        MGL c.175, s.81

    E. Application for insurance and preliminary contracts MGL c.175, s.98
            1. Application Requirements
            2. Non-Applicability
            3. Binders

    F. Fire policy / standard form MGL c.175, s.99
            1. Contents of Policies and Forms
            2. Text of Standard Form of Policy
            3. Change to Loss Settlement Clause
            4. Additional Mandatory Policy Language
            5. Relocation Benefits
            6. Elimination / Reduction in Coverage

    G. Fire Policy; damage caused by nuclear reaction or contamination
        MGL c.175, section 99A

    H. Property insurance for business, professional or governmental operation;
        multi-peril homeowners insurance for condominiums
        MGL c.175, section 99B
            1. Applicability of Section 99
            2. Comparison to Standard Fire Policy
            3. Requirements for Approval
            4. Requirements for Form of Policy

    I. Combination policies; contents; Commissioner's approval
        MGL c.175, section 102A
            1. Requirements for Form of Policy

1

ISO_00004179

    2. <u>Execution of Policy</u>
    3. <u>Conditions for Policy Issuance or Deliverance</u>
    4. <u>Modifications</u>
    5. <u>Standard Language Required</u>
    6. <u>Applicability of Other Sections</u>

J. Non-assessable policies; power to issue; conditions MGL c.175, section 152A
    1. <u>Who May Issue</u>
    2. <u>Deposit</u>
    3. <u>Applicability</u>
    4. <u>Required Notice on Policy</u>

K. Fire insurance policies; non-renewal notice provision
    <u>MGL c.175, section 193P (first paragraph only)</u>

       1.

L. Marine and automobile and sprinkler insurance MGL c.175, section 117A
    1. <u>Who May Issue</u>
    2. <u>Execution of Policy</u>
    3. <u>Prerequisites for Issuance of Policy</u>
    4. <u>Applicability of Other Sections</u>

M. Riders and endorsements; Commissioner's approval MGL c.175, section 192
    1. <u>Filing and Approval Of Riders and Endorsements</u>
    2. <u>Exceptions</u>

       i.    <u>Filings by Rating Organizations</u>
       ii.   <u>Rates In Excess of Filing</u>
       iii.  <u>Applicability</u>
    1. <u>Section 7: Defective filing; remedy of aggrieved person</u>

N. <u>Additional Filing Provisions</u>

# I. <u>Policy Language and Coverage</u>

## A. Chapter 175: <u>Section 54E. Insurance coverage for dwelling houses, comprehensive and medical coverages in connection with fire insurance coverage</u>

### <u>Scope of Coverage / Approval of Policy / Forms</u>

*N/A*   Any company authorized to insure against loss or damage by fire (which has been actively engaged in the fire insurance business in 1 or more states of the United States continuously for 10 years, or less than 10 years with the approval of the Commissioner, or whose predecessor or predecessors, if any prior to merger or consolidation, shall have been so engaged for such period) may insure against loss or damage to dwellings and appurtenant structures and to the contents thereof and

2

any other personal property of a similar nature of the insured or members of his household resulting from any peril proper to insure against in Massachusetts.

*n/a*   The company may also insure against the legal liability of the insured, or of members of his household, arising out of non-business pursuits and for medical, surgical and hospital expenses.

*n/a*   Insurance coverages for loss or damage by perils other than the peril of fire may be written only when insurance against the peril of fire is written in the same policy and on forms that have been submitted to and approved by the Commissioner.

**B. Chapter 175: Section 54F. <u>Coverage for commercial property, goods in storage or transit and other merchandise or equipment in connection with fire insurance policies</u>**

**<u>Commercial Property Coverage</u>**

*n/a*   Any company authorized to insure against loss or damage by fire (which has been actively engaged in the fire insurance business in 1 or more states of the United States continuously for 10 years, or less than 10 years with the approval of the Commissioner, or whose predecessor or predecessors, if any prior to merger or consolidation, shall have been so engaged for such period) may insure against loss or damage to, or the legal liability of the insured with respect to, commercial property, including goods in storage and in transit, stocks of merchandise, furniture and fixtures, equipment, materials and supplies and the insured's interests in improvements and betterments, whether the property of the insured or the property of others, while anywhere within the continental United States or in transit in Canada.

*n/a*   Insurance coverages for loss or damage by perils other than the peril of fire may be written only when insurance against the peril of fire is written in the same policy and on forms that have been submitted to and approved by the Commissioner.

**C. Chapter 175: Section 76. <u>Mutual Fire companies; members</u>**

Every person insured by a mutual fire company shall be a member while his policy is in force, entitled to 1 vote for each policy he holds, and shall be notified of the time and place of holding its meetings by a written notice or by an imprint, in type not smaller than long primer, upon the filing-back of each policy, receipt or certificate of renewal, as follows:

*n/a*   **The assured is hereby notified that by virtue of this policy he is a member of the Insurance Company, and is entitled to vote either in person or by proxy at any and all meetings of said company. The annual meetings are held at its home office on the ____day of _____ in each year, at _____ o'clock.**

3

The blanks shall be duly filled in print, and shall be a sufficient notice.

**D. Chapter 175: Section 81.** <u>**Mutual Fire companies; premiums; disclosure of contingent liability policy**</u>

Mutual fire companies shall fix the contingent mutual liability of its members for the payment of losses and expenses and state the total amount of the liability of the policyholder, plainly and legibly, on the filing-back of each policy.

**E. Chapter 175: Section 98.** <u>**Application for insurance and preliminary contracts**</u>

Every applicant for insurance against loss or damage to a building by fire shall complete a form to be prescribed by the Commissioner.

<u>**Application Requirements**</u>

 The application form may vary according to the type of coverage sought. It shall require from the applicant sufficient information relative to the insured property to determine the actual cash value and the actual ownership of the property. The application form shall be completed prior to the initial issuance of a policy, upon an addition or modification of the policy with respect to the named insured or mortgagee, or when the coverage under the terms of the policy is increased by more than 25 %. The application shall, insofar as it materially relates to the obligations stated in the contract, be considered a part of the contract.

The by-laws of the company shall not be considered as a warranty or a part of the contract except so far as they are incorporated in full in the policy as provided in the 9th clause of section 99.

<u>**Non-Applicability**</u>

This section shall not apply to owner occupied dwellings of four units or less, to buildings owned and insured by the Commonwealth or its political subdivisions, to highly protected risks, to non-income producing seasonal dwellings, or to builders risk policies.

For the purpose of this section the words "highly protected risk" shall mean a fire resistive building which meets the highest standards of fire safety according to insurance company underwriting requirements, and "builders risk policies" shall mean policies which insure against loss to buildings in the course of construction.

<u>**Binders**</u>

Nothing in this section shall prohibit the issuance of a written memorandum of a preliminary contract of insurance, for a period no longer than 30 days, pending the approval of the application form, for the issuance of such a policy.

4

**F. Chapter 175: Section 99. Fire policy/standard form**

No company shall issue policies or contracts which insure against loss or damage by fire or by fire and lightning to property or interests in Massachusetts other than those of the standard forms herein set forth, except as provided in section 22A and in section 102A, and except as follows:

**Contents of Policies and Forms**



a. A company may print on or in its policies its name, location, date of incorporation, plan of operation, whether stock or mutual, and, if the former, the amount of its paid-up capital stock.

b. A corporation organized under a special act of the legislature of any state may so indicate upon its policy and may add a statement of the plan under which it operates in this state.

c. A company may also print on or in its policies the names of its officers and agents, the number and date of the policy. (THERE IS NO LONGER A COUNTERSIGNATURE REQUIREMENT IN MASSACHUSETTS UNLESS THE STATE OF INCORPORATION FOR THE INSURER HAS THIS TYPE OF REQUIREMENT. IF THIS IS THE CASE, THEN MASSACHUSETTS' RETALIATORY PROVISIONS APPLY. SEE MGL c. 175, s, 159).

d. A company may also indicate on the face of its policies or elsewhere the perils insured against in the policy or in any actual or contemplated endorsements thereto or both, and may show the location and description of the property or interest covered, the amount, rate and premium applicable to the hazards insured and an abstract of other pertinent policy or endorsement provisions.

e. A mutual company shall fix the contingent mutual liability of its members for the payment of losses and expenses not provided for by its cash funds and shall print on the filing-back of its policies the notice required by s. 76, the endorsement required by s. 80 and the statement required by MGL c. 175, s. 81.

f. A company may print or use in its policies printed forms of description and specification of the property or interest covered.

g. If policies are underwritten by a group, association or syndicate of companies, the names and principal places of business of said companies and the proportionate share of participation of each company may be stated at a place in the policy other than that indicated in the standard form for stating the name and principal place of business of the company.

h. A domestic company may print in its policies any provisions which it is authorized or required by law to insert therein; and any foreign company may, with the approval of the Commissioner, so print any provision required by its charter or deed of settlement, or by the laws of its own state or country not contrary to the laws of this Commonwealth; but the Commissioner shall require

5

ISO_00004183

any provision which in his opinion modifies the contract of insurance in such way as to affect the question of loss to be appended to the policy by a slip or rider as hereinafter provided.

*n/a*    i. The blanks in the standard form may be filled in print or writing.

*n/a*    j. A company may print upon policies issued in compliance with this section the words "Massachusetts Standard Policy".

*n/a*    k. There shall be printed or stamped on the filing-back of every policy, in clear type not smaller than long primer, the words "In case of fire notify the company or its local agent at once in writing".

*n/a*    l. The teste clause and the signature of the properly designated officers of the company may be placed at the end of the policy instead of in the position indicated by the standard form.

*n/a*    m. A company may write upon the margin or across the face of a policy, or write, or print in type not smaller than 10 point, 2 points leaded, upon separate slips or riders to be attached thereto, provisions adding to or modifying those contained in the standard form, and all such slips, riders and provisions shall be signed by the officers or agents of the company so using them. Nothing herein contained shall authorize any addition to or modification of any of the provisions of said standard form relative to the rights of a mortgagee, a cancellation of the policy, a reference of the amount of a loss to 3 referees or the limitation of actions or suits.

*n/a*    n. A reciprocal or inter-insurance exchange may with the written approval of the Commissioner add to or modify the said standard form with respect to any provisions required by the plan of reciprocal insurance or inter-insurance.

*√*    o. The standard form of policy shall be plainly printed and all portions of the policy shall be in type of at least 10 point, 1 point leaded in size, and shall be substantively as follows:

**Text of Standard Form of Policy**

*n/a*    (Corporate name of the company; its principal place or places of business.)

*n/a*    In consideration of the provisions and stipulations herein or added hereto and of dollars premium this company, for the term of from the day of (month), 2000 to the day of (month), 2000 at one (1) minute past twelve (12) o'clock ante-meridian, standard time, at location of property involved, to an amount not exceeding dollars, does insure and legal representatives, to the extent of the actual cash value of the property at the time of loss, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all loss by fire, lightning and by removal from premises endangered by the perils insured against in this policy, except as

6

CONFIDENTIAL



hereinafter provided, to the property described hereinafter while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

*n/a* Assignment of this policy shall not be valid except with the written consent of this company.

*n/a* This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

*n/a* In witness whereof, this company has executed and attested these presents.

*n/a* This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance *n/a* concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

*n/a* This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named hereon in writing, bullion or manuscripts.

*SEE POLICY* This company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy; (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in the neighboring premises; (j) nor shall this company be liable for loss by theft.

*n/a* Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto.

*√* Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; or (b) while the described premises, whether intended for occupancy by owner or tenant, are vacant or unoccupied beyond a period of sixty consecutive days for residential premises of three units or less and thirty consecutive days for all other premises; or (c) as a result of explosion or riot, unless fire ensue, and in that event for loss by fire only.

*√* Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto.

7

ISO_00004185

*n/a*  The extent of the application of insurance under this policy and of the contribution to be made by this company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change.

*n/a*  No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this company relating to appraisal or to any examination provided for herein.

*n/a*  This policy shall be cancelled at any time at the request of the insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this company by giving to the insured a five days written notice of cancellation, and to the mortgagee to whom this policy is payable twenty days written notice of cancellation except where the stated reason for cancellation is nonpayment of premium where, in such instance, this policy may be cancelled at any time by this company by giving to the insured a ten days written notice of cancellation, and the mortgagee a twenty (20) days written notice of cancellation, with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium, if not tendered, will be refunded on demand and shall state or be accompanied by a statement of the specific reason or reasons for such cancellation. After this policy has been in effect for sixty (60) days, or after sixty days from any anniversary date, no notice of cancellation shall be effective unless it is based on the occurrence, after the effective date of the policy, of one or more of the following:

*n/a*  (1) nonpayment of premium;

*n/a*  (2) conviction of a crime arising out of acts increasing the hazard insured against;

*n/a*  (3) discovery of fraud or material misrepresentation by the insured in obtaining the policy;

*n/a*  (4) discovery of willful or reckless acts or omissions by the insured increasing the hazard insured against;

*n/a*  (5) physical changes in the property insured which result in the property becoming uninsurable; or

*n/a*  (6) a determination by the Commissioner that continuation of the policy would violate or place the insurer in violation of the law.  Where the stated reason is nonpayment of premium, the insured may continue the coverage and avoid the

8

effect of the cancellation by payment at any time prior to the effective date of cancellation.

Notwithstanding any other provisions of this policy, if this policy shall be made payable to a mortgagee of the covered real estate, no act or default of any person other than such mortgagee or his agent or those claiming under him, whether the same occurs before or during the term of this policy, shall render this policy void as to such mortgagee nor affect such mortgagee's right to recover in case of loss on such real estate: provided, that the mortgagee shall on demand pay according to the established scale of rate for any increase of risk not paid for by the insured; and whenever this company shall be liable to a mortgagee for any sum for loss under this policy for which no liability exists as to the mortgagor, or owner, and this company shall elect by itself, or with others, to pay the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the company interested, upon such payment, the said mortgage together with the note and debt thereby secured.

This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved.

The insured shall give immediate written notice to this company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed and damaged property, showing in detail the quantity, description, actual cash value and amount of loss claimed; and the insured shall forthwith render to this company a signed, sworn statement in proof of loss which sets forth to the best knowledge and belief of the insured the following: the time and cause of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupancy, location, possession or exposures of said property, since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and detailed estimates for repair of the damage. The insured, as often as may be reasonably required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

9

CONFIDENTIAL

ISO_00004187

In case of any loss or damage, the company, within thirty days after the insured shall have submitted a statement, as provided in the preceding clause, shall either pay the amount for which it shall be liable, which amount if not agreed upon, shall be ascertained by award of referees as hereinafter provided, or replace the property with other of the same kind and goodness; or it may, within fifteen days after such statement is submitted, notify the insured of its intention to rebuild or repair the premises, or any portion thereof separately covered by this policy, and shall thereupon enter upon said premises and proceed to rebuild or repair the same with reasonable expedition. It is moreover understood that there can be no abandonment of the property described to the company, and that the company shall not in any case be liable for more than the sum insured, with interest thereon from the time when the loss shall become payable, as above provided. The company shall be liable for the payment of interest to the insured at a rate of one per cent over the prime interest rate on the agreed figure commencing thirty days after the date an executed proof of loss for such figure is received by the company, said interest to continue so long as the claim remains unpaid.

In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the company and the insured each choosing one out of three persons to be named by the other, and the third being selected by the two so chosen; and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss; but no person shall be chosen or act as a referee, against the objection of either party, who has acted in a like capacity within four months.

No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this Commonwealth unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties. If suit or action upon this policy is enjoined or abated, suit or action may be commenced at any time within one year after the dissolution of such injunction, or the abatement of such suit or action, to the same extent as would be possible if there was no limitation of time provided herein for the bringing of such suit or action.

This company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company.

10

CONFIDENTIAL

ISO_00004188

**Change to Loss Settlement Clause**

√     Notwithstanding any other provision of this chapter, the Commissioner may approve for use in the Commonwealth a provision, which changes the loss settlement clauses of the standard policy, which requires coverage to the extent of actual cash value. Such changes must provide a reasonable, clearly specified coverage definition, and may be equivalent to, greater than or less than actual cash value.

**Additional Mandatory Policy Language**

**A company shall print on or in all its policies, that:**

n/a     Notwithstanding any provision to the contrary of any general or special law, said company shall, before paying any claim for loss or damage to real property, other than owner-occupied 1, 2, 3, or 4 family dwellings, from any hazard, where the amount of the loss payable under the policy equals or exceeds $5,000, first require the claimant to submit to the company a certificate of municipal liens from the collector of taxes of the city or town wherein such property is located.

n/a     Said company shall pay to the city or town any amounts shown on the certificate of municipal liens as outstanding on the date of loss and upon which interest is accruing as of the said date of loss, arising from the provisions of MGL chapters 40, 59, 60, 80, 83 and MGL c. 164, section 58B to 58F, inclusive, to the extent of the amount of loss payable under the policy and a copy of said transaction shall be sent to the insured and mortgagees named on the policy.

n/a     The claim of the city or town for such amounts shall have priority over the claim of any insured owner, mortgagee, assignee or other interested party except where otherwise provided by the laws of the United States.

n/a     Said company shall not be liable to any insured owner, mortgagee, assignee, city or town, or other interested party for amounts disbursed to a city or town or for amounts not disbursed to said city or town based upon a certificate indicating the nonexistence of any municipal liens.

n/a     The insurer shall not pay any claim (1) covering any loss, damage, or destruction to a building or other structure, amounting to $1,000 or more, or (2) covering any loss, damage or destruction of any amount, which causes the condition of a building or other structure to render MGL c. 143, s. 6 applicable, without having at least 10 days previously, given written notice to the building Commissioner or inspector of buildings appointed pursuant to the state building code, and to the board of health or the board of selectmen of the city or town in which the same is located.  If at any time prior to payment the said city or town notifies the insurer by certified mail of its intent to initiate proceedings designed to perfect a lien pursuant to section 3A, or to MGL c. 143, s. 9, or MGL c. 111, s. 127B, the said payment shall not be made while the said proceedings are pending; provided,

11

CONFIDENTIAL                                                                    ISO_00004189

however, that said proceedings are initiated within 30 days of receipt of such notification.

*n/a* Any lien perfected pursuant to section 3A, or to MGL c. 143, s. 9, or MGL c. 111, s. 127B, shall extend to and may be enforced by the city or town against any casualty insurance policy or policies covering any loss, damage, or destruction pursuant to which the proceedings to perfect the lien were initiated. No insurer shall be liable to any insured owner, mortgagee, assignee, city or town, or other interested party for amounts disbursed to a city or town, or for amounts not disbursed to a city or town under the provisions of this section.

## Relocation Benefits

*n/a* Every policy which insures multi-unit residential property against loss or damage by fire shall provide additional benefits, by endorsement attached to the policy, up to a limit of $750, without deductible, for each rental unit to cover the actual costs of relocation of any tenant or lawful occupant displaced by fire or by damage resulting from fire. Benefits under this clause shall be paid by the insurer to the tenant or lawful occupant after taking into account benefits available under any other policy. The terms and conditions of such clause shall be approved or prescribed by the Commissioner. The landlord or lessor of the property shall notify each tenant or lawful occupant in writing of the benefits payable under this clause at the beginning of the lease or tenancy period. A waiver of this provision in any lease or other rental agreement shall be void and unenforceable. The Commissioner may exempt from the provisions of this clause residence halls and dormitories operated by institutions of public higher education; provided, however, that the institution assumes responsibility for the relocation of any tenant displaced by fire or by damage resulting from fire.

## Elimination / Reduction in Coverage

✓ In the event a company or filing or rating organization eliminates or reduces coverages, conditions or definitions in such policies issued under this section, the company must attach to each of such policy a printed notice setting forth what coverages, conditions or definitions have been eliminated or reduced. If explanations of such reduced or eliminated coverages are not contained in such a printed notice attached to such policy, then such coverages, conditions or definitions shall remain in full force and effect without such reductions or eliminations.

## G. Chapter 175, Section 99A: Fire policy; damage caused by nuclear reaction or contamination

12

CONFIDENTIAL

Insurers issuing the standard policy pursuant to section 99 are authorized to attach or include therein a written statement that the policy does not cover loss or damage caused by nuclear reaction or nuclear radiation or radioactive contamination, whether directly or indirectly resulting from an insured peril under the policy.

This section should not be construed to prohibit the attachment to any fire policy an endorsement or endorsements specifically assuming coverage for loss or damage caused by nuclear reaction or nuclear radiation or radioactive contamination. However, subject to the foregoing and all provisions of the policy, direct loss by fire resulting from nuclear reaction, or nuclear radiation or radioactive contamination is insured against by such policy.

## H. Chapter 175: Section 99B. Property insurance for business, professional or governmental operation

### Applicability of Section 99

The Commissioner may approve any form of policy for property insurance which is issued to insure a business, professional or governmental operation, and which does not correspond to the standard fire insurance policy as set forth in section 99.

### Comparison to Standard Fire Policy

Policy forms approved under this section need not correspond to the standard fire insurance policy set forth in section ninety-nine, but shall, except for the loss settlement provisions of any such approved policy, assure to the policyholders and claimants protection no less favorable than such policyholders would be entitled to under section 99 and shall otherwise conform to the substantive requirements of that section.

The protection offered may be no less favorable than they would be entitled to under section 99.

### Requirements for Approval

The Commissioner shall approve any form of policy of homeowners multi-peril insurance which is filed by a licensed rating organization (or independently by any company licensed to write such insurance under authority of subclause (g) of section 51, clause (g) of section 54 or 54E) to insure an owner-occupied condominium unit or dwelling structure of 4 or fewer units, or a tenant in such a condominium or dwelling structure and that:

### Requirements for Form of Policy

13

ISO_00004191



____✓____ (a) contains a loss settlement clause which provides coverage for property loss to the extent of the actual cash value of the damage to the insured unit or structure;

or

____✓____ (b) contains a loss settlement clause which provides coverage for property loss on the basis of like-kind-and-quality replacement cost; or

____✓____ (c) contains, in accordance with clause Twelfth A (12th A) of section 99:

    _____ (1) a loss settlement clause which provides functional replacement or repair cost coverage;

    _____ (2) which otherwise limits an insurer's liability for property loss to the tax assessment value of the insured unit or structure; or

    _____ (3) which otherwise requires actual cash value loss settlement calculations to be based upon the fair market value of the insured unit or structure, net of land value, without consideration of replacement cost less accrued depreciation due to physical deterioration and functional and economic obsolescence; provided, however, such policy forms shall not be issued or renewed when the market value of the unit or structure proposed to be insured is less than the total amount of mortgage liens outstanding upon such unit or structure at the time of policy issuance or renewal.

The Commissioner shall compose and require, as a condition of approval of any alternative loss settlement clause pursuant to clause (c), appropriate consumer disclosure forms to be used by companies issuing such policy forms in the Commonwealth.

## I. Chapter 175: Section 102A: <u>Combination policies / contents</u>

### <u>Scope of Coverage</u>

N/A Two (2) or more stock or 2 or more mutual fire companies may issue a single policy of insurance against loss or damage by fire (or by fire and lightning) on property or interests in the Commonwealth whereby on which each company shall be severally liable for a specified percentage of any loss or claim.

N/A The policy may also include insurance against loss or damage to any property of the insured and against legal liability for loss or damage on account of the bodily injury or death of any person or any damage to property of another caused by the hazards specified in the 5th clause of section 47.

### <u>Execution of Policy</u>

N/A Such policy shall be executed by the duly authorized officers of each company, subject to the provisions of section thirty-three in the case of a domestic company.

**No such policy shall be issued or delivered:**

14

ISO_00004192

a. until a copy of the form thereof has been on file for 30 days with the Commissioner, unless before the expiration of said 30 days he shall have approved the form of the policy in writing; or

b. if the Commissioner notifies the company in writing within said 30 days that in his opinion the form of the policy does not comply with the laws of the Commonwealth, specifying his reasons therefor;

*n/a*   c. unless it is headed by the corporate name of each company;

*n/a*   d. unless it contains in substance the provisions of the 7th and 8th clauses of section 99 and is, except as hereinafter provided, in the standard form prescribed by said section.

## Modifications

The policy provisions and standard form may be modified as to form and arrangement but only in such manner as the Commissioner may prescribe; nor unless it contains in substance:

## Standard Language Required

*n/a*   1. A provision plainly specifying the percentage of any loss or claim for which each such company shall be liable.

*n/a*   2. A provision that the sworn statement required by said standard form, the written request by the insured for a reference under section 100 or the notice of any claim authorized by section 102 may be rendered, made or given to any 1 of such companies or, in the case of said notice, to the agent of any 1 of such companies, and that such statement, request or notice so rendered, made or given shall be valid and binding as to all of such companies.

*n/a*   3. A provision that, in any action or suit under the policy, service of process may be made on any 1 of such companies and that such service shall be deemed valid and binding service upon all of such companies.

*n/a*   4. A provision, in the case of a policy issued by mutual companies, that the contingent mutual liability of the insured to each such company shall be based on such proportion of the total premium as the amount insured by each such company bears to the total amount insured under the policy.

*n/a*   5. A provision that upon cancellation by any company of its liability under the policy the return premium, if any, to be paid or tendered to the insured shall be based on such proportion of the total premium stated in the policy as the amount insured by the canceling company bears to the total amount insured under the policy.

15

CONFIDENTIAL
ISO_00004193

*n/a* 6. The said provisions shall be printed in or on the policy under the caption:--
*"Provisions Specially Applicable to this Combination Policy"* or such other
distinctive caption as the Commissioner may prescribe.

## Applicability of Other Sections

*n/a* Combination policies shall be subject to the 1st to 6th, inclusive, and 9th clauses, of
said section 99, except as otherwise provided herein and except that there may be
printed on or in said policies or on the filing-back thereof such device or devices
and such distinctive title of the policy as the Commissioner may approve, together
with the names, locations, dates of incorporation, plan of operation, the amounts
of the paid-up capital stock in case of stock companies, and the names of the
officers and agents of each such company.

## J. Chapter 175: Section 152A. Non-assessable policies

### Who May Issue

*n/a* Any mutual fire company admitted before or after this section takes effect to
transact business in this Commonwealth may issue non-assessable policies in
compliance with the requirements of section 85A and any such mutual company,
or any company specified in the first paragraph of section 90, may issue non-
assessable policies in compliance with the requirements of section 93F.

*n/a* Any foreign mutual company previously referred to which has not itself or
through its predecessor or predecessors been so engaged in the insurance business
continuously for 10 or more years may issue non-assessable policies if it has and
maintains a surplus to policyholders of not less than $1,000,000.

### Applicability

*n/a* This section shall not apply to any company unless such company or its
predecessor or predecessors, if any, prior to merger or consolidation shall have
been actively engaged in the insurance business in one or more states of the
United States continuously for 10 or more years.

### Required Notice on Policy

*n/a* Any company issuing a non-assessable policy under authority of this section may
state therein, or on the filing back thereof, or in both such places, that such policy
is non-assessable.

## K. Chapter 175: Section 193P. Fire insurance policies; non-renewal notice provision

*n/a* Except as otherwise specifically provided in this chapter, no policy providing
protection against loss by reason of fire to a dwelling or contents thereof shall be

16

ISO_00004194

issued unless it contains a provision that the insurer will give written notice of its
intent not to renew or reissue a policy to the insured at least 45 days prior to the
expiration of the policy which notice shall state or be accompanied by a writing
stating the specific reasons for such decision.

### L. Chapter 175: Section 117A. **Marine and automobile and sprinkler leakage insurance**

#### Who May Issue

*n/a* Two (2) or more stock or 2 or more mutual fire companies authorized to transact
business under the 2nd clause of section 47 or under the 8th clause thereof (fire /
sprinkler) may issue a single policy of insurance against loss or damage caused by
any or all of the hazards specified in said 2nd clause or in said 8th clause, as the
case may be, on property or interests in the Commonwealth on which each
company shall be severally liable for a specified percentage of any loss or claim.

#### Execution of Policy

*n/a* Such policy shall be executed by the duly authorized officers of each company
subject to the provisions of section 33 in the case of a domestic company.

#### Prerequisites for Issuance of Policy

**No such policy shall be issued or delivered:**

a. until a copy of the form thereof has been on file for 30 days with the Commissioner,
unless before the expiration of said 30 days she shall approve the form of the policy in
writing;

b. if the Commissioner notifies the company in writing within 30 days that in her opinion
the form of the policy does not comply with the laws of the Commonwealth, specifying
her reasons therefor;

*n/a* c. unless it is headed by the corporate name of each company;

*n/a* d. unless it contains in substance the provisions numbered (1), (3), (4) and (5) in
section 102A and a provision that any notice, sworn statement or proof of loss,
which may be required by the provisions of said policy may be rendered, made or
given to any one of such companies or to a duly authorized agent of any one of
such companies, and that such notice, sworn statement or proof of loss so
rendered, made or given shall be valid and binding as to all of such companies.

#### Applicability of Other Sections

The provisions of sections 76, 80, 81, 83 and 98 applicable to policies issued by mutual
fire companies, persons insured under such policies and dividends and assessments

17

thereunder shall apply to each policy issued under this section by mutual companies, to persons insured thereunder and to dividends and assessments thereunder, except as hereinafter provided.

The notice, endorsement and statement required by said sections 76, 80 and 81, respectively, shall be in such form and in such place on the policy as the Commissioner shall prescribe.

## M. Chapter 175: Section 192. <u>Riders and endorsements; Commissioner's approval</u>

### <u>Filing and Approval Of Riders and Endorsements</u>



All provisions of law relative to the filing of policy forms with, and the approval of such forms by, the Commissioner shall also apply to all forms of riders, endorsements and applications designed to be attached to such policy forms and when so attached to constitute a part of the contract.

The filing and approval provisions shall also apply to all forms of riders or endorsements, designed to be attached to motor vehicle liability policies as defined in MGL c. 90, s. 34A, providing for additional coverage permitted by section 111C.

### <u>Exceptions</u>

Riders or endorsements used under the 9th clause of section 99 in connection with policies of fire insurance issued under section 102A, may be used, so far as consistent with law, without such approval.

## N. <u>Additional Filing Provisions:</u>

**Unfair and Deceptive Trade Practices:**

Any filing not in compliance with the above referenced requirements may be deemed to be in violation of the provisions of Chapter 176D of the Massachusetts General Laws. We hereby certify that the provisions set forth in this filing do not entail any intentional unfair and deceptive trade practices. Furthermore, we understand that we are subject to the penalties associated with practices that are in clear violation of this statute.

**Dog/Animal Bite Exclusions:**

The Division does not allow companies to use a blanket dog bite exclusion in a homeowners' multi peril policy. Dog bite exclusions are allowed only as to certain breeds and/or dogs with a prior history of biting. The company should specify in the endorsement the breeds they deem aggressive. If a company is seeking to exclude a

18

ISO_00004196

particular dog, not within an aggressive breed, it must specify and address, in the endorsement, the facts that support their assessment. All such endorsements are subject to review and approval by the Division.

