IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| PHILADELPHIA EAGLES LIMITED PARTNERSHIP<br><br>v.<br><br>FACTORY MUTUAL INSURANCE COMPANY | CIVIL ACTION<br><br>NO. 21-1776 |
|---|---|

**MEMORANDUM RE: PLAINTIFF'S MOTION TO REMAND**

**Baylson, J.**                                                                                                                    **March 24, 2022**

**I.     Introduction**

Plaintiff Philadelphia Eagles Limited Partnership has brought a declaratory judgment action against its insurer, Defendant Factory Mutual Insurance Company, which Defendant has removed to federal court.  Plaintiff moves to have the case remanded to state court (ECF 10).  For the reasons below, the Court will deny the Motion.

**II.    Background**

This case presents a type of insurance dispute that that has grown common over the last several years: the question of how an insurance policy applies to closures induced by the Covid-19 global pandemic.  Plaintiff, a long-established professional football team, alleges that the Covid-19 pandemic forced it in 2020 and 2021 to restrict access to Eagles properties insured by Factory Mutual, including Lincoln Financial Field, the NovaCare Complex, and team merchandise stores. (Am. Compl. ¶ 5.)  Consequently, the Eagles suffered substantial financial loss.  (Id.)

The Eagles sought to recover for this loss under its property insurance policy, which was sold by Factory Mutual.  (Id. ¶ 6.)  Specifically at issue is the policy's provision covering "risks of physical loss or damage," which Plaintiff contends includes the usage restrictions caused by

Covid-19. (Id. ¶ 10.) Factory Mutual, however, denied the claim, taking the position that Covid-19-related usage restrictions do not constitute physical loss or damage. (Id. ¶¶ 208–18.)

Plaintiff brought a declaratory judgment action against Defendant in state court, requesting a declaration that the Covid-19-related property usage restrictions constitute physical loss or damage under the policy. (Id. ¶¶ 219–28.) Plaintiff additionally requests a declaration that, pursuant to the state law doctrine of regulatory estoppel, Defendant is estopped from asserting that communicable disease does not trigger coverage in the policy that requires physical loss or damage. (Id. ¶¶ 229–34.) Plaintiff removed the case to federal court (ECF 1), and Plaintiff filed a Motion to Remand.

The Motion has been briefed voluminously. Following the initial filing of the Motion, Defendant filed a Response (ECF 13), and Plaintiff filed a Reply (ECF 14). Plaintiff later filed a Supplemental Brief (ECF 30), Defendant filed a Supplemental Response (ECF 31), and Plaintiff filed a Supplemental Reply (ECF 32). These supplemental briefs addressed the Third Circuit's significant decision in DiAnoia's Eatery, LLC v. Motorists Mutual Insurance Company, 10 F.4th 192 (3d Cir. 2021), which was issued after the initial briefing and bears considerably on the Motion. Finally, following a hearing and oral argument on the Motion on November 18, 2021 (ECF 38), Plaintiff (ECF 41) and Defendant (ECF 40) each filed a Post-Argument Brief. Plaintiff also filed an Amended Complaint (ECF 44), adding a second Count for a declaratory judgment on the regulatory estoppel issue.

### III. Legal Standard

Under 28 U.S.C. § 1441(a), a civil action filed in a state court may be properly removed to federal court if the federal court would have had original jurisdiction over the action. As a "general rule," the federal court must then exercise jurisdiction over the case if jurisdiction is proper. Reifer

v. Westport Ins. Corp., 751 F.3d 129, 134 (3d Cir. 2014) ("[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)).

The Declaratory Judgment Act (DJA), however, provides an exception to this general rule. Under the DJA, a federal court, "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The DJA "confers discretionary, rather than compulsory, jurisdiction upon federal courts." Reifer, 751 F.3d at 134 (citing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942)). Simply put, "a district court may abstain from hearing a declaratory judgment action that is properly within the court's subject matter jurisdiction." DiAnoia's, 10 F.4th at 196.

