**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PHILADELPHIA EAGLES LIMITED PARTNERSHIP, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. 2:21-cv-01776-MMB |
| v. | : | |
| | : | |
| | : | |
| FACTORY MUTUAL INSURANCE COMPANY, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT FACTORY MUTUAL INSURANCE COMPANY'S
REPLY BRIEF IN SUPPORT OF ITS
<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

Richard D. Gable, Jr. (Pa. ID No. 65842)
Adam B. Masef (Pa. ID No. 313468)
**BUTLER WEIHMULLER KATZ CRAIG LLP**
1818 Market Street, Suite 2740
Philadelphia, PA  19103
Telephone: (215) 405-9191
Facsimile:  (215) 405-9190
rgable@butler.legal
amasef@butler.legal

*Attorneys for Defendant, Factory Mutual
Insurance Company*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.      INTRODUCTION ........................................................................................................ 1

II.     LIMITATIONS ON THE USE OF PLAINTIFF'S PROPERTY DO NOT
        CONSTITUTE "PHYSICAL LOSS OR DAMAGE" ...................................................... 1

        A.      Limitations on use or occupancy due to the threat of Covid-19
                contamination do not satisfy the *Port Authority* standard ..................................... 3

        B.      Plaintiff's Amended Complaint does not allege "imminent" physical loss
                or damage as that term was used in *Port Authority* ................................................ 5

        C.      Plaintiff's authority is unpersuasive.......................................................................... 8

III.    PLAINTIFF'S EXTRINSIC EVIDENCE SHOULD BE IGNORED............................ 11

        A.      Extrinsic evidence is not relevant to the interpretation of unambiguous
                policy language ..................................................................................................... 11

        B.      Testimony and written communications not attached to the Amended
                Complaint are not entitled to judicial notice.......................................................... 12

IV.     THE CONTAMINATION EXCLUSION BARS COVERAGE FOR THIS
        CLAIM .................................................................................................................... 12

V.      CONCLUSION ......................................................................................................... 15

CERTIFICATE OF SERVICE .............................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*4431, Inc. v. Cin. Ins. Cos.*,
   504 F.Supp.3d 368 (E.D. Pa. 2020) ................................................................ 3

*Alberici v. Recro Pharma, Inc.*,
   No. 18-2279, 2020 WL 806719 (E.D. Pa. Feb. 14, 2020) ............................... 12

*Arden Grp. v. Beazley USA Servs. Inc.*,
   No. 210301508 (C.P. Phila. Apr. 29, 2022) ..................................................... 9

*Ascent Hosp. Mgmt. Co. v. Emp'rs Ins. Co.*,
   537 F.Supp.3d 1282 (N.D. Ala. 2021) ............................................................ 13

*Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*,
   499 F.Supp.3d 95 (E.D. Pa. 2020) ............................................................. 3, 4

*Brown Jug, Inc. v. Cin. Ins. Co.*,
   27 F.4th 398 (6th Cir. 2022) ............................................................................ 7

*Brown's Gym, Inc. v. Cin. Ins. Co.*,
   No. 20-CV-3113, 2021 WL 3036545 (C.P. Lackawanna July 13, 2021) ......... 9

*Buczek v. Cont'l Cas. Ins. Co.*,
   378 F.3d 284 (3d Cir. 2004) ............................................................................ 7

*Burtch v. Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011) ............................................................................ 6

*Chester Cnty. Sports Arena v. Cin. Specialty Underwriters Ins. Co.*,
   530 F. Supp. 3d 546 (E.D. Pa. Mar. 30, 2020) ............................................... 4

*Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*,
   500 F. Supp. 3d 565 (E.D. Tex. 2021) ........................................................... 10

*Cordish Cos., Inc. v. Affiliated FM Ins. Co.*,
   No. 21-2055, 2022 WL 1114373 (4th Cir. Apr. 14, 2022) ............................... 2

*Firebirds Int'l, LLC v. Zurich Am. Ins. Co.*,
   2022 IL App (1st) 210558 (May 20, 2022) ............................................... 10, 14

*GPL Enterprise, LLC v. Certain Underwriters at Lloyd's*,
   No. 302, 2022 WL 1638787 (Md. Ct. Spec. App. May 24, 2022 ................... 10

*GTE Corp. v. Allendale Mut. Ins. Co.*,
   258 F. Supp. 2d 364 (D.N.J. 2003) .................................................................. 8

*Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*,
   588 Pa. 470 (2006) ......................................................................................... 11

*Kessler Dental Assoc., P.C. v. Dentists Ins. Co.*,
   505 F. Supp.3d 474 (E.D. Pa. 2020) ............................................................... 3

*Kim-Chee LLC v. Phila. Indem. Ins. Co.*,
   535 F. Supp. 3d 152 (W.D.N.Y. 2021) ............................................................ 2

*Live Nation Entm't, Inc. v. Factory Mut. Ins. Co.*,
   LA CV21-00862, 2022 WL 390712 (C.D. Cal. Feb. 3, 2022) ........................................ 10

*Mac Prop. Grp. LLC & Cake Boutique LLC v. Selective Fire & Cas. Ins. Co.*,
   Nos. A-0714-20, A-0962-20, A-1034-20, A-1110-20, A-1111-20, A-1148-20,
   2022 WL 2196396 (N.J. Super. Ct. App. Div. June 20, 2022)......................................... 10