**Guaranteed Replacement Cost**

*n/a*____ Homeowners "guaranteed" replacement coverage on the dwelling may be capped at no less than 125% of the amount of insurance on the dwelling.

**Mold Coverage**

*n/a*____ Personal Lines Policies must provide a $10,000 base coverage and offer extended property coverage options of $25,000 and $50,000. Insurers must provide $50,000 liability coverage and offer extended liability coverage of up to $100,000, at the option of the insured.

____✓____ Commercial Policies must include coverage of at least $15,000 for property claims arising from mold.

*n/a*____ Filers submitting policies, endorsements and revisions for mold property and liability coverage must include copies of the policyholder notice advising the policyholders of the respective changes and endorsements to their policies.

*n/a*____ We hereby certify that we have attached a copy of the policyholder notice and upon approval such notice will be forwarded to the policyholders.

19

ISO_00004197

**Jaffee, Donna**

| | |
|---|---|
| **From:** | Phillips, Norma |
| **Sent:** | Thursday, July 20, 2006 2:28 PM |
| **To:** | Jaffee, Donna |
| **Subject:** | State of Massachusetts CL 2006 OVBEF; CL 2006 OVBER |
| **Attachments:** | MASSACHUSETTS 002.tif; MASSACHUSETTS 002.tif |



MASSACHUSET
TS 002.tif (82 KB)


The captioned filings were submitted on July 18, 2006 with an effective date of January 1, 2007.

Also attached are your copies of the lockbox forms for the captioned filings.


Norma Phillips (Speed 342)
ISO/QUINCY
Tel.: (617) 689-1531

CONFIDENTIAL

ISO_00004198

 400 CROWN COLONY DRIVE    SUITE 201    QUINCY, MA 02169    (617) 770-3555    FAX: (201) 748-1934

July 18, 2006

ANNE M. CASILLO, CPCU, ARP, CPIW
REGIONAL MANAGER
GOVERNMENT RELATIONS

The Honorable Julianne Bowler
Commissioner of Insurance
MASSACHUSETTS DIVISION OF INSURANCE
One South Station
Boston, Massachusetts 02210-2208

Attn:    Sheri Cullen
         Policy Form Reviewer
         Property & Casualty Policy Review Sec.

Re:     **Code #99999998**
        **CL 2006 OVBEF**
        **Amendatory Endorsement –**
        **Exclusion of Loss Due To**
        **Virus Or Bacteria**
        **Commonwealth of Massachusetts**
        **Companion Filing: CL 2006 OVBER**

Dear Commissioner Bowler:

On behalf of those participating insurers who have authorized Insurance Services Office, Inc. to do so, we hereby file the captioned revision.

This revision has been submitted under the following rule of application:

These changes are applicable to all policies written on or after January 1, 2007.

The $75.00 fee has been sent under separate cover.

Please do not hesitate to contact me if you have questions regarding this filing.

Your early acknowledgment will be greatly appreciated.  For your convenience, a copy of this letter is enclosed for use in responding.

Sincerely,

*Anne M. Casillo*

Anne M. Casillo, CPCU, ARP, CPIW
Regional Manager
Government Relations
Tel.# (617) 689-1539

AMC:np
Encs.

CONFIDENTIAL

ISO_00004199

**MASSACHUSETTS DIVISION OF INSURANCE**
**LOCK BOX FILING FEE FORM [SRB-LB-1 (03/99)]**

Check $   $75.00
Check #   098949

GROUP #   9   9   9          GROUP NAME: _____

NAIC#   9   9   9   9   8          COMPANY:   Insurance Services Office, Inc.

DATE   0   6 / 0   7 / 1   8          CONTACT:   Anne M. Casillo
    (YY) / (MM) / (DD)          PHONE#:   (6 1 7) 7 7 0 - 3 5 5 5 (ext: _ _ _ )
(e.g., March 2, 1999=99/03/02)          FAX#:   (6 1 7) 7 7 3 - 6 2 1 7
    E-MAIL Address (If available):   acasillo@iso.com

## 1. LINE OF INSURANCE

*Select* H, L, or P:   | P |

H = Accident & Health    L = Life    P = Property/Casualty

## 2. FILING TYPE

*Select* a <u>Form</u> or <u>Rate</u> code from below:   | D |

**Form Filing Codes: (A-H) : (Fee $75.00)**

INDIVIDUAL FORM FILING:
A = Policy/Contract with Associated Materials          B = Rider, Endorsement, or Amendment Only
C = Application/Certificate Only                             D = Other

GROUP FORM FILING:
E = Policy/Contract with Associated Materials          F = Rider, Endorsement, or Amendment Only
G = Application/Certificate Only                             H = Other

**Rate Filing Codes: (1-4) : (Fee $150.00)**

1 = New Filing Rates          2 = Rate Increase          3 = Rate Decrease          4 = Other

## 3. FILING SUB-TYPE

*Select* a code selected from sub-type list (enclosed):   | CP |

## 4. FORM NUMBER

*Enter only one* Policy/ Contract Form Number or File/Filing Number:

| CL 2006 OVBEF |

---

<u>**To Be Completed by Division of Insurance Personnel Only:**</u>

SRB File #: _____

Status: _____ Date: _____ Reviewer's Initials: _____
Status: _____ Date: _____ Reviewer's Initials: _____
Status: _____ Date: _____ Reviewer's Initials: _____
Status: _____ Date: _____ Reviewer's Initials: _____

<u>Disapproval Paragraphs:</u>   _____   _____   _____   _____

CONFIDENTIAL

ISO_00004200

**Jaffee, Donna**

| | |
|---|---|
| **From:** | Phillips, Norma |
| **Sent:** | Monday, July 24, 2006 9:50 AM |
| **To:** | Jaffee, Donna; Lemley, Sheila; Beiderman, Ronald; Mauro, William; Fitzpatrick, Eileen; Dougherty, Shawn E.; Bush, Joel; Casillo, Anne |
| **Subject:** | State of Massachusetts: CL 2006 OVBEF; CL 2006 OVBER |
| **Attachments:** | MASSACHUSETTS 003.tif |



MASSACHUSET
ΓS 003.tif (90 KB`

Attached are letters for the captioned filings extending the review period for an
additional 30 days.

Norma Phillips (Speed 342)
ISO/QUINCY
Tel.: (617) 689-1531

1

CONFIDENTIAL

ISO_00004201



**COMMONWEALTH OF MASSACHUSETTS**
DIVISION OF INSURANCE
One South Station • Boston, MA  02110
(617) 521-7794 • FAX (617) 521-7750
TTY/TDD (617) 521-7490
http://www.state.ma.us/doi

MITT ROMNEY
GOVERNOR

KERRY HEALEY
LIEUTENANT GOVERNOR

JANICE S. TATARKA
DIRECTOR, CONSUMER AFFAIRS
AND BUSINESS REGULATION

JULIANNE M. BOWLER
COMMISSIONER OF INSURANCE

July 21, 2006

Ms. Anne Casillo
Insurance Services Office, Inc.
400 Crown Colony Drive, Suite 201
Quincy, MA   02169

RE:  Policy Form Number(s)  CL 2006 OVBEF
SRB file number  101694

Dear Ms. Casillo:

The referenced filing was received by the Massachusetts Division of Insurance on July 21, 2006.

The Property & Casualty Policy Review Section has begun reviewing this filing.  This initial review, together with the fact that the Division has a large volume of submissions all warranting thorough review, leads the Policy Review Section to the conclusion that it will need additional time to render a decision.  We are hereby giving notice to you that the Policy Review Section is extending the review period for an additional 30 days in accordance with Section 193F of Chapter 175 of the General Laws of Massachusetts.

If, in the interim, you have any questions pertaining to this filing, you are welcome to contact the Property & Casualty Policy Review Section.

Sincerely,

Sheri Cullen

State Rating Bureau

Telephone #:  (617) 521-7359

Facsimile #:  (617) 521-7750

CONFIDENTIAL

ISO_00004202

*att. to RCTS item*

**Jaffee, Donna**

| | |
|---|---|
| **From:** | Phillips, Norma |
| **Sent:** | Friday, August 18, 2006 11:23 AM |
| **To:** | Jaffee, Donna; Lemley, Sheila; Dougherty, Shawn E.; Beiderman, Ronald; Mauro, William; Bush, Joel; Mauro, William; Fitzpatrick, Eileen; Casillo, Anne |
| **Subject:** | Commonwealth of Massacusetts: CL 2006 OVBEF; CL 2006 OVBER |

The following e-mail for the captioned filings was sent RCTS on August 18, 2006.

Norma Phillips (Speed 342)
ISO/QUINCY
Tel.: (617) 689-1531

| | |
|---|---|
| **From:** | Cullen, Sheri  (DOI) [mailto:Sheri.Cullen@state.ma.us] |
| **Sent:** | Thursday, August 17, 2006 5:26 PM |
| **To:** | Casillo, Anne |
| **Subject:** | ISO Filing Numbers: CL 2006 OVBEF & CL 2006 OVBER.  Our state tracking numbers: 101694 & 101693 |

Dear Anne,

The Division has reviewed the above referenced filing, based on the information submitted. Please provide the additional information listed below in order for us to continue our review.

1. Provide examples of virus, bacterium, or microorganism that damages property but would not be considered mold, fungus, mildew, or any mycotoxins, spores, scents, or byproduct produced by the mold.
2. Clarify if you are replacing the definition of "pollutants."

If you believe that any of the information requested should not apply to this filing, please submit the legal basis for your position.

Our review will resume upon receipt of the additional information requested. If we do not receive your response within the next 60 days, we may close this filing due to lack of response. Should this filing be closed, a new filing, including the above information will be required.

Sheri A. Cullen
Policy Form Reviewer
Division of Insurance
Tel: 617-521-7359
Fax: 617-521-7750

If you are not the intended recipient of this electronic message, kindly notify the sender by clicking the reply button, typing in the subject line "wrong recipient" and then clicking send.  Please note that any and all electronic messages both to and from this agency may be public record and subject to disclosure upon request.

CONFIDENTIAL

ISO_00004203

RCTS

# REGULATORY CORRESPONDENCE

## FAX COVER PAGE

Today's Date: _8/18/06_                    Response Due to Field*

Number of Pages: ___2___                   _9/1/06_
                  *(including cover)*

*(\*) Enter 3 weeks (21 days) from today's date unless specific date stipulated in regulatory correspondence. If date stipulated by regulator, enter the regulatory date minus 3 work days, followed by ("REG")*

If date entered is revised by Home Office after receipt, you will be notified.

---

TO:  Donna Jaffee, State Relations          Fax Number: (201) 469-4011

FROM: _ANNE CASILLO_                          QUINCY_____
            *(Name)*                                       *(Office)*
      ✗CL-2006-OVBEF
RE: _CL-2006-OVBER_                            _MA_
        *Filing Designation(s)*                      *(State(s))*

DATE                    PRINTING                     PROPOSED
FILED: _7/8/05_         DEADLINE: _9/1/06_            EFFECTIVE DATE: _1/1/07_

LOB2 ANALYST: _JOEL BUSH_
                    *(Name)*

NATURE OF REGULATORY QUESTIONS/ISSUES:    ☐ Actuarial   ☑ Non-Actuarial  ☐ Both

TYPE OF REGULATORY INQUIRY:   ☐ Correspondence (attached)  ☐ Meeting  ☑ e-mail
                              ☐ Phone call
8-18 routed AB
FIELD COMMENTS/MEMO:   ☐ Also attached   ☐ To follow   ☐ Shown below

---

REMARKS: _____

_____ RECEIVED _____

_____ AUG 2 4 2006 ____

_____ D. JAFFEE _____

                              HOME OFFICE USE ONLY

                              Release Date **
                              **Attach copy of response & original correspondence

CONFIDENTIAL                                                                    ISO_00004204

**Phillips, Norma**

| | |
|---|---|
| **Subject:** | FW: ISO Filing Numbers: CL 2006 OVBEF & CL 2006 OVBER.  Our state tracking numbers: 101694 & 101693 |

| | |
|---|---|
| **From:** | Cullen, Sheri  (DOI) [mailto:Sheri.Cullen@state.ma.us] |
| **Sent:** | Thursday, August 17, 2006 5:26 PM |
| **To:** | Casillo, Anne |
| **Subject:** | ISO Filing Numbers: CL 2006 OVBEF & CL 2006 OVBER.  Our state tracking numbers: 101694 & 101693 |

Dear Anne,

The Division has reviewed the above referenced filing, based on the information submitted. Please provide the additional information listed below in order for us to continue our review.

1. Provide examples of virus, bacterium, or microorganism that damages property but would not be considered mold, fungus, mildew, or any mycotoxins, spores, scents, or byproduct produced by the mold.
2. Clarify if you are replacing the definition of "pollutants."

If you believe that any of the information requested should not apply to this filing, please submit the legal basis for your position.

Our review will resume upon receipt of the additional information requested. If we do not receive your response within the next 60 days, we may close this filing due to lack of response. Should this filing be closed, a new filing, including the above information will be required.

Sheri A. Cullen
Policy Form Reviewer
Division of Insurance
Tel: 617-521-7359
Fax: 617-521-7750

If you are not the intended recipient of this electronic message, kindly notify the sender by clicking the reply button, typing in the subject line "wrong recipient" and then clicking send.  Please note that any and all electronic messages both to and from this agency may be public record and subject to disclosure upon request.

1

CONFIDENTIAL

ISO_00004205

**Jaffee, Donna**

*not RCTS related*

| | |
|---|---|
| **From:** | Phillips, Norma |
| **Sent:** | Tuesday, November 07, 2006 12:15 PM |
| **To:** | Jaffee, Donna; Lemley, Sheila; Dougherty, Shawn E.; Beiderman, Ronald; Mauro, William; Fitzpatrick, Eileen; Newman, Loretta F.; Podoshen, Lawrence; Pergola, John J.; Clarke, Stephen C.; Medina, Johanna; King, Joy; Casillo, Anne |
| **Subject:** | Commonwealth of Massachusetts: CL 2006 OVBEF; CL 2006 OVBER |

The following e-mail response for the captioned filings was sent on November 7, 2006.


Norma Phillips (Speed 342)
ISO/QUINCY
Tel.: (617) 689-1531



| | |
|---|---|
| **From:** | Casillo, Anne |
| **Sent:** | Tuesday, November 07, 2006 11:49 AM |
| **To:** | Cullen, Sheri (DOI) |
| **Cc:** | Phillips, Norma |
| **Subject:** | RE: Reponse letter of 10/2/06.  ISO filing numbers: CL 2006 OVBEF and CL 2006 OVBER.  State tracking numbers: 101694 & 101693 |

Sheri- we wish to respond to your questions on Commercial Lines, rules and forms (identification numbers cited above) as follows:

For business income coverage to apply, the loss of business income must be caused by direct physical loss of or damage to property and must be caused by or result from a Covered Cause Of Loss. Loss or damage caused by viral or bacterial contaminants are not intended to be covered under the **current** property policies. Since there would not be damage to the building caused by or the result of a Covered Cause of Loss, there would be no coverage intended for loss of business income from a sick building. The new Exclusion Of Loss Due To Virus Or Bacteria endorsement reinforces this by specifically excluding contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.

Please advise if you need any additional information.

*Anne M. Casillo, CPCU, ARP, CPIW*

*NE Regional Manager*

*ISO Government Relations*

*617-689-1539*



| | |
|---|---|
| **From:** | Cullen, Sheri (DOI) [mailto:Sheri.Cullen@state.ma.us] |
| **Sent:** | Wednesday, October 25, 2006 4:40 PM |
| **To:** | Casillo, Anne |
| **Subject:** | Reponse letter of 10/2/06.  ISO filing numbers: CL 2006 OVBEF and CL 2006 OVBER.  State tracking numbers: 101694 & 101693 |

Anne,

CONFIDENTIAL

ISO_00004206

The Division has reviewed the above referenced response. Based on the information submitted please provide the additional information listed below in order for us to continue our review.

1. Based on your response would a "sick" building be covered for loss of business income?

If you believe that any of the information requested should not apply to this filing, please submit the legal basis for your position.

Our review will resume upon receipt of the additional information requested. If we do not receive your response within the next 60 days, we may close this filing due to lack of response. Should this filing be closed, a new filing, including the above information will be required.


Sheri A. Cullen
Policy Form Reviewer
Division of Insurance
Tel: 617-521-7359
Fax: 617-521-7750


If you are not the intended recipient of this electronic message, kindly notify the sender by clicking the reply button, typing in the subject line "wrong recipient" and then clicking send.  Please note that any and all electronic messages both to and from this agency may be public record and subject to disclosure upon request.

CONFIDENTIAL                                                                                      ISO_00004207

## Jaffee, Donna

| | |
|---|---|
| **From:** | Phillips, Norma |
| **Sent:** | Monday, November 20, 2006 10:16 AM |
| **To:** | Jaffee, Donna; Lemley, Sheila; Dougherty, Shawn E.; Beiderman, Ronald; Mauro, William; Fitzpatrick, Eileen; Newman, Loretta F.; Podoshen, Lawrence; Pergola, John J.; Clarke, Stephen C.; Medina, Johanna; King, Joy; Casillo, Anne |
| **Subject:** | Commonwealth of Massachusetts: CL 2006 OVBEF; CL 2006 OVBER |

The following e-mail response for the captioned filings was sent on November 17, 2006 to answer November 13, 2006 questions.

Norma Phillips (Speed 342)
ISO/QUINCY
Tel.: (617) 689-1531

*OVBE ✱ (Form)*
*Find*

---

**From:** Casillo, Anne
**Sent:** Friday, November 17, 2006 3:31 PM
**To:** Cullen, Sheri (DOI)
**Cc:** Phillips, Norma
**Subject:** RE: Response to (2) filings- 101694 and 101693 - CL Virus and Bacteria filings

Dear Ms. Cullen- we wish to respond to your November 13, 2006 email as follows:

*1. Please indicate in what other states the Exclusion of Loss Due to Virus Or Bacteria was filed. How many approvals have you received? And what objections have you seen, if any?*

Filings CL-2006-OVBEF and CL-2006-OVBER (Exclusion Of Loss Due To Virus Or Bacteria endorsement and rule filings) have been submitted in all ISO jurisdictions for the Businessowners, Capital Assets and Market Segments (Hotels, Motels and Inns) lines of business. To date, the Businessowners portion of the CL filing has been approved in 48 of the 54 jurisdictions in which it was filed, the Capital Assets portion of the CL filing has been approved in 48 of the 52 jurisdictions in which it was filed, and the Hotel, Motels and Inns Market Segments portion of the CL filing has been approved in 39 of the 40 jurisdictions in which it was submitted. We have not received any objections from the jurisdictions still pending and are awaiting approval of those filings.

*2. Provide practical examples of claims that would be denied.*

If rotavirus or influenza were suffered by some customers at a place of business and, as a result, the business closed for a few days out of concern that the business might be contaminated and provide a source of the disease, coverage under the policy would not currently be intended for the contamination, and the lost business income would also not be covered due to the absence of a covered loss. The filed exclusion emphasizes that

11/20/2006

CONFIDENTIAL

ISO_00004208

point.

*3. If, according to your response, business income coverage would never provide coverage for this type of loss then why is this exclusion needed?*

The current policy contains exclusions (most notably, the pollution exclusion) that are intended to prevent such coverage, and property policies have traditionally not been a source of recovery for losses involving contamination by disease-causing agents.  This endorsement is being introduced for the purpose of elaborating on an exposure with potentially broad impact, in order to reinforce existing exclusions in the hope of preventing unfounded claims for coverage that does not exist in the current policy.

We hope that this adequately responds to your questions and allows for continued review and approval of our filings.

*Anne M. Casillo, CPCU, ARP, CPIW*
*NE Regional Manager*
*ISO Government Relations*
*617-689-1539*

**From:** Cullen, Sheri (DOI) [mailto:Sheri.Cullen@state.ma.us]
**Sent:** Monday, November 13, 2006 2:21 PM
**To:** Casillo, Anne
**Subject:** RE: Response to (2) filings- 100942 and 100943
Anne,

Thank you for your response. At this time I would like to ask the following:

1. Please indicate in what other states the Exclusion of Loss Due to Virus or Bacteria was filed. How many approvals have you received? And what objections have you seen, if any.

2. Provide practical examples of claims that would be denied.

3. If, according to your response, business income coverage would never provide coverage for this type of loss then why is this exclusion needed.

Sheri A. Cullen
Policy Form Reviewer
Division of Insurance
Tel: 617-521-7359
Fax: 617-521-7750

If you are not the intended recipient of this electronic message, kindly notify the sender by clicking the reply button, typing in the subject line "wrong recipient" and then clicking send.  Please note that any and all electronic messages both to and from this agency may be public record and subject to disclosure upon request.

11/20/2006

CONFIDENTIAL

**From:** Casillo, Anne [mailto:ACasillo@iso.com]
**Sent:** Monday, November 06, 2006 8:55 AM
**To:** Cullen, Sheri (DOI)
**Cc:** Phillips, Norma
**Subject:** Response to (2) filings- 100942 and 100943

Sheri- we wish to respond to your questions on Market Segments, Restaurants and Supermarkets, rules and forms (identification numbers cited above) as follows:

For business income coverage to apply, the loss of business income must be caused by direct physical loss of or damage to property and must be caused by or result from a Covered Cause Of Loss. Loss or damage caused by viral or bacterial contaminants are not intended to be covered under the **current** property policies. Since there would not be damage to the building caused by or the result of a Covered Cause of Loss, there would be no coverage intended for loss of business income from a sick building.  The new Exclusion Of Loss Due To Virus Or Bacteria endorsement reinforces this by specifically excluding contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.

Please advise if you need any additional information.

*Anne M. Casillo, CPCU, ARP, CPIW*
*NE Regional Manager*
*ISO Government Relations*
*617-689-1539*

11/20/2006

CONFIDENTIAL

**Jaffee, Donna**

*HO Respond* (handwritten)

| | |
|---|---|
| **From:** | Mauro, William |
| **Sent:** | Friday, November 17, 2006 12:35 PM |
| **To:** | Casillo, Anne |
| **Cc:** | Beiderman, Ronald; Giordano, John A.; King, Joy; Newman, Loretta F.; Skelly, Laurence J.; Clarke, Stephen C.; Medina, Johanna; Jaffee, Donna |
| **Subject:** | RE: Response to (2) filings- 100942 and 100943 - CL Virus and Bacteria filings |
| **Attachments:** | MA CL Response 1113 final.doc |

Anne,

Attached is our response to the questions below from the Massachusetts Division of Insurance. (CL filings only)

Please let me know if you need anything else from us.

Thanks,
Billy

**From:** Casillo, Anne
**Sent:** Monday, November 13, 2006 2:41 PM
**To:** Giordano, John A.; Medina, Johanna; Beiderman, Ronald; Dougherty, Shawn E.; Lemley, Sheila; Jaffee, Donna; Lee, Louis; Clarke, Stephen C.; Mauro, William
**Cc:** Phillips, Norma; Newman, Loretta F.
**Subject:** FW: Response to (2) filings- 100942 and 100943

We are now receiving identical questions back from MA on our Market Segment and Commercial Lines filings.

This email is being sent ahead of RCTS procedures as Norma is on vacation this week. Point of interest- our Property filing still remains in effect and is not (at this time) impacted by this going back-and-forth.

I have to think that the spring 2006 flooding situation is still coming into play with these filings (even though not technically related). The department is very sensitive to mold (etal) at this point. I am not sure if we are in the position of providing claims examples.

*Anne M. Casillo, CPCU, ARP, CPIW*
*NE Regional Manager*
*ISO Government Relations*
*617-689-1539*

**From:** Cullen, Sheri (DOI) [mailto:Sheri.Cullen@state.ma.us]
**Sent:** Monday, November 13, 2006 2:21 PM
**To:** Casillo, Anne
**Subject:** RE: Response to (2) filings- 100942 and 100943

Anne,


Thank you for your response. At this time I would like to ask the following:

1. Please indicate in what other states the Exclusion of Loss Due to Virus or Bacteria was filed. How many approvals have you received? And what objections have you seen, if any.

11/17/2006

CONFIDENTIAL

ISO_00004211

2. Provide practical examples of claims that would be denied.

3. If, according to your response, business income coverage would never provide coverage for this type of loss then why is this exclusion needed.

Sheri A. Cullen
Policy Form Reviewer
Division of Insurance
Tel: 617-521-7359
Fax: 617-521-7750

If you are not the intended recipient of this electronic message, kindly notify the sender by clicking the reply button, typing in the subject line "wrong recipient" and then clicking send.  Please note that any and all electronic messages both to and from this agency may be public record and subject to disclosure upon request.

---

**From:** Casillo, Anne [mailto:ACasillo@iso.com]
**Sent:** Monday, November 06, 2006 8:55 AM
**To:** Cullen, Sheri (DOI)
**Cc:** Phillips, Norma
**Subject:** Response to (2) filings- 100942 and 100943

Sheri- we wish to respond to your questions on Market Segments, Restaurants and Supermarkets, rules and forms (identification numbers cited above) as follows:

For business income coverage to apply, the loss of business income must be caused by direct physical loss of or damage to property and must be caused by or result from a Covered Cause Of Loss. Loss or damage caused by viral or bacterial contaminants are not intended to be covered under the **current** property policies. Since there would not be damage to the building caused by or the result of a Covered Cause of Loss, there would be no coverage intended for loss of business income from a sick building. The new Exclusion Of Loss Due To Virus Or Bacteria endorsement reinforces this by specifically excluding contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.

Please advise if you need any additional information.

*Anne M. Casillo, CPCU, ARP, CPIW*
*NE Regional Manager*
*ISO Government Relations*
*617-689-1539*

11/17/2006

CONFIDENTIAL                                                                                          ISO_00004212



CONFIDENTIAL

ISO_00004213

# REGULATORY CORRESPONDENCE

OVBE*

## FAX COVER PAGE

Today's Date: _11-13-06_

Response Due to Field*

Number of Pages: _3_
*(including cover)*

_12-4-07_

*(\*) Enter 3 weeks (21 days) from today's date unless specific date stipulated in regulatory correspondence.  If date stipulated by regulatory, enter the regulatory date minus 3 work days, followed by ("REG")*

If date entered is revised by Home Office after receipt, you will be notified.

---

TO:   Donna Jaffee, State Relations              Fax Number:  (201) 469-4011

FROM: _A. Casillo_                           _Quincy_
              *(Name)*                                  *(Office)*

RE: _Mass_              Filing Designation(s) (CL06-OVBEF,) OVBER
        *(State(s))*

DATE FILED: _7-18-06_     PRINTING DEADLINE: _11-1-06_     PROPOSED EFFECTIVE DATE: _3-1-07_

LOB2 ANALYST: _J. King_
                        *(Name)*

NATURE OF REGULATORY QUESTIONS/ISSUES:     ☐ Actuarial   ☒ Non-Actuarial   ☐ Both

TYPE OF REGULATORY INQUIRY:     ☐ Correspondence (attached)   ☐ Meeting   ☐ e-mail
                                                    ☐ Phone call

FIELD COMMENTS/MEMO:     ☐ Also attached     ☐ To follow     ☐ Shown below

---

REMARKS:

_created on 11-17 for Anne Casillo + routed DJ_

RECEIVED
NOV 2 1 2006
D. JAFFEE

HOME OFFICE USE ONLY

Release Date ** _____

**Attach copy of response & original correspondence

CONFIDENTIAL                                                      ISO_00004214

**Jaffee, Donna**

| | |
|---|---|
| **From:** | Casillo, Anne |
| **Sent:** | Monday, November 13, 2006 2:42 PM |
| **To:** | Clarke, Stephen C.; Lemley, Sheila; Jaffee, Donna; Mauro, William; Medina, Johanna; Beiderman, Ronald |
| **Cc:** | Phillips, Norma; Newman, Loretta F. |
| **Subject:** | FW: Reponse letter of 10/2/06.  ISO filing numbers: CL 2006 OVBEF and CL 2006 OVBER.  State tracking numbers: 101694 & 101693 |

We are now receiving identical questions back from MA on our Market Segment and Commercial Lines filings. This email is being sent ahead of RCTS procedures as Norma is on vacation this week. Point of interest- our Property filing still remains in effect and is not (at this time) impacted by this going back-and-forth. I have to think that the spring 2006 flooding situation is still coming into play with these filings (even though not technically related). The department is very sensitive to mold (etal) at this point. I am not sure if we are in the position of providing claims examples.

*Anne M. Casillo, CPCU, ARP, CPIW*

*NE Regional Manager*

*ISO Government Relations*

*617-689-1539*

| | |
|---|---|
| **From:** | Cullen, Sheri  (DOI) [mailto:Sheri.Cullen@state.ma.us] |
| **Sent:** | Monday, November 13, 2006 2:16 PM |
| **To:** | Casillo, Anne |
| **Subject:** | RE: Reponse letter of 10/2/06.  ISO filing numbers: CL 2006 OVBEF and CL 2006 OVBER.  State tracking numbers: 101694 & 101693 |

Anne,

Thank you for your response.  At this time I would like to ask the following:

1. Please indicate in what other states the Exclusion of  Loss Due to Virus or Bacteria was filed.  How many approvals have you received? And what objections have you seen, if any.
2. Provide practical examples of claims that would be denied.
3. If, according to your response, business income coverage would never provide coverage for this type of loss then why is this exclusion needed.

Sheri A. Cullen
Policy Form Reviewer
Division of Insurance
Tel: 617-521-7359
Fax: 617-521-7750

If you are not the intended recipient of this electronic message, kindly notify the sender by clicking the reply button, typing in the subject line "wrong recipient" and then clicking send.  Please note that any and all electronic messages both to and from this agency may be public record and subject to disclosure upon request.

| | |
|---|---|
| **From:** | Casillo, Anne [mailto:ACasillo@iso.com] |
| **Sent:** | Tuesday, November 07, 2006 11:49 AM |
| **To:** | Cullen, Sheri  (DOI) |
| **Cc:** | Phillips, Norma |
| **Subject:** | RE: Reponse letter of 10/2/06.  ISO filing numbers: CL 2006 OVBEF and CL 2006 OVBER.  State tracking numbers: 101694 & 101693 |

Sheri- we wish to respond to your questions on Commercial Lines, rules and forms (identification numbers cited above) as

1

follows:

For business income coverage to apply, the loss of business income must be caused by direct physical loss of or damage to property and must be caused by or result from a Covered Cause Of Loss. Loss or damage caused by viral or bacterial contaminants are not intended to be covered under the **current** property policies. Since there would not be damage to the building caused by or the result of a Covered Cause of Loss, there would be no coverage intended for loss of business income from a sick building. The new Exclusion Of Loss Due To Virus Or Bacteria endorsement reinforces this by specifically excluding contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.

Please advise if you need any additional information.