To determine whether to remand a declaratory judgment action that has been properly removed to federal court, courts in the Third Circuit consider the "existence or non-existence of pending parallel state proceedings," which "while not dispositive, is a factor that 'militates significantly' in favor of either declining or exercising jurisdiction, respectively." Id. (quoting Reifer, 751 F.3d at 144–45); see also Rarick v. Federated Serv. Ins. Co., 852 F.3d 223, 226 (3d Cir. 2017) ("[T]he absence of a pending state case create[s] a rebuttable presumption in favor of jurisdiction.").

To the extent they are relevant, courts also consider a set of eight additional factors:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and (8) (in the insurance context), an inherent conflict of interest between

3

an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Reifer, 751 F.3d at 146.

These "Reifer factors" are non-exhaustive, and additional case law or considerations may be relevant to deciding a given case. Id. In the context of insurance cases specifically, the Third Circuit has provided the "additional guidance" that "when applicable state law is 'uncertain or undetermined, district courts should be particularly reluctant' to exercise DJA jurisdiction." Reifer, 751 F.3d at 141 (quoting State Auto Ins. Cos. v. Summy, 234 F.3d 131, 135 (3d Cir. 2000).

## IV. Discussion

In the present case, there is no pending parallel action between the parties proceeding in state court. Plaintiff contends, however, that the Reifer factors and other relevant considerations, taken as a whole, support remand strongly enough to outweigh the lack of pending parallel state proceedings. (MtR Br. 8–9.) Federal courts that choose to remand a declaratory judgment action in the absence of pending parallel state proceedings "should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." Reifer, 751 F.3d at 144. The Court will therefore review each of the Reifer factors.

   a. **Reifer Factors**

      **1. Likelihood That Federal Court Declaration Will Resolve Uncertainty**

"[T]he first Reifer factor captures whether a declaration would bring about a 'complete termination of the controversy' between the parties and thereby avoid duplicative, piecemeal litigation." DiAnoia's, 10 F.4th at 205 (citation omitted). The "two general types of situations which may make it unlikely that a declaration will prevent further litigation [are]: (1) when one or more persons have not been joined, but have an interest in the outcome of the action, and (2) when

one or more issues have not been raised, but are a part of the controversy or uncertainty." Id. at 205–06 (citation omitted)

In the present case, neither party has argued that there are interested persons who have not been joined, nor that there are issues that have not been raised but are a part of the controversy or uncertainty. Accordingly, the Court finds that this factor favors retaining the case.

### 2. Convenience of Parties

Defendant argues that this factor favors the Court retaining the case, on the grounds that Plaintiff is a Philadelphia entity and "there's no reason not to keep the case right where it sits." (Hearing Tr. 6–7.) Plaintiff contends that the second factor is neutral. (Id. at 6.) The Court agrees with Plaintiff. Regardless of whether the case remains in federal court or is remanded to state court, the case will be adjudicated in Philadelphia, and the convenience of the parties will not be significantly affected either way.

### 3. Public Interest in Settlement of Uncertainty

Plaintiff contends that Pennsylvania has a uniquely strong interest in its own courts resolving this case, framing this as the "key factor" that supports remand. (Id. at 7.) Plaintiff argues that Pennsylvania's interest flows from the allegedly novel or unsettled questions of Pennsylvania law that this case raises. (Pl.'s Supplemental Br. 12.) Although "federal courts sitting in diversity have 'the usual interest in the fair adjudication of legal disputes,'" the Third Circuit has "suggested that district courts should be reluctant to exercise DJA jurisdiction '[w]here state law is uncertain or undetermined.'" DiAnoia's, 10 F.4th at 207 (citations omitted).

Plaintiff identifies three allegedly novel or unsettled state law issues: 1) whether the presence of Covid-19 at a covered location may involve "risks of physical loss or damage" sufficient to trigger insurance coverage, 2) whether the doctrine of regulatory estoppel applies to

5

this case, and 3) whether the "contamination exclusion" in the policy at issue applies to a virus like Covid-19. (Pl.'s Post-Hearing Br. 1–6.)