*MacMiles, LLC v. Erie Ins. Exch.*,
   No. GD-20-7752, 2021 WL 3079941 (C.P. Allegheny May 25, 2021) ............................ 8

*Mohawk Gaming Enters., LLC v. Affiliated FM Ins. Co.*,
   No. 8:20- CV-701, 2021 WL 1419782 (Apr. 15, 2021) .................................................. 11

*Mohegan Tribal Gaming Auth. v. Factory Mut. Ins. Co.*,
   No. HHD-CV-21-6147037-S (Conn. Super. Ct. June 8, 2022) ........................................ 8

*Motorists Mut. Ins. Co. v. Hardinger*,
   131 Fed. Appx. 823 (3d Cir. 2005).............................................................................. 2, 3

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
   15 F.4th 885 (9th Cir. 2021) .......................................................................................... 8

*Newtown Athletic Club v. Cin. Ins. Cos.*,
   No. CV 21-2662, 2022 WL 866410 (E.D. Pa. Mar. 23, 2022)......................................... 5

*Oral Surgeons, P.C. v. Cin. Ins. Co.*,
   2 F.4th 1141 (8th Cir. 2021) .......................................................................................... 8

*OTG Mgmt. PHL LLC v. Emp'rs Ins. Co. of Wausau*,
   557 F. Supp. 3d 556 (D.N.J. 2021) .............................................................................. 15

*Penn Asian Senior Servs. v. Selective Ins. Co. of S.C.*,
   No. 20-4919, 2021 WL 4478215 (E.D. Pa. Sept. 30, 2021) ............................................ 4

*Penn Nat'l Gaming, Inc. et al. v. Zurich Am. Ins. Co.*,
   No. 2008001187 (C.P. Phila. Dec. 8, 2021) ................................................................... 9

*Picone v. Nationwide Mut. Ins. Co.*,
   No. 3:21-CV-700, 2022 WL 1537351 (M.D. Pa. Apr. 27, 2022)...................................... 1

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*,
   311 F.3d 226 (3d Cir. 2002)................................................................................... passim

*Ralph Lauren Corp. v. Factory Mut. Ins. Co.*,
   No. CV2010167SDWLDW, 2021 WL 1904739 (D.N.J. May 12, 2021)........................ 10

*RDS Vending LLC v. Union Ins. Co.*,
   539 F. Supp. 3d 365 (E.D. Pa. 2021) .............................................................................. 4

*Rochester Drug Coop., Inc. v. Goodheart Pharmacy, Inc.*,
   No. CV 16-1787, 2016 WL 6920465 (E.D. Pa. Nov. 23, 2016)...................................... 11

*Rockhurst Univ. v. Factory Mut. Ins. Co.*,
   No. 4:20-CV-00581-BCW, 2022 WL 265879 (W.D. Mo. Jan. 26, 2022) ...................... 14

*Rowan Univ. v. Factory Mut. Ins. Co.*,
   2022 WL 515516 (N.J. Super. Ct. Jan. 24, 2022).......................................................... 10

*Sandy Point Dental, P.C. v. Cin. Ins. Co.*,
    20 F.4th 327 (7th Cir. 2021) .................................................................................... 9

*Santo's Italian Café LLC v. Acuity Ins. Co.*,
    15 F.4th 398 (6th Cir. 2021) .................................................................................... 8

*SSN Hotel Mgmt., LLC v. Harford Mut. Ins. Co.*,
    533 F. Supp. 3d 260 (E.D. Pa. 2021) ................................................................. 4, 5

*State St. Rest. Grp., Inc. v. Cin. Cas. Co.*,
    No. 3:20-CV-816, 2022 WL 1198214 (M.D. Pa. Apr. 20, 2022)................................. 3, 9

*SWB Yankees, LLC v. CNA Fin. Corp.*,
    No. 20-CV-2155, 2021 WL 3468995 (C.P. Lackawanna Aug. 4, 2021)........................... 9

*Tapestry, Inc. v. Factory Mut. Ins. Co.*,
    No. CV GLR-21-1941, 2022 WL 1227058 (D. Md. Apr. 25, 2022)........................... 9, 10

*Taps & Bourbon on Terrace, LLC v. Certain Underwriters at Lloyds London*,
    No. 00375, 2020 WL 6380449 (C.P. Phila. Oct. 26, 2020)................................................ 9

*Thor Equities, LLC v. Factory Mut. Ins. Co.*,
    531 F. Supp. 3d 802 (S.D.N.Y. 2021)................................................................. 10

*Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020)........................................ 12

*Ungarean, DMD v. CNA*,
    No. GD-20-006544, 2021 WL 1164836 (C.P. Allegheny Mar. 25, 2021) ......................... 8

*Venezie Sporting Goods, LLC v. Allied Ins. Co. of Am.*,
    No. 10397 OF 2020, 2021 WL 5368915 (C.P. Lawrence May 20, 2021)......................... 4

*Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*,
    499 F.Supp.3d 670 (N.D. Cal 2020) ................................................................. 2, 7

**Rules**

Fed. R. Civ. P. 12.................................................................................................. 11

Fed. R. Civ. P. 12(b)(6)........................................................................................ 12

## I.       INTRODUCTION

Plaintiff's opposition to Factory Mutual Insurance Company's ("FM") motion to dismiss bends law and reality in an attempt to convince this Court that its claims are unlike those that have been dismissed in similar cases, and to ignore the overwhelming weight of authority in this district and throughout the country that property insurance policies do not insure financial losses arising from the Covid-19 pandemic.  Worse, Plaintiff has inappropriately relied upon extrinsic facts and information that were never raised in either its original Complaint or Amended Complaint, in attempt to meet its burden to allege a plausible cause of action.  Regardless, the controlling case law is clear that extrinsic evidence cannot be used to create an ambiguity in an insurance contract when the policy language is already clear and unambiguous, as it is in this case.  Even if the Court were to consider this information, none of it contradicts the position asserted here; namely that the FM Policy does not insure Plaintiff's claims.