*Anne M. Casillo, CPCU, ARP, CPIW*

*NE Regional Manager*

*ISO Government Relations*

*617-689-1539*

| | |
|---|---|
| **From:** | Cullen, Sheri  (DOI) [mailto:Sheri.Cullen@state.ma.us] |
| **Sent:** | Wednesday, October 25, 2006 4:40 PM |
| **To:** | Casillo, Anne |
| **Subject:** | Reponse letter of 10/2/06.  ISO filing numbers: CL 2006 OVBEF and CL 2006 OVBER.  State tracking numbers: 101694 & 101693 |

Anne,

The Division has reviewed the above referenced response. Based on the information submitted please provide the additional information listed below in order for us to continue our review.

1. Based on your response would a "sick" building be covered for loss of business income?

If you believe that any of the information requested should not apply to this filing, please submit the legal basis for your position.

Our review will resume upon receipt of the additional information requested. If we do not receive your response within the next 60 days, we may close this filing due to lack of response. Should this filing be closed, a new filing, including the above information will be required.


Sheri A. Cullen
Policy Form Reviewer
Division of Insurance
Tel: 617-521-7359
Fax: 617-521-7750


If you are not the intended recipient of this electronic message, kindly notify the sender by clicking the reply button, typing in the subject line "wrong recipient" and then clicking send.  Please note that any and all electronic messages both to and from this agency may be public record and subject to disclosure upon request.

CONFIDENTIAL

ISO_00004216

CTS

# REGULATORY CORRESPONDENCE

OVB**

## FAX COVER PAGE

Today's Date: ___12/4/06___

Response Due to Field*

___12/22/06___

Number of Pages: ___4___
*(including cover)*

*(\*) Enter 3 weeks (21 days) from today's date unless specific date stipulated in regulatory correspondence.  If date stipulated by regulator, enter the regulatory date minus 3 work days, followed by ("REG")*

If date entered is revised by Home Office after receipt, you will be notified.

TO:  Donna Jaffee, State Relations

Fax Number:  (201) 469-4011

FROM: ANNE M. CASILLO
*(Name)*

QUINCY_____
*(Office)*

RE: CL 2006 OVBEA/OVBER
*Filing Designation(s)*

MA
*(State(s))*

DATE FILED: 7/18/06

PRINTING DEADLINE: 9/1/06

PROPOSED EFFECTIVE DATE: 1/1/07

EILEEN FITZPATRICK

LOB2 ANALYST:  JOY KING
*(Name)*

NATURE OF REGULATORY QUESTIONS/ISSUES:  ☐ Actuarial  ☑ Non-Actuarial  ☐ Both

TYPE OF REGULATORY INQUIRY:  ☐ Correspondence (attached)  ☐ Meeting  ☑ e-mail
☐ Phone call

FIELD COMMENTS/MEMO:  ☐ Also attached  ☐ To follow  ☐ Shown below

REMARKS:
_____
_____
_____

RECEIVED
DEC - 6 2006
D. JAFFEE

12-4-06: Dj rerouted

HOME OFFICE USE ONLY

Release Date ** _____

** Attach copy of response & original correspondence

12/04/06  MON 10:48  [TX/RX NO 7776]  ☒001

CONFIDENTIAL

ISO_00004217

**Phillips, Norma**

| | |
|---|---|
| **From:** | Casillo, Anne |
| **Sent:** | Friday, December 01, 2006 4:38 PM |
| **To:** | Phillips, Norma |
| **Subject:** | FW: MA CL and MS Virus and Bacteria forms filings |

Please send this RCTS for the following:

MS-2006-OSRFO/RSRRU and CL-2006-OVBEF/OVBER

Note: I am planning on speaking with Sheri on Monday morning (12/3) about this email. We have now gone back and forth a few times. I can tell that these questions are not coming from her. I believe that Kevin Beagan (Director of the Rating Bureau) is responsible. We need to know where he is going with all of this. Instead of continuing with this pattern of question/answer/question, it is probably time to discuss in a conference call. I understand that we will not have comments about AAIS and how they interpret their endorsement (which is effectively our endorsement) nor should we.

Also, Loretta's property endorsement remains approved and in effect. It is interesting that they are fighting us on CL and MS when we have implemented the property endorsement. They are aware that the property endorsement is in place. They have not asked us to withdraw at this point.

*Anne M. Casillo, CPCU, ARP, CPIW*
*NE Regional Manager*
*ISO Government Relations*
*617-689-1539*

---

**From:** Cullen, Sheri (DOI) [mailto:Sheri.Cullen@state.ma.us]
**Sent:** Thursday, November 30, 2006 4:19 PM
**To:** Casillo, Anne
**Subject:**

Anne,

Would this also preclude a claim for business income coverage where a business was closed because the employees had the Bird Flu and as such could not come to work? Also, what form would be used to make this coverage available, similar to mold exclusions. Additionally, we have been made aware of an AAIS Bulletin, 06-1307, dated 11/3/06 that describes a similar form. Is the ISO form intended to exclude the same types of claims?

Sheri A. Cullen
Policy Form Reviewer
Division of Insurance
Tel: 617-521-7359
Fax: 617-521-7750

If you are not the intended recipient of this electronic message, kindly notify the sender by clicking the reply button, typing in the subject line "wrong recipient" and then clicking send. Please note that any and all electronic messages both to and from this agency may be public record and subject to disclosure upon request.

---

**From:** Casillo, Anne [mailto:ACasillo@iso.com]
**Sent:** Friday, November 17, 2006 3:32 PM

**12/4/2006**

12/04/06   MON 10:48   [TX/RX NO 7776]   ☒002

CONFIDENTIAL                                                                    ISO_00004218

**To:** Cullen, Sheri (DOI)
**Cc:** Phillips, Norma
**Subject:** RE: Response to (2) filings- 100942 and 100943 - MS Virus and Bacteria filings

Sheri- I looked at the caption of this- it should have been MS-2006-OSRFO/RSRRU. These filing ID's are fine. The caption saying CL is incorrect. This response is for Market Segments.

Sorry for the confusion.

Anne Casillo

---

Dear Ms. Cullen,

## MA Response - MS-2006-OSRFO/RSRRU

we wish to respond to your email on the above filings as follows:

*1. Please indicate in what other states the Exclusion of Loss Due to Virus Or Bacteria was filed.  How many approvals have you received?  And what objections have you seen, if any?*

Filings MS-2006-OSRFO and MS-2006-RSRRU (Restaurants and Supermarkets endorsements and rules filings) have been submitted in 46 jurisdictions.  To date, we have received approvals in 41 of the 46 jurisdictions in which it was filed.  We have not received any objections to the Exclusion Of Loss Due To Virus Or Bacteria from the jurisdictions still pending and are awaiting approval of those filings.

*2. Provide practical examples of claims that would be denied.*

If rotavirus or influenza were suffered by some customers at a place of business and, as a result, the business closed for a few days out of concern that the business might be contaminated and provide a source of the disease, coverage under the policy would not currently be intended for the contamination, and the lost business income would also not be covered due to the absence of a covered loss.  The filed exclusion emphasizes that point.

*3. If, according to your response, business income coverage would never provide coverage for this type of loss then why is this exclusion needed?*

The current policy contains exclusions (most notably, the pollution exclusion) that are intended to prevent such coverage, and property policies have traditionally not been a source of recovery for losses involving contamination by disease-causing agents.  This endorsement is being introduced for the purpose of elaborating on an exposure with potentially broad impact, in order to reinforce existing exclusions in the hope of preventing unfounded claims for coverage that does not exist in the current policy.

 We hope that this adequately responds to your questions and allows for continued review and approval of our filings.

*Anne M. Casillo, CPCU, ARP, CPIW*
*NE Regional Manager*
*ISO Government Relations*
*617-689-1539*

---

**From:** Cullen, Sheri (DOI) [mailto:Sheri.Cullen@state.ma.us]
**Sent:** Monday, November 13, 2006 2:21 PM
**To:** Casillo, Anne

12/4/2006

CONFIDENTIAL                                                                                          ISO_00004219

**Subject:** RE: Response to (2) filings- 100942 and 100943

Anne,

Thank you for your response. At this time I would like to ask the following:

1. Please indicate in what other states the Exclusion of Loss Due to Virus or Bacteria was filed. How many approvals have you received? And what objections have you seen, if any.

2. Provide practical examples of claims that would be denied.

3. If, according to your response, business income coverage would never provide coverage for this type of loss then why is this exclusion needed.

Sheri A. Cullen
Policy Form Reviewer
Division of Insurance
Tel: 617-521-7359
Fax: 617-521-7750

If you are not the intended recipient of this electronic message, kindly notify the sender by clicking the reply button, typing in the subject line "wrong recipient" and then clicking send.  Please note that any and all electronic messages both to and from this agency may be public record and subject to disclosure upon request.

---

**From:** Casillo, Anne [mailto:ACasillo@iso.com]
**Sent:** Monday, November 06, 2006 8:55 AM
**To:** Cullen, Sheri (DOI)
**Cc:** Phillips, Norma
**Subject:** Response to (2) filings- 100942 and 100943

Sheri- we wish to respond to your questions on Market Segments, Restaurants and Supermarkets, rules and forms (identification numbers cited above) as follows:

For business income coverage to apply, the loss of business income must be caused by direct physical loss of or damage to property and must be caused by or result from a Covered Cause Of Loss. Loss or damage caused by viral or bacterial contaminants are not intended to be covered under the **current** property policies. Since there would not be damage to the building caused by or the result of a Covered Cause of Loss, there would be no coverage intended for loss of business income from a sick building.  The new Exclusion Of Loss Due To Virus Or Bacteria endorsement reinforces this by specifically excluding contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.

Please advise if you need any additional information.

*Anne M. Casillo, CPCU, ARP, CPIW*
*NE Regional Manager*
*ISO Government Relations*
*617-689-1539*

**12/4/2006**

12/04/06  MON 10:48  [TX/RX NO 7776]  ☒004

CONFIDENTIAL                                                                                              ISO_00004220

**Jaffee, Donna**

*MS 06-OSR** – CTS Item*

| | |
|---|---|
| **From:** | Phillips, Norma |
| **Sent:** | Monday, December 04, 2006 11:05 AM |
| **To:** | Jaffee, Donna; Lemley, Sheila; Beiderman, Ronald; Mauro, William; Fitzpatrick, Eileen; Dougherty, Shawn E.; King, Joy; Giordano, John A.; Lee, Louis; Medina, Johanna; Casillo, Anne |
| **Subject:** | Commonwealth of Massachusetts: MS 2006 OSRFO/RSRRU; CL 2006 OVBEF/OVBER |

The following e-mail was sent RCTS on December 4, 2006.

Norma Phillips (Speed 342)
ISO/QUINCY
Tel.: (617) 689-1531

---

**From:** Casillo, Anne
**Sent:** Friday, December 01, 2006 4:38 PM
**To:** Phillips, Norma
**Subject:** FW: MA CL and MS Virus and Bacteria forms filings

Please send this RCTS for the following:

MS-2006-OSRFO/RSRRU and CL-2006-OVBEF/OVBER

Note: I am planning on speaking with Sheri on Monday morning (12/3) about this email. We have now gone back and forth a few times. I can tell that these questions are not coming from her. I believe that Kevin Beagan (Director of the Rating Bureau) is responsible. We need to know where he is going with all of this. Instead of continuing with this pattern of question/answer/question, it is probably time to discuss in a conference call. I understand that we will not have comments about AAIS and how they interpret their endorsement (which is effectively our endorsement) nor should we.

Also, Loretta's property endorsement remains approved and in effect. It is interesting that they are fighting us on CL and MS when we have implemented the property endorsement. They are aware that the property endorsement is in place. They have not asked us to withdraw at this point.

*Anne M. Casillo, CPCU, ARP, CPIW*
*NE Regional Manager*
*ISO Government Relations*
*617-689-1539*

---

**From:** Cullen, Sheri (DOI) [mailto:Sheri.Cullen@state.ma.us]
**Sent:** Thursday, November 30, 2006 4:19 PM
**To:** Casillo, Anne
**Subject:**

Anne,

12/4/2006

CONFIDENTIAL

ISO_00004221

Would this also preclude a claim for business income coverage where a business was closed because the employees had the Bird Flu and as such could not come to work?  Also, what form would be used to make this coverage available, similar to mold exclusions. Additionally, we have been made aware of an AAIS Bulletin, 06-1307, dated 11/3/06 that describes a similar form.  Is the ISO form intended to exclude the same types of claims?


Sheri A. Cullen
Policy Form Reviewer
Division of Insurance
Tel: 617-521-7359
Fax: 617-521-7750

If you are not the intended recipient of this electronic message, kindly notify the sender by clicking the reply button, typing in the subject line "wrong recipient" and then clicking send.  Please note that any and all electronic messages both to and from this agency may be public record and subject to disclosure upon request.



**From:** Casillo, Anne [mailto:ACasillo@iso.com]
**Sent:** Friday, November 17, 2006 3:32 PM
**To:** Cullen, Sheri (DOI)
**Cc:** Phillips, Norma
**Subject:** RE: Response to (2) filings- 100942 and 100943 - MS Virus and Bacteria filings

Sheri- I looked at the caption of this- it should have been MS-2006-OSRFO/RSRRU. These filing ID's are fine. The caption saying CL is incorrect. This response is for Market Segments.

Sorry for the confusion.

Anne Casillo



Dear Ms. Cullen,

MA Response - MS-2006-OSRFO/RSRRU

we wish to respond to your email on the above filings as follows:

*1. Please indicate in what other states the Exclusion of Loss Due to Virus Or Bacteria was filed. How many approvals have you received?  And what objections have you seen, if any?*

Filings MS-2006-OSRFO and MS-2006-RSRRU (Restaurants and Supermarkets endorsements and rules filings) have been submitted in 46 jurisdictions.  To date, we have received approvals in 41 of the 46 jurisdictions in which it was filed.  We have not received any objections to the Exclusion Of Loss Due To Virus Or Bacteria from the jurisdictions still pending and are awaiting approval of those filings.


*2. Provide practical examples of claims that would be denied.*

12/4/2006

CONFIDENTIAL                                                                                              ISO_00004222

If rotavirus or influenza were suffered by some customers at a place of business and, as a result, the business closed for a few days out of concern that the business might be contaminated and provide a source of the disease, coverage under the policy would not currently be intended for the contamination, and the lost business income would also not be covered due to the absence of a covered loss. The filed exclusion emphasizes that point.

*3. If, according to your response, business income coverage would never provide coverage for this type of loss then why is this exclusion needed?*

The current policy contains exclusions (most notably, the pollution exclusion) that are intended to prevent such coverage, and property policies have traditionally not been a source of recovery for losses involving contamination by disease-causing agents. This endorsement is being introduced for the purpose of elaborating on an exposure with potentially broad impact, in order to reinforce existing exclusions in the hope of preventing unfounded claims for coverage that does not exist in the current policy.

We hope that this adequately responds to your questions and allows for continued review and approval of our filings.

*Anne M. Casillo, CPCU, ARP, CPIW*
*NE Regional Manager*
*ISO Government Relations*
*617-689-1539*

---

**From:** Cullen, Sheri (DOI) [mailto:Sheri.Cullen@state.ma.us]
**Sent:** Monday, November 13, 2006 2:21 PM
**To:** Casillo, Anne
**Subject:** RE: Response to (2) filings- 100942 and 100943

Anne,

Thank you for your response. At this time I would like to ask the following:

1. Please indicate in what other states the Exclusion of Loss Due to Virus or Bacteria was filed. How many approvals have you received? And what objections have you seen, if any.

2. Provide practical examples of claims that would be denied.

3. If, according to your response, business income coverage would never provide coverage for this type of loss then why is this exclusion needed.

Sheri A. Cullen
Policy Form Reviewer
Division of Insurance
Tel: 617-521-7359
Fax: 617-521-7750

If you are not the intended recipient of this electronic message, kindly notify the sender by clicking the reply

12/4/2006

CONFIDENTIAL                                                                    ISO_00004223

button, typing in the subject line "wrong recipient" and then clicking send.  Please note that any and all electronic messages both to and from this agency may be public record and subject to disclosure upon request.

---

**From:** Casillo, Anne [mailto:ACasillo@iso.com]
**Sent:** Monday, November 06, 2006 8:55 AM
**To:** Cullen, Sheri (DOI)
**Cc:** Phillips, Norma
**Subject:** Response to (2) filings- 100942 and 100943

Sheri- we wish to respond to your questions on Market Segments, Restaurants and Supermarkets, rules and forms (identification numbers cited above) as follows:

For business income coverage to apply, the loss of business income must be caused by direct physical loss of or damage to property and must be caused by or result from a Covered Cause Of Loss. Loss or damage caused by viral or bacterial contaminants are not intended to be covered under the **current** property policies. Since there would not be damage to the building caused by or the result of a Covered Cause of Loss, there would be no coverage intended for loss of business income from a sick building.  The new Exclusion Of Loss Due To Virus Or Bacteria endorsement reinforces this by specifically excluding contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.

Please advise if you need any additional information.

*Anne M. Casillo, CPCU, ARP, CPIW*
*NE Regional Manager*
*ISO Government Relations*
*617-689-1539*

12/4/2006

CONFIDENTIAL

ISO_00004224

## Jaffee, Donna

| | |
|---|---|
| **From:** | King, Joy |
| **Sent:** | Thursday, September 28, 2006 2:39 PM |
| **To:** | Phillips, Norma; Casillo, Anne |
| **Cc:** | Mauro, William; Beiderman, Ronald; Skelly, Laurence J.; Newman, Loretta F.; Clarke, Stephen C.; Jaffee, Donna |
| **Subject:** | RE: Commonwealth of Massacusetts: CL 2006 OVBEF; CL 2006 OVBER |
| **Attachments:** | MA response CL-2006-OVBEF &R.doc legal final.doc; FORM EM Mass.doc; OP 05 11.doc; BP 06 06.doc; MS HM 56.doc; OP 05 06 withdrawn.doc; BP 06 01 withdrawn.doc; MS HM 08 Withdrawn.doc; Rule EM Mass.doc |

Anne,

Attached is our response to the insurance department questions and our subsequent amendment filing (Hard copy to follow by Donna Jaffe's area).

Thanks,

Joy



MA response
2006-OVBEF &R.

                              

FORM EM         OP 05 11.doc     BP 06 06.doc     MS HM 56.doc     OP 05 06          BP 06 01          MS HM 08
Mass.doc (49 KB)  (58 KB)         (52 KB)          (51 KB)          drawn.doc (60 K|drawn.doc (54 K|drawn.doc (54 K



Rule EM
Mass.doc (58 KB)

---

**From:** Phillips, Norma
**Sent:** Friday, August 18, 2006 11:23 AM
**To:** Jaffee, Donna; Lemley, Sheila; Dougherty, Shawn E.; Beiderman, Ronald; Mauro, William; Bush, Joel; Mauro, William; Fitzpatrick, Eileen; Casillo, Anne
**Subject:** Commonwealth of Massachusetts: CL 2006 OVBEF; CL 2006 OVBER

The following e-mail for the captioned filings was sent RCTS on August 18, 2006.

## Norma Phillips (Speed 342)
## ISO/QUINCY

1

CONFIDENTIAL                                                                                    ISO_00004225

Tel.: (617) 689-1531

| | |
|---|---|
| **From:** | Cullen, Sheri  (DOI) [mailto:Sheri.Cullen@state.ma.us] |
| **Sent:** | Thursday, August 17, 2006 5:26 PM |
| **To:** | Casillo, Anne |
| **Subject:** | ISO Filing Numbers: CL 2006 OVBEF & CL 2006 OVBER.  Our state tracking numbers: 101694 & 101693 |

Dear Anne,

The Division has reviewed the above referenced filing, based on the information submitted. Please provide the additional information listed below in order for us to continue our review.

1. Provide examples of virus, bacterium, or microorganism that damages property but would not be considered mold, fungus, mildew, or any mycotoxins, spores, scents, or byproduct produced by the mold.
2. Clarify if you are replacing the definition of "pollutants."

If you believe that any of the information requested should not apply to this filing, please submit the legal basis for your position.

Our review will resume upon receipt of the additional information requested. If we do not receive your response within the next 60 days, we may close this filing due to lack of response. Should this filing be closed, a new filing, including the above information will be required.

Sheri A. Cullen
Policy Form Reviewer
Division of Insurance
Tel: 617-521-7359
Fax: 617-521-7750

If you are not the intended recipient of this electronic message, kindly notify the sender by clicking the reply button, typing in the subject line "wrong recipient" and then clicking send.  Please note that any and all electronic messages both to and from this agency may be public record and subject to disclosure upon request.

CONFIDENTIAL                                                                                                                                                    ISO_00004226



CONFIDENTIAL

ISO_00004227

# Redacted

© ISO Properties, Inc., 2000

CONFIDENTIAL

ISO_00004228

# Redacted

CONFIDENTIAL

ISO_00004229



CONFIDENTIAL

ISO_00004230

# Redacted

CONFIDENTIAL



CONFIDENTIAL

ISO_00004232

# Redacted

CONFIDENTIAL

ISO_00004233

# Redacted

CONFIDENTIAL

ISO_00004234

*Final*

## Jaffee, Donna

| | |
|---|---|
| **From:** | Phillips, Norma |
| **Sent:** | Monday, October 02, 2006 2:52 PM |
| **To:** | Jaffee, Donna; Lemley, Sheila; Dougherty, Shawn E.; Beiderman, Ronald; Mauro, William; Fitzpatrick, Eileen; Newman, Loretta F.; Podoshen, Lawrence; Pergola, John J.; Clarke, Stephen C.; Casillo, Anne |
| **Subject:** | Commonwealth of Massachusetts: CL 2006 OVBEF (Amendment No. 1); CL 2006 OVBER (Amendment No. 1) |

**Attachments:** MASSACHUSETTS.tif

Attached is the response sent on October 2, 2006 to the Department with the amendments.

Norma Phillips (Speed 342)
ISO/QUINCY
Tel.: (617) 689-1531

10/2/2006

CONFIDENTIAL                                                                 ISO_00004235

 400 CROWN COLONY DRIVE   SUITE 201   QUINCY, MA 02169   (617) 770-3555   FAX: (201) 748-1934

ANNE M. CASILLO, CPCU, ARP, CPIW
REGIONAL MANAGER
GOVERNMENT RELATIONS

October 2, 2006

Sheri Cullen
Policy Form Reviewer
Property and Casualty Policy Review Section
Commonwealth of Massachusetts
One South Station
Boston, MA 02110-2208

Re:   **Code #99999998**                           **Code #99999998**
      **CL 2006 OVBEF (Amendment No. 1)**           **CL 2006 OVBER (Amendment No. 1)**
      **Amendatory Endorsement – Exclusion**        **Rules on Amendatory Endorsement-**
      **Due to Loss Virus or Bacteria**             **Exclusion Loss Due To Virus or Bacteria**
      **Commonwealth of Massachusetts**             **Due to loss Virus or Bacteria**
      **SRB File # 101694**                         **Commonwealth of Massachusetts**
                                                     **SRB File # 101693**

Dear Ms. Cullen,

We wish to respond to your email of August 17, 2006 on the above filings as follows:

1.  Your question appears to focus on whether or not there is an actual exposure
    other than mold, that is, can property damage be caused by microorganisms
    other than mold.  Mold is visible, it changes the physical appearance of property
    (and perhaps sometimes its usefulness), and that is typically the basis for
    characterizing mold infestation as property damage.  Various other known
    substances (such as rotovirus) are not mold, do not become visible, do not alter
    the physical appearance of property and typically cause no property damage.
    But their mere presence may be alleged to be property damage (for example,
    alleged on of property).  Our objective is to convey that, even if there were
    property damage (or alleged property damage) by disease-causing
    microorganisms, there is no coverage.  We would not anticipate remediation of
    property to be the primary exposure here (although it could be, depending on the
    specific microorganism involved); rather, an allegation of physical damage could
    be used in an effort to trigger other coverage, such as business income
    coverage.

2.  The definition of "pollutants" is not being replaced.  Paragraph C of OP 05 06
    and Paragraph D of BP 06 01 and MS HM 08 have the purpose of conveying
    that a loss caused by a disease-causing microorganism is to be analyzed in
    accordance with the provisions of the virus/bacteria exclusion in the respective
    endorsements, with no need to apply the pollution exclusion.

CONFIDENTIAL                                                          ISO_00004236

Sheri Cullen
Policy Form Reviewer
Property and Casualty Policy Review Section
October 2, 2006
Page 2

In addition to responding to your questions, we are taking this opportunity to amend Filing CL-2006-OVBEF in Massachusetts. Pursuant to recent implementation of state-specific "mold" provisions in this state, we are amending the proposed virus/bacteria endorsements to make reference points in the endorsements more explicit. This amendment simply adds a specific reference to the relevant endorsements, retaining the intended treatment of the mold and virus/bacteria provisions. We are hereby also amending the companion rules in Filing CL-2006-OVBER to refer to the newly introduced endorsements in amendment filing CL-2006-OVBEF.

Please advise if you need any additional information.

Sincerely,

Anne M. Casillo, CPCU, ARP, CPIW
Regional Manager
Government Relations
Tel.# (617) 689-1539
E-Mail: acasillo@iso.com

AMC:np
Encs.

CONFIDENTIAL

Mail this filing to: *Quincy Office*

Insurance Services Office, Inc.

# MASTER COPY

## AMENDMENT TRANSMITTAL FORM

**Filing Designation**

| State | Line | Year | Description |
|-------|------|------|-------------|
| MA | CL | 2006 | OVBEF |

**Companion Filings**
CL-2006-OVBER
_____
_____
_____
_____

**X**   **Amendment/Supplement**

| | |
|---|---|
| **X** | Amendment |
| _____ | Supplement |

### Reason for Amendment/Supplement

| |
|---|
| Amendatory Endorsements- Exclusion Of Loss |
| Due To Virus Or Bacteria Filing Amended |
| |
| |
| |
| |
| Correction?        Y_  Nx |
| Replacement?     Y_  Nx |
| Response to insurance department letter?    Yx  N_ |

**Proposed**

| Eff. Date | Dist. Date | OKTP Deadline |
|-----------|-----------|---------------|
| 03   01   2007 | | 11   1   2007 |
| Mo.  Day  Yr. | Mo.  Day  Yr. | Mo.   Day   Yr. |

### Special Filing Instructions (For GRD Use Only)

| |
|---|
| |
| |
| |
| |
| |

### Amendment Processing Information (For GRD Use Only)

| Date Received | Date Sent to Field |
|---------------|--------------------|
| *10-3-06* | *10-3-06* |
| Mo.    Day    Yr. | Mo.    Day    Yr. |

Edition 01/01/06
ISOATF.DOC

CONFIDENTIAL

Insurance Services Office, Inc.

**AMENDMENT TRANSMITTAL FORM (continued)**

Send Pertinent Filing Correspondence to:

| Line Division | S. Dougherty, R. Beiderman, W. Mauro | |
|---|---|---|
| Actuarial Division | | AGSD Division |
| GRD Division | Donna Jaffee   (19-6) | |

**Transmittal Form Prepared By:**

|  | Name | | | | | |
|---|---|---|---|---|---|---|
| Line: | Joy King | | | | | 2809 |
| Actuarial: | | Mo. | Day | Yr. | | Ext. |

Management Approval Given By:

**Supplementary Information for Loss Cost Filings Only**

**Loss Cost Level Change Information**

Statewide Aggregate Loss Cost
Volume (000's Omitted)

Loss Cost Level Changes By Coverage*

| Coverage Code | Amended Loss Cost Level Change |
|---|---|
| Total All Coverages | _____ % |
| | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |

\*  (If Individual Coverages Are Not Applicable, Complete
"Total All Coverages" Line Only)

Edition 01/01/06
ISOATF.DOC

CONFIDENTIAL

ISO_00004239

RECEIVED IN STATE FILING
UNIT_____ *103*

**COMPANION FILING**

☐ ☐ ☐ ☐ ☐

SENT TO FIELD_____ (Cleared by _____)

☐ (Express Mail)

☐ (Copy expressed
by Line Div.)

*Maer*
STATE

*CL06-OUBEF*
FILING DESIGNATION

Rates = R
Rules = U
Forms = F
Loss Costs = L
Rating Plans = P

_____

Ext._____

C/W Info:  FTF's & Terminal (APS on all except P&D mechanics-mark FTF's)

C/W Sign-Off Date:_____

C/W_____FTF - Regional Manager

C/W Special Routing:

**REGIONAL ACTUARY**
(LOSS COSTS. INCRD LIMITS, A & B TYPE RATES)

☐ R. Debs

☐ **J. Reynolds**

*(INCLUDE STATE FORM WITH COPY OF FILING)

*TBL*

☐ Supp. sent to field_____ . included in original filing before submission. (No #- No Date recd. No Date sent)

☐ CORRESPONDENCE TRACKING RELATED

**TYPE OF FILING**       **FILING MECHANICS**

**RATE FILING**
☐ A              ☐ P (P.A.)
☐ B              ☐ F (F&U)
☐ C              ☐ U (U&F)
☐ D              ☐ D (F&U or U&F - De Facto P.A.)
                 ☐ I (No File-Info.Subm.only)
**OTR FILING**   ☐ N (No File-No Info. Subm.)
☐ L              ☐ C (Competitive Rating Proc.)
☐ M                    (PP & HO Loss Costs)
                 ☐ R (Ref. Doc.)
☐ Check for investment income exhibit
(basic rates)

____ # of copies to Reg. Off.

____ Filing Letter (Everyone)

____ Additional Sheet (Everyone)

____ Additional Memo

____ State Form(s)

SFU Processor_____

CONFIDENTIAL

ISO_00004240

## COMPLIANCE CERTIFICATION

As the representative of   Insurance Services Office, Inc.          (the "Company"), duly
authorized by the Company to give this Certification on its behalf, I hereby certify on the
Company's behalf, under the pains and penalties of perjury, that the enclosed
CL-2006-OVBEF                      has met all the requirements of the Massachusetts
(insurer file number)
Division of Insurance checklist(s) applicable thereto, and is otherwise in all respects in
compliance with all relevant Massachusetts law and regulations.

Signature:

Name (print or type):   Domenick J. Yezzi Jr.