### i. Risks of Physical Loss or Damage

Plaintiff asserts that it is a novel or unsettled issue of Pennsylvania law whether Covid-19 may trigger coverage for "risks of physical loss or damage," arguing that the "risks of" language adds particular uncertainty to the issue. (Pl.'s Post-Hearing Br. 1– 2.) Plaintiff contends that the Pennsylvania Supreme Court has given conflicting guidance on interpreting this language, contrasting 401 Fourth Street, Inc. v. Investors Insurance Group, 879 A.2d 166 (Pa. 2005), with Cleland Simpson Company v. Firemen's Insurance Company of Newark, New Jersey, 140 A.2d 41 (Pa. 1958). The Court finds that this issue is less novel than Plaintiff suggests.

First, the "risks of" language is not especially unusual in insurance policies, and Pennsylvania courts have provided guidance on how to interpret this language. See, e.g., Raybestos-Manhattan, Inc. v. Indus. Risk Insurers, 433 A.2d 906, 908 (Pa. Super. 1981); Miller v. Bos. Ins. Co., 218 A.2d 275, 278 (Pa. Super. 1966). As another judge in this district recently noted in rejecting the same argument that Plaintiff raises, "the phrase was once standard in insurance contracts." Greenwood Racing Inc. v. Am. Guarantee & Liab. Ins. Co., No. CV 21-01682, 2021 WL 4902343, at *4 (E.D. Pa. Oct. 20, 2021) (Pappert, J.).

Second, the allegedly conflicting decisions in 401 Fourth Street and Cleland Simpson are not actually in conflict in any way that bears on this case. In Cleland Simpson, the Pennsylvania Supreme Court found that an insurance policy covering loss caused by the risk of fire did not "include[] prohibition of access [to the insured property] because of apprehension of either the possibility or probability of a fire." 140 A.2d at 44. In 401 Fourth Street, the Pennsylvania Supreme Court examined an insurance policy covering "loss or damage caused by or resulting

from risks of direct physical loss involving collapse of a building." 879 A.2d at 169. Although the court "conclude[d] that the policy language provides coverage that extends beyond the situation in which an insured's building falls to the ground," the court's decision hinged on the fact that the policy included the risk of loss *involving* a collapse. 879 A.2d at 174. This "involving" qualifier did not figure into the Cleland Simpson policy and distinguishes the two cases, and so there is no conflicting precedent that makes Pennsylvania law too unsettled for this Court to properly apply.

### ii. Regulatory Estoppel

Plaintiff has not actually indicated what novel or unsettled issue of state law exists with regard to the doctrine of regulatory estoppel. It may be an open question at present whether regulatory estoppel applies to this case, but that does not mean that this is a novel or unsettled legal issue. To the contrary, Plaintiff's Post-Hearing Brief cites the Pennsylvania Supreme Court's decision in Sunbeam Corporation v. Liberty Mutual Insurance Company, 781 A.2d 1189 (Pa. 2001), which lays out the principles of regulatory estoppel that a federal court examining Pennsylvania law would have to apply. (Pl.'s Post-Hearing Br. 3.) Indeed, courts in this district have often evaluated regulatory estoppel theories, including in the context of Covid-19 coverage. See, e.g., Mareik Inc. v. State Farm Fire & Cas. Co., 537 F. Supp. 3d 818, 827–28 (E.D. Pa. 2021) (Quiñones Alejandro, J.); 1800 Farragut Inc. v. Utica First Ins. Co., No. CV 20-3449, 2021 WL 4243435, at *5–7 (E.D. Pa. Sept. 16, 2021) (Marston, J.); Fuel Recharge Yourself, Inc. v. Amco Ins. Co., No. CV 20-4477, 2021 WL 510170, at *3–4 (E.D. Pa. Feb. 11, 2021) (McHugh, J.).