For the reasons set forth in FM's moving brief and below, Plaintiff's Amended Complaint does not plausibly allege "physical loss or damage" to any property insured under the FM Policy. Even if it did, such claims are excluded under the Policy's Contamination, Loss of Use, and Law or Ordinance Exclusions.  Therefore, FM respectfully requests that the Court grant FM's motion to dismiss, with prejudice.

## II.      LIMITATIONS ON THE USE OF PLAINTIFF'S PROPERTY DO NOT CONSTITUTE "PHYSICAL LOSS OR DAMAGE"

FM's moving brief addressed the myriad of decisions from around the country that have found that Covid-19 does not physically damage property (*see Picone v. Nationwide Mut. Ins. Co.*, No. 3:21-CV-700, 2022 WL 1537351, at *5 (M.D. Pa. Apr. 27, 2022) (listing decisions applying Pennsylvania law that adhere to "the majority view that coronavirus contamination does not constitute physical damage or loss"), and that the presence of Covid-19 is different from other

situations where courts have found physical loss or damage caused by "sources unnoticeable to the naked eye." *See e.g. Kim-Chee LLC v. Phila. Indem. Ins. Co.*, 535 F. Supp. 3d 152, 161 (W.D.N.Y. 2021), *aff'd*, No. 21-1082-CV, 2022 WL 258569 (2d Cir. Jan. 28, 2022) ("Unlike the cases of gasoline infiltration, cat urine, lead dust, and the other noxious substances which courts have found to constitute direct physical losses, there is no allegation of persistent contamination rendering the structure unusable. Instead, the claim is one of contamination—relatively short in duration but always with the risk of returning—which affects all structures and, indeed, all places in the world.")[1]  More importantly, as explained in FM's moving brief, Plaintiff's allegations concerning the impact of Covid-19 on its properties fail because (1) Plaintiff continued to use its properties when permitted to do so by governmental authorities, including playing its full slate of regular season football games; and (2) the contention concerning the amount of  Covid-19 that would have been present if the stadium was filled to capacity is irrelevant to the Court's analysis because it never happened during the season in question.

In an attempt to circumvent these realities, Plaintiff's opposition argues that the "risk" and "imminent threat" of Covid-19 contamination are sufficient to satisfy the definition of "physical loss or damage" set forth in *Port Authority of N.Y. & N.J. v. Affiliated FM Ins. Co.,* 311 F.3d 226 (3d Cir. 2002) and *Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed. Appx. 823, 826-27 (3d Cir. 2005) (not precedential).  These arguments are neither novel (*see Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, 499 F.Supp.3d 670 (N.D. Cal 2020) (dismissing claims where properties

---

[1] Indeed, every federal appeals court to address coverage claims for pandemic-related losses has agreed that such losses are not covered under commercial property insurance policies, including the Fourth Circuit in its recent affirmance of the district court's dismissal of an insured's claims against Affiliated FM Insurance Company (a subsidiary of Factory Mutual), with virtually identical policy provisions to the Policy at issue here.  *See Cordish Cos., Inc. v. Affiliated FM Ins. Co*., No. 21-2055, 2022 WL 1114373, at *1 (4th Cir. Apr. 14, 2022).

were closed because of the "imminent" threat of coronavirus)), nor correct.  *See State St. Rest. Grp., Inc. v. Cin. Cas. Co.*, No. 3:20-CV-816, 2022 WL 1198214, at *1 (M.D. Pa. Apr. 20, 2022) ("district courts within the Circuit have squarely rejected a plaintiffs reliance on [*Port Authority* and *Hardinger*]").

A.    **Limitations on use or occupancy due to the threat of Covid-19 contamination do not satisfy the *Port Authority* standard**

Plaintiff contends incorrectly that its decision to cancel and/or limit attendance to its events was sufficient to trigger coverage under the FM Policy.  *See* Pl.'s Br. 19-25, ECF No. 50.  As Judge Bartle explained in *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 499 F.Supp.3d 95 (E.D. Pa. 2020), *Port Authority* and *Hardinger* ruled that:

- "physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure, such as from fire, water, or smoke, that 'may demonstrably alter the components of a building and trigger coverage"; and that

- "[a]llegations of physical damage to a building from 'sources unnoticeable to the naked eye must meet a higher threshold," such that "it makes the structure 'uninhabitable and unusable,' but if the building continues to function and remain usable then the building owner has not suffered a loss."

*Id.* at 99.