Title:   V.P., Specialty Commercial Lines

CONFIDENTIAL

ISO_00004241

Effective January 1, 2006                                                    MASSACHUSETTS

# Property & Casualty Transmittal Document (Revised 1/1/06)

| Reserved for Insurance Dept. Use Only | 2. Insurance Department Use only | |
|---|---|---|
| | a. Date the filing is received: | |
| | b. Analyst: | |
| | c. Disposition: | |
| | d. Date of disposition of the filing: | |
| | e. Effective date of filing: | |
| |     New Business | |
| |     Renewal Business | |
| | f. State Filing #: | |
| | g. SERFF Filing #: | |
| | h. Subject Codes | |

| 3. | Group Name | Group NAIC # |
|---|---|---|
| | | |

| 4. | Company Name(s) | Domicile | NAIC # | FEIN # |
|---|---|---|---|---|
| | Insurance Services Office, Inc. | DE | | 13-3131412 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| 5. | Company Tracking Number | CL-2006-OVBEF |
|---|---|---|

### Contact Info of Filer(s) or Corporate Officer(s)  [include toll-free number]

| 6. | Name and address | Title | Telephone #s | Fax # | e-mail |
|---|---|---|---|---|---|
| | Anne M. Casillo<br>Insurance Services Office, Inc.<br>400 Crown Colony Dr. Ste. 201<br>Quincy, MA 02169 | Regional Manager | (617) 689-1539 | (201) 748-1934 | ACASILLO@iso.com |
| | | | | | |

| 7. | Signature of authorized filer | |
|---|---|---|
| 8. | Please print name of authorized filer | Anne M. Casillo |

## Filing information (see General Instructions for descriptions of these fields)

| 9. | Type of Insurance (TOI) | 35 |
|---|---|---|
| 10. | Sub-Type of Insurance (Sub-TOI) | 35.0002 |
| 11. | State Specific Product code(s)(if applicable)[See State Specific Requirements] | |
| 12. | Company Program Title (Marketing title) | various |
| 13. | Filing Type | ☐ Rate/Loss Cost  ☐ Rules  ☐ Rates/Rules<br>☒ Forms  ☐ Combination Rates/Rules/Forms<br>☐ Withdrawal  ☐ Other |
| 14 | Effective Date(s) Requested | New: 03/01/2007   Renewal: 03/01/2007 |
| 15. | Reference Filing? | ☐ Yes   ☒ No |
| 16. | Reference Organization (if applicable) | Not Applicable |
| 17. | Reference Organization # & Title | Not Applicable |
| 18. | Company's Date of Filing | |
| 19. | Status of filing in domicile | ☐ Not Filed  ☐ Pending  ☐ Authorized  ☐ Disapproved |

**PC TD-1 pg 1 of 2**

CONFIDENTIAL                                                    ISO_00004242

Effective January 1, 2006

# Property & Casualty Transmittal Document---

| 20. | This filing transmittal is part of Company Tracking # | CL-2006-OVBEF |
|-----|-----|-----|

| 21. | Filing Description [This area can be used in lieu of a cover letter or filing memorandum and is free-form text] |
|-----|-----|

This amendment filing introduces Massachusetts specific versions of Exclusion Of Loss Due To Virus Or Bacteria, for the Businessowners, Capital Assets and Market Segments Programs, to complement Massachusetts specific mold provisions.

| 22. | Filing Fees (Filer must provide check # and fee amount if applicable) [If a state requires you to show how you calculated your filing fees, place that calculation below] |
|-----|-----|

Check #:

Amount:

**Refer to each state's checklist for additional state specific requirements or instructions on calculating fees.**

**\*\*\*Refer to each state's checklist for additional state specific requirements (i.e. # of additional copies required, other state specific forms, etc.)**

**PC TD-1 pg 2 of 2**

CONFIDENTIAL

MASSACHUSETTS
COMMERCIAL LINES
FORMS FILING CL-2006-OVBEF (AMENDMENT NO. 1)

# Amendatory Endorsements - Exclusion Of Loss Due To Virus Or Bacteria Filing Amended

## Applicable Lines of Business

This filing applies to the following:

♦ Businessowners

♦ Capital Assets

♦ Market Segments

## About This Filing

This amendment filing introduces Massachusetts specific versions of Exclusion Of Loss Due To Virus Or Bacteria, for the Businessowners, Capital Assets and Market Segments Programs, to complement Massachusetts specific mold provisions.

## New Forms

We are introducing:

♦ **BP 06 06 01 07** - Massachusetts - Exclusion Of Loss Due To Virus Or Bacteria

♦ **OP 05 11 01 07** - Massachusetts - Exclusion Of Loss Due To Virus Or Bacteria

♦ **MS HM 56 01 07** - Massachusetts - Exclusion Of Loss Due To Virus Or Bacteria

## Withdrawn Forms

We are withdrawing:

♦ **BP 06 01 01 07** - Exclusion Of Loss Due To Virus Or Bacteria

♦ **OP 05 06 01 07** - Exclusion Of Loss Due To Virus Or Bacteria

♦ **MS HM 08 01 07** - Exclusion Of Loss Due To Virus Or Bacteria

© ISO Properties, Inc., 2006

CONFIDENTIAL

# Related Filing(s)

Rules Filing CL-2006-OVBER

# Background

Endorsements **BP 06 01**, **OP 05 06** and **MS HM 08** - Exclusion Of Loss Due To Virus Or Bacteria, submitted in filing CL-2006-OVBEF, make reference to Fungi (Fungus), Wet Rot, Dry Rot and Bacteria provisions in the respective policies.

In Massachusetts, we have introduced Massachusetts Fungi (Fungus), Wet Rot, Dry Rot, and Bacteria Exclusions And Limitations endorsements **BP 06 98** and **OP 05 05** and **CP 10 64** in response to the Division of Insurance Bulletin 2006-02.

# Explanation of Changes

Pursuant to the recent implementation of Endorsements **BP 06 98**, **OP 05 05** and **CP 10 64** we are introducing Massachusetts - Exclusion Of Loss Due To Virus Or Bacteria endorsements **BP 06 06**, **OP 05 11** and **MS HM 56,** which explicitly reference the Massachusetts Fungi (Fungus), Wet Rot, Dry Rot and Bacteria Exclusions And Limitations endorsements.

# Copyright Explanation

The material distributed by Insurance Services Office, Inc. is copyrighted. All rights reserved. Possession of these pages does not confer the right to print, reprint, publish, copy, sell, file or use same in any manner without the written permission of the copyright owner.

# Important Note

Insurance Services Office, Inc. (ISO) makes available advisory services to property/casualty insurers. ISO has no adherence requirements. ISO policy forms and explanatory materials are intended solely for the information and use of ISO's participating insurers and their representatives, and insurance regulators. Neither ISO's general explanations of policy intent nor opinions expressed by ISO's staff necessarily reflect every insurer's view or control any insurer's determination of coverage for a specific claim. ISO does not intercede in coverage disputes arising from insurance policies. If there is any conflict between a form and any other part of the attached material, the provisions of the form apply.

© ISO Properties, Inc., 2006

CONFIDENTIAL

CAPITAL ASSETS PROGRAM (OUTPUT POLICY)
OP 05 11 01 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MASSACHUSETTS – EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under the form and endorsements that comprise this Coverage Part, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in Massachusetts – Limited Fungi Or Bacteria Coverage Endorsement **OP 05 05** are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungi", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part.

N

E

W

© ISO Properties, Inc., 2006                  **Page 1 of 1**    □

CONFIDENTIAL                                                                                        ISO_00004246

BUSINESSOWNERS
BP 06 06 01 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MASSACHUSETTS – EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under Section **I** – Property in all forms and endorsements that comprise this Businessowners Policy, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph **B.** does not apply to the following:

1. Loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Businessowners Policy; or

2. Coverage otherwise provided under Food Contamination Endorsement **BP 04 31** (if that endorsement is attached to this Businessowners Policy); or

3. Coverage otherwise provided under the Food Contamination Additional Coverage in Restaurants Endorsement **BP 07 78** (if that endorsement is attached to this Businessowners Policy).

**D.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**E.** The following provisions in this Businessowners Policy (including those in the endorsement entitled Massachusetts – Fungi, Wet Rot, Dry Rot And Bacteria Exclusion And Limitations Endorsement **BP 06 98**) are hereby amended to remove reference to bacteria:

1. Exclusion of "Fungi", Wet Rot, Dry Rot And Bacteria; and

2. Additional Coverage – Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**F.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Businessowners Policy.

N

E

W

© ISO Properties, Inc., 2006

CONFIDENTIAL

ISO_00004247

MARKET SEGMENTS
MS HM 56 01 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MASSACHUSETTS – EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph **B.** does not apply to the following:

  **1.** Loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part; or

  **2.** Coverage otherwise provided under the Food Contamination Additional Coverage in Hotels, Motels And Inns Endorsement **MS HM 01.**

**D.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**E.** The following provisions in this Coverage Part (including those in the endorsement entitled Massachusetts – Fungus, Wet Rot, Dry Rot And Bacteria Exclusion And Limitations Endorsement **CP 10 64** applicable to the Causes Of Loss – Special Form) are hereby amended to remove reference to bacteria:

  **1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

  **2.** Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**F.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part.

N

E

W

CONFIDENTIAL

ISO_00004248

**CAPITAL ASSETS PROGRAM (OUTPUT POLICY)**
**OP 05 06 01 07**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under the form and endorsements that comprise this Coverage Part, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in Limited Fungi Or Bacteria Coverage Endorsement **OP 05 01** are hereby amended to remove reference to bacteria:

   **1.** Exclusion of "Fungi", Wet Rot, Dry Rot And Bacteria; and

   **2.** Additional Coverage – Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part.

WITHDRAWN

© ISO Properties, Inc., 2006

Page 1 of 1

CONFIDENTIAL

ISO_00004249

BUSINESSOWNERS
BP 06 01 01 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under **Section I – Property** in all forms and endorsements that comprise this Businessowners Policy, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph **B.** does not apply to the following:

**1.** Loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Businessowners Policy; or

**2.** Coverage otherwise provided under Food Contamination Endorsement **BP 04 31** (if that endorsement is attached to this Businessowners Policy); or

**3.** Coverage otherwise provided under the Food Contamination Additional Coverage in Restaurants Endorsement **BP 07 78** (if that endorsement is attached to this Businessowners Policy).

**D.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**E.** The following provisions in this Businessowners Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungi", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**F.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Businessowners Policy.

WITHDRAWN

© ISO Properties, Inc., 2006

CONFIDENTIAL     ISO_00004250

MARKET SEGMENTS
MS HM 08 01 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SEXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph **B.** does not apply to the following:

**1.** Loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part; or

**2.** Coverage otherwise provided under the Food Contamination Additional Coverage in Hotels, Motels And Inns Endorsement **MS HM 01.**

**D.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**E.** The following provisions in this Coverage Part are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**F.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part.

WITHDRAWN

CONFIDENTIAL　　　ISO_00004251

## Outline of Contents
## FIRE, MARINE, and INLAND MARINE FILINGS

I. Policy Language and Coverage

    A. Insurance coverage for dwelling houses, comprehensive and medical coverage
        MGL c.175, s.54E
            1.  Scope of Coverage / Approval of Policy / Forms
            2.  Surplus / Reinsurance Requirements

    B. Coverage for commercial property, goods in storage or transit and other
        merchandise or equipment in connection with fire insurance policies
        MGL c. 175, s.54F
            1.  Commercial Property Coverage
            2.  Surplus / Reinsurance Requirements

    C. Mutual Fire companies; members MGL c.175, s.76

    D. Mutual Fire Companies; provisions, disclosure of contingent liability
        MGL c.175, s.81

    E. Application for insurance and preliminary contracts MGL c.175, s.98
            1.  Application Requirements
            2.  Non-Applicability
            3.  Binders

    F. Fire policy / standard form MGL c.175, s.99
            1.  Contents of Policies and Forms
            2.  Text of Standard Form of Policy
            3.  Change to Loss Settlement Clause
            4.  Additional Mandatory Policy Language
            5.  Relocation Benefits
            6.  Elimination / Reduction in Coverage

    G. Fire Policy; damage caused by nuclear reaction or contamination
        MGL c.175, section 99A

    H. Property insurance for business, professional or governmental operation;
        multi-peril homeowners insurance for condominiums
        MGL c.175, section 99B
            1.  Applicability of Section 99
            2.  Comparison to Standard Fire Policy
            3.  Requirements for Approval
            4.  Requirements for Form of Policy

    I. Combination policies; contents; Commissioner's approval
        MGL c.175, section 102A
            1.  Requirements for Form of Policy

1

ISO_00004252

2. Execution of Policy
3. Conditions for Policy Issuance or Deliverance
4. Modifications
5. Standard Language Required
6. Applicability of Other Sections

J. Non-assessable policies; power to issue; conditions MGL c.175, section 152A
1. Who May Issue
2. Deposit
3. Applicability
4. Required Notice on Policy

K. Fire insurance policies; non-renewal notice provision
MGL c.175, section 193P (first paragraph only)
1.

L. Marine and automobile and sprinkler insurance MGL c.175, section 117A
1. Who May Issue
2. Execution of Policy
3. Prerequisites for Issuance of Policy
4. Applicability of Other Sections

M. Riders and endorsements; Commissioner's approval MGL c.175, section 192
1. Filing and Approval Of Riders and Endorsements
2. Exceptions

i. Filings by Rating Organizations
ii. Rates In Excess of Filing
iii. Applicability
1. Section 7: Defective filing; remedy of aggrieved person

N. Additional Filing Provisions

# I. Policy Language and Coverage

## A. Chapter 175: Section 54E. Insurance coverage for dwelling houses, comprehensive and medical coverages in connection with fire insurance coverage

### Scope of Coverage / Approval of Policy / Forms

N/A Any company authorized to insure against loss or damage by fire (which has been actively engaged in the fire insurance business in 1 or more states of the United States continuously for 10 years, or less than 10 years with the approval of the Commissioner, or whose predecessor or predecessors, if any prior to merger or consolidation, shall have been so engaged for such period) may insure against loss or damage to dwellings and appurtenant structures and to the contents thereof and

2

ISO_00004253

any other personal property of a similar nature of the insured or members of his household resulting from any peril proper to insure against in Massachusetts.

N/A ___ The company may also insure against the legal liability of the insured, or of members of his household, arising out of non-business pursuits and for medical, surgical and hospital expenses.

N/A ___ Insurance coverages for loss or damage by perils other than the peril of fire may be written only when insurance against the peril of fire is written in the same policy and on forms that have been submitted to and approved by the Commissioner.

**B. Chapter 175: Section 54F. <u>Coverage for commercial property, goods in storage or transit and other merchandise or equipment in connection with fire insurance policies</u>**

**<u>Commercial Property Coverage</u>**

N/A ___ Any company authorized to insure against loss or damage by fire (which has been actively engaged in the fire insurance business in 1 or more states of the United States continuously for 10 years, or less than 10 years with the approval of the Commissioner, or whose predecessor or predecessors, if any prior to merger or consolidation, shall have been so engaged for such period) may insure against loss or damage to, or the legal liability of the insured with respect to, commercial property, including goods in storage and in transit, stocks of merchandise, furniture and fixtures, equipment, materials and supplies and the insured's interests in improvements and betterments, whether the property of the insured or the property of others, while anywhere within the continental United States or in transit in Canada.

N/A ___ Insurance coverages for loss or damage by perils other than the peril of fire may be written only when insurance against the peril of fire is written in the same policy and on forms that have been submitted to and approved by the Commissioner.

**C. Chapter 175: Section 76. <u>Mutual Fire companies; members</u>**

Every person insured by a mutual fire company shall be a member while his policy is in force, entitled to 1 vote for each policy he holds, and shall be notified of the time and place of holding its meetings by a written notice or by an imprint, in type not smaller than long primer, upon the filing-back of each policy, receipt or certificate of renewal, as follows:

N/A ___ **The assured is hereby notified that by virtue of this policy he is a member of the Insurance Company, and is entitled to vote either in person or by proxy at any and all meetings of said company. The annual meetings are held at its home office on the ____ day of _____ in each year, at _____ o'clock.**

3

ISO_00004254

The blanks shall be duly filled in print, and shall be a sufficient notice.

## D. Chapter 175: Section 81. Mutual Fire companies; premiums; disclosure of contingent liability policy

Mutual fire companies shall fix the contingent mutual liability of its members for the payment of losses and expenses and state the total amount of the liability of the policyholder, plainly and legibly, on the filing-back of each policy.

## E. Chapter 175: Section 98. Application for insurance and preliminary contracts

Every applicant for insurance against loss or damage to a building by fire shall complete a form to be prescribed by the Commissioner.

### Application Requirements

The application form may vary according to the type of coverage sought. It shall require from the applicant sufficient information relative to the insured property to determine the actual cash value and the actual ownership of the property. The application form shall be completed prior to the initial issuance of a policy, upon an addition or modification of the policy with respect to the named insured or mortgagee, or when the coverage under the terms of the policy is increased by more than 25 %. The application shall, insofar as it materially relates to the obligations stated in the contract, be considered a part of the contract.

The by-laws of the company shall not be considered as a warranty or a part of the contract except so far as they are incorporated in full in the policy as provided in the 9th clause of section 99.

### Non-Applicability

This section shall not apply to owner occupied dwellings of four units or less, to buildings owned and insured by the Commonwealth or its political subdivisions, to highly protected risks, to non-income producing seasonal dwellings, or to builders risk policies.

For the purpose of this section the words "highly protected risk" shall mean a fire resistive building which meets the highest standards of fire safety according to insurance company underwriting requirements, and "builders risk policies" shall mean policies which insure against loss to buildings in the course of construction.

### Binders

Nothing in this section shall prohibit the issuance of a written memorandum of a preliminary contract of insurance, for a period no longer than 30 days, pending the approval of the application form, for the issuance of such a policy.

4

**F. Chapter 175: Section 99. <u>Fire policy/standard form</u>**

No company shall issue policies or contracts which insure against loss or damage by fire or by fire and lightning to property or interests in Massachusetts other than those of the standard forms herein set forth, except as provided in section 22A and in section 102A, and except as follows:

<u>Contents of Policies and Forms</u>

N/A    a. A company may print on or in its policies its name, location, date of incorporation, plan of operation, whether stock or mutual, and, if the former, the amount of its paid-up capital stock.

N/A    b. A corporation organized under a special act of the legislature of any state may so indicate upon its policy and may add a statement of the plan under which it operates in this state.

N/A    c. A company may also print on or in its policies the names of its officers and agents, the number and date of the policy. (THERE IS NO LONGER A COUNTERSIGNATURE REQUIREMENT IN MASSACHUSETTS UNLESS THE STATE OF INCORPORATION FOR THE INSURER HAS THIS TYPE OF REQUIREMENT. IF THIS IS THE CASE, THEN MASSACHUSETTS' RETALIATORY PROVISIONS APPLY. SEE MGL c. 175, s, 159).

N/A    d. A company may also indicate on the face of its policies or elsewhere the perils insured against in the policy or in any actual or contemplated endorsements thereto or both, and may show the location and description of the property or interest covered, the amount, rate and premium applicable to the hazards insured and an abstract of other pertinent policy or endorsement provisions.

N/A    e. A mutual company shall fix the contingent mutual liability of its members for the payment of losses and expenses not provided for by its cash funds and shall print on the filing-back of its policies the notice required by s. 76, the endorsement required by s. 80 and the statement required by MGL c. 175, s. 81.

N/A    f. A company may print or use in its policies printed forms of description and specification of the property or interest covered.

N/A    g. If policies are underwritten by a group, association or syndicate of companies, the names and principal places of business of said companies and the proportionate share of participation of each company may be stated at a place in the policy other than that indicated in the standard form for stating the name and principal place of business of the company.

N/A    h. A domestic company may print in its policies any provisions which it is authorized or required by law to insert therein; and any foreign company may, with the approval of the Commissioner, so print any provision required by its charter or deed of settlement, or by the laws of its own state or country not contrary to the laws of this Commonwealth; but the Commissioner shall require

CONFIDENTIAL    ISO_00004256

any provision which in his opinion modifies the contract of insurance in such way as to affect the question of loss to be appended to the policy by a slip or rider as hereinafter provided.

i. The blanks in the standard form may be filled in print or writing.

j. A company may print upon policies issued in compliance with this section the words "Massachusetts Standard Policy".

k. There shall be printed or stamped on the filing-back of every policy, in clear type not smaller than long primer, the words "In case of fire notify the company or its local agent at once in writing".

l. The teste clause and the signature of the properly designated officers of the company may be placed at the end of the policy instead of in the position indicated by the standard form.

m. A company may write upon the margin or across the face of a policy, or write, or print in type not smaller than 10 point, 2 points leaded, upon separate slips or riders to be attached thereto, provisions adding to or modifying those contained in the standard form, and all such slips, riders and provisions shall be signed by the officers or agents of the company so using them. Nothing herein contained shall authorize any addition to or modification of any of the provisions of said standard form relative to the rights of a mortgagee, a cancellation of the policy, a reference of the amount of a loss to 3 referees or the limitation of actions or suits.

n. A reciprocal or inter-insurance exchange may with the written approval of the Commissioner add to or modify the said standard form with respect to any provisions required by the plan of reciprocal insurance or inter-insurance.

o. The standard form of policy shall be plainly printed and all portions of the policy shall be in type of at least 10 point, 1 point leaded in size, and shall be substantively as follows:

**Text of Standard Form of Policy**

(Corporate name of the company; its principal place or places of business.)

In consideration of the provisions and stipulations herein or added hereto and of dollars premium this company, for the term of from the day of (month), 2000 to the day of (month), 2000 at one (1) minute past twelve (12) o'clock ante-meridian, standard time, at location of property involved, to an amount not exceeding dollars, does insure and legal representatives, to the extent of the actual cash value of the property at the time of loss, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all loss by fire, lightning and by removal from premises endangered by the perils insured against in this policy, except as

6

CONFIDENTIAL

ISO_00004257

hereinafter provided, to the property described hereinafter while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

N/A Assignment of this policy shall not be valid except with the written consent of this company.

N/A This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

N/A In witness whereof, this company has executed and attested these presents.

N/A This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance N/A concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

N/A This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named hereon in writing, bullion or manuscripts.

See policy This company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy; (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in the neighboring premises; (j) nor shall this company be liable for loss by theft.

N/A Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto.

Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; or (b) while the described premises, whether intended for occupancy by owner or tenant, are vacant or unoccupied beyond a period of sixty consecutive days for residential premises of three units or less and thirty consecutive days for all other premises; or (c) as a result of explosion or riot, unless fire ensue, and in that event for loss by fire only.

Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto.

7

CONFIDENTIAL

ISO_00004258

N/A The extent of the application of insurance under this policy and of the contribution to be made by this company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change.

N/A No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this company relating to appraisal or to any examination provided for herein.

_____ This policy shall be cancelled at any time at the request of the insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this company by giving to the insured a five days written notice of cancellation, and to the mortgagee to whom this policy is payable twenty days written notice of cancellation except where the stated reason for cancellation is nonpayment of premium where, in such instance, this policy may be cancelled at any time by this company by giving to the insured a ten days written notice of cancellation, and the mortgagee a twenty (20) days written notice of cancellation, with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium, if not tendered, will be refunded on demand and shall state or be accompanied by a statement of the specific reason or reasons for such cancellation. After this policy has been in effect for sixty (60) days, or after sixty days from any anniversary date, no notice of cancellation shall be effective unless it is based on the occurrence, after the effective date of the policy, of one or more of the following:

_____ (1) nonpayment of premium;

_____ (2) conviction of a crime arising out of acts increasing the hazard insured against;

_____ (3) discovery of fraud or material misrepresentation by the insured in obtaining the policy;

_____ (4) discovery of willful or reckless acts or omissions by the insured increasing the hazard insured against;

_____ (5) physical changes in the property insured which result in the property becoming uninsurable; or

_____ (6) a determination by the Commissioner that continuation of the policy would violate or place the insurer in violation of the law. Where the stated reason is nonpayment of premium, the insured may continue the coverage and avoid the

8

 ISO_00004259

effect of the cancellation by payment at any time prior to the effective date of cancellation.

Notwithstanding any other provisions of this policy, if this policy shall be made payable to a mortgagee of the covered real estate, no act or default of any person other than such mortgagee or his agent or those claiming under him, whether the same occurs before or during the term of this policy, shall render this policy void as to such mortgagee nor affect such mortgagee's right to recover in case of loss on such real estate: provided, that the mortgage shall on demand pay according to the established scale of rate for any increase of risk not paid for by the insured; and whenever this company shall be liable to a mortgagee for any sum for loss under this policy for which no liability exists as to the mortgagor, or owner, and this company shall elect by itself, or with others, to pay the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the company interested, upon such payment, the said mortgage together with the note and debt thereby secured.

This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved.

The insured shall give immediate written notice to this company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed and damaged property, showing in detail the quantity, description, actual cash value and amount of loss claimed; and the insured shall forthwith render to this company a signed, sworn statement in proof of loss which sets forth to the best knowledge and belief of the insured the following: the time and cause of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupancy, location, possession or exposures of said property, since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and detailed estimates for repair of the damage. The insured, as often as may be reasonably required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

9



In case of any loss or damage, the company, within thirty days after the insured shall have submitted a statement, as provided in the preceding clause, shall either pay the amount for which it shall be liable, which amount if not agreed upon, shall be ascertained by award of referees as hereinafter provided, or replace the property with other of the same kind and goodness; or it may, within fifteen days after such statement is submitted, notify the insured of its intention to rebuild or repair the premises, or any portion thereof separately covered by this policy, and shall thereupon enter upon said premises and proceed to rebuild or repair the same with reasonable expedition. It is moreover understood that there can be no abandonment of the property described to the company, and that the company shall not in any case be liable for more than the sum insured, with interest thereon from the time when the loss shall become payable, as above provided. The company shall be liable for the payment of interest to the insured at a rate of one per cent over the prime interest rate on the agreed figure commencing thirty days after the date an executed proof of loss for such figure is received by the company, said interest to continue so long as the claim remains unpaid.

In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the company and the insured each choosing one out of three persons to be named by the other, and the third being selected by the two so chosen; and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss; but no person shall be chosen or act as a referee, against the objection of either party, who has acted in a like capacity within four months.

No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this Commonwealth unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties. If suit or action upon this policy is enjoined or abated, suit or action may be commenced at any time within one year after the dissolution of such injunction, or the abatement of such suit or action, to the same extent as would be possible if there was no limitation of time provided herein for the bringing of such suit or action.



This company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company.

CONFIDENTIAL

ISO_00004261

## Change to Loss Settlement Clause

Notwithstanding any other provision of this chapter, the Commissioner may approve for use in the Commonwealth a provision, which changes the loss settlement clauses of the standard policy, which requires coverage to the extent of actual cash value. Such changes must provide a reasonable, clearly specified coverage definition, and may be equivalent to, greater than or less than actual cash value.

## Additional Mandatory Policy Language

**A company shall print on or in all its policies, that:**

Notwithstanding any provision to the contrary of any general or special law, said company shall, before paying any claim for loss or damage to real property, other than owner-occupied 1, 2, 3, or 4 family dwellings, from any hazard, where the amount of the loss payable under the policy equals or exceeds $5,000, first require the claimant to submit to the company a certificate of municipal liens from the collector of taxes of the city or town wherein such property is located.

Said company shall pay to the city or town any amounts shown on the certificate of municipal liens as outstanding on the date of loss and upon which interest is accruing as of the said date of loss, arising from the provisions of MGL chapters 40, 59, 60, 80, 83 and MGL c. 164, section 58B to 58F, inclusive, to the extent of the amount of loss payable under the policy and a copy of said transaction shall be sent to the insured and mortgagees named on the policy.

The claim of the city or town for such amounts shall have priority over the claim of any insured owner, mortgagee, assignee or other interested party except where otherwise provided by the laws of the United States.

Said company shall not be liable to any insured owner, mortgagee, assignee, city or town, or other interested party for amounts disbursed to a city or town or for amounts not disbursed to said city or town based upon a certificate indicating the nonexistence of any municipal liens.

The insurer shall not pay any claim (1) covering any loss, damage, or destruction to a building or other structure, amounting to $1,000 or more, or (2) covering any loss, damage or destruction of any amount, which causes the condition of a building or other structure to render MGL c. 143, s. 6 applicable, without having at least 10 days previously, given written notice to the building Commissioner or inspector of buildings appointed pursuant to the state building code, and to the board of health or the board of selectmen of the city or town in which the same is located. If at any time prior to payment the said city or town notifies the insurer by certified mail of its intent to initiate proceedings designed to perfect a lien pursuant to section 3A, or to MGL c. 143, s. 9, or MGL c. 111, s. 127B, the said payment shall not be made while the said proceedings are pending; provided,

11

CONFIDENTIAL

ISO_00004262

however, that said proceedings are initiated within 30 days of receipt of such notification.



Any lien perfected pursuant to section 3A, or to MGL c. 143, s. 9, or MGL c. 111, s. 127B, shall extend to and may be enforced by the city or town against any casualty insurance policy or policies covering any loss, damage, or destruction pursuant to which the proceedings to perfect the lien were initiated. No insurer shall be liable to any insured owner, mortgagee, assignee, city or town, or other interested party for amounts disbursed to a city or town, or for amounts not disbursed to a city or town under the provisions of this section.

## Relocation Benefits

Every policy which insures multi-unit residential property against loss or damage by fire shall provide additional benefits, by endorsement attached to the policy, up to a limit of $750, without deductible, for each rental unit to cover the actual costs of relocation of any tenant or lawful occupant displaced by fire or by damage resulting from fire. Benefits under this clause shall be paid by the insurer to the tenant or lawful occupant after taking into account benefits available under any other policy. The terms and conditions of such clause shall be approved or prescribed by the Commissioner. The landlord or lessor of the property shall notify each tenant or lawful occupant in writing of the benefits payable under this clause at the beginning of the lease or tenancy period. A waiver of this provision in any lease or other rental agreement shall be void and unenforceable. The Commissioner may exempt from the provisions of this clause residence halls and dormitories operated by institutions of public higher education; provided, however, that the institution assumes responsibility for the relocation of any tenant displaced by fire or by damage resulting from fire.

## Elimination / Reduction in Coverage

In the event a company or filing or rating organization eliminates or reduces coverages, conditions or definitions in such policies issued under this section, the company must attach to each of such policy a printed notice setting forth what coverages, conditions or definitions have been eliminated or reduced. If explanations of such reduced or eliminated coverages are not contained in such a printed notice attached to such policy, then such coverages, conditions or definitions shall remain in full force and effect without such reductions or eliminations.

## G. Chapter 175, Section 99A: Fire policy; damage caused by nuclear reaction or contamination

CONFIDENTIAL

ISO_00004263

Insurers issuing the standard policy pursuant to section 99 are authorized to attach or include therein a written statement that the policy does not cover loss or damage caused by nuclear reaction or nuclear radiation or radioactive contamination, whether directly or indirectly resulting from an insured peril under the policy.

This section should not be construed to prohibit the attachment to any fire policy an endorsement or endorsements specifically assuming coverage for loss or damage caused by nuclear reaction or nuclear radiation or radioactive contamination. However, subject to the foregoing and all provisions of the policy, direct loss by fire resulting from nuclear reaction, or nuclear radiation or radioactive contamination is insured against by such policy.

## H. Chapter 175: Section 99B. Property insurance for business, professional or governmental operation

### Applicability of Section 99

The Commissioner may approve any form of policy for property insurance which is issued to insure a business, professional or governmental operation, and which does not correspond to the standard fire insurance policy as set forth in section 99.

### Comparison to Standard Fire Policy

Policy forms approved under this section need not correspond to the standard fire insurance policy set forth in section ninety-nine, but shall, except for the loss settlement provisions of any such approved policy, assure to the policyholders and claimants protection no less favorable than such policyholders would be entitled to under section 99 and shall otherwise conform to the substantive requirements of that section.

The protection offered may be no less favorable than they would be entitled to under section 99.