Plaintiff also submits that the regulatory estoppel issue supports remand "due to the importance of the state courts' policing function regarding insurer representations to insurance regulators." (Pl.'s Post-Hearing Br. 3.) However, "[t]he essence of diversity jurisdiction is that a federal court enforces State law and State policy." DiAnoia's, 10 F.4th at 209 (quoting Beneficial

Indus. Loan Corp. v. Smith., 170 F.2d 44, 53 (3d Cir. 1948)). "After parties enter into an insurance policy with language approved by a state's regulator, it is unclear what special call that regulator or that state's court system has to weigh any public policy arguments implicated by disputes over that policy's terms." Id. at 210. Ultimately, "'[a]n insurance policy is a contract' interpreted by courts, and sister-state courts and federal courts are equally capable of applying state contract law." Id. (citation omitted).

### iii. Contamination Exclusion

Plaintiff avers that there are novel or unsettled questions of state law as to whether the contamination exclusion in the Eagles's insurance policy applies to Covid-19. The contamination exclusion excludes from coverage loss caused by contamination, and defines "contamination" as, in relevant part, "any condition of property due to the actual or suspected presence of any . . . virus." (Am Compl. ¶ 89–90.) Plaintiff argues that the scope of the contamination exclusion, and whether it applies to more than traditional environmental pollution in light of Pennsylvania's "reasonable expectations" doctrine, represents a novel or unsettled legal issue. (Pl.'s Post-Trial Br. 5–6.)

The Court finds that there is no unsettled or novel legal issue here. The pertinent question is not whether Pennsylvania law has been applied to the exact set of circumstances that the case at bar presents, but whether "the principles of insurance law that would need to be employed in such an interpretation are unsettled." DiAnoia's, 10 F.4th at 208; see also Inspira Health Network v. Am. Guarantee & Liab. Ins. Co., No. CV 21-11124, 2022 WL 833569, at *5 (D.N.J. Mar. 21, 2022) ("[T]he Third Circuit was clear in DiAnioa's that simply involving issues related to the pandemic is not a sufficient reason for a district court to decline jurisdiction."). Pennsylvania's reasonable expectations doctrine is well-established, and "[f]ederal and state courts are equally

8

capable of applying settled state law to a difficult set of facts." DiAnoia's, 10 F.4th at 197 (quoting Reifer, 751 F.3d at 147); see also Greenwood, 2021 WL 4902343, at *5 (reviewing the basic principles of the reasonable expectations doctrine in rejecting the same argument that Plaintiff raises).

### iv. Evaluation

The Court concludes that the present case does not raise any novel or unsettled issues of state law that would establish a public interest in remanding the action to state court. Plaintiff's arguments may implicate important Pennsylvania state law doctrines, but those doctrines are not too unsettled for the Court to properly apply. See Inspira, 2022 WL 833569, at *5 ("While the interpretation of . . . Plaintiff's Policy certainly implicates important issues of public policy in New Jersey and no New Jersey court may have yet addressed this precise issue, this Court remains well-equipped to answer questions of contract interpretation."). If anything, the public interest weighs against remand, as counsel have thoroughly briefed many issues and this Court intends to bring this case to an expeditious resolution that will settle the uncertainty of Factory Mutual's obligations to the Eagles.

### 4. Availability and Relative Convenience of Other Remedies

Defendant contends that the fourth factor supports its position, arguing that "the only real remedy that's available is a decision on the declaratory judgment action," and the Court "can grant complete relief." (Hearing Tr. 8.) Plaintiff characterizes this factor as neutral. (Id.) The Court also finds that this factor is neutral, as "state and federal courts are equally able to grant effective relief in these circumstances." Kelly v. Maxum Specialty Ins. Grp., 868 F.3d 274, 289 (3d Cir. 2017)

9

**5. General Policy of Restraint When Same Issues Are Pending in State Court**

In arguing that this factor supports remand, Plaintiff points to the numerous cases proceeding through Pennsylvania courts that center on whether property insurance coverage for physical loss applies to restrictions on property usage caused by Covid-19. (Hearing Tr. 19.) The Court agrees that the question of insurance policy interpretation in the era of Covid-19 has produced substantial litigation, not just in Pennsylvania courts but in court systems across the country. See Covid Coverage Litigation Tracker, U. Penn. Carey L. Sch., cclt.law.upenn.edu/cclt-case-list (last visited Mar. 16, 2022) (tracking Covid-19-related insurance litigation).