Like Judge Bartle, all judges in this District who have examined the standard set forth in *Port Authority* have determined that claims based on Covid-19 contamination do not meet this threshold.  *See, e.g., Kessler Dental Assoc., P.C. v. Dentists Ins. Co.*, 505 F. Supp.3d 474, 480 (E.D. Pa. 2020) (holding that *Port Authority* and *Hardinger*, as applied to Covid-19, do not support coverage based on "mere presence" or "general threat of future damage"); *4431, Inc. v. Cin. Ins. Cos.*, 504 F.Supp.3d 368, 385 (E.D. Pa. 2020) (*Port Authority* and *Hardinger* require that, for physical loss coverage, "the loss and the bar to operation from which it results must bear a causal relationship to some **physical condition** of or on the premises") (emphasis in original); *Chester*

*Cnty. Sports Arena v. Cin. Specialty Underwriters Ins. Co.*, 530 F. Supp. 3d 546, 554 (E.D. Pa.

Mar. 30, 2020) ("when there is no alteration to a physical structure, Third Circuit precedent points

in the direction of finding no physical loss.") (citing *Port Auth. of N.Y. & N.J.*, 311 F. 3d at 235-

36)).

Pennsylvania courts have also found that "a closure of [a] facility to a majority portion of

the public [due to COVID-19] does not render the premises uninhabitable or rendered useless."

*Venezie Sporting Goods, LLC v. Allied Ins. Co. of Am.*, No. 10397 OF 2020, 2021 WL 5368915,

at *8 (C.P. Lawrence May 20, 2021); *see also Penn Asian Senior Servs. v. Selective Ins. Co. of

S.C.*, No. 20-4919, 2021 WL 4478215, at *3 (E.D. Pa. Sept. 30, 2021) ("Plausibly, the possible

transmission of the virus made it dangerous for its normal daycare services to go on.  But that does

not mean that no one could safely enter the premises.  Instead, its building 'was inhabitable and

usable, though on a limited basis.'").

Consistent with that determination, Pennsylvania courts have held repeatedly that a

property is ***not*** rendered uninhabitable or useless—and has ***not*** suffered a physical loss under *Port

Authority*—when the circumstances are such that the property is "inhabitable and usable, albeit in

limited ways."  *Handel*, 499 F. Supp. 3d at 100; *see also SSN Hotel Mgmt., LLC v. Harford Mut.

Ins. Co.*, 533 F. Supp. 3d 260, 266 (E.D. Pa. 2021) (because the insured's hotels "remained open

for employees, customers, and the public, albeit while employing social distancing practices and

other mitigation measures," the insured could not show that the hotels suffered "loss" under *Port

Authority*), *appeal dismissed*, No. 21-1921, 2022 WL 1532646 (3d Cir. Mar. 15, 2022); *RDS

Vending LLC v. Union Ins. Co.*, 539 F. Supp. 3d 365, 371-72 (E.D. Pa. 2021) (because the insured

"was able to continue to use its building, while following appropriate social-distancing and other

mitigation measures," the insured could not show that its property was "made useless or uninhabitable" and could not show "direct physical loss of" its building due to COVID-19).

Plaintiff's allegations are no different from those in the matters cited above.  The use of Plaintiff's premises were limited to avoid or limit the risk of Covid-19 transmission.  Am. Compl. ¶¶ 166-73.   However, Plaintiff cannot deny the fact that it still used "the Linc" for games throughout the entire season, and that it conducted operations out of the premises.  Thus, even if Covid-19 was present at its locations as alleged, it cannot demonstrate that its properties were rendered useless, uninhabitable, or that the properties' functionality was nearly eliminated or destroyed by the presence of Covid-19, let alone having sustained "physical loss or damage."

Plaintiff also rehashes its argument that the "threat" of loss is insured because the Policy covers property against "ALL RISKS OF PHYISCAL LOSS OR DAMAGE."  As stated by this Court, "the 'risks of' language is not especially unusual in insurance policies, and Pennsylvania courts have provided guidance on how to interpret this language."  Mem. Re:  Pl.'s Mot. Remand 6, ECF No. 45.  The perils insured against are "risks," as they are not certain to happen.  But the Policy does not insure against the "risk of" a "risk," except through the Additional Coverage for Protection and Preservation of Property discussed *infra*.   "A property's 'susceptibility to contamination' from employees and customers 'is not a condition that can trigger coverage under a reasonable reading of the [p]olicy.'" *Newtown Athletic Club v. Cin. Ins. Cos.*, No. CV 21-2662, 2022 WL 866410, at *6 (E.D. Pa. Mar. 23, 2022) (citing *SSN Hotel*, 533 F. Supp. 3d at 266).

### B.   Plaintiff's Amended Complaint does not allege "imminent" physical loss or damage as that term was used in *Port Authority*

Plaintiff argues that the Court should forget the fact that (like many of the other businesses in the cases cited above) it was able to use its property after taking remedial measures to address the spread of Covid-19.  Instead, it wants the Court to focus on the catastrophic consequences it

contends would have occurred had it operated at full capacity.[2]  Specifically, Plaintiff claims that

it suffered a loss because it restricted attendance to avoid the "imminent threat" of Covid-19

contamination.[3]  Plaintiff's argument places more weight on the word "imminent" than it can bear.[4]

---

[2] Plaintiff's argument ignores the reality that, even if it had wanted to open its doors to 67,000 fans at the height of the pandemic, it is not plausible that fans would have attended the stadium at pre-pandemic levels, or that governmental authorities (or the NFL for that matter), would have even allowed it.  Am. Compl. ¶¶ 168-71.  The Third Circuit Court of Appeals has observed:

> The Supreme Court in *Twombly* set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in *Iqbal*. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqba*l, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.'"

*Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012).  In fact, it strains credulity to think that people would have just flocked into the stadium in droves had the Eagles not intervened, especially when looking at the situation through the prism of 2020 (as Plaintiff suggests), when people were running to the other side of the street to avoid their neighbor walking the dog.  Thus, there is nothing plausible about Plaintiff's contention that 67,000 fans would have been allowed to or even wanted to attend a game where the airspace would have been "so dangerously adulterated with Coronavirus that thousands of people would have contracted the disease, become seriously ill, and possibly died."  Pl's Br. 19.

[3] In an attempt to distance itself from cases finding that governmental orders denying or restricting the use of insured property due to Covid-19 do not trigger coverage under a first party insurance policy, Plaintiff contends that governmental orders "were not the cause of the Eagles' loss."  Pl.'s Br. 25.  In order to support this argument, Plaintiff has gone so far as to re-write the facts underlying its loss.  Specifically, in its original complaint, Plaintiff alleged "[o]n November 16, 2020, related to renewed restrictions issued by the City of Philadelphia in response to a surge of Coronavirus cases, the Eagles announced that fans would no longer be permitted to attend in-person games at Lincoln Financial Field." Compl. ¶ 104.  In the Amended Complaint however, the factual allegation has been altered to read, "[o]n November 16, 2020, in response to a surge in Coronavirus cases and the dangers that would be presented were the Eagles to continue to allow even limited fans to attend games, the Eagles announced that fans would no longer be permitted to attend in-person games at Lincoln Financial Field." Am. Compl. ¶ 171.  While this gamesmanship with the facts should not be countenanced by the Court, for the purposes of this

Plaintiff analogizes its decision to limit capacity at its stadium to the erection of a "fire-proof wall" in the face of a wildfire.  Pl.'s Br. 32.  But unlike its real-word counterpart, this mythical "wildfire" can only breach the stadium boundaries with a ticket, issued by Plaintiff.  Also, unlike a true wildfire, the decisions regarding how and when to let spectators onto its property were made deliberately, with forethought.   For example, the NFL formally cancelled pre-season games, normally held in August or September, the month prior.  Am. Compl. ¶ 168.  Plaintiff worked with state and local government agencies, public health experts and NFL officials to develop health and safety protocols in advance of regular season games.  *Id.* ¶ 169.  These decisions were made well before any charcoal fires were lit by tailgating fans in the stadium parking lot.

As outlined by the Third Circuit Court of Appeals in *Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284, 291 (3d Cir. 2004),

> "Imminent" is defined as "ready to take place: near at hand," Webster's Third New International Dictionary 1130 (1st ed. 1966), and "likely to occur at any moment: impending," The Random House Dictionary of the English Language 957 (2d ed. 1987). As one court has observed, "imminent" means collapse "likely to happen without delay."

Even if the Covid-19 contamination complained of would have risen to the level of "physical loss or damage" sufficient to trigger coverage under the FM Policy (which it does not), there is nothing in the Amended Complaint suggesting there was an "imminent threat" that such

---

motion, it remains irrelevant whether the limitations on Plaintiff's business were the result of governmental directive, league mandate or common sense.  *See* e.g. *Brown Jug, Inc. v. Cin. Ins. Co.*, 27 F.4th 398, 403-04 (6th Cir. 2022) (remediation measures to reduce the threat of Covid-19 are "not tangible, physical losses, but economic losses.").

[4] Plaintiff also misconstrues *Port Authority*.  As explained in *Water Sports Kauai*, *Port Authority* "confirms that there must be sufficient evidence of the *presence* of the contaminant at the property plus an imminent threat from it." *Id.* at 674 (emphasis in original). An allegedly "imminent threat" alone is not enough to trigger coverage.

"physical loss or damage" was about to occur.  67,000 screaming fans were not ready to enter Lincoln Financial Field "at any moment."  No "wildfire" had reached the stadium walls. Accordingly, Plaintiff's contention that coverage should be afforded under the FM Policy because contamination from Covid-19 was imminent should be rejected.[5]

### C.     Plaintiff's authority is unpersuasive

Plaintiff cites to a handful of Pennsylvania state court decisions that either are devoid of analysis or have been previously distinguished.  Pl's Br. 28-29.  Plaintiff would have this Court ignore the tidal wave of authority finding that Covid-19 does not cause "physical loss or damage." *See e.g., Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021); *Oral Surgeons, P.C. v. Cin. Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021).

Two of the decisions cited by Plaintiff are from the same judge who relied on a district court decision from Illinois that is no longer good law.  *Compare Ungarean, DMD v. CNA*, No. GD-20-006544, 2021 WL 1164836, *6-7 (C.P. Allegheny Mar. 25, 2021) and *MacMiles, LLC v. Erie Ins. Exch.*, No. GD-20-7752, 2021 WL 3079941, *6-7 (C.P. Allegheny May 25, 2021) (citing Feb. 22, 2021 Court Order of the United States District Court, N.D. Illinois, Eastern District case

---

[5] Plaintiff's arguments are further rebutted by the fact that the Policy already provides some coverage for the "reasonable and necessary costs incurred for action to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property." Policy, p. 28-29 (emphasis added). Plaintiff makes no claim under this coverage because it cannot meet the coverage's threshold requirements.  It would also need to show that the loss which it acted to avoid was a loss that is covered by the policy, *GTE Corp. v. Allendale Mut. Ins. Co.*, 258 F. Supp. 2d 364, 373 (D.N.J. 2003), *aff'd*, 372 F.3d 598 (3d Cir. 2004), which it cannot do here. *See Mohegan Tribal Gaming Auth. v. Factory Mut. Ins. Co.*, No. HHD-CV-21-6147037-S, slip op. at 5-13 (Conn. Super. Ct. June 8, 2022) (denying claim under the Protection and Preservation of Property coverage based on the "immediately impending risk that persons infected with COVID-19 would enter" the insured property) (attached hereto as Ex. A).