### Requirements for Approval

The Commissioner shall approve any form of policy of homeowners multi-peril insurance which is filed by a licensed rating organization (or independently by any company licensed to write such insurance under authority of subclause (g) of section 51, clause (g) of section 54 or 54E) to insure an owner-occupied condominium unit or dwelling structure of 4 or fewer units, or a tenant in such a condominium or dwelling structure and that:

### Requirements for Form of Policy

13

ISO_00004264



_____ (a) contains a loss settlement clause which provides coverage for property loss to the extent of the actual cash value of the damage to the insured unit or structure;

or

_____ (b) contains a loss settlement clause which provides coverage for property loss on the basis of like-kind-and-quality replacement cost; or

_____ (c) contains, in accordance with clause Twelfth A (12th A) of section 99:

> _____ (1) a loss settlement clause which provides functional replacement or repair cost coverage;

> _____ (2) which otherwise limits an insurer's liability for property loss to the tax assessment value of the insured unit or structure; or

> _____ (3) which otherwise requires actual cash value loss settlement calculations to be based upon the fair market value of the insured unit or structure, net of land value, without consideration of replacement cost less accrued depreciation due to physical deterioration and functional and economic obsolescence; provided, however, such policy forms shall not be issued or renewed when the market value of the unit or structure proposed to be insured is less than the total amount of mortgage liens outstanding upon such unit or structure at the time of policy issuance or renewal.

The Commissioner shall compose and require, as a condition of approval of any alternative loss settlement clause pursuant to clause (c), appropriate consumer disclosure forms to be used by companies issuing such policy forms in the Commonwealth.

## I. Chapter 175: Section 102A: **Combination policies / contents**

### Scope of Coverage

_____ Two (2) or more stock or 2 or more mutual fire companies may issue a single policy of insurance against loss or damage by fire (or by fire and lightning) on property or interests in the Commonwealth whereby on which each company shall be severally liable for a specified percentage of any loss or claim.

_____ The policy may also include insurance against loss or damage to any property of the insured and against legal liability for loss or damage on account of the bodily injury or death of any person or any damage to property of another caused by the hazards specified in the 5th clause of section 47.

### Execution of Policy

_____ Such policy shall be executed by the duly authorized officers of each company, subject to the provisions of section thirty-three in the case of a domestic company.

### No such policy shall be issued or delivered:

14

CONFIDENTIAL

ISO_00004265

a. until a copy of the form thereof has been on file for 30 days with the Commissioner, unless before the expiration of said 30 days he shall have approved the form of the policy in writing; or

b. if the Commissioner notifies the company in writing within said 30 days that in his opinion the form of the policy does not comply with the laws of the Commonwealth, specifying his reasons therefor;

N/A c. unless it is headed by the corporate name of each company;

N/A d. unless it contains in substance the provisions of the 7th and 8th clauses of section 99 and is, except as hereinafter provided, in the standard form prescribed by said section.

### Modifications

The policy provisions and standard form may be modified as to form and arrangement but only in such manner as the Commissioner may prescribe; nor unless it contains in substance:

### Standard Language Required

N/A 1. A provision plainly specifying the percentage of any loss or claim for which each such company shall be liable.

N/A 2. A provision that the sworn statement required by said standard form, the written request by the insured for a reference under section 100 or the notice of any claim authorized by section 102 may be rendered, made or given to any 1 of such companies or, in the case of said notice, to the agent of any 1 of such companies, and that such statement, request or notice so rendered, made or given shall be valid and binding as to all of such companies.

N/A 3. A provision that, in any action or suit under the policy, service of process may be made on any 1 of such companies and that such service shall be deemed valid and binding service upon all of such companies.

N/A 4. A provision, in the case of a policy issued by mutual companies, that the contingent mutual liability of the insured to each such company shall be based on such proportion of the total premium as the amount insured by each such company bears to the total amount insured under the policy.

N/A 5. A provision that upon cancellation by any company of its liability under the policy the return premium, if any, to be paid or tendered to the insured shall be based on such proportion of the total premium stated in the policy as the amount insured by the canceling company bears to the total amount insured under the policy.

15

CONFIDENTIAL

ISO_00004266

6. The said provisions shall be printed in or on the policy under the caption:-- *"Provisions Specially Applicable to this Combination Policy"* or such other distinctive caption as the Commissioner may prescribe.

**Applicability of Other Sections**

Combination policies shall be subject to the 1st to 6th, inclusive, and 9th clauses, of said section 99, except as otherwise provided herein and except that there may be printed in or in said policies or on the filing-back thereof such device or devices and such distinctive title of the policy as the Commissioner may approve, together with the names, locations, dates of incorporation, plan of operation, the amounts of the paid-up capital stock in case of stock companies, and the names of the officers and agents of each such company.

**J. Chapter 175: Section 152A. Non-assessable policies**

**Who May Issue**

Any mutual fire company admitted before or after this section takes effect to transact business in this Commonwealth may issue non-assessable policies in compliance with the requirements of section 85A and any such mutual company, or any company specified in the first paragraph of section 90, may issue non-assessable policies in compliance with the requirements of section 93F.

Any foreign mutual company previously referred to which has not itself or through its predecessor or predecessors been so engaged in the insurance business continuously for 10 or more years may issue non-assessable policies if it has and maintains a surplus to policyholders of not less than $1,000,000.

**Applicability**

This section shall not apply to any company unless such company or its predecessor or predecessors, if any, prior to merger or consolidation shall have been actively engaged in the insurance business in one or more states of the United States continuously for 10 or more years.

**Required Notice on Policy**

Any company issuing a non-assessable policy under authority of this section may state therein, or on the filing back thereof, or in both such places, that such policy is non-assessable.

**K. Chapter 175: Section 193P. Fire insurance policies; non-renewal notice provision**

Except as otherwise specifically provided in this chapter, no policy providing protection against loss by reason of fire to a dwelling or contents thereof shall be

CONFIDENTIAL

ISO_00004267

issued unless it contains a provision that the insurer will give written notice of its intent not to renew or reissue a policy to the insured at least 45 days prior to the expiration of the policy which notice shall state or be accompanied by a writing stating the specific reasons for such decision.

## L. Chapter 175: Section 117A. **Marine and automobile and sprinkler leakage insurance**

### Who May Issue

 Two (2) or more stock or 2 or more mutual fire companies authorized to transact business under the 2nd clause of section 47 or under the 8th clause thereof (fire / sprinkler) may issue a single policy of insurance against loss or damage caused by any or all of the hazards specified in said 2nd clause or in said 8th clause, as the case may be, on property or interests in the Commonwealth on which each company shall be severally liable for a specified percentage of any loss or claim.

### Execution of Policy

Such policy shall be executed by the duly authorized officers of each company subject to the provisions of section 33 in the case of a domestic company.

### Prerequisites for Issuance of Policy

**No such policy shall be issued or delivered:**

a. until a copy of the form thereof has been on file for 30 days with the Commissioner, unless before the expiration of said 30 days she shall approve the form of the policy in writing;

b. if the Commissioner notifies the company in writing within 30 days that in her opinion the form of the policy does not comply with the laws of the Commonwealth, specifying her reasons therefor;

c. unless it is headed by the corporate name of each company;

d. unless it contains in substance the provisions numbered (1), (3), (4) and (5) in section 102A and a provision that any notice, sworn statement or proof of loss, which may be required by the provisions of said policy may be rendered, made or given to any one of such companies or to a duly authorized agent of any one of such companies, and that such notice, sworn statement or proof of loss so rendered, made or given shall be valid and binding as to all of such companies.

### Applicability of Other Sections

The provisions of sections 76, 80, 81, 83 and 98 applicable to policies issued by mutual fire companies, persons insured under such policies and dividends and assessments

17

thereunder shall apply to each policy issued under this section by mutual companies, to persons insured thereunder and to dividends and assessments thereunder, except as hereinafter provided.

The notice, endorsement and statement required by said sections 76, 80 and 81, respectively, shall be in such form and in such place on the policy as the Commissioner shall prescribe.

**M. Chapter 175: Section 192. <u>Riders and endorsements; Commissioner's approval</u>**

**<u>Filing and Approval Of Riders and Endorsements</u>**

    All provisions of law relative to the filing of policy forms with, and the approval of such forms by, the Commissioner shall also apply to all forms of riders, endorsements and applications designed to be attached to such policy forms and when so attached to constitute a part of the contract.

    The filing and approval provisions shall also apply to all forms of riders or endorsements, designed to be attached to motor vehicle liability policies as defined in MGL c. 90, s. 34A, providing for additional coverage permitted by section 111C.

**<u>Exceptions</u>**

Riders or endorsements used under the 9th clause of section 99 in connection with policies of fire insurance issued under section 102A, may be used, so far as consistent with law, without such approval.

**N. <u>Additional Filing Provisions</u>:**

**Unfair and Deceptive Trade Practices:**

    Any filing not in compliance with the above referenced requirements may be deemed to be in violation of the provisions of Chapter 176D of the Massachusetts General Laws. We hereby certify that the provisions set forth in this filing do not entail any intentional unfair and deceptive trade practices. Furthermore, we understand that we are subject to the penalties associated with practices that are in clear violation of this statute.

**Dog/Animal Bite Exclusions:**

    The Division does not allow companies to use a blanket dog bite exclusion in a Homeowners' multi peril policy. Dog bite exclusions are allowed only as to certain breeds and/or dogs with a prior history of biting. The company should specify in the endorsement the breeds they deem aggressive. If a company is seeking to exclude a

18

particular dog, not within an aggressive breed, it must specify and address, in the endorsement, the facts that support their assessment. All such endorsements are subject to review and approval by the Division.

**Guaranteed Replacement Cost**

*N/A* Homeowners "guaranteed" replacement coverage on the dwelling may be capped at no less than 125% of the amount of insurance on the dwelling.

**Mold Coverage**

*N/A* Personal Lines Policies must provide a $10,000 base coverage and offer extended property coverage options of $25,000 and $50,000. Insurers must provide $50,000 liability coverage and offer extended liability coverage of up to $100,000, at the option of the insured.

*✓* Commercial Policies must include coverage of at least $15,000 for property claims arising from mold.

*N/A* Filers submitting policies, endorsements and revisions for mold property and liability coverage must include copies of the policyholder notice advising the policyholders of the respective changes and endorsements to their policies.

*N/A* We hereby certify that we have attached a copy of the policyholder notice and upon approval such notice will be forwarded to the policyholders.

19

CONFIDENTIAL

ISO_00004270

## Outline of Contents
## CASUALTY FORM FILINGS

I.      G.L. ch. 175, §22A- Combination of Hazards
II.     Chapter 175, section 111A: Combination Policies/Liability Insurance
III.    Chapter 175, section 111C: Medical Pay Provisions
IV.     Chapter 175, section 111E: Professional liability policies
V.      Requirements applicable to Insurance on Liability for Injury from Exposure to
        Dangerous Levels of Lead in Dwelling Units 211 CMR 131.00:
        Chapter 175: section 111H: Coverage of injuries resulting from lead exposure

VI.     Liquor Liability Coverage
VII.    Additional Governing Provisions

**I. G.L. ch. 175, §22A- Combination of Hazards**

This policy combines coverage against loss or damage caused by a combination of hazards (i.e. hazards specified in more than one of the clauses of section forty-seven).
_____ ✓ Yes                        _____ No

**If no, please proceed to the next section.**
**If yes, please review and complete the following:**

NO____ This policy does not contain coverage of or references to motor vehicle insurance subject to G.L. ch. 175, §113A.

NO·___ This policy does not contain coverage of or reference to life and health insurance subject to G.L. ch. 175, §§108, 132.

but nothing in the foregoing provisions of this section shall permit the incorporation in any policy issued under section 111A or 117A, or any policy subject to section 108 or 113A or 132, of any coverage not otherwise permitted by this chapter to be incorporated therein. The provisions of this paragraph shall not apply to policies authorized by section 54D.

**II.  Chapter 175, section 111A: Combination Policies/Liability Insurance**

**A.** Is the policy a single policy issued by two (2) or more companies for insurance against loss or damage on account of the hazards specified in the 3rd clause to airplanes, seaplanes, dirigibles or other aircraft and motor vehicles other than motor boats; or in subdivisions (a) and (b) of the 6th clause of section 47 (legal liability plan loss or damage on account of injury or death or damage to property of another excluding deliberate or intended acts);          _____ Yes          ✓ No

CONFIDENTIAL                                                    ISO_00004271

**If no, please proceed onto the next section.**
**If yes, then please review and complete the following:**

_____The policy should be executed on behalf of the companies by a duly authorized person and the corporate name of each of the companies shall be affixed to the policy. G.L. ch. 175, §111A.

The policy shall contain the following:

_____ A provision specifying the percentage of any loss or claim for which each company shall be liable. <u>Id.</u>

_____ A provision that any notice, sworn statement or proof of loss which may be required by the provisions of said policy may be rendered, made or given to any one of such companies or to a duly authorized agent of any one of the such companies, and that such notice, sworn statement or proof of loss so rendered, made, or given shall be valid and binding as to all of such companies. <u>Id.</u>

_____ A provision that, in any action or suit under the policy, service of process may be made on any one of such companies and that such service shall be deemed valid and binding service upon all of such companies. <u>Id.</u>, G.L. ch. 175, §102A(3).

_____ A provision that upon cancellation by any company of its liability under the policy, the return premium, if any, to be paid or tendered to the insured shall be based on such proportion of the total premium stated in the policy as the amount insured by the canceling company bears to the total amount insured under the policy. <u>Id.</u>, G.L. ch. 175, §102A(5).

Are the companies mutual companies? _____ Yes      √  No

**If no, please proceed to the next section.**
**If yes, then, please review and complete the following:**

_____ The policy shall provide that the contingent mutual liability of the insured to each company shall be based on such proportion of the total premium as the amount insured by each such company bears to the total insured under the policy. <u>Id.</u>, G.L. ch. 175, §102A(4).

_____ The person insured under such a policy shall be deemed to be a member of each company while the policy is in force and entitled to one vote at the meetings of each company. G.L. ch. 175, §111B; G.L. ch. 175, §102B, second paragraph.

_____ The policy [or filing] shall contain the notice, endorsement, and statement required by G.L. ch. 175, §§76,80, 81. G.L. ch. 175, §102B, third paragraph.
_____ Every policyholder of a domestic company and every policy in this commonwealth of a foreign company shall be notified, at his last know address, within

CONFIDENTIAL                                                                 ISO_00004272

six months after the expiration of his policy, of the amount of any divided declared and payable thereon, unless in he meantime such divided has been paid in cash or applied in payment of the premium on the renewal of the policy. G.L. ch. 175, §80.

_____ The policy shall fix contingent mutual liability of its members for the payment of losses and expenses not provided for by its cash funds, which liability shall not be less than an amount equal to and in addition to the cash premium written in the policy. The total amount of the liability of the policyholder shall be plainly and legibly stated upon the filing-back of each policy. G.L. ch. 175, §81.

_____ Every policyholder shall be notified of the time and place of holding its meetings by a written notice or on the filing-back of each policy, receipt or certificate of renewal in accordance with the form prescribed in G.L. ch. 175, §76.

_____ The application shall, insofar as it materially relates to the obligations stated in the contract, be considered a part of the contract. The application shall require from the applicant sufficient information relative to the insured property to determine the actual cash value and the actual ownership of the property. ( Not applicable to coverage of owner occupied dwellings of four units or less, to buildings owned and insured by the commonwealth or its political subdivisions, to highly protected risks, to non-income producing seasonal dwellings, or to builders risk policies.) G.L. ch. 175, §§98, 111B.

_____ The policy shall provide for a policyholder's liability to pay his/her proportional part of any assessment laid by the company. G.L. ch. 175, §§§83, 93, 111B.

**Please note that two or more companies may NOT issue a single motor vehicle liability policy as defined in G.L. ch. 90, §34A.** G.L. ch. 175, §111A.

**B.** Is the policy issued by two or more companies against legal liability for loss or damage to person or property caused by nuclear energy hazards?
_____ Yes              √ ___No

**If no, please proceed to the next section.**
**If yes, please review and complete the following:**

_____The policy may be executed on behalf of the companies by a duly authorized person and need not be countersigned by a resident agent of more than one of such companies in the commonwealth. G.L. ch. 175, §111A

_____ The policy need not be headed by the corporate names of all the companies provided the corporate name of each company is affixed. Id.

_____ The policy shall plainly specify the percentage of any loss or claim for which each such company shall be liable. Id.

CONFIDENTIAL                                                         ISO_00004273

_____ The policy shall include a provision that any notice, sworn statement or proof of loss which may be required by the provisions of the policy may be rendered, made or given to any one of such companies or to the agent named I the policy as he duly authorized agent of the companies, and that such notice, sworn statement or proof of loss so rendered, made or given shall be valid and binding as to all of such companies. Id.

_____ A provision that, in any action or suit under the policy, service of process may be made on any one of such companies and that such service shall be deemed valid and binding service upon all of such companies. Id., G.L. ch. 175, §102A(3).

Are the companies mutual companies? _____ Yes        √ No

**If no, please proceed to the next section.**
**If yes, please review and complete the following:**

_____ The policy shall provide that the contingent mutual liability of the insured to each company shall be based on such proportion of the total premium as the amount insured by each such company bears to the total insured under the policy. Id., G.L. ch. 175, §102A(4).

_____ The person insured under such a policy shall be deemed to be a member of each company while the policy is in force and entitled to one vote at the meetings of each company. G.L. ch. 175, §111B; G.L. ch. 175, §102B, second paragraph.

_____ The policy [or filing] shall contain the notice, endorsement, and statement required by G.L. ch. 175, §§76,80, 81. G.L. ch. 175, §102B, third paragraph.
_____ Every policyholder of a domestic company and every policy in this commonwealth of a foreign company shall be notified, at his last know address, within six months after the expiration of his policy, of the amount of any divided declared and payable thereon, unless in he meantime such divided has been paid in cash or applied in payment of the premium on the renewal of the policy. G.L. ch. 175, §80.

_____ The policy shall fix contingent mutual liability of its members for the payment of losses and expenses not provided for by its cash funds, which liability shall not be less than an amount equal to and in addition to the cash premium written in the policy. The total amount of the liability of the policyholder shall be plainly and legibly stated upon the filing-back of each policy. G.L. ch. 175, §81.

_____ Every policyholder shall be notified of the time and place of holding its meetings by a written notice or on the filing-back of each policy, receipt or certificate of renewal in accordance with the form prescribed in G.L. ch. 175, §76.

_____ The application shall, insofar as it materially relates to the obligations stated in the contract, be considered a part of the contract. The application shall require from the applicant sufficient information relative to the insured property to determine the actual cash value and the actual ownership of the property. ( Not applicable to coverage of

4

CONFIDENTIAL                                                                                   ISO_00004274

owner occupied dwellings of four units or less, to buildings owned and insured by the commonwealth or its political subdivisions, to highly protected risks, to non-income producing seasonal dwellings, or to builders risk policies.) G.L. ch. 175, §§98, 111B.

_____ The policy shall provide for a policyholder's liability to pay his/her proportional part of any assessment laid by the company. G.L. ch. 175, §§§83, 93, 111B.

**Policyholder Notices for Combination Policies**

_____ In the event a company or filing or rating organization eliminates or reduces certain coverages, conditions, or definitions in such policies issued under this section [G.L. ch. 175, §111A], the company must attach to each of such policy a printed notice setting forth what coverages, conditions or definitions have been eliminated or reduced. If explanations of such reduced or eliminated coverages are not contained in such a printed notice attached to such policy, then such coverages, conditions or definitions shall remain in full force and effect without such reductions and eliminations. G.L. ch. 175, §111A.

\_\_\_\_\_ We hereby certify that such notice is attached, Policy Form Number_____ Page \_\_\_\_, or has previously been filed and approved for use with the Division of Insurance, policy form number_____ approved effective_____.

**III. Chapter 175, section 111C: <u>Medical Pay Provisions</u>**

A policy of insurance issued under subdivision (b) of clause 6th of section 47 insuring any person against legal liability for loss or damage on account of the injury or death of any other person **may** also insure, or an endorsement or rider may be attached thereto to insure, irrespective of any such legal liability, any person, including the named insured under the policy, in respect to:

N/A (1) the reasonable expense of medical, surgical, x-ray, dental (including prosthetic devices), ambulance, hospital, professional nursing and funeral expenses; and

N/A (2), in the case of a motor vehicle liability policy as defined in MGL c. 90 s. 34A, disability benefits on account of injury and death benefits to dependents, beneficiaries or personal representatives on account of death resulting from the ownership, maintenance or use of motor vehicles.

**IV. Chapter 175, section 111E: <u>Professional liability policies</u>**

**Does this filing entail coverage for professional liability?**
**If no, please proceed to the next section**
**If yes, please review and complete the following:**

CONFIDENTIAL

ISO_00004275

With the prior written approval of the Commissioner of insurance, a group liability insurance policy may be issued by a company affording professional liability coverage for bodily injury and property damage including wanton and reckless assault and battery, but excluding willful or intentional assault and battery.

N|A The policy must insure members of an association formed under the authority of MGL c. 180 (Corporations for Charitable and Certain Other Purposes) consisting of at least 500 members of whom not less than 75 % are insured thereunder.


**V.  Requirements applicable to Insurance on Liability for Injury from Exposure to Dangerous Levels of Lead in Dwelling Units 211 CMR 131.00:**
**Chapter 175: section 111H: Coverage of injuries resulting from lead exposure**

Does the policy provide coverage for a residential property?
_____ Yes        √ No

**If no, please proceed to the next section.**
**If yes, please review and complete the following:**

**Mandatory Coverage**

_____(a) Any liability insurance policy which provides coverage to the owner of any premises for which a letter of interim control or letter of full compliance is in effect, in accordance with MGL c. 111, s. 197 (lead), shall cover claims for injury or damage resulting from exposure to dangerous levels of lead in dwelling units, as long as said injury or damage is not the result of gross or willful negligence.

_____(b) Any liability insurance policy which provides coverage to the owner of any premises not in compliance with MGL c. 111, s. 197 (lead) shall be endorsed to add coverage for injury or damage resulting from exposure to dangerous levels of lead in dwelling units occurring after the effective date of such endorsement when and if the owner of said premises obtains and maintains a letter of interim control or letter of full compliance.

_____(c) any new owner of any premises who has taken title as the result of a bona fide transaction and who has also complied with the requirements of subsection (d) of MGL c. 111, s. 199 (lead), shall be covered from the date such owner took title to the premises.

_____(d) Companies which elect to offer a liability insurance policy for any premise for which the owner has not obtained a letter of interim control or letter of full compliance shall also make available for that premise additional coverage for injury or damage resulting from exposure to dangerous levels of lead, provided that in the case of an owner occupied single family premise any such coverage for

CONFIDENTIAL

ISO_00004276

injury or damage resulting from exposure to dangerous levels of lead shall be provided as part of the policy and not offered as additional coverage excepting that such coverage will not apply to claims made by persons insured under the policy.

_____ When any liability insurance policy which an insurer has elected to offer provides coverage to the owner of any premises for which a letter of interim control or letter of full compliance is in effect, in accordance with MGL c. 111, § 197, such policy <u>shall</u> provide coverage for injury or damage which results from exposure to dangerous levels of lead in dwelling units, and which occurs during the policy period, as long as said injury or damage is not the result of gross or willful negligence. 211 CMR 131.04

_____ Coverage provided in accordance with this section [211 CMR 131.04] will be effective from the date of policy inception if the letter of compliance or letter of interim control is effective on or before such later date.

_____ Except as provided in 211 CMR 131.06, when any liability insurance policy which an insurer has elected to offer provides coverage to the owner of any premises for which there is no letter of interim control or length of full compliance in accordance with MGL c. 111,§ 197, the insurer shall endorse or otherwise modify the policy to provide coverage for injury or damage which results from exposure to dangerous levels of lead in dwelling units, and which occurs on or after the date the endorsement or other contractual modification is effective, if and when the owner of such premises obtains and maintains a letter of interim control or letter of compliance. 211 CMR 131.05

_____ Coverage provided to any dwelling unit in accordance with this section shall be effective on any dwelling unit on the date that any letter of interim control or letter of compliance applicable to such unit is effective.

_____ Notwithstanding the requirements and limitations of 211 CMR 131.05, a new owner of premises who has taken title as a result of a bona fide transaction and who has complied with the requirements of MGL c. 111, § 199(d) applicable to new owners, including coming into conformance with MGL c. 111, §§ 189A through 199B within 90 days after becoming the owner of the premises, shall be covered for injury or damage which results from exposure to dangerous levels of lead in dwelling units, and which occurs during the policy period of any policy of liability insurance an insurer has elected to provide to such owner. (211 CMR 131.06)

_____ Coverage shall apply from the date such owner took title to the premises, or from the effective date of the policy, if the owner did not obtain insurance until after the date of taking title.

CONFIDENTIAL

ISO_00004277

_____Lead poisoning liability coverage provided in accordance with 211 CMR131.04, 131.05 and 131.06 shall not be subject to special limits not applicable to other liability claims under such a policy. (211 CMR 131.07)

_____Lead poisoning liability coverage provided in accordance with 211 CMR 131.04, 131.05 and 131.06 shall be provided to any dwelling unit for which a letter of interim control or letter of compliance is in effect, regardless of whether such letters are in effect with respect to other units in the same building. Id.

_____When coverage is provided in accordance with the above referenced sections on any unit or portion of premises for which a letter of compliance or letter of interim control is in effect, such coverage will apply only to lead poisoning liability claims arising from the portion of the premises covered by such a letter. Id.

An insurer may require an insured to provide a copy of any letter of compliance or letter of interim control that is in effect with respect to any premises or portion of premises that qualifies for coverage.

Companies that offer a liability insurance policy for any premises for which the owner has not obtained a letter of interim control or letter of compliance may exclude coverage for injury or damage which results from exposure to dangerous levels of lead in dwelling units. However, certain buybacks must be offered to the insured.

_____Insurers shall offer such buyback coverage with separate limits of at least $100,000 per occurrence for personal lines insurance on residential premises and at least $300,000 per occurrence for commercial lines insurance on residential premises.

_____Notwithstanding the foregoing, if the general liability per occurrence limit of an insured's policy is less than $100,000 in the case of a personal lines policy, or less than $300,000 in the case of a commercial lines policy, then the insurer may provide lead poisoning liability coverage in accordance with 211 CMR 131.08 with a per occurrence limit of not less than the policy's general liability per occurrence limit.

_____The foregoing separate minimum per occurrence limits shall not increase any aggregate limit or policy limit of liability of any policy of insurance, which includes buyback coverage provided in accordance with 211 CMR 131.08.

_____The limits of a policy written in accordance with 211 CMR 131.08 apply regardless of the number of units covered by such insurance.

_____Buyback coverage elected within 30 days of receipt of an offer of such coverage shall be deemed effective on the inception date of the policy.

CONFIDENTIAL

ISO_00004278

_____Buyback coverage elected after 30 days of receipt of an offer shall be effective on the date of the request by the insured, unless otherwise agreed by the insured and the insurer.

_____Notwithstanding any of the other provisions of 211 CMR 131.00, any liability insurance policy covering owner-occupied single family premises shall provide coverage for injury or damage resulting from exposure to dangerous levels of lead in dwelling units, except that such a policy's lead poisoning liability coverage will not apply to claims made by persons who are insureds under that policy. 211 CMR 131.09

The exclusion and buyback requirements of 211 CMR 131.08 do not apply to owner-occupied single family premises.

## 211 CMR 131.10  Rates for Lead Liability

(1) Rates for insurance under 211 CMR 131.00 must be filed with the Commissioner, and are subject to the requirements of MGL c. 175A.

_(2) Loss costs for insurance be filed with the Commissioner and must satisfy the requirements of **SRB Bulletin 90-05** (Insurance Rating Organizations: Implementation of Loss Cost Filing Procedures) or any superseding bulletin, rule, or regulation regarding loss costs.

(3) Filings under 211 CMR 131.00 must include full justification for proposed rates, loss costs, or buyback coverage, and must be accompanied by all actuarial data used in their formulation, such as:

_(a) Historical exposure and claims data (both in number and in dollar amount, paid as well as incurred), including information relative to claims closed both with and without indemnity payments, for the previous 5 years.

_(b) Projected claims costs underlying the proposed loss costs, along with supporting documentation.

_(c) A narrative explanation of actuarial assumptions used in developing the loss costs.

_(4) Each rate or loss cost filing must be made at least 15 days prior to its proposed effective date. The Commissioner may delay the effective date for 30 additional days if she determines the delay is necessary to properly examine the filing or to request any supporting information or to permit a hearing on the filing.

## Disclosure Requirements for Lead Liability

_Insurers shall provide to insureds or prospective insureds  disclosure notices summarizing the coverage which they provide or make available for lead poisoning liability insurance with respect to all policies issued or renewed. 211 CMR 131.13

CONFIDENTIAL

ISO_00004279

The Disclosure notices shall indicate:

N/A _____ (a) whether the policy is intended to exclude coverage for injury or damage which results from exposure to dangerous levels of lead in dwelling units;

N/A _____ (b) that such exclusions may not be applied to premises to which a letter of compliance or letter of interim control is in effect;

N/A _____ (c) that buyback coverage is available for an additional charge in the event that the insurer intends to apply such an exclusion to premises for which no letter of compliance or letter of interim control is in effect;

N/A _____ (d) that buyback coverage elected within 30 days of receipt of an offer of such coverage will be deemed effective on the inception date of the policy, and that buyback coverage elected after 30 days of receipt of an offer will be effective on the date of the request by the insured, unless otherwise agreed by the insured and the insurer;

N/A _____ (e) that if the owner of residential premises brings his or her premises into compliance during the term of the policy as stated in 211CMR 131.05, coverage will be added for lead poisoning liability arising from exposure which occurs on and after the date the added coverage is effective;

N/A _____ (f) that a new owner brings his or her premises into compliance in the manner indicated in 211 CMR 131.06, the new owner shall be provided coverage back to the date he or she took title, or from the effective date of the policy, if the owner did not obtain insurance unit after the date of taking title;

N/A _____ (g) that, for an insured to qualify for coverage provided in accordance with 211 CMR 131.04, 131.05 and 131.06, an insurer may require an insured to provide a copy of any letter of compliance or interim control that is in effect with respect to any premises or portion of premises for which such insurance is sought;

N/A _____ (h) that lead poisoning liability coverage provided in accordance with 211 CMR 131.04, 131.05 and 131.06 shall be provided to any dwelling unit for which a letter of interim control or letter of compliance is in effect, regardless of whether such letters are in effect with respect to other units in the same building;

N/A _____ (i) that, when lead poisoning liability coverage is provided in accordance with 211 CMR 131.04, 131.05 and 131.06 on any unit or portion of premises for which a letter of compliance or letter of interim control is in effect, such coverage will apply only to lead poisoning liability claims arising from the portion of the premises covered by such a letter; and

N/A _____ (j) the limits of the lead poisoning liability coverage being provided or offered.