However, the Third Circuit has rejected the interpretation of the fifth factor that Plaintiff urges. See DiAnoia's, 10 F.4th at 206 ("The DiAnoia's and INC Courts concluded that the fifth Reifer factor weighed in favor of abstention because '[a] significant number of cases related to insurance coverage for business interruption based on COVID-19 closures are pending . . . in . . . state courts.' This conclusion reflects another misunderstanding of the meaning of one of the Reifer factors." (citations omitted)). Rather, "[t]he fifth factor's 'policy of restraint' is applicable only when the 'same issues' are pending in state court between the same parties, not when the 'same issues' are merely the same legal questions pending in any state proceeding." Id.

Expounding on this, the Third Circuit noted that "[b]ecause the Reifer factors are non-exhaustive, a district court may still consider, when relevant, whether the same legal question at issue in a declaratory judgment action is at issue in state court proceedings between different parties." Id. at 207. But the court "question[ed] how this fact would ever militate against exercising jurisdiction," because "[a]t any given time, there are countless insurance cases pending in state courts which implicate some common application of state law." Id.

In the present action, the issues that have been raised are not pending in state court between the same parties. The Court therefore finds that this factor favors retaining the case.

### 6. Avoidance of Duplicative Litigation

The sixth Reifer factor is similar to the fifth factor in that it gets at the basic question of whether a federal court adjudicating a declaratory judgment action can fully resolve the dispute between the parties, or whether the dispute will live on in other litigation proceeding through other forums. In the present case, there is no risk of duplicative litigation; the case before this Court is the only litigation between Plaintiff and Defendant concerning Covid-19 coverage in the Eagles's insurance policy. "Arguably, settling the dispute in the District Court may avoid duplicative litigation, considering that the parties have already begun to litigate the issue of coverage in the federal forum." Kelly, 868 F.3d at 289. The Court finds that this factor favors retaining the case.

### 7. Prevention of Procedural Fencing

Both parties have asserted that there is no procedural fencing at play on either side. (Hearing Tr. 22–23.) The Court agrees. There is no reason to believe that either party is engaged in a race for res judicata or any other form of procedural fencing that would be prevented by how the Court decides the Motion. The Court finds that this factor is neutral.

### 8. Conflict of Interest for Insurer

This factor is not relevant to the present case, which does not involve third-party liability insurance or a duty to defend a suit filed by the insured.

### b. Summy Guidance

Having found that none of the Reifer factors support remand, the Court will briefly address the "additional guidance" from State Auto Insurance Companies v. Summy: that "when applicable

11

state law is 'uncertain or undetermined, district courts should be particularly reluctant' to exercise DJA jurisdiction." DiAnoia's, 10 F.4th at 207 (quoting Reifer, 751 F.3d at 141).

In arguing that the Summy guidance supports remand, Plaintiff identifies the same allegedly unsettled legal issues concerning "risks of physical loss or damage," regulatory estoppel, and the contamination exclusion. For the same reasons discussed in analyzing the third Reifer factor, the Court finds that these legal issues are sufficiently settled for the Court to properly apply Pennsylvania law.

## V.   Conclusion

Plaintiff has not cited a single precedent of a district judge in Pennsylvania granting remand of a declaratory judgment action post-Dianoia's. After extensive research, the Court finds that remand is not supported by any precedent.

For the foregoing reasons, the Court will deny Plaintiff's Motion to Remand. An appropriate Order follows.

O:\CIVIL 21\21-1776 Philadelphia Eagles Limited Partnership v. Factory Mutual Ins Co\21cv1776 Memorandum re Motion to Remand.docx