In re: Society Ins. Co. COVID-19 Business Interruption Protection Insurance Litigation, Civil Case No. 1:20-CV-05965) *with Sandy Point Dental, P.C. v. Cin. Ins. Co.*, 20 F.4th 327, 332-33 (7th Cir. 2021) (finding that closures in response to executive orders issued by the Governor of Illinois during the Covid-19 pandemic did not cause direct physical loss).  Additionally, *Brown's Gym, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-3113, 2021 WL 3036545 (C.P. Lackawanna July 13, 2021) and *SWB Yankees, LLC v. CNA Fin. Corp.*, No. 20-CV-2155, 2021 WL 3468995 (C.P. Lackawanna Aug. 4, 2021), are two decisions issued by the same judge in another county, whose reasoning has already been rejected by a judge in this district.  *See State Street Rest. Grp., Inc. v. Cin. Cas. Co.*, No. 3:20-CV-816, 2021 WL 7967680, at *5 (M.D. Pa. Nov. 15, 2021) ("Given the teachings of the Third Circuit in *Port Auth. v. Affiliated FM Ins. Co.*, *supra*, we should decline this invitation to follow the path chosen by one state trial court in *Brown's Gym*. Instead, we recommend adherence to the majority view that coronavirus contamination does not constitute physical damage or loss.").  Finally, *Arden Grp. v. Beazley USA Servs. Inc.*, No. 210301508 (C.P. Phila. Apr. 29, 2022), *Penn Nat'l Gaming, Inc. et al. v. Zurich Am. Ins. Co.*, No. 2008001187 (C.P. Phila. Dec. 8, 2021), and *Taps & Bourbon on Terrace, LLC v. Certain Underwriters at Lloyds London*, No. 00375, 2020 WL 6380449 (C.P. Phila. Oct. 26, 2020), are all summary orders with little or no reasoning.  Moreover, the judge who entered the *Taps & Bourbon*, subsequently authored a substantive opinion dismissing a Covid-19 claim filed by a minor league baseball team. *Lehigh Valley Baseball, LP v. Phila. Indem. Ins. Co.*, No. 00958, 2021 WL 3029899, at *5 (C.P. Phila. June 17, 2021).

Without analysis, Plaintiff also cites to a few outlier decisions from other jurisdictions involving Factory Mutual, *see* Pl's Br. 27-28, several of which have already been rejected or repudiated.  For example, even though the district court in *Tapestry, Inc. v. Factory Mutual Ins.*

*Co.*, No. CV GLR-21-1941, 2022 WL 1227058 (D. Md. Apr. 25, 2022) certified questions concerning the construction of "physical loss or damage," these questions were recently answered by the Maryland Court of Special Appeals in its May 24, 2022 decision in *GPL Enterprise, LLC v. Certain Underwriters at Lloyd's*, No. 302, 2022 WL 1638787 (Md. Ct. Spec. App. May 24, 2022), where it found no coverage for Covid-related losses, including business interruption losses, caused by the alleged presence of the Covid-19 virus at the insured's property. The court reasoned that neither the virus nor the Governor's order caused direct physical loss of or damage to the insured's property as a matter of law.  *See id.* at *4-10.  Similarly, *Thor Equities, LLC v. Factory Mutual Ins. Co.*, 531 F. Supp. 3d 802 (S.D.N.Y. 2021) has been expressly rejected by another court, *see Ralph Lauren Corp. v. Factory Mut. Ins. Co.*, No. CV2010167SDWLDW, 2021 WL 1904739, at *4 n.8 (D.N.J. May 12, 2021) ("This Court declines to follow the non-binding decision in *Thor Equities, LLC v. Factory Mutual Insurance Company*, which found an identical contamination exclusion ambiguous."), as has *Live Nation Entm't, Inc. v. Factory Mutual Ins. Co.*, LA CV21-00862, 2022 WL 390712 (C.D. Cal. Feb. 3, 2022). *See Firebirds Int'l, LLC v. Zurich Am. Ins. Co.*, 2022 IL App (1st) 210558, ¶ 34 (May 20, 2022).  Plaintiff also cites to *Rowan Univ. v. Factory Mutual Ins. Co.*, No. GLO-L-000250-21, 2022 WL 515516 (N.J. Super. Ct. Jan. 24, 2022), a short decision issued by a New Jersey state trial court judge denying a motion to dismiss under a different pleading standard, and of questionable relevance in light of a recent New Jersey Appellate Division decision.  *See Mac Prop. Grp. LLC & Cake Boutique LLC v. Selective Fire & Cas. Ins. Co.*, Nos. A-0714-20, A-0962-20, A-1034-20, A-1110-20, A-1111-20, A-1148-20, 2022 WL 2196396 (N.J. Super. Ct. App. Div. June 20, 2022).  Lastly, in *Cinemark Holdings, Inc. v. Factory Mutual Ins. Co.*, 500 F. Supp. 3d 565 (E.D. Tex. 2021), the court merely denied an early

Rule 12 motion, making no holding with respect to "physical loss or damage" or the Contamination

Exclusion.