**Additional Disclosures**

CONFIDENTIAL

ISO_00004280

_____ At the same time that insurers provide to insureds the disclosure notice specified above, insurers shall also provide an additional disclosure notice describing the requirements of MGL c.111, sections 189A through 199B (the Massachusetts Lead Law).

Such notice is available from the Division of Insurance, which shall determine its form and content.

## VI. Liquor Liability Coverage
Chapter 175, section 112A:

_____ Liquor legal liability insurance shall provide insurance coverage against the legal liability of the insured.

_____ It shall also cover loss, damage or expense incident to a claim arising out of death or injury to any person as the result of negligence in the distribution, sale, or serving of alcohol by a licensee or an employee, or agent thereof, or any other person or entity to whom a policy of liquor legal liability insurance has been issued.

_____ No payment shall be made under the policy where the cause of action giving rise to a claim is the result of the actions of an intoxicated person which occurred off of, and away from, the premises of the licensee excluding, however, those causes of action arising out of the intoxicated individual's operation of a motor vehicle.

## VII. Additional Governing Provisions:

Is the proposed policy, endorsement, or rule for stand-alone General Liability?

If no, please proceed to the next section.
If yes, please review and complete the following:

## Claims Made Policies for General Liability:

_____ The Division of Insurance does not permit claims made policies for "stand alone" comprehensive general liability coverage. This type of coverage is only permitted when accompanying medical malpractice insurance as long as the medical malpractice insurance is not, in the Division's opinion, merely incidental.

_____ We hereby certify that our proposed General Liability form, endorsement, or rule do not contain any "claims made" provisions.

## Defense Within Limits for General Liability:

_____ The Division of Insurance does not permit "defense within limits" provisions on comprehensive general liability products.

CONFIDENTIAL

ISO_00004281

_____ We hereby certify that our proposed General Liability form, endorsement, or rule does not contain any "defense within limits" provisions.

**Mold Coverage (All Lines with the exceptions noted below):**

_____ Insurers who provide commercial or personal lines policies are required to provide minimum limits for mold. For commercial lines products, insurers are required to provide minimum of $15,000 for property and liability damage. Insurers providing personal lines insurance coverage should provide a $10,000 base coverage and offer extended property coverage options of $25,000 and $50,000. Insurers must provide $50,000 liability coverage and offer extended liability coverage of up to $100,000 at the option of the insured. However, these limit requirements do not apply to Commercial General Liability, Professional Liability, or Excess/Umbrella policies.

_____ The definition of mold or fungus should include mold, fungus, mildew, and any mycotoxins, spores, scents or byproducts produced by the mold, fungus or mildew. The definition should exclude any fungi that are included in a good or product intended to be consumed.

Is the proposed policy, endorsement, or rule for General Liability, Professional Liability, or Excess Umbrella?

If yes, please proceed to the next section.
If no, please review and complete the following:

_____We hereby certify that our existing, revised, or proposed policy for **commercial lines** provides minimum coverage for mold with a minimum of $15,000.

_____ We hereby certify that our existing, revised, or proposed policy for **personal lines** policies provides a $10,000 base coverage and offers extended property coverage options of $25,000 and $50,000. We also certify that our policy provides $50,000 liability coverage and offers extended liability coverage of up to $100,000 at the option of the insured.

**Sexual Abuse and Molestation (All Lines):**

_____ It is current policy of the Division of Insurance to permit the use of such exclusions with the stipulation that coverage be provided for defense costs at either 20% and 100% at the option of the insured. Companies may rate as they deem necessary, but must file the actuarial documentation and justification for their proposed rates.

_____ We hereby certify that our policy provides coverage at 20% and 100% at the option of the insured.
        _____ We hereby certify that corresponding rates for this coverage have been separately filed with the required actuarial documentation and are in accordance

CONFIDENTIAL

ISO_00004282

with the Massachusetts statutes, regulations, and bulletins governing casualty rate filings.

## Unfair and Deceptive Trade Practices (All Lines):

N/ Any filing not in compliance with the above referenced requirements may be deemed to be in violation of the provisions of Chapter 176D of the Massachusetts General Laws. We hereby certify that the provisions set forth in this filing do not entail any intentional unfair and deceptive trade practices. Furthermore, we understand that we are subject to the penalties associated with practices that are in clear violation of this statute.

## Dog/Animal Bite Exclusions:

N/A The Division does not allow companies to use blanket dog bite exclusions in a homeowners', personal liability or multi peril policies. Dog bite exclusions are allowed only as to certain breeds and/or dogs with a prior history of biting. The company should specify in the endorsement the breeds they deem aggressive. If a company is seeking to exclude a particular dog, not within an aggressive breed, it must specify and address, in the endorsement, the facts that support their assessment. All such endorsements are subject to review and approval by the Division.

CONFIDENTIAL                                                                 ISO_00004283

MASSACHUSETTS
COMMERCIAL LINES
FORMS FILING CL-2006-OVBEF (AMENDMENT NO. 1)

# Amendatory Endorsements - Exclusion Of Loss Due To Virus Or Bacteria Filing Amended

## Applicable Lines of Business

This filing applies to the following:

♦ Businessowners

♦ Capital Assets

♦ Market Segments

## About This Filing

This amendment filing introduces Massachusetts specific versions of Exclusion Of Loss Due To Virus Or Bacteria, for the Businessowners, Capital Assets and Market Segments Programs, to complement Massachusetts specific mold provisions.

### New Forms

We are introducing:

♦ **BP 06 06 01 07** - Massachusetts - Exclusion Of Loss Due To Virus Or Bacteria

♦ **OP 05 11 01 07** - Massachusetts - Exclusion Of Loss Due To Virus Or Bacteria

♦ **MS HM 56 01 07** - Massachusetts - Exclusion Of Loss Due To Virus Or Bacteria

### Withdrawn Forms

We are withdrawing:

♦ **BP 06 01 01 07** - Exclusion Of Loss Due To Virus Or Bacteria

♦ **OP 05 06 01 07** - Exclusion Of Loss Due To Virus Or Bacteria

♦ **MS HM 08 01 07** - Exclusion Of Loss Due To Virus Or Bacteria

© ISO Properties, Inc., 2006

# Related Filing(s)

Rules Filing CL-2006-OVBER

# Background

Endorsements **BP 06 01, OP 05 06** and **MS HM 08** - Exclusion Of Loss Due To Virus Or Bacteria, submitted in filing CL-2006-OVBEF, make reference to Fungi (Fungus), Wet Rot, Dry Rot and Bacteria provisions in the respective policies.

In Massachusetts, we have introduced Massachusetts Fungi (Fungus), Wet Rot, Dry Rot, and Bacteria Exclusions And Limitations endorsements **BP 06 98** and **OP 05 05** and **CP 10 64** in response to the Division of Insurance Bulletin 2006-02.

# Explanation of Changes

Pursuant to the recent implementation of Endorsements **BP 06 98, OP 05 05** and **CP 10 64** we are introducing Massachusetts - Exclusion Of Loss Due To Virus Or Bacteria endorsements **BP 06 06, OP 05 11** and **MS HM 56,** which explicitly reference the Massachusetts Fungi (Fungus), Wet Rot, Dry Rot and Bacteria Exclusions And Limitations endorsements.

# Copyright Explanation

The material distributed by Insurance Services Office, Inc. is copyrighted. All rights reserved. Possession of these pages does not confer the right to print, reprint, publish, copy, sell, file or use same in any manner without the written permission of the copyright owner.

# Important Note

Insurance Services Office, Inc. (ISO) makes available advisory services to property/casualty insurers. ISO has no adherence requirements. ISO policy forms and explanatory materials are intended solely for the information and use of ISO's participating insurers and their representatives, and insurance regulators. Neither ISO's general explanations of policy intent nor opinions expressed by ISO's staff necessarily reflect every insurer's view or control any insurer's determination of coverage for a specific claim. ISO does not intercede in coverage disputes arising from insurance policies. If there is any conflict between a form and any other part of the attached material, the provisions of the form apply.

© ISO Properties, Inc., 2006

CAPITAL ASSETS PROGRAM (OUTPUT POLICY)
OP 05 11 01 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MASSACHUSETTS – EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART·

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under the form and endorsements that comprise this Coverage Part, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in Massachusetts – Limited Fungi Or Bacteria Coverage Endorsement **OP 05 05** are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungi", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part.

N

E

W

© ISO Properties, Inc., 2006            □

CONFIDENTIAL                                                                            ISO_00004286

BUSINESSOWNERS
BP 06 06 01 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MASSACHUSETTS – EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under Section **I** – Property in all forms and endorsements that comprise this Businessowners Policy, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph **B.** does not apply to the following:

**1.** Loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Businessowners Policy; or

**2.** Coverage otherwise provided under Food Contamination Endorsement **BP 04 31** (if that endorsement is attached to this Businessowners Policy); or

**3.** Coverage otherwise provided under the Food Contamination Additional Coverage in Restaurants Endorsement **BP 07 78** (if that endorsement is attached to this Businessowners Policy).

**D.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**E.** The following provisions in this Businessowners Policy (including those in the endorsement entitled Massachusetts – Fungi, Wet Rot, Dry Rot And Bacteria Exclusion And Limitations Endorsement **BP 06 98**) are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungi", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**F.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Businessowners Policy.

N E W

© ISO Properties, Inc., 2006      Page 1 of 1

CONFIDENTIAL                                   ISO_00004287

MARKET SEGMENTS
MS HM 56 01 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MASSACHUSETTS – EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph **B.** does not apply to the following:

**1.** Loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part; or

**2.** Coverage otherwise provided under the Food Contamination Additional Coverage in Hotels, Motels And Inns Endorsement **MS HM 01.**

**D.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**E.** The following provisions in this Coverage Part (including those in the endorsement entitled Massachusetts – Fungus, Wet Rot, Dry Rot And Bacteria Exclusion And Limitations Endorsement **CP 10 64** applicable to the Causes Of Loss – Special Form) are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**F.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part.

N

E

W

CONFIDENTIAL

ISO_00004288

CAPITAL ASSETS PROGRAM (OUTPUT POLICY)
OP 05 06 01 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under the form and endorsements that comprise this Coverage Part, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in Limited Fungi Or Bacteria Coverage Endorsement **OP 05 01** are hereby amended to remove reference to bacteria:

　**1.** Exclusion of "Fungi", Wet Rot, Dry Rot And Bacteria; and

　**2.** Additional Coverage – Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part.

WITHDRAWN

OP 05 06 01 07　　　　　　　　　© ISO Properties, Inc., 2006　　　　　　　　　**Page 1 of 1**　□

CONFIDENTIAL　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　ISO_00004289

**BUSINESSOWNERS**
**BP 06 01 01 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under **Section I – Property** in all forms and endorsements that comprise this Businessowners Policy, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph **B.** does not apply to the following:

  **1.** Loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Businessowners Policy; or

  **2.** Coverage otherwise provided under Food Contamination Endorsement **BP 04 31** (if that endorsement is attached to this Businessowners Policy); or

  **3.** Coverage otherwise provided under the Food Contamination Additional Coverage in Restaurants Endorsement **BP 07 78** (if that endorsement is attached to this Businessowners Policy).

**D.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**E.** The following provisions in this Businessowners Policy are hereby amended to remove reference to bacteria:

  **1.** Exclusion of "Fungi", Wet Rot, Dry Rot And Bacteria; and

  **2.** Additional Coverage – Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**F.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Businessowners Policy.

WITHDRAWN

CONFIDENTIAL                    ISO_00004290

MARKET SEGMENTS
MS HM 08 01 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SEXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph **B.** does not apply to the following:

**1.** Loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part; or

**2.** Coverage otherwise provided under the Food Contamination Additional Coverage in Hotels, Motels And Inns Endorsement **MS HM 01.**

**D.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**E.** The following provisions in this Coverage Part are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**F.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part.

W
I
T
H
D
R
A
W
N

© ISO Properties, Inc., 2006

CONFIDENTIAL
ISO_00004291

**Jaffee, Donna**

| | |
|---|---|
| **From:** | Phillips, Norma |
| **Sent:** | Tuesday, December 19, 2006 1:24 PM |
| **To:** | Jaffee, Donna; Lemley, Sheila; Dougherty, Shawn E.; Beiderman, Ronald; Mauro, William; King, Joy; Clarke, Stephen C.; Newman, Loretta F.; Medina, Johanna; Casillo, Anne; Pergola, John J. |
| **Subject:** | Commonwealth of Massachusetts: CL 2006 OVBEF and (Amendment No. 1); CL 2006 OVBER and (Amendment No. 1) |
| **Attachments:** | Conmonwealth of Massachusetts.tif |

The captioned filings were acknowledged on December 18, 2006 with an effective date of May 1, 2007. They are O.K. TO PRINT.


Norma Phillips (Speed 342)
ISO/QUINCY
Tel.: (617) 689-1531

CONFIDENTIAL

Please stamp this copy of letter with date of
receipt in your office and return to the Insurance
Services Office as an acknowledgement of receipt
of this letter.

**ISO**    400 CROWN COLONY DRIVE  SUITE 201  QUINCY, MA 02169  (617) 770-3555  FAX: (201) 748-1984

MASSACHUSETTS
DIVISION OF INSURANCE

DEC 1 8 2006
Effective 51/27
PLACED ON FILE
STATE RATING BUREAU

OK TO PRINT
12/18/06

ANNE M. CASILLO, CPCU, ARP, CPIW
REGIONAL MANAGER
GOVERNMENT RELATIONS

October 2, 2006

MASSACHUSETTS DIVISION OF INSURANCE
OCT 3 - 2006
RECEIVED
STATE RATING BUREAU

Sheri Cullen
Policy Form Reviewer
Property and Casualty Policy Review Section
Commonwealth of Massachusetts
One South Station
Boston, MA 02110-2208

Re:    Code #99999998                   Code #99999998
        CL 2006 OVBEF (Amendment No. 1)     CL 2006 OVBER (Amendment No. 1)
        Amendatory Endorsement -- Exclusion   Rules on Amendatory Endorsement-
        Due to Loss Virus or Bacteria         Exclusion Loss Due To Virus or Bacteria
        <u>Commonwealth of Massachusetts</u>     Due to loss Virus or Bacteria
        SRB File # 101694               <u>Commonwealth of Massachusetts</u>
                                          SRB File # 101693

Dear Ms. Cullen,

We wish to respond to your email of August 17, 2006 on the above filings as follows:

1.  Your question appears to focus on whether or not there is an actual exposure
    other than mold, that is, can property damage be caused by microorganisms
    other than mold. Mold is visible, it changes the physical appearance of property
    (and perhaps sometimes its usefulness), and that is typically the basis for
    characterizing mold infestation as property damage. Various other known
    substances (such as rotovirus) are not mold, do not become visible, do not alter
    the physical appearance of property and typically cause no property damage.
    But their mere presence may be alleged to be property damage (for example,
    alleged on of property). Our objective is to convey that, even if there were
    property damage (or alleged property damage) by disease-causing
    microorganisms, there is no coverage. We would not anticipate remediation of
    property to be the primary exposure here (although it could be, depending on the
    specific microorganism involved); rather, an allegation of physical damage could
    be used in an effort to trigger other coverage, such as business income
    coverage.

2.  The definition of "pollutants" is not being replaced. Paragraph C of OP 05 06
    and Paragraph D of BP 06 01 and MS HM 08 have the purpose of conveying
    that a loss caused by a disease-causing microorganism is to be analyzed in
    accordance with the provisions of the virus/bacteria exclusion in the respective
    endorsements, with no need to apply the pollution exclusion.

CONFIDENTIAL                                   ISO_00004293

Sheri Cullen
Policy Form Reviewer
Property and Casualty Policy Review Section
October 2, 2006
Page 2

In addition to responding to your questions, we are taking this opportunity to amend
Filing CL-2006-OVBEF in Massachusetts. Pursuant to recent implementation of
state-specific "mold" provisions in this state, we are amending the proposed
virus/bacteria endorsements to make reference points in the endorsements more
explicit. This amendment simply adds a specific reference to the relevant
endorsements, retaining the intended treatment of the mold and virus/bacteria
provisions. We are hereby also amending the companion rules in Filing CL-2006-
OVBER to refer to the newly introduced endorsements in amendment filing CL-
2006-OVBEF.

Please advise if you need any additional information.

Sincerely,

*Anne M. Casillo*

Anne M. Casillo, CPCU, ARP, CPIW
Regional Manager
Government Relations
Tel.# (617) 689-1539
E-Mail: acasillo@iso.com

AMC:np
Encs.

CONFIDENTIAL                                                                          ISO_00004294

**Jaffee, Donna**

*closed 12-13-06*

| | |
|---|---|
| **From:** | Beiderman, Ronald |
| **Sent:** | Friday, January 19, 2007 1:48 PM |
| **To:** | Jaffee, Donna |
| **Subject:** | FW: Commonwealth of Massachusetts: CL 2006 OVBEF and (Amendment No. 1); CL 2006 OVBER and (Amendment No. 1) |
| **Attachments:** | Conmonwealth of Massachusetts.tif |

Donna, this filing was listed on the latest Correspondence Tracking Report of Open Records...it was approved. Anne Casillo sent an email on 12/13 that the MA Insurance Department changed their minds and approved the filing so there was no need to respond to their inquiry.

**From:** Phillips, Norma
**Sent:** Tuesday, December 19, 2006 1:24 PM
**To:** Jaffee, Donna; Lemley, Sheila; Dougherty, Shawn E.; Beiderman, Ronald; Mauro, William; King, Joy; Clarke, Stephen C.; Newman, Loretta F.; Medina, Johanna; Casillo, Anne; Pergola, John J.
**Subject:** Commonwealth of Massachusetts: CL 2006 OVBEF and (Amendment No. 1); CL 2006 OVBER and (Amendment No. 1)

The captioned filings were acknowledged on December 18, 2006 with an effective date of May 1, 2007. They are O.K. TO PRINT.

Norma Phillips (Speed 342)
ISO/QUINCY
Tel.: (617) 689-1531

Please stamp this copy of letter with date of
receipt in your office and return to the Insurance
Services Office as an acknowledgement of receipt
of this letter,

**ISO** 400 CROWN COLONY DRIVE  SUITE 201   QUINCY, MA 02169   (617) 770-3566   FAX: (201) 748-1934

**O.K. TO PRINT**
12/18/06

MASSACHUSETTS
DIVISION OF INSURANCE
DEC 1 8 2006
Effect/2 51/07
PLACED ON FILE
STATE RATING BUREAU

ANNE M. CASILLO, CPCU, ARP, CPIW
REGIONAL MANAGER
GOVERNMENT RELATIONS

October 2, 2006

MASSACHUSETTS DIVISION OF INSURANCE
OCT 3 - 2006
RECEIVED
STATE RATING BUREAU

Sheri Cullen
Policy Form Reviewer
Property and Casualty Policy Review Section
Commonwealth of Massachusetts
One South Station
Boston, MA 02110-2208

Re:  Code #99999998                          Code #99999998
     CL 2006 OVBEF (Amendment No. 1)         CL 2006 OVBER (Amendment No. 1)
     Amendatory Endorsement -- Exclusion     Rules on Amendatory Endorsement-
     Due to Loss Virus or Bacteria           Exclusion Loss Due To Virus or Bacteria
     **Commonwealth of Massachusetts**        Due to loss Virus or Bacteria
     SRB File # 101694                       **Commonwealth of Massachusetts**
                                             SRB File # 101693

Dear Ms. Cullen,

We wish to respond to your email of August 17, 2006 on the above filings as follows:

1.  Your question appears to focus on whether or not there is an actual exposure
    other than mold, that is, can property damage be caused by microorganisms
    other than mold.  Mold is visible, it changes the physical appearance of property
    (and perhaps sometimes its usefulness), and that is typically the basis for
    characterizing mold infestation as property damage.  Various other known
    substances (such as rotovirus) are not mold, do not become visible, do not alter
    the physical appearance of property and typically cause no property damage.
    But their mere presence may be alleged to be property damage (for example,
    alleged on of property).  Our objective is to convey that, even if there were
    property damage (or alleged property damage) by disease-causing
    microorganisms, there is no coverage.  We would not anticipate remediation of
    property to be the primary exposure here (although it could be, depending on the
    specific microorganism involved); rather, an allegation of physical damage could
    be used in an effort to trigger other coverage, such as business income
    coverage.

2.  The definition of "pollutants" is not being replaced.  Paragraph C of OP 05 06
    and Paragraph D of BP 06 01 and MS HM 08 have the purpose of conveying
    that a loss caused by a disease-causing microorganism is to be analyzed in
    accordance with the provisions of the virus/bacteria exclusion in the respective
    endorsements, with no need to apply the pollution exclusion.

CONFIDENTIAL                                              ISO_00004296

Sheri Cullen
Policy Form Reviewer
Property and Casualty Policy Review Section
October 2, 2006
Page 2

In addition to responding to your questions, we are taking this opportunity to amend
Filing CL-2006-OVBEF in Massachusetts. Pursuant to recent implementation of
state-specific "mold" provisions in this state, we are amending the proposed
virus/bacteria endorsements to make reference points in the endorsements more
explicit. This amendment simply adds a specific reference to the relevant
endorsements, retaining the intended treatment of the mold and virus/bacteria
provisions. We are hereby also amending the companion rules in Filing CL-2006-
OVBER to refer to the newly introduced endorsements in amendment filing CL-
2006-OVBEF.

Please advise if you need any additional information.

Sincerely,

*Anne M. Casillo*

Anne M. Casillo, CPCU, ARP, CPIW
Regional Manager
Government Relations
Tel.# (617) 689-1539
E-Mail: acasillo@iso.com

AMC:np
Encs.

CONFIDENTIAL                                                                    ISO_00004297

EXHIBIT F

Mail this filing to:

**Trenton Office**

Insurance Services Office, Inc.

# FILING TRANSMITTAL FORM

Companion Filing

CF-2006-OVBEF

| State | Filing Designation | | | Type of Filing | |
|---|---|---|---|---|---|
| NY | Line | Year | Description | L | |
| | CF | 2006 | OVBER | | |

**Affected Lines of Insurance (For GRD Use Only)**

— — — — — — —

— — — — — — —

**FILE COPY**

**Filing Caption**

This filing addresses use of an
endorsement that excludes loss
due to disease-causing agents
such as viruses and bacteria.

**Proposed**

| Eff. Date | / | Dist. Date |
|---|---|---|
| 1    1    2007 | / | |
| Mo.  Day  Yr. | / | Mo.  Day  Yr. |

**OKTP Deadline**

| 9    20    2006 |
|---|
| Mo.    Day    Yr. |

**Special Filing Instructions (For GRD Use Only)**

**Filing Background Information**

Replacement
Filing?          Y _ N X

Is filing in response to an
insurance department letter? Y _ N X

**Last Approved Filing Information (Loss Cost Filings Only)**

| Effective Date | Dist Date | If Loss Cost Change was Indeterminable, Enter "I" | Loss Cost Change |
|---|---|---|---|
| Mo.  Day  Yr. | | | % |

**Filing Processing Information  (For GRD Use Only)**

| Date Received | Date Sent to Field | Filing Mechanics Under Law |
|---|---|---|
| 6  22 06 | 6  22 06 | P |
| Mo.    Day    Yr. | Mo.    Day    Yr. | |

EDITION 01/01/06
ISOTF.DOC

CONFIDENTIAL

ISO_00000355

Insurance Services Office, Inc.

**FILING TRANSMITTAL FORM (continued)**

**Send Pertinent Filing Correspondence to:**

| | |
|---|---|
| Line Division: | L. Newman |
| Actuarial Division: | AGSD Division: |
| GRD Division: | Donna Jaffee   (19-6) |

**Transmittal Form Prepared By:**

Name:      Larry Podoshen

Line:                                 6  22  2006          2597

Actuarial:                         Mo.  Day  Yr.           Ext.

Management Approval Given By:

**Supplementary Information for Loss Cost Filings Only**

**Loss Cost Level Change Information**

| If Loss Cost Change Indeterminable, Enter "I" | Statewide Aggregate Loss Cost Volume (000's Omitted) |
|---|---|
| | |

**ALERT or PANEL DATE**

| | | |
|---|---|---|
| Mo. | Day | Yr. |

**Loss Cost Level Changes By Coverage***

| Coverage Code | Indicated Loss Cost Level Change | Filed Loss Cost Level Change |
|---|---|---|
| Total All Coverages | % | % |
| | % | % |
| | % | % |
| | % | % |
| | % | % |
| | % | % |
| | % | % |
| | % | % |
| | % | % |
| | % | % |
| | % | % |
| | % | % |
| | % | % |

\*   (If Individual Coverages Are Not Applicable, Complete "Total All Coverages" Line Only)

EDITION 01/01/06
ISOTF.DOC

CONFIDENTIAL

| FOR NEW YORK STATE INSURANCE DEPARTMENT USE ONLY |
|---|

| File No.: R | Type: | Submitted | Received |
|---|---|---|---|
| Assigned | Examiner: | Unit | |

| Company Codes: | | | | | | |
|---|---|---|---|---|---|---|
| PACIFIC LOB codes: | | | | | | |

| RSO Name | | RSO Ref No. |
|---|---|---|
| Comments | | |

## A. INSURER INFORMATION

Insurer's NAIC Code [ ][ ][ ] – [ ][ ][ ][ ]

**Insurance Services Office, Inc.**          **CF-2006-OVBER**

Name of Insurer          Insurer's File No.

## B. FILING INFORMATION

(1)  Type of filing          (a)  RSO rates, prospective loss costs and/or rules          [X]

(check all that apply):      (b)  Independent rates and/or rules          [ ]

(c)  Adoption of RSO rates and/or rules (must complete Part D)          [ ]

(d)  Adoption of RSO Loss Cost (must complete Part E and, if applicable, Part F)          [ ]

(e)  Other (specify) _____          [ ]

(2)  Indicate kind or type of insurance affected by this filing:     Commercial Fire and Allied Lines

(3)  Is this filing for a new program or does it otherwise include rates
for which your company does not presently have rates in effect?          Yes [ ]    No [X]

(4)  Proposed Date(s) of implementation     New Business     1/ 1/ 07     Renewals     1/ 1/ 07

(5)  Insurer's Annual Written Premium (AWP) for the market
affected by the proposed revision:          $ [ ][ ][ ] , [ ][ ][ ] , [ ][ ] 0 .00

(6)  Overall Statewide effect of this revision on the AWP
indicated in (5) above:          (indicate "+" or "-")  [ ][ ]  [ ][ ] . [ ] 0 %

(7)  Has investment income been considered in this filing?
(Please attach investment income exhibit)          Yes [ ]    No [X]

(8)  What is the largest and smallest cumulative effect of all rate, class, territory, increased limits factor, package modifier and any other
rating factor changes on any individual class of insureds affected by this filing:
(indicate "+" or "-")  Largest: [ ][ ][ ] . [ ] 0 %   Smallest: [ ][ ][ ] . [ ] 0 %

(9)  List the last four (4) rate revisions, with respective effective dates, including every revision filed during the preceding 12 months for
the class(es) of business affected by this rate revision, indicating the overall rate level effect of each, and whether each such revision
was on a "file and use" or "prior approval" basis:

| Effective Date(s) | Rate Effect (indicate "+" or "-") | | | | | |
|---|---|---|---|---|---|---|
| - / / | [ ][ ][ ] . [ ] 0 % | File and Use [ ] | Prior Approval [ ] |
| - / / | [ ][ ][ ] . [ ] 0 % | File and Use [ ] | Prior Approval [ ] |
| - / / | [ ][ ][ ] . [ ] 0 % | File and Use [ ] | Prior Approval [ ] |
| - / / | [ ][ ][ ] . [ ] 0 % | File and Use [ ] | Prior Approval [ ] |

New York State Insurance Department          Form 129-B (Ed. 1/93)

CONFIDENTIAL          ISO_00000357

## C. FLEX-RATING INFORMATION

(1) Does any portion of this filing affect a market subject to Flex-rating?    Yes ☐    No ☒

**If the answer to (1) is "No," skip remaining questions 2 through 6 and go on to the next applicable Part.**

(2) What percentage flex-band applies to the market affect by this filing?    +/- _____ %
                                                                              +/- _____ %

(3) Does this revision result in rate level changes that would exceed the flex-band applicable to this market?    Yes ☐    No ☐

(4) Does this revision include any changes in class, territory, increased limits factors, package modifier or similar rating factor which affect the rates of any individual insured by more than +/-20% in addition to the overall statewide revision?    Yes ☐    No ☐

(5) Has this insurer made three (3) or more rate filings affecting this market in the preceding twelve (12) months?    Yes ☐    No ☐

## IMPORTANT

### IF ANY OF THE RESPONSES TO QUESTIONS 3 THROUGH 5 ABOVE IS "YES", THE FILING IS SUBJECT TO THE SUPERINTENDENT'S PRIOR APPROVAL.

(6) On an attached schedule, please set forth (by class and territory) the rate level effect of this filing, indicating any applicable flex-band(s) and Pivot Rate Level(s) for this kind of business.

## AFFIRMATION

I, _____ Kevin B. Thompson _____ , a duly authorized officer of

_____ Insurance Services Office, Inc. _____ , do hereby affirm that the foregoing information, including the following (check all that apply):

☐    PART D - ADOPTION OF RATES AND/OR RULES OF A RATE SERVICE ORGANIZATION

☐    PART E - ADOPTION OF PROSPECTIVE LOSS COSTS OF A RATE SERVICE ORGANIZATION

☐    PART F - CALCULATION OF EXPECTED LOSS RATIO

☐    INVESTMENT INCOME EXHIBIT

and all other attached exhibits, schedules and supporting information, is true to the best of my knowledge and belief.

| | |
|---|---|
| _Signature of Authorized Officer_ | June 20, 2006 |
| | Date |
| Kevin B. Thompson | 545 Washington Boulevard |
| Name of Authorized Officer (please print) | Address of Insurer |
| Senior Vice President | Jersey City      N.J.      07310-1686 |
| Title | City      State      Zip Code |
| ( 201 )  469 - 2587 | (201)    469-4015 |
| Direct Telephone Number | Fax Number |

New York State Insurance Department

Form 129-B (Ed. 1/93)

CONFIDENTIAL

ISO_00000358

# D. ADOPTION OF RATES AND/OR RULES OF A RATE SERVICE ORGANIZATION

### [Use Part E for adoption of Prospective Loss Costs]

(Complete this Part only if the filing includes the adoption of rates and/or rules filed with this Department
by a Rate Service Organization of which the insurer is a member or subscriber.)