### III.   PLAINTIFF'S EXTRINSIC EVIDENCE SHOULD BE IGNORED

#### A.   Extrinsic evidence is not relevant to the interpretation of unambiguous policy language

Plaintiff's opposition refers to all manner of extrinsic evidence in the hope of convincing

the Court to accept is novel interpretation of "physical loss or damage" and to limit the application

of the FM Policy's Contamination Exclusion.   This evidence includes testimony, emails and

voicemails, lacking any context, from FM employees in connection with other claims, and

submissions to regulators. While none of this evidence, even if accepted, mandates a different

result, under Pennsylvania law it should nevertheless be ignored.

As set forth above, the Third Circuit Court of Appeals has provided guidance as to the

proper interpretation of "physical loss or damage."   Courts have almost universally determined

that neither the presence of Covid-19 nor the limitations on business operations designed to prevent

the spread of Covid-19 constitute "physical loss or damage."   As such, extrinsic evidence is

inadmissible to determine the meaning of the unambiguous policy provisions. *See Ins. Adjustment*

*Bureau, Inc. v. Allstate Ins. Co.,* 588 Pa. 470, 481 (2006); *Rochester Drug Coop., Inc. v. Goodheart*

*Pharmacy, Inc.,* No. CV 16-1787, 2016 WL 6920465, at *3 (E.D. Pa. Nov. 23, 2016) ("Only where

the meaning is capable of more than one interpretation is a contract ambiguous. [When there is no

ambiguity, plaintiff] cannot introduce extrinsic evidence that contradicts the unambiguous contract

language."). Indeed, Plaintiff's attempt to rely on FM's regulatory filings in order to create an

ambiguity with regard to the contamination exclusion has already been rejected in a prior Covid-

19 case.   *See Mohawk Gaming Enters., LLC v. Affiliated FM Ins. Co.,* No. 8:20- CV-701, 2021

WL 1419782, at *5 (Apr. 15, 2021) ("Plaintiff also invites the Court to consider extrinsic evidence,

including some of Affiliated FM's prior regulatory filings. . . . These arguments must also be rejected. As an initial matter, [Plaintiff] cannot rely on extrinsic evidence to create an ambiguity in what is otherwise a clear, unambiguous contract."); *see also Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 WL 5258484, at *17, n.13 (E.D. Mich. Sept. 3, 2020) (wherein the court rejected the insured's claims that the virus exclusion was void on the basis that the insurer had misrepresented the nature of the exclusion to insurance regulators).

> **B.    Testimony and written communications not attached to the Amended Complaint are not entitled to judicial notice.**

Much of this extrinsic evidence is being submitted to the Court for the first time in opposition to the Motion to Dismiss. A district court evaluating a motion to dismiss under Rule 12(b)(6) may take judicial notice of (1) exhibits attached to the complaint; (2) matters of public record; and/or (3) undisputedly authentic documents integral to or explicitly relied upon in the complaint without violating the principle that "matters extraneous to the pleadings" should not be considered. *Alberici v. Recro Pharma, Inc.*, No. 18-2279, 2020 WL 806719, at *7 (E.D. Pa. Feb. 14, 2020). The deposition testimony and communications of FM employees were not exhibits to the Amended Complaint, are not related to this particular claim, and do not otherwise fall into any of the other noted exceptions. As such, the Court should not consider them.

## IV.    THE CONTAMINATION EXCLUSION BARS COVERAGE FOR THIS CLAIM

Plaintiff contends that the Contamination Exclusion cannot be construed as it is written because it conflicts with the Communicable Disease Coverages. Pl.'s Br. 36-41. As outlined in FM's moving brief, the Communicable Disease Coverages act as narrow exceptions to the Contamination Exclusion. Plaintiff argues that the Court should ignore the other cases supporting FM's position and reject this construction of the Policy simply because the coverages are not referred to as "exceptions." This argument ignores the language and structure of the Policy.

The preamble to the Policy's exclusion section provides that "the following exclusions apply unless otherwise stated." Policy, p. 9, ECF No. 48-6.[6] The Policy then "states otherwise" through "Additional Coverages" and "Coverage Extensions." Exceptions commonly operate this way. For instance, the Policy excludes coverage for land and water (Policy, pp. 9-10) but pursuant to a coverage addition, provides limited coverage for "Land and Water Contaminant Cleanup, Removal and Disposal." Policy, p. 25. This additional coverage acts an "exception" to the land and water exclusions, even though the additional coverage does not contain the word "exception" nor is it specifically referenced in the land or water exclusions. The same is true here. The Contamination Exclusion generally excludes coverage for costs and losses from contamination (Policy, p. 14) but the "Additional Coverage" for Communicable Disease Response (Policy, p. 22) and "Coverage Extension" for Interruption by Communicable Disease (Policy, p. 60) provide limited coverage where the narrow requirements of those provisions are satisfied.