_____          _____

Name of Rate Service Organization              Reference No. of Filing being Adopted

_____

Line, Sub-line, Coverage, Territory, Class or combination, etc., to which this Part applies

(1)  Rate modification:

Check one:     The above filing is hereby adopted without modification          ☐

The above filing is hereby adopted subject to the following modification      ☐
(indicate nature and percent modification and attach all supporting data
and justification for the modification):(indicate "+" or "-")      ☐   ☐☐☐ . ☐☐ %

_____

_____

_____

(2)  Is the modification indicated in (1) above the same as the modification
currently being used by this insurer for this market?          Yes  ☐     No  ☐

(3)  If the answer to (2) above is "No", what is the rate effect
of the change in modification only?          (indicate "+" or "-")  ☐   ☐☐☐ . ☐☐ %

New York State Insurance Department                                    Form 129-B (Ed. 1/93)

CONFIDENTIAL                                                       ISO_00000359

# E. ADOPTION OF PROSPECTIVE LOSS COSTS OF A RATE SERVICE ORGANIZATION

(Complete this Part only if the filing includes the adoption of prospective loss costs filed with this Department
by a Rate Service Organization of which the insurer is a member or subscriber.)

_____    _____

Name of Rate Service Organization        Reference No. of Filing being Adopted

_____

Line, Sub-line, Coverage, Territory, Class or combination, etc., to which this Part applies

(1)  Loss Cost Modification:

Check one:    The above filing is hereby adopted without modification            ☐

The above filing is hereby adopted subject to the following modification          ☐
(indicate nature and percent modification and attach all supporting data
and justification for the modification):(indicate "+" or "-")    ☐  ☐☐☐ . ☐☐ %

_____

_____

(2)  Is the modification indicated in (1) above the same as the modification
currently being used by this insurer for this market?          Yes  ☐      No  ☐

(3)  If the answer to (2) above is "No", what is the rate effect
of the change in modification only?          (indicate "+" or "-")    ☐  ☐☐☐ . ☐☐ %

(4)  Express the Loss Cost Modification, indicated in (1) above,
as a factor:          (see instructions)          ☐ . ☐☐☐ %

(5)  Insurer Express Loss Cost Ratio (ELR), expressed as a factor:    [From Part F, Line (10)]    0 . ☐☐☐

(6)  Insurer Formula Loss Cost Multiplier: [(4) divided by (5)]          ☐ . ☐☐☐

(7)  Insurer Selected Loss Cost Multiplier:
[Explain any differences between (6) and (7)]:          ☐ . ☐☐☐

_____

_____

(8)  Is the ELR indicated in (5) above the same as the ELR currently
being used by this insurer for the Line, Sub-line, etc., indicated above?    Yes  ☐      No  ☐

(9)  If the answer to (8) above is "No", what is the rate effect
of the change in ELR only?          (indicate "+" or "-")    ☐  ☐☐☐ . ☐☐ %

(10) Has Part F, Calculation of Expected Loss Ratio, containing the supporting data for the ELR indicated
in (5) above, been previously filed with this Department within the past 3 years?    Yes  ☐      No  ☐

IF THE ANSWER TO EITHER QUESTION (8) OR (10) IS "NO," PART F,
CALCULATION OF EXPECTED LOSS RATIO, MUST BE COMPLETED

(11) Will any expense constant be used in conjunction with these
prospective loss costs to develop final rates?          Yes  ☐      No  ☐

If "Yes", indicate the expense constant(s) and attach all supporting information    _____

New York State Insurance Department                                    Form 129-B (Ed. 1/93)

CONFIDENTIAL

# F. CALCULATION OF EXPECTED LOSS RATIO

(Complete this Part if the calculation of the Expected Loss Ratio that the insurer intends to use with its Prospective Loss Costs to determine final rates is new or has not been filed with this Department with the past three years. Ratios for this Part are to be derived, wherever possible, directly from the insurer's Insurance Expense Exhibits, as filed with this Department)

_____

Line, Sub-line, Coverage, Territory, Class or combination, etc., to which this Part applies

Indicate the three most recent years' expense ratios (not the actual dollars spent),
for DIRECT BUSINESS for the applicable line of insurance:

|  | 19 ___ | 19 ___ | 19 ___ | Average | Selected |
|---|---|---|---|---|---|
| (1) Commissions and Brokerage: | ___ | ___ | ___ | ___ | ___ |
| (2) Other Acquisition Expenses | ___ | ___ | ___ | ___ | ___ |
| (3) General Expenses | ___ | ___ | ___ | ___ | ___ |
| (4) Taxes, licenses and fees | ___ | ___ | ___ | ___ | ___ |
| (5) Other (attach explanation) | ___ | ___ | ___ | ___ | ___ |
| (6) Profit and contingencies | | | | | ___ |
| (7) Total Selected lines (1) through (6) | | | | | ___ |
| (8) Investment income (attach investment income exhibit or explanation of how investment income is reflected) | | | | | ___ |
| (9) Line (7) minus line (8) | | | | | ___ |

(10) Expected Loss Ratio [1.000 minus line (9)]  (use in Part E, line 5)    0 . [ ][ ][ ]

(11) If any of the selected expense provisions deviate from the insurer's own averages, as shown above, identify each such deviation, indicate the specific reasons therefor, and attach all schedules and other information supporting the deviation: _____

_____
_____
_____
_____
_____

CONFIDENTIAL                                           ISO_00000361

COMMERCIAL FIRE AND ALLIED LINES
RULES FILING CF-2006-OVBER **(NEW YORK)**

# Rule On Amendatory Endorsement - Exclusion Of Loss Due To Virus Or Bacteria

## About This Filing

This filing addresses use of an endorsement that excludes loss due to disease-causing agents such as viruses and bacteria.

### New Rule

We are introducing:

- **Additional Rule - Exclusion Of Loss Due To Virus Or Bacteria**

This rule, which is being filed on a multistate basis, will appear in the state exception pages in Commercial Lines Manual Division Five - Fire And Allied Lines, until the multistate general rules are updated in a future filing.

## Related Filing(s)

- Forms Filing CF-2006-OVBEF

## Background

In the related Forms Filing, we have submitted endorsement CP 01 75, containing an exclusion relating to a type of contamination, namely, losses caused by disease-causing viruses or bacteria or other disease-causing microorganisms. The exclusion makes it explicit that there is no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. In accordance with the terms of endorsement CP 01 75, the exclusion applies to property damage, time element and all other coverages.

## Changes

The rule presented in this Rules Filing provides for attachment of Endorsement CP 01 75 to all policies.

© ISO Properties, Inc., 2006

CONFIDENTIAL

# Copyright Explanation

The material distributed by Insurance Services Office, Inc. is copyrighted. All rights reserved. Possession of these pages does not confer the right to print, reprint, publish, copy, sell, file or use same in any manner without the written permission of the copyright owner.

# Important Note

Insurance Services Office, Inc. (ISO) makes available advisory services to property/casualty insurers. ISO has no adherence requirements. ISO rules and explanatory materials are intended solely for the information and use of ISO's participating insurers and their representatives, and insurance regulators. Neither ISO's general explanations of rules intent nor opinions expressed by members of ISO's staff necessarily reflect every insurer's view or control any insurer's application of manual rules.

© ISO Properties, Inc., 2006

| Additional Rule #  -  Exclusion Of Loss Due To Virus Or Bacteria |
|---|

Attach Exclusion Of Loss Due To Virus Or Bacteria Endorsement **CP 01 75** to all policies.

**#** For each state, the Additional Rule number will be the next number in sequence, assigned at the time of publication based on the number of then-current Additional Rules.

© ISO Properties, Inc., 2006



QUAKERBRIDGE EXECUTIVE CENTER   101 GROVERS MILL ROAD   TRENTON, N.J. 08648   (609) 799-1800   FAX (609) 799-3726

June 29, 2006

The Honorable Howard D. Mills, III
Superintendent of Insurance
State of New York Insurance Department
Property Bureau, 2nd Floor
25 Beaver Street
New York, NY 10004

Attn:   Mr. Mark Presser
        Assistant Deputy Superintendent and
        Chief Examiner

RE:    CF-2006-OVBER
        Rule on Amendatory Endorsement –
        Exclusion of Loss Due to Virus Or Bacteria
        New York

Dear Mr. Presser:

Insurance Services Office, Inc. hereby files the above captioned filing.  This filing addresses use of an endorsement that excludes loss due to disease-causing agents such as viruses and bacteria.

Complete detail is contained in the attached material.

ISO does not establish an effective date for Commercial Fire rules revisions in New York. Each insurer that elects to utilize this revision is responsible for determining its own effective date and complying with any applicable regulatory requirements.  We will distribute this material to our participating insurers and update our electronic deliveries, under cover of a Notice bearing a date of January, 2007 or the earliest possible subsequent date following your acknowledgment.

Companion forms filing CF-2006-OVBEF has been submitted under separate cover.

Your prompt acknowledgment will be appreciated. For your convenience, an extra copy of this letter is attached for your use in responding.

Very truly yours,

Jane Golden
Regional Director
Government Relations

JG/mr
Enc.

CONFIDENTIAL

ISO_00000365

# REPORT OF CHANGES IN RATES, PROSPECTIVE LOSS COSTS AND RATING RULES
## NYSID FORM 129-B

### FOR NEW YORK STATE INSURANCE DEPARTMENT USE ONLY

| File No.: R | Type: | Submitted | Received |
|---|---|---|---|
| Assigned | Examiner: | Unit | |

Company Codes:

PACIFIC LOB codes:

| RSO Name | RSO Ref No. |
|---|---|

Comments

## A. INSURER INFORMATION

**Insurance Services Office, Inc.**

Insurer's NAIC Code [ ][ ][ ] – [ ][ ][ ][ ][ ]

**CF-2006-OVBER**

Name of Insurer          Insurer's File No.

## B. FILING INFORMATION

(1) Type of filing          (a)  RSO rates, prospective loss costs and/or rules          [X]

(check all that apply):     (b)  Independent rates and/or rules          [ ]

(c)  Adoption of RSO rates and/or rules (must complete Part D)          [ ]

(d)  Adoption of RSO Loss Cost (must complete Part E and, if applicable, Part F)          [ ]

(e)  Other (specify) _____          [ ]

(2)  Indicate kind or type of insurance affected by this filing:     Commercial Fire and Allied Lines

(3)  Is this filing for a new program or does it otherwise include rates
for which your company does not presently have rates in effect?          Yes [ ]     No [X]

(4)  Proposed Date(s) of implementation     New Business   1/  1/  07     Renewals   1/  1/  07

(5)  Insurer's Annual Written Premium (AWP) for the market
affected by the proposed revision:          $ [ ][ ][ ] , [ ][ ][ ] , [ ][ ][ 0 ] .00

(6)  Overall Statewide effect of this revision on the AWP
indicated in (5) above:          (indicate "+" or "-")  [ ] [ ][ ][ ] . [ 0 ] %

(7)  Has investment income been considered in this filing?
(Please attach investment income exhibit)          Yes [ ]     No [X]

(8)  What is the largest and smallest cumulative effect of all rate, class, territory, increased limits factor, package modifier and any other
rating factor changes on any individual class of insureds affected by this filing:
(indicate "+" or "-")  Largest: [ ] [ ][ ][ ] . [ 0 ] %  Smallest: [ ] [ ][ ][ ] . [ 0 ] %

(9)  List the last four (4) rate revisions, with respective effective dates, including every revision filed during the preceding 12 months for
the class(es) of business affected by this rate revision, indicating the overall rate level effect of each, and whether each such revision
was on a "file and use" or "prior approval" basis:

| Effective Date(s) | Rate Effect (indicate "+" or "-") | | |
|---|---|---|---|
| - /  / | [ ] [ ][ ][ ] . [ 0 ] % | File and Use [ ] | Prior Approval [ ] |
| - /  / | [ ] [ ][ ][ ] . [ 0 ] % | File and Use [ ] | Prior Approval [ ] |
| - /  / | [ ] [ ][ ][ ] . [ 0 ] % | File and Use [ ] | Prior Approval [ ] |
| - /  / | [ ] [ ][ ][ ] . [ 0 ] % | File and Use [ ] | Prior Approval [ ] |

New York State Insurance Department          Form 129-B (Ed. 1/93)

CONFIDENTIAL          ISO_00000366

## C. FLEX-RATING INFORMATION

(1) Does any portion of this filing affect a market subject to Flex-rating?    Yes ☐    No ☒

**If the answer to (1) is "No," skip remaining questions 2 through 6 and go on to the next applicable Part.**

(2) What percentage flex-band applies to the market affect by this filing?    +/- _____ %
                                                                              +/- _____ %

(3) Does this revision result in rate level changes that would exceed the flex-band applicable to this market?    Yes ☐    No ☐

(4) Does this revision include any changes in class, territory, increased limits factors, package modifier or similar rating factor which affect the rates of any individual insured by more than +/-20% in addition to the overall statewide revision?    Yes ☐    No ☐

(5) Has this insurer made three (3) or more rate filings affecting this market in the preceding twelve (12) months?    Yes ☐    No ☐

### IMPORTANT

## IF ANY OF THE RESPONSES TO QUESTIONS 3 THROUGH 5 ABOVE IS "YES", THE FILING IS SUBJECT TO THE SUPERINTENDENT'S PRIOR APPROVAL.

(6) On an attached schedule, please set forth (by class and territory) the rate level effect of this filing, indicating any applicable flex-band(s) and Pivot Rate Level(s) for this kind of business.

### AFFIRMATION

I, ___Kevin B. Thompson___ , a duly authorized officer of

___Insurance Services Office, Inc.___ , do hereby affirm that the foregoing information, including the following (check all that apply):

☐    PART D - ADOPTION OF RATES AND/OR RULES OF A RATE SERVICE ORGANIZATION

☐    PART E - ADOPTION OF PROSPECTIVE LOSS COSTS OF A RATE SERVICE ORGANIZATION

☐    PART F - CALCULATION OF EXPECTED LOSS RATIO

☐    INVESTMENT INCOME EXHIBIT

and all other attached exhibits, schedules and supporting information, is true to the best of my knowledge and belief.

| | |
|---|---|
| _Signature of Authorized Officer_ | June 20, 2006 <br> Date |
| Kevin B. Thompson <br> Name of Authorized Officer (please print) | 545 Washington Boulevard <br> Address of Insurer |
| Senior Vice President <br> Title | Jersey City        N.J.      07310-1686 <br> City        State        Zip Code |
| ( 201 )   469 - 2587 <br> Direct Telephone Number | (201)   469-4015 <br> Fax Number |

New York State Insurance Department                                    Form 129-B (Ed. 1/93)

CONFIDENTIAL                                                                    ISO_00000367

## D. ADOPTION OF RATES AND/OR RULES OF A RATE SERVICE ORGANIZATION

[Use Part E for adoption of Prospective Loss Costs]

(Complete this Part only if the filing includes the adoption of rates and/or rules filed with this Department by a Rate Service Organization of which the insurer is a member or subscriber.)

_____    _____

Name of Rate Service Organization    Reference No. of Filing being Adopted

_____

Line, Sub-line, Coverage, Territory, Class or combination, etc., to which this Part applies

(1)  Rate modification:

Check one:    The above filing is hereby adopted without modification    ☐

The above filing is hereby adopted subject to the following modification (indicate nature and percent modification and attach all supporting data and justification for the modification):(indicate "+" or "-")    ☐  ☐ ☐ ☐ . ☐ ☐ %

_____

_____

(2)  Is the modification indicated in (1) above the same as the modification currently being used by this insurer for this market?    Yes ☐    No ☐

(3)  If the answer to (2) above is "No", what is the rate effect of the change in modification only?    (indicate "+" or "-")  ☐  ☐ ☐ ☐ . ☐ ☐ %

Form 129-B (Ed. 1/93)

CONFIDENTIAL

ISO_00000368

# E. ADOPTION OF PROSPECTIVE LOSS COSTS OF A RATE SERVICE ORGANIZATION

(Complete this Part only if the filing includes the adoption of prospective loss costs filed with this Department
by a Rate Service Organization of which the insurer is a member or subscriber.)

_____      _____
Name of Rate Service Organization          Reference No. of Filing being Adopted

_____
Line, Sub-line, Coverage, Territory, Class or combination, etc., to which this Part applies

(1) Loss Cost Modification:
Check one:    The above filing is hereby adopted without modification                          ☐

The above filing is hereby adopted subject to the following modification    ☐
(indicate nature and percent modification and attach all supporting data
and justification for the modification):(indicate "+" or "-")    ☐  ☐☐☐ . ☐☐ %

_____
_____

(2) Is the modification indicated in (1) above the same as the modification
currently being used by this insurer for this market?           Yes ☐   No ☐

(3) If the answer to (2) above is "No", what is the rate effect
of the change in modification only?           (indicate "+" or "-")  ☐  ☐☐☐ . ☐☐ %

(4) Express the Loss Cost Modification, indicated in (1) above,
as a factor:                                          (see instructions)  ☐ . ☐☐☐ %

(5) Insurer Express Loss Cost Ratio (ELR), expressed as a factor:    [From Part F, Line (10)]   0 . ☐☐☐

(6) Insurer Formula Loss Cost Multiplier: [(4) divided by (5)]          ☐ . ☐☐☐

(7) Insurer Selected Loss Cost Multiplier:
[Explain any differences between (6) and (7)]:          ☐ . ☐☐☐

_____
_____

(8) Is the ELR indicated in (5) above the same as the ELR currently
being used by this insurer for the Line, Sub-line, etc., indicated above?   Yes ☐   No ☐

(9) If the answer to (8) above is "No", what is the rate effect
of the change in ELR only?           (indicate "+" or "-")  ☐  ☐☐☐ . ☐☐ %

(10) Has Part F, Calculation of Expected Loss Ratio, containing the supporting data for the ELR indicated
in (5) above, been previously filed with this Department within the past 3 years?   Yes ☐   No ☐

IF THE ANSWER TO EITHER QUESTION (8) OR (10) IS "NO," PART F,
CALCULATION OF EXPECTED LOSS RATIO, MUST BE COMPLETED

(11) Will any expense constant be used in conjunction with these
prospective loss costs to develop final rates?           Yes ☐   No ☐

If "Yes", indicate the expense constant(s) and attach all supporting information   _____

New York State Insurance Department                                               Form 129-B (Ed. 1/93)

CONFIDENTIAL                                                                        ISO_00000369

## F. CALCULATION OF EXPECTED LOSS RATIO

(Complete this Part if the calculation of the Expected Loss Ratio that the insurer intends to use with its Prospective Loss Costs to determine final rates is new or has not been filed with this Department with the past three years.  Ratios for this Part are to be derived, wherever possible, directly from the insurer's Insurance Expense Exhibits, as filed with this Department)

_____

Line, Sub-line, Coverage, Territory, Class or combination, etc., to which this Part applies

Indicate the three most recent years' expense ratios (not the actual dollars spent),
for DIRECT BUSINESS for the applicable line of insurance:

| | 19 ____ | 19 ____ | 19 ____ | Average | Selected |
|---|---|---|---|---|---|
| (1)  Commissions and Brokerage: | _____ | _____ | _____ | _____ | _____ |
| (2)  Other Acquisition Expenses | _____ | _____ | _____ | _____ | _____ |
| (3)  General Expenses | _____ | _____ | _____ | _____ | _____ |
| (4)  Taxes, licenses and fees | _____ | _____ | _____ | _____ | _____ |
| (5)  Other (attach explanation) | _____ | _____ | _____ | _____ | _____ |
| (6)  Profit and contingencies | | | | | _____ |
| (7)  Total Selected lines (1) through (6) | | | | | _____ |
| (8)  Investment income (attach investment income exhibit or explanation of how investment income is reflected) | | | | | _____ |
| (9)  Line (7) minus line (8) | | | | | _____ |
| (10) Expected Loss Ratio [1.000 minus line (9)]  (use in Part E, line 5) | | | | 0 . | [ ][ ][ ] |

(11) If any of the selected expense provisions deviate from the insurer's own averages, as shown above, identify each such
deviation, indicate the specific reasons therefor, and attach all schedules and other information supporting the
deviation: _____
_____
_____
_____
_____
_____

CONFIDENTIAL

ISO_00000370

**Jaffee, Donna**

| | |
|---|---|
| **From:** | Ryba, Megan |
| **Sent:** | Thursday, June 29, 2006 10:08 AM |
| **To:** | Podoshen, Lawrence |
| **Cc:** | Newman, Loretta F.; Jaffee, Donna; Clarke, Stephen C.; Lemley, Sheila; Gibney, Karen; Golden, Jane; VanSise, Mary E. |
| **Subject:** | NY CF-2006-OVBEF/OVBER |

**Attachments:** Fax Image.TIF



A99c40b7b-e525
l99a-803e-3bac4.

     These filings were submitted to the NY Department today for a proposed 1/1/07 effective date (forms) and a 1/07 distribution date (rules). Copies of the letters are attached for your files.

Thank you.


-----Original Message-----
From: RightFax E-mail Gateway
Sent: Thursday, June 29, 2006 9:55 AM
To: Ryba, Megan
Subject: A new fax has arrived from 6097993726 (Part 1 of 1) on Channel 0

6/29/2006 9:53:28 AM Transmission Record
     Received from remote ID: 6097993726
     Inbound user ID MRYBA, routing code 1899
     Result: (0/352;0/0) Successful Send
     Page record: 1 - 2
     Elapsed time: 00:42 on channel 0


Fax Images: [double-click on image to view page(s)]

1

CONFIDENTIAL

ISO_00000371

*[handwritten:]* bcc: L.Haughen, L.Newman, D.Jaffe, S.Clarke, J.Pingle, S.Lemey, K.Gibney, M.Varese



QUAKERBRIDGE EXECUTIVE CENTER   101 GROVERS MILL ROAD   TRENTON, N.J. 08648   (609) 799-1800   FAX (609) 799-3726

June 29, 2006

The Honorable Howard D. Mills, III
Superintendent of Insurance
State of New York Insurance Department
Property Bureau, 2nd Floor
25 Beaver Street
New York, NY 10004

Attn:   Mr. Mark Presser
        Assistant Deputy Superintendent and
        Chief Examiner

RE:     CF-2006-OVBER
        Rule on Amendatory Endorsement –
        Exclusion of Loss Due to Virus Or Bacteria
        New York

Dear Mr. Presser:

Insurance Services Office, Inc. hereby files the above captioned filing. This filing addresses use of an endorsement that excludes loss due to disease-causing agents such as viruses and bacteria.

Complete detail is contained in the attached material.

ISO does not establish an effective date for Commercial Fire rules revisions in New York. Each insurer that elects to utilize this revision is responsible for determining its own effective date and complying with any applicable regulatory requirements. We will distribute this material to our participating insurers and update our electronic deliveries, under cover of a Notice bearing a date of January, 2007 or the earliest possible subsequent date following your acknowledgment.

Companion forms filing CF-2006-OVBEF has been submitted under separate cover.

Your prompt acknowledgment will be appreciated. For your convenience, an extra copy of this letter is attached for your use in responding.

Very truly yours,

*[signature]*

Jane Golden
Regional Director
Government Relations

JG/mr
Enc.

CONFIDENTIAL                                                                    ISO_00000372

cTS

REGULATORY CORRESPONDENCE

FAX COVER PAGE

Today's Date: **8/4/06**

Response Due to Field*: **8·28·06**

Number of Pages: **3**
(including cover)

(*) Enter 3 weeks (21 days) from today's date unless specific date stipulated in regulatory correspondence date stipulated by regulatory, enter the regulatory date minus 3 work days, followed by ("REG")

If date entered is revised by Home Office after receipt, you will be notified.

**RECEIVED**
**AUG - 9 2006**
**D. JAFFEE**

TO:  Donna Jaffee, State Relations

Fax Number: (20?) 469-4011

FROM: **Jane Golden**
(Name)

**Trenton**
(Office)

RE: **OF 2006-DVBEF/DVBER**
Filing Designation(s)

**New York**
(State(s))

DATE FILED: **6/29/06**

PRINTING DEADLINE: **9-20-06**

PROPOSED EFFECTIVE DATE: **1/1/07**

LOB2 ANALYST: **Podoshen**
(Name)

NATURE OF REGULATORY QUESTIONS/ISSUES:  ☐ Actuarial  ☑ Non-Actuarial  ☐ Both

TYPE OF REGULATORY INQUIRY:  ☑ Correspondence (attached)  ☐ Meeting  ☐ e-mail
☐ Phone call

**✱ 8-4-06** routed
FIELD COMMENTS/MEMO: **AB**  ☐ Also attached   ☐ To follow   ☐ Shown below

REMARKS: **letter from NYSIN - questions similar to NJ & MD**

PAGE 1/3 * RCVD AT 8/4/2006 11:26:58 AM [Eastern Daylight Time] * SVR:NTFAXSRV01/2 * DNIS:1803 * CSID:6097993726 * DURATION (mm-ss):01-10

CONFIDENTIAL                 ISO_00000373



**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
**25 BEAVER STREET**
**NEW YORK, NEW YORK 10004**

George E. Pataki
Governor

Howard Mills
Acting Superintendent

July 28, 2006

Ms. Jane Golden
Insurance Service Organization, Inc.
101 Grovers Mill Road
Trenton, N.J. 08648



RECEIVED

AUG - 2 2006

ISO-NRO
GIRD-TRENTON

Re:    Commercial Fire and Allied Lines
        Exclusion of Loss Due to Virus or Bacteria
        Company File Nos.: CF-2006-OVBEF (Form)
                                    CF-2006-OVBER (Rule)
        Department File Nos.: R2006002564
                                      R2006002570

Dear Ms. Golden:

This refers to the captioned filings you submitted for our review and approval. We have the following questions/comments:

   1. We note the examples of bacterial contamination such as SARS and anthrax. How would these claims be handled if the proposed exclusion was not attached?

   2. To date, do you have knowledge of any property/liability claims relating to these particular contaminants?

   3. Has this endorsement been approved in other States? In the States where the endorsement has been approved, did these States require that the company offer a buy-back and/or required any rate credit?

We await your prompt reply. In the meantime, the captioned filing is not approved in New York. Please be advised that pursuant to the Second Supplement to Circular Letter No. 11, dated December 1999, the company must provide a substantive reply within 30 days of the date of this letter. If such

CONFIDENTIAL

ISO_00000374

-2-

response is not received, the file will be considered withdrawn and closed accordingly without further communication. Should the company wish this Department to again review the subject matter of this filing, a new submission, which addresses the outstanding issues included in this correspondence, must be made in accordance with the provisions of the Circular Letter.

Very truly yours,

Ann Marie Moore-Wade
Senior Insurance Examiner
Property Bureau

http://www.ins.state.ny.us

CONFIDENTIAL

ISO_00000375

REGULATORY CORRESPONDENCE

FAX COVER PAGE

Today's Date: **8/4/06**

Response Due to Field*
**8-28-06**

Number of Pages: **3**
(including cover)

(*) Enter 3 weeks (21 days) from today's date unless specific date stipulated in regulatory correspondence. If date stipulated by regulatory, enter the regulatory date minus 3 work days, followed by ("REG")

If date entered is revised by Home Office after receipt, you will be notified.

TO: Donna Jaffee, State Relations

Fax Number: (201) 469-4011

FROM: **Jane Golden**
(Name)

Trenton
(Office)
**New York**
(State(s))

RE: **CF 2006-DVBEF/OVBER**
Filing Designation(s)

DATE FILED: **6/29/06**

PRINTING DEADLINE: **9-20-06**

PROPOSED EFFECTIVE DATE: **1/1/07**

LOB2 ANALYST: **Podoshen**
(Name)

NATURE OF REGULATORY QUESTIONS/ISSUES: ☐ Actuarial ☑ Non-Actuarial ☐ Both

TYPE OF REGULATORY INQUIRY: ☑ Correspondence (attached) ☐ Meeting ☐ e-mail ☐ Phone call

FIELD COMMENTS/MEMO: ☐ Also attached ☐ To follow ☐ Shown below

REMARKS: **letter from NYSIN – questions similar to NJ & MD**

HOME OFFICE USE ONLY

CONFIDENTIAL



**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
25 BEAVER STREET
NEW YORK, NEW YORK  10004

George E. Pataki
Governor

Howard Mills
Acting Superintendent

July 28, 2006

Ms. Jane Golden
Insurance Service Organization, Inc.
101 Grovers Mill Road
Trenton, N.J. 08648



Re:    Commercial Fire and Allied Lines
       Exclusion of Loss Due to Virus or Bacteria
       Company File Nos.: CF-2006-OVBEF (Form)
                          CF-2006-OVBER (Rule)
       Department File Nos.: R2006002564
                             R2006002570

Dear Ms. Golden:

This refers to the captioned filings you submitted for our review and approval. We have the following questions/comments:

   1. We note the examples of bacterial contamination such as SARS and anthrax.  How would these claims be handled if the proposed exclusion was not attached?

   2. To date, do you have knowledge of any property/liability claims relating to these particular contaminants?

   3. Has this endorsement been approved in other States? In the States where the endorsement has been approved, did these States require that the company offer a buy-back and/or required any rate credit?

We await your prompt reply.  In the meantime, the captioned filing is not approved in New York. Please be advised that pursuant to the Second Supplement to Circular Letter No. 11, dated December 1999, the company must provide a substantive reply within 30 days of the date of this letter.  If such

CONFIDENTIAL

ISO_00000377

-2-

response is not received, the file will be considered withdrawn and closed accordingly without further communication. Should the company wish this Department to again review the subject matter of this filing, a new submission, which addresses the outstanding issues included in this correspondence, must be made in accordance with the provisions of the Circular Letter.

Very truly yours,

Ann Marie Moore-Wade
Senior Insurance Examiner
Property Bureau

http://www.ins.state.ny.us

PAGE 3/3 * RCVD AT 8/4/2006 11:26:58 AM [Eastern Daylight Time] * SVR:NTFAXSRV01/2 * DNIS:1803 * CSID:6097993726 * DURATION (mm-ss):01-10

CONFIDENTIAL

ISO_00000378

**Jaffee, Donna**                                    *att to RCTS item*

| | |
|---|---|
| **From:** | Golden, Jane |
| **Sent:** | Friday, August 04, 2006 11:31 AM |
| **To:** | Podoshen, Lawrence |
| **Cc:** | Newman, Loretta F.; Clarke, Stephen C.; Jaffee, Donna; Ryba, Megan |
| **Subject:** | NY CF-2006-OVBEF and OVBER |
| **Attachments:** | Fax Image.TIF |



Aa9a97506-560
45f8-8415-05055

            Attached please find questions on the above captioned filings for the state of
NY, questions are similar to the ones we have seen in MD.

Any questions, let me know
Jane

Jane Golden
Regional Director
Government Relations
Insurance Services Office
 jgolden@iso.com
(609)799-1800 x232


-----Original Message-----
From: RightFax E-mail Gateway
Sent: Friday, August 04, 2006 11:29 AM
To: Golden, Jane
Subject: A new fax has arrived from 6097993726 (Part 1 of 1) on Channel 2

8/4/2006 11:26:58 AM Transmission Record
      Received from remote ID: 6097993726
      Inbound user ID JGGOLDEN, routing code 1803
      Result: (0/352;0/0) Successful Send
      Page record: 1 - 3
      Elapsed time: 01:10 on channel 2


Fax Images: [double-click on image to view page(s)]

1

CONFIDENTIAL                                                              ISO_00000379

**Jaffee, Donna**

| | |
|---|---|
| **From:** | Phillips, Norma |
| **Sent:** | Thursday, February 01, 2007 2:45 PM |
| **To:** | Jaffee, Donna; Lemley, Sheila; Newman, Loretta F.; Podoshen, Lawrence; Pergola, John J.; Casillo, Anne |
| **Subject:** | State of New York: CF-2006-OVBEF; CF-2006 OVBER (Amendments) |
| **Attachments:** | NEW YORK.tif |

Attached is the correspondence and amendment for the captioned filings that was sent on February 1, 2007 in response to a phone conversation on January 24, 2007.