Plaintiff's contention that the only way to give effect to the Contamination Exclusion, the Communicable Disease definition, and the Communicable Disease Coverages is to construe the Contamination Exclusion—which specifically excludes loss or damage from a "virus," "pathogen," or "disease causing or illness causing agent"—as not applying to claims involving Covid-19 (Pl.'s Br. 41) is absurd on its face. Because Plaintiff has conceded that its property insurance claim arises out of Covid-19 and that Covid-19 is a virus, pathogen or disease causing agent, there is no coverage. *See, e.g.*, *Ascent Hosp. Mgmt. Co. v. Emp'rs Ins. Co.*, 537 F.Supp.3d 1282, 1288-89 (N.D. Ala. 2021) ("[A]ny definition of 'virus' that somehow carves out COVID-19 is not a permissible meaning. This court does not accept [plaintiff's] invitation to engage in the

---

[6] All references to page numbers of the Policy correspond to the page numbers on the policy form.

type of mental gymnastics that would permit a finding that the COVID-19 coronavirus is not a virus within the meaning of the Contamination Exclusion.").

Plaintiff's argument that the Contamination exclusion only applies to "costs" and not "loss" is equally misguided. The FM Policy excludes "**contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy." Policy, p. 13. The only logical reading of this provision is that contamination, as defined, is not a risk of loss insured by the FM Policy. Simply because the exclusion also refers to "any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy" cannot be reasonably construed to limit its application. As stated by the court in *Firebirds Int'l, LLC*, 2022 IL App (1st) 210558, ¶ 28:

> Firebirds' interpretation, however, dismisses the first two words of the sentence. The provision does not merely state that the policy excludes "any cost due to Contamination." Rather, the policy excludes "Contamination, <u>and</u> any cost due to Contamination." (Emphasis added.) The conjunctive "and" means "[t]ogether with; in addition to; as well as." The American Heritage Dictionary 52 (4th Coll. ed. 2004). Read with the definition inserted for the word, the provision excludes from coverage "Contamination, [together with, in addition to, as well as] any cost due to Contamination." Furthermore, insertion of a comma after the first word "Contamination," indicates that "Contamination" itself is considered an independent exclusion not subject to qualification by any succeeding phrases.

*See also Rockhurst Univ. v. Factory Mut. Ins. Co.*, No. 4:20-CV-00581-BCW, 2022 WL 265879, at *4 (W.D. Mo. Jan. 26, 2022) ("Despite Plaintiffs' assertions that 'and' makes the exclusion unclear and ambiguous, 'and' merely broadens the scope of the exclusion to also exclude costs of contamination as described by the policy language.").

Finally, Plaintiff's attempt to limit the application of the Contamination Exclusion under the doctrine of regulatory estoppel should also be rejected.  Plaintiff argues that the pre-2006 exclusion, which included the undefined term "contamination," was "limited to traditional environmental pollution risks."  Pl.'s Br. 42.  But Plaintiff's argument fails because it is based solely on its *post hoc* construction of the pre-2006 exclusion, not from any representation of Factory Mutual.  In other words, nowhere does Plaintiff allege that FM represented to regulators that its pre-2006 contamination exclusion did not apply to virus.  Rather, it alleges that FM represented that the revisions to the pre-2006 Contamination Exclusion resulted in "no change in coverage."  Am. Compl. ¶ 101.  Accordingly, Plaintiff cannot demonstrate or adequately allege any inconsistency between the reasoning advanced to justify the approval of modification of the pre-2006 Contamination Exclusion and the interpretation of the Contamination Exclusion clause asserted by FM in this case.  *See OTG Mgmt. PHL LLC v. Emp'rs Ins. Co. of Wausau*, 557 F. Supp. 3d 556, 568 (D.N.J. 2021) (dismissing regulatory estoppel argument where insurer's "current litigation position is entirely consistent with the alleged position it took in front of state regulators: the Policy does not cover loss or damage resulting from contamination").

## V.      CONCLUSION

For the reasons set forth above and those in FM's moving brief, the Amended Complaint should be dismissed, in its entirety, with prejudice.

|  |  |
|---|---|
| | Respectfully Submitted, |
| Dated:  June 22, 2022 | BUTLER WEIHMULLER KATZ CRAIG LLP |
| | |
| | s/Richard D. Gable, Jr. |
| | Richard D. Gable, Jr., Esq. (Pa. ID No. 65842) |
| | Adam B. Masef, Esq. (PA ID No. 313468) |
| | 1818 Market Street, Suite 2740 |
| | Philadelphia, PA 19103 |
| | rgable@butler.legal |
| | amasef@butler.legal |

*Attorneys for Defendant, Factory Mutual Insurance Company*

**CERTIFICATE OF SERVICE**

I, Richard D. Gable, Jr., hereby certify that a true and correct copy of the foregoing Reply

Brief in support of Defendant's Motion to Dismiss, electronically filed this 22nd day of June, 2022,

will be served on the following counsel of record via the Court's Electronic Filing System:

Charles A. Fitzpatrick IV, Esq.
James T. Giles, Esq.
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, Pennsylvania 19103

James R. Murray, Esq.
Helen K. Michael, Esq.
BLANK ROME LLP
1825 Eye Street, N.W.
Washington, D.C. 20006

Linda Kornfeld, Esq.
BLANK ROME LLP
2029 Century Park East, 6th Floor
Los Angeles, CA  90067

Lisa M. Campisi, Esq.
BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020-1300

*Attorneys for Plaintiff*

/s/ Richard D. Gable, Jr.
RICHARD D. GABLE, JR., ESQ.
*Attorney for Defendant, Factory Mutual Insurance*
*Company*

17