Norma Phillips (Speed 342)
ISO/QUINCY
Tel.: (617) 689-1531

2/1/2007

CONFIDENTIAL

**Jaffee, Donna**

| | |
|---|---|
| **From:** | Casillo, Anne |
| **Sent:** | Thursday, February 01, 2007 2:07 PM |
| **To:** | 'lmathai@ins.state.ny.us' |
| **Cc:** | Phillips, Norma |
| **Subject:** | NY- Virus and Bacteria Amendments- Commercial Fire |
| **Attachments:** | 0156_001.pdf; 0158_001.pdf; 0157_001.pdf |

Dear Mr. Mathai- please accept the attached amendments to our Commercial Fire and Allied Lines.

Please advise if anything additional is needed. We are very interested in gaining closure on these filings as well as the other virus and bacteria outstanding submissions. Amendments for these will be forwarded under separate cover.

Thank you for your assistance.

*Anne M. Casillo, CPCU, ARP, CPIW*
*NE Regional Manager*
*ISO Government Relations*
*617-689-1539*

2/1/2007
CONFIDENTIAL

 400 CROWN COLONY DRIVE   SUITE 201   QUINCY, MA 02169   (617) 770-3555   FAX: (201) 748-1934

ANNE M. CASILLO, CPCU, ARP, CPIW
REGIONAL MANAGER
GOVERNMENT RELATIONS

February 1, 2007

Mr. Lavi Mathai, Senior Examiner
New York Department of Insurance

RE:   Commercial Fire and Allied Lines- Exclusion of Loss Due to Virus and Bacteria
      CF-2006-OVBEF & CF-2006-OVBER (Amendments)
      NYSID(s): R2006002564 & R2006002570

Dear Mr. Mathai:

Per our January 24, 2007 phone conversation, please accept the above amendments that
have in effect removed reference to "pollutants" that was previously found at paragraph
C. of endorsement CP 01 75.

We have withdrawn endorsement CP 01 75 from this filing and have replaced with New
York - Exclusion of Loss Due to Virus and Bacteria, CP 01 78.

This forms amendment also requires us to amend our previously submitted rules.
Enclosed, please find an amendment to our rules indicating that CP 01 78 is now the
endorsement that should be used to exclude loss due to virus and bacteria.

Please note that our amended effective date for the forms filing will be July 1, 2007. The
distribution date for the corresponding rules will be July 2007.

Please advise if anything additional is needed to complete this request.

                              Sincerely,

                              *Anne M. Casillo*

                              Anne M. Casillo, CPCU, ARP, CPIW
                              Regional Manager
                              Government Relations
                              Tel. # (617) 689-1539
                              E-Mail: acasillo@iso.com

AMC:np

CONFIDENTIAL                                                    ISO_00000382

NEW YORK
COMMERCIAL FIRE AND ALLIED LINES
RULES FILING CF-2006-OVBER (AMENDMENT)

# Rule Addressing Exclusion Of Loss Due To Virus Or Bacteria Amended

## About This Amendment

This amendment revises the proposed rule addressing use of an endorsement that excludes loss due to disease-causing agents such as viruses and bacteria.

## Related Filing(s)

♦ Forms Filing CF-2006-OVBEF (Amendment)

## Background

In the related forms amendment, we have withdrawn proposed endorsement **CP 01 75** - Exclusion Of Loss Due To Virus Or Bacteria, and replaced it with endorsement **CP 01 78** - New York - Exclusion Of Loss Due To Virus Or Bacteria.

## Explanation of Changes

We are amending the Additional Rule presented in the original filing, to refer to endorsement CP 01 78.

## Copyright Explanation

The material distributed by Insurance Services Office, Inc. is copyrighted. All rights reserved. Possession of these pages does not confer the right to print, reprint, publish, copy, sell, file or use same in any manner without the written permission of the copyright owner.

CONFIDENTIAL

# Important Note

Insurance Services Office, Inc. (ISO) makes available advisory services to
property/casualty insurers. ISO has no adherence requirements. ISO rules and
explanatory materials are intended solely for the information and use of ISO's
participating insurers and their representatives, and insurance regulators. Neither
ISO's general explanations of rules intent nor opinions expressed by members of
ISO's staff necessarily reflect every insurer's view or control any insurer's
application of manual rules.

© ISO Properties, Inc., 2007

NEW YORK - COMMERCIAL FIRE AND ALLIED LINES
RULES FILING CF-2006-OVBER (AMENDMENT)                                    Page 3

---

**ADDITIONAL RULE # - EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA**

---

Attach <u>New York -</u> Exclusion Of Loss Due To Virus Or Bacteria Endorsement ~~CP 01 75~~<u>CP 01 78</u> to all policies.

© ISO Properties, Inc., 2007

Insurance Services Office, Inc.

# AMENDMENT TRANSMITTAL FORM

| State | Filing Designation | | | Companion Filings |
|-------|--------------------|--|--|-------------------|
| NY | Line | Year | Description | CF-2006-OVBEF |
| | CF | 2006 | OVBER | |

**X**   Amendment/Supplement

| X | Amendment |
|---|-----------|
| | Supplement |

# FILE COPY

## Reason for Amendment/Supplement

| Revise Additional Rule to complement the introduction of a New York-specific endorsement to exclude loss due to disease-causing agents such as viruses or bacteria |
|---|

| Correction? | Y__ N**X** |
|-------------|-----------|
| Replacement? | Y__ N**X** |
| Response to insurance department letter? | Y**X** N__ |

### Proposed

| Eff. Date | | | Dist. Date | | | OKTP Deadline | | |
|-----------|--|--|------------|--|--|---------------|--|--|
| | | | 7 | | 2007 | 3 | 1 | 2007 |
| Mo. | Day | Yr. | Mo. | Day | Yr. | Mo. | Day | Yr. |

## Special Filing Instructions (For GRD Use Only)

## Amendment Processing Information (For GRD Use Only)

| Date Received | Date Sent to Field |
|---------------|--------------------|
| 1-30-07 | 1-30-07 |
| Mo.   Day   Yr. | Mo.   Day   Yr. |

CONFIDENTIAL

ISO_00000386

Insurance Services Office, Inc.

**AMENDMENT TRANSMITTAL FORM** (continued)

**Send Pertinent Filing Correspondence to:**

| Line Division | L. Newman | | |
|---|---|---|---|
| Actuarial Division | | AGSD Division | |
| GRD Division | Donna Jaffee   (19-6) | | |

**Transmittal Form Prepared By:**

| | Name | | | | | |
|---|---|---|---|---|---|---|
| Line: | Larry Podoshen | | 1 | | 2007 | 2597 |
| Actuarial: | | | Mo. | Day | Yr. | Ext. |

Management Approval Given By:

**Supplementary Information for Loss Cost Filings Only**

**Loss Cost Level Change Information**

---

Statewide Aggregate Loss Cost
Volume (000's Omitted)

---

Loss Cost Level Changes By Coverage*

| Coverage Code | Amended Loss Cost Level Change |
|---|---|
| Total All Coverages | _____ % |
| | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |

\*   (If Individual Coverages Are Not Applicable, Complete
    "Total All Coverages" Line Only)

Edition 01/01/06
ISOATF.DOC

CONFIDENTIAL

ISO_00000387

NEW YORK
COMMERCIAL FIRE AND ALLIED LINES
RULES FILING CF-2006-OVBER (AMENDMENT)

# Rule Addressing Exclusion Of Loss Due To Virus Or Bacteria Amended

## About This Amendment

This amendment revises the proposed rule addressing use of an endorsement that excludes loss due to disease-causing agents such as viruses and bacteria.

## Related Filing(s)

♦ Forms Filing CF-2006-OVBEF (Amendment)

## Background

In the related forms amendment, we have withdrawn proposed endorsement **CP 01 75** - Exclusion Of Loss Due To Virus Or Bacteria, and replaced it with endorsement **CP 01 78** - New York - Exclusion Of Loss Due To Virus Or Bacteria.

## Explanation of Changes

We are amending the Additional Rule presented in the original filing, to refer to endorsement CP 01 78.

## Copyright Explanation

The material distributed by Insurance Services Office, Inc. is copyrighted. All rights reserved. Possession of these pages does not confer the right to print, reprint, publish, copy, sell, file or use same in any manner without the written permission of the copyright owner.

© ISO Properties, Inc., 2007
CONFIDENTIAL

# Important Note

Insurance Services Office, Inc. (ISO) makes available advisory services to property/casualty insurers. ISO has no adherence requirements. ISO rules and explanatory materials are intended solely for the information and use of ISO's participating insurers and their representatives, and insurance regulators. Neither ISO's general explanations of rules intent nor opinions expressed by members of ISO's staff necessarily reflect every insurer's view or control any insurer's application of manual rules.

© ISO Properties, Inc., 2007

CONFIDENTIAL

---

**ADDITIONAL RULE # - EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA**

Attach <u>New York -</u> Exclusion Of Loss Due To Virus Or Bacteria Endorsement ~~CP 01 75~~<u>CP 01 78</u> to all policies.

© ISO Properties, Inc., 2007

**Jaffee, Donna**

| | |
|---|---|
| **From:** | Phillips, Norma |
| **Sent:** | Wednesday, February 28, 2007 8:17 AM |
| **To:** | Jaffee, Donna; Lemley, Sheila; Newman, Loretta F.; Podoshen, Lawrence; Pergola, John J.; Casillo, Anne |
| **Subject:** | State of New York: CF-2006-OVBEF; CF-2006-OVBER |
| **Attachments:** | NEW YORK.tif |

The captioned filings were approved/acknowledged on February 20, 2007 with an effective date of January 1, 2007.

Because we have passed the print date of September 20, 2006, please advise of a new effective date.

Norma

2/28/2007

CONFIDENTIAL



**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
**25 BEAVER STREET**
**NEW YORK, NEW YORK 10004**

Eliot Spitzer
Governor

Eric R. Dinallo
Acting Superintendent

February 20, 2007

**RECEIVED**
FEB 2 6 2007
ISO-NRO
GIRO TRENTON

Ms. Anne M. Casillo
Insurance Service Organization, Inc.
101 Grovers Mill Road
Trenton, N.J. 08648

Re:   Commercial Fire and Allied Lines
      Exclusion of Loss Due to Virus or Bacteria
      Company File Nos.: CF-2006-OVBER (Rule)
      Department File Nos.: R2006002570

Dear Ms. Casillo:

This refers to the captioned filing you submitted for our review and acknowledgment. Your correspondence of February 1, 2007 is also noted

The filing is acknowledged effective the date of this letter.

Very truly yours,

Ann Marie Moore-Wade
Senior Insurance Examiner
Property Bureau

http://www.ins.state.ny.us

CONFIDENTIAL

ISO_00000392

**Jaffee, Donna**

*AAI, A*

| | |
|---|---|
| **From:** | Newman, Loretta F. |
| **Sent:** | Wednesday, February 28, 2007 8:31 AM |
| **To:** | Phillips, Norma |
| **Cc:** | Jaffee, Donna; Lemley, Sheila; Podoshen, Lawrence; Pergola, John J.; Casillo, Anne |
| **Subject:** | FW: State of New York: CF-2006-OVBEF; CF-2006-OVBER |

**Attachments:** NEW YORK.tif

We'll use an effective date of July 1, 2007.

**From:** Phillips, Norma
**Sent:** Wednesday, February 28, 2007 8:17 AM
**To:** Jaffee, Donna; Lemley, Sheila; Newman, Loretta F.; Podoshen, Lawrence; Pergola, John J.; Casillo, Anne
**Subject:** State of New York: CF-2006-OVBEF; CF-2006-OVBER

The captioned filings were approved/acknowledged on February 20, 2007 with an effective date of January 1, 2007.

Because we have passed the print date of September 20, 2006, please advise of a new effective date.

Norma

2/28/2007

CONFIDENTIAL



STATE OF NEW YORK
INSURANCE DEPARTMENT
25 BEAVER STREET
NEW YORK, NEW YORK  10004

Eliot Spitzer
Governor

Eric R. Dinallo
Acting Superintendent

February 20, 2007

**RECEIVED**

FEB 2 6 2007

ISO-NRO
GIRO TRENTON

Ms. Anne M. Casillo
Insurance Service Organization, Inc.
101 Grovers Mill Road
Trenton, N.J. 08648

Re:  Commercial Fire and Allied Lines
Exclusion of Loss Due to Virus or Bacteria
Company File Nos.: CF-2006-OVBER (Rule)
Department File Nos.: R2006002570

Dear Ms. Casillo:

This refers to the captioned filing you submitted for our review and acknowledgment. Your correspondence of February 1, 2007 is also noted

The filing is acknowledged effective the date of this letter.

Very truly yours,

Ann Marie Moore-Wada
Senior Insurance Examiner
Property Bureau

PAGE 1/3 * RCVD AT 2/26/2007 1:19:25 PM [Eastern Standard Time] * SVR:NTFAXSRV01/8 * DNIS:1934 * CSID:6097903726 * DURATION (mm-ss):00-42

CONFIDENTIAL

ISO_00000394

**Jaffee, Donna**                                                      _ED_

| | |
|---|---|
| **From:** | Phillips, Norma |
| **Sent:** | Wednesday, February 28, 2007 11:03 AM |
| **To:** | Jaffee, Donna; Lemley, Sheila; Podoshen, Lawrence; Pergola, John J.; Casillo, Anne |
| **Subject:** | State of New York: CF-2006-OVBEF; CF-2006-OVBER |
| **Attachments:** | NEW YORK.tif |

The captioned filings were approved/acknowledged on February 20, 2007 with an effective date of January 1, 2007.

We have notified the New York Insurance Department of a Change of Effective Date for the captioned filings to July 1, 2007.

They are O.K. TO PRINT.

Norma Phillips (Speed 342)
ISO/QUINCY
Tel.: (617) 689-1531

2/28/2007

CONFIDENTIAL

 400 CROWN COLONY DRIVE   SUITE 201   QUINCY, MA 02169
TEL: (617) 689-1539   FAX: (201) 748-1934   E-MAIL: acasillo@iso.com

ANNE M. CASILLO, CPCU, ARP, CPIW
REGIONAL MANAGER
GOVERNMENT RELATIONS

February 28, 2007

The Honorable Eric Dinallo
Superintendent Of Insurance
State of New York Insurance Department
Property Bureau, 2nd Floor
25 Beaver Street
New York, NY 10004

Attn:   Ann Marie Moore-Wade
        Senior Insurance Examiner

        **Re: CF-2006-OVBER**
        **Rule on Amendatory Endorsement –**
        **Exclusion of Loss Due to Virus Or Bacteria**
        **State of New York**
        **Department File No. R2006002570**

Dear Ms. Moore-Wade:

Thank you for your acknowledgment of the captioned filing.

This is to inform you that we are implementing this filing on July 1, 2007, a new
effective date.

Your early acknowledgment will be greatly appreciated. For your convenience, a
copy of this letter is enclosed for use in responding.

Sincerely,

Anne M. Casillo, CPCU, ARP, CPIW
Regional Manager
Government Relations
Tel. # (617) 689-1539
E-Mail: acasillo@iso.com

AMC:np
Encs.

02/26/2007 14:14 FAX 6097983726 ☐001/003

STATE OF NEW YORK
INSURANCE DEPARTMENT
25 BEAVER STREET
NEW YORK, NEW YORK 10004

OK TO PRINT
2/20/07

Eliot Spitzer
Governor

Eric R. Dinallo
Acting Superintendent

February 20, 2007

RECEIVED
FEB 2 6 2007
ISO-NRO
GIRO-TRENTON

Ms. Anne M. Casillo
Insurance Service Organization, Inc.
101 Grovers Mill Road
Trenton, N.J. 08648

Re:   Commercial Fire and Allied Lines
      Exclusion of Loss Due to Virus or Bacteria
      Company File Nos.: CF-2006-OVBER (Rule)
      Department File Nos.: R2006002570

Dear Ms. Casillo:

This refers to the captioned filing you submitted for our review and acknowledgment. Your correspondence of February 1, 2007 is also noted

The filing is acknowledged effective the date of this letter.

Very truly yours,

Ann Marie Moore-Wade
Senior Insurance Examiner
Property Bureau

http://www.ins.state.ny.us

PAGE 1/3 * RCVD AT 2/26/2007 1:19:25 PM [Eastern Standard Time] * SVR:NTFAXSRV01/0 * DNIS:1934 * CSID:6097983726 * DURATION (mm-ss):00-42

CONFIDENTIAL                                                                 ISO_00000397

## Jaffee, Donna

| | |
|---|---|
| **From:** | Casillo, Anne |
| **Sent:** | Monday, March 26, 2007 3:47 PM |
| **To:** | Jaffee, Donna; Lemley, Sheila; Podoshen, Lawrence; Pergola, John J. |
| **Subject:** | New York: CF-2006-OVBEF and CF-2006-OVBER |
| **Attachments:** | 0417_001 pdf |

Please see the attached, acknowledged change of effective date letters for the above approved filings.

*Anne M. Casillo, CPCU, ARP, CPIW*
*NE Regional Director*
*ISO Government Relations*
*617-689-1539*

3/26/2007

CONFIDENTIAL                                                                 ISO_00000398



Please stamp this copy of letter with date of
receipt in your office and return to the Insurance
Services Office as an acknowledgement of receipt
of this letter.

400 CROWN COLONY DRIVE   SUITE 201   QUINCY, MA 02169
TEL: (617) 689-1539   FAX: (201) 748-1934   E-MAIL: acasillo@iso.com

ANNE M. CASILLO, CPCU, ARP, CPIW
REGIONAL MANAGER
GOVERNMENT RELATIONS

February 28, 2007

The Honorable Eric Dinallo
Superintendent Of Insurance
State of New York Insurance Department
Property Bureau, 2nd Floor
25 Beaver Street
New York, NY 10004

Attn:   Ann Marie Moore-Wade
        Senior Insurance Examiner

Re:   CF-2006-OVBER
      Rule on Amendatory Endorsement –
      Exclusion of Loss Due to Virus Or Bacteria
      State of New York
      Department File No. R2006002570

Dear Ms. Moore-Wade:

Thank you for your acknowledgment of the captioned filing.

This is to inform you that we are implementing this filing on July 1, 2007, a new
effective date.

Your early acknowledgment will be greatly appreciated. For your convenience, a
copy of this letter is enclosed for use in responding.

Sincerely,

Anne M. Casillo, CPCU, ARP, CPIW
Regional Manager
Government Relations
Tel. # (617) 689-1539
E-Mail: acasillo@iso.com

AMC:np
Encs.



RECEIVED
MAR 2 3 2007

State of New York
Insurance Department
Property Bureau

MAR 1 5 2007

ACKNOWLEDGED
BY

EXHIBIT M

# Emerging Issues

## Regulatory Panel

# Agenda

- How ISO chooses which issues to consider
- Some issues on which ISO has already chosen a course of action
- Issues we're still monitoring

1

CONFIDENTIAL

ISO_00004972

# Where We Get Information

- Claims units
- Futurists
- Management team
- Newspapers
- Panels
- Regulators
- Scientific studies
- Trial bar

# Selecting the Issues

- Identify trends (initial anomaly)
- Don't necessarily need solutions
- Consider insurance implications:
  - Underwriting
  - Inspections
  - Risk management
  - Policy language
  - New coverage

2

CONFIDENTIAL

ISO_00004973

## Disseminating and Resolving

- Focal point is Emerging Issues Panel
- Staff does initial research
- User and CLILP panels agenda items
- Staff decision

## Issues to Which We've Responded

- Mold
- Silicosis and Mixed Dust
- Unsolicited Telephone Calls/FAX Transmissions and E-mail
- Welding Rods
- Transmissible spongiform encephalopathies (TSE)

3

CONFIDENTIAL

ISO_00004974

# Issues We're Mulling Over

- Avian Influenza/Other Potential Pandemics
- Nanotechnology
- Genetically Modified Organisms (GMOs)
- Climate Changes
- Others
  - Bed Bugs
  - Fear of Disease
  - Sub-microscopic Property Damage Liability
  - Excess CCIP & OCIP coverage
  - Blanket Property Coverage
  - Daylight Savings Time

# Avian Influenza

4

CONFIDENTIAL

ISO_00004975

# Avian Flu Basics

- Avian influenza occurs naturally among birds
- Wild birds worldwide carry the viruses in their intestines, but usually do not get sick from them
- Avian influenza is very contagious and can make domesticated birds very sick and kill them
- Industrial farming methods probably created the current lethal strain of bird flu virus
- The highly pathogenic A(H5N1) is descended from a strain that first appeared in Scotland in 1959
- A(H5N1) has been raging in China for more than a decade, but strains have been evolving

# Human Infection

- Virus that causes normal human influenza readily infects cells in the upper windpipe
- A(H5N1) binds most efficiently to cells deep inside the lungs
- This makes people less likely to be infected and less likely to pass the virus on
- Fewer than 200 confirmed cases of human infection with the current avian influenza virus have been reported since 1997 but the flu killed more than half of the infected people (191/108)
- Most cases of avian influenza infection in humans are thought to have resulted from direct contact with infected poultry or contaminated surfaces
- Human infections have not resulted in sustained human-to-human transmission
- However, influenza A viruses have the potential to change and gain the ability to spread easily between people

5

CONFIDENTIAL ISO_00004976

## Insurance Aspects

- Workers Compensation
  - Probably not occupational disease
  - Employers Liability?
- Homeowners
  - Communicable disease liability exclusion
- General Liability
  - Has considered and so far rejected a communicable disease exclusion

## Insurance Aspects (Cont'd)

- Property and Business Interruption
  - What's the covered peril?
  - Can you allege contamination under open perils policy?
  - New contamination endorsement that will address disease-causing viruses and bacteria
    - Property policy historically does not provide coverage for viruses and bacteria
    - Avoids any misunderstanding on the next possible large scale event

6

ISO_00004977

# Nanotechnology

---

# Nanotechnology

- There is a growing body of science founded on the concept of building or enhancing products, processes and machines at the molecular level
- The properties of products depend on how their atoms are arranged
  - Rearrange the atoms in coal and you get a diamond
  - Rearrange the atoms in sand and you can make computer chips
- The characteristic dimensions are less than about 1,000 nanometers

7

## Promise of Nanotechnology

- Nanotechnology will let us snap together the fundamental building blocks of nature easily, inexpensively and in most of the ways permitted by the laws of physics
- Essential to continue the revolution in computer hardware
- Fabricate an entire new generation of products that are cleaner, stronger, lighter, and more precise
- Replace fossil fuel

## Exposures Already Exist

- Over 130 nanoproducts in U.S. marketplace
- Over 1,000 nano-related patents
- 20,000 in U.S. already working directly in nanotechnology
- 2M U.S. workers already exposed to nanomaterial particles on a regular basis
- Hundreds of tons of nanomaterials produced in U.S. yearly

8

CONFIDENTIAL

## Where Used

- Skin Creams and Cosmetics
- Sun Block and Suntan Lotions
- Pigments and Coatings
- Plastic Wrap
- Automobiles and Aircraft
- Fabrics
- Computer Chips
- Electronics
- Sports Equipment

## Other Possible Applications

- Drug delivery
- Improved diagnostics
- Tumor killers/cancer cell hunters
- Materials 100 times stronger but 1/6 the weight of steel

- Superconducting materials
- Much smaller, more powerful batteries
- Minute solar cells
- Super efficient hydrogen-based fuel cells

9

CONFIDENTIAL

ISO_00004980

## Positives

- Reduction in claims costs
  - Lower medical costs
  - Stronger, lighter plastics in autos
  - Stronger building materials
  - Materials to filter and remediate contamination

## Concerns

- Since the components are so small, they could theoretically slip through the cell membrane and cause molecular damage
- Remain airborne for long periods of time
- Toxicity and Environmental Safety
  - Latent Disease
  - Natural Resource Damages
  - Products/Premises

10

CONFIDENTIAL

ISO_00004981

# Genetically Modified Organisms

# What is a GMO?

- Any life form where the DNA has been altered for a specific purpose:
  - research
  - to manufacture animal proteins
  - to correct genetic defects
  - to genetically enhance the organism for
    - its ability to produce industrial detergents
    - antibiotics, vitamins, amino acids, steroids or vaccines
    - resistance to disease, herbicides, pests or weather
    - enhanced taste, quality or yields

11

CONFIDENTIAL

ISO_00004982

# Are GMO's Necessary?

- Heterozygosity – Pests evolve but man has interfered with evolution of food
- Monoculture Farming – Results in heavy application of pesticides
- Solution – GMO's leased to farmers
  - Intellectual Property of the developer
  - Highly regulated

# GMO Crops

- Canola, Corn, Cotton, Flax, Papaya, Potato, Radicchio, Rapeseed, Soybean, Squash, Tomato
- Insect Protected, Pesticide Tolerant, Male Sterile, Virus Resistant, Fertility Restored, Modified Ripening, Delayed Softening, Frost Resistant
- Grown in over 40 countries on 6 continents covering about 109.2 million acres
- 52% of soy crops and 25% of corn crops are transgenic
- About 70% of grocery-store food may be biotechnology crops

12

CONFIDENTIAL

ISO_00004983

# Benefits of GMO's

- Crops and Animals
  - Enhanced taste and quality
  - Increased yields and stress tolerance
  - Improved resistance to disease, pests and herbicides
- Environment
  - Conservation of soil, water and energy
  - Better natural waste management
  - More efficient processing
  - Increased food security for growing populations

# GMO Concerns

- Unknown effects on human health and other organisms
- Unintended transfer of transgenes through cross-pollination (super-weeds)
- Loss of flora and fauna biodiversity (toxic to beneficial insects)
- Labeling not mandatory in US; mixing crops confounds labeling (but export rules, license requires notification)

13

CONFIDENTIAL

ISO_00004984

# Products Liability

- Bodily Injury:
  - Weakening of immune systems
  - Those who are susceptible to specific allergies may be unknowingly exposed to allergens
  - Other unanticipated health effects
- Property Damage:
  - Ecological disturbances, such as pesticide-resistant insects or herbicide-resistant weeds
  - Contamination of crops due to unintentional cross-pollination or from commingling during the grain-handling process

# Products Recall

- Risks in the chain of commerce:
  - Genetic engineer developer
  - Farmer
  - Distributor
  - Food processor
  - Retailer
  - Restaurant

14

CONFIDENTIAL

ISO_00004985

# Climate Changes

# Frequency

- The recent increase in hurricane activity is natural
- The average number of powerful Atlantic hurricanes each year since 1995 has been twice as high as in the previous 25 years
- There were 32 major hurricanes with sustained winds of 111 miles per hour or more during the years of 1995 to 2003
- The U.S. was lucky to have been hit by only three of these storms at full force when the historical record shows a rate of 1 in 3
- The average number of storms making landfall has returned to the levels typical of the '30's, '40's and '50's
- One of the factors increasing the risk is the rapid growth in the population on the southeast coast

15

CONFIDENTIAL

ISO_00004986

# Severity

- A number of studies have concluded that the average force of hurricanes has increased significantly since the mid-1970's
- The power of storms in the North Atlantic has tripled while the power of storms in the western North Pacific has more than doubled
- In fact, the intensity of hurricanes in all water basins is showing a substantial increase
- The studies link the increasing power of the storms to global warming and predicts that future storms will continue to be more destructive

# Insurance Implications

- Long term pricing
- Models – long term versus short term
- National Catastrophe Plan
- Land Use
- Mitigation
- Etcetera

16

CONFIDENTIAL

ISO_00004987

## Others

## Bed Bugs

- History
  - Bed bug infestations were common in the U.S. before WWII
  - With the use of DDT during the 1940s and '50's, the bugs all but vanished but remained prevalent in other regions of the world
  - In recent years, bed bugs have also made a comeback in the U.S.
- Habits
  - Bed bugs usually bite people at night while they are sleeping
  - Engorgement takes three to ten minutes
  - The person seldom knows they are being bitten
  - The bugs are efficient hitchhikers and can be transported in luggage, clothing, furniture, etc.
- Medical Concerns
  - Some people develop an itchy welt or localized swelling
  - Transmission of diseases to humans is considered highly unlikely
- Elimination
  - It takes hours to inspect and treat for a bed bug infestation
  - Follow-up visits are usually required
  - Insecticides are important for bed bug elimination

17

CONFIDENTIAL

# Fear of Disease

- Beyond the plaintiffs who have actually developed symptoms of disease, there is a whole body of claims being made out of fear of a disease
- Claims could be submitted when traces of a substance have been found in a person's house or lungs, although no symptoms have resulted from the contact
- While these claims don't actually involve bodily injury, they do involve mental anguish
- Some significant states, such as New York, consider mental anguish to be covered by the general liability policy because of the policy wording
- These "fear claims" need not be limited to diseases, but include medical devices, as well, such as breast implants and heart valves

# Sub-microscopic Property Damage Liability

- These defects are not visible to the naked eye
- No material damage may have manifested itself
- Hard to identify without sophisticated scientific tests
- In some cases, the presence of a sub-microscopic defect has been enough to create liability
- Seeking restitution against potential future damage

18

CONFIDENTIAL

ISO_00004989

# Excess OCIP & CCIP Coverage

- Wrap-up programs may contain gaps in coverage which are being picked up by subcontractors
- Could run out of limits
- The general or the sub's insurer is not collecting a premium for these exposures
- We are working on a project-specific endorsement to provide excess coverage for a project that is otherwise covered by an OCIP or CCIP

# Blanket Property Coverage

- In their facultative reinsurance for blanket property coverage, some reinsurers are imposing a new kind of cap in case of loss
- The carriers cap the blanket average value not to the blanket limit, but:
  - to the highest value of covered property at any one location, or
  - to the stated value for the property where the loss occurred
- ISO staff has developed an optional "margin" endorsement
- The new endorsement will limit the loss payment on items at a location to their stated value plus a specified percentage of that value
- We intend to file language as part of a coming multistate general revision to the commercial property program
- We will also consider the need for similar changes in the businessowners line of insurance

19

CONFIDENTIAL

ISO_00004990

# Daylight Savings Time

- In March 2007, the U.S. will extend DST by four or five weeks each year
- Instead of the first Sunday in April, DST will begin the second Sunday of March and end the first Sunday of November instead of last Sunday of October
- Many computers and smart devices are designed to automatically adjust their internal clocks based on the current DST rules and may not function properly in March 2007
- Businesses in which computer time accuracy is important, such as the financial industry and the medical device industry, need to review their systems

# Emerging Issues

## Regulatory Panel

20

CONFIDENTIAL

ISO_00